# EXHIBIT 1

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2         FOR THE COUNTY OF LOS ANGELES

3  DEPARTMENT 311              HON. CARL J. WEST, JUDGE

4

5  FIRST STATE INSURANCE COMPANY, )
   ET AL.,                       )
6                                )
            PLAINTIFF,           )
7                                )
         VS.                     )  NO. BC 354664
8                                )     BC 328022
   VULCAN MATERIALS COMPANY, ET  )
9  AL,                           )
                                 )
10          DEFENDANT.           )   COPY
   _____)

11

12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             WEDNESDAY, MARCH 12, 2008

15

16  APPEARANCES:    (TEL) = INDICATES TELEPHONIC APPEARANCE

17  FOR SAFETY NATIONAL    ABBEY, WEITZENBERG, WARREN & EMERY
    CASUALTY CORPORATION:  BY:  **MITCHELL B. GREENBERG** (TEL)
18                         (707) 542-5050

19
    FOR ACE, CIC, INA,     BERMAN & AIWASIAN
20  PEIC, US FIRE AND      BY:  **JOHN C. CONWAY**
    WESTCHESTER INDEMNITY: 725 SOUTH FIGUEROA STREET, SUITE 1050
21                         LOS ANGELES, CALIFORNIA  90017
                           (213) 833-3212
22

23  FOR FEDERAL INSURANCE  CHAMBERLIN, KEASTER & BROCKMAN
    COMPANY:               BY:  **NICHOLAS ANDREA**
24                         15841 VENTURA BOULEVARD
                           ENCINO, CA  91436
25                         (818) 383-0802

26

27

28                         WENDY OILLATAGUERRE, CSR NO. 10978
                           OFFICIAL REPORTER

```
 1   APPEARANCES (CONTINUED):

 2   FOR CONTINENTAL         COLLIAU, ELENIUS, MURPHY, CARLUCCIO,
     INSURANCE COMPANY:      KEENER & MORROW
 3                     (TEL)BY:  BRIAN W. WALSH
                             405 HOWARD STREET, SUITE 600
 4                           SAN FRANCISCO, CALIFORNIA  94105
                             (415) 932-7000
 5

 6   FOR VULCAN MATERIALS:   COVINGTON & BURLING
                             BY:  DONALD W. BROWN
 7                                WENDY L. FENG
                             ONE FRONT STREET
 8                           SAN FRANCISCO, CALIFORNIA  94111
                             (415) 591-7063
 9

10   FOR LONDON MARKET       DUANE MORRIS
     INSUREDS:               BY:  CYNDIE M. CHANG
11                                YVETTE D. ROLAND
                                  RAY L. WONG
12                           633 WEST 5TH STREET, SUITE 4600
                             LOS ANGELES, CALIFORNIA  90071-2065
13                           (213) 689-7416

14
     FOR STONEWALL           FAINSBERT, MASE & SNYDER
15   INSURANCE:              BY:  EVA LEE
                                  RICHARD E. WIRICK
16                           11835 WEST OLYMPIC BOULEVARD
                             SUITE 1100
17                           LOS ANGELES, CALIFORNIA  90064
                             (310) 473-6400
18

19   FOR ATLANTA             GILBERT, KELLY, CROWLEY & JENNETT
     INTERNATIONAL     (TEL)BY:  JEFFREY C. BURT
20   INSURANCE:              1055 WEST SEVENTH STREET, SUITE 2000
                             LOS ANGELES, CALIFORNIA  90017
21                           (213) 615-7061

22
     FOR NORTH STAR          HAIGHT, BROWN & BONESTEEL
23   REINSURANCE             BY:  MICHAEL J. LEAHY
     CORPORATION:            6080 CENTER DRIVE, SUITE 800
24                           LOS ANGELES, CALIFORNIA  90045-1574
                             (310) 215-7100
25

26   FOR FAIRMONT            MORRIS, POLICH & PURDY
     SPECIALTY INSURANCE     BY: WALTER LIPSMAN (TEL)
27   COMPANY:                (213) 891-9100

28
```

```
 1   APPEARANCES (CONTINUED):

 2   FOR ALLIANZ:              MURTAUGH, MEYER, NELSON & TREGLIA
                               BY:  CHARLES R. DIAZ
 3                             444 S. FLOWER STREET, SUITE 500
                               LOS ANGELES, CALIFORNIA  90071-2906
 4                             (213) 622-2101

 5
     FOR AMERICA RE           MUSICK, PEELER & GARRETT
 6   INSURANCE COMPANY:       BY:  LAWRENCE A. TABB
                               ONE WILSHIRE BOULEVARD
 7                             LOS ANGELES, CALIFORNIA  90017-3321
                               (213) 629-7797
 8

 9   FOR UNITED NATIONAL      NIELSEN, HALEY & ABBOTT
     INSURANCE COMPANY:       BY:  AUGUST L. LOHUARU
10                             523 WEST SIXTH STREET, SUITE 635
                               LOS ANGELES, CALIFORNIA  90014
11                             (213) 239-9009

12
     FOR EMPLOYERS            RIEDL, MC CLOSKEY & WARING
13   REINSURANCE     (TEL)BY:  ANDREW R. MC CLOSKEY
     CORPORATION:             550 WEST C STREET, SUITE 500
14                             SAN DIEGO, CA  92101
                               (619) 237-3095
15

16   FOR AFFILIATED           SEDGWICK, DETERT, MORAN & ARNOLD
     FINANCIAL INSURANCE      BY:  KATHERINE E. MAST (TEL)
17   COMPANY:                 801 SOUTH FIGUEROA STREET, 19TH FLOOR
                               LOS ANGELES, CALIFORNIA  90017-5556
18                             (213) 426-6900

19
     FOR SENTRY               SELMAN & BREITMAN
20   ASSOCIATED:              BY:  MICHAEL S. LITTLE
                               11766 WILSHIRE BOULEVARD, SIXTH FLOOR
21                             LOS ANGELES, CALIFORNIA  90025-6538
                               (310) 445-0800
22

23   FOR AIG-RELATED          SINNOTT, DITO, MOURA & PUEBLA
     DEFENDANTS:              BY:  J. KARREN BAKER
24                             555 MONTGOMERY STREET, SUITE 720
                               SAN FRANSCISO, CALIFORNIA  94111
25                             (415) 352-6200

26

27

28
```

```
 1   APPEARANCES (CONTINUED):

 2   FOR PLAINTIFF:          SMITH ELLISON
                             BY:  MICHAEL W. ELLISON
 3                           19800 MAC ARTHUR BOULEVARD
                             SUITE 1475
 4                           IRVINE, CALIFORNIA 92612
                             (949) 442-1500
 5

 6   FOR NORTHWESTERN        TRAUB, EGLIN, LIEBERMAN & STRAUS
     NATIONAL INSURANCE(TEL)BY:  MARK FROEHLICH
 7   COMPANY:                (914) 347-2600

 8

     FOR FIREMAN'S FUND      WILSON & RYAN
 9   INSURANCE COMPANY:      BY:   SHERRY L. PANTAGES (TEL)
                             (818) 547-6508
10

11   FOR UNIVERSAL           DENNIS ZARAGOZA
     INDEMNITY:              560 PINE STREET, POST OFFICE BOX 2190
12                           SAN FRANCISCO, CALIFORNIA 94126-2190
                             (415) 217-4757
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1   CASE NUMBER:              BC 354664
 2   CASE NAME:                FIRST STATE INSURANCE COMPANY
 3                             VS. VULCAN MATERIALS COMPANY
 4   LOS ANGELES, CALIFORNIA   WEDNESDAY, MARCH 12, 2008
 5   DEPARTMENT 311            HON. CARL J. WEST, JUDGE
 6   REPORTER:                 WENDY OILLATAGUERRE, CSR #10978
 7   TIME:                     P.M. SESSION
 8
 9        THE COURT:  GOOD AFTERNOON, LADIES AND GENTLEMEN.
10        PEOPLE IN COURTROOM:  GOOD AFTERNOON.
11        THE COURT:  IN THE VULCAN MATERIALS CONSOLIDATED
12   COVERAGE LITIGATION WE'LL RUN THROUGH THE AGENDA.  AND IF
13   ANYONE ELSE HAS ANY NEW ITEMS, WE'LL TAKE THEM UP.
14          ON THE OPERATIVE PLEADINGS, WHO WANTS TO RESPOND
15   TO MY COMMENTS ABOUT THIS?  IS THERE ANY PROBLEM WITH THE
16   TIMING OF THE FILING OF VULCAN'S CROSS COMPLAINT AND THE
17   AMENDED COMPLAINT?
18        MR. BROWN:  DONALD BROWN FOR VULCAN.
19          NO, THAT'S FINE.
20        THE COURT:  WHAT ABOUT SOME KIND OF A CONSOLIDATED
21   COMPLAINT?  IS THAT PRACTICAL OR IT'S NOT PRACTICAL YET?
22        MR. BROWN:  I'M NOT ENTIRELY CONCERNED WHAT THE CAUSE
23   OF ACTIONS ARE GOING BE TO.  BUT ONCE IT IS FILED, WE CAN
24   TALK ABOUT IT AND I CAN TALK TO MY CLIENT ABOUT IT.
25        THE COURT:  ALL RIGHT.
26          MR. ELLISON?
27        MR. ELLISON:  ONE WAY TO PROCEED ON THAT.  I JUST GAVE
28   MR. BROWN A SAMPLE OF THE MASTER PLEADING WE USED IN
```

1  ANOTHER CASE.

2       ONE OPTION MIGHT BE TO CIRCULATE A COPY OF THE

3  DRAFT OF THE CROSS-COMPLAINT.  AND IT MIGHT MAKE SENSE TO

4  PUT TOGETHER A MASTER PLEADING OF IT.  IT MAY OR MAY NOT

5  WORK HERE.  THERE'S NOT AS MANY PARTIES AND THERE'S NOT AS

6  MANY SITES INVOLVED, BUT IT MIGHT MAKE SENSE IF WE CAN COME

7  UP WITH A MASTER PLEADING SO THE NEW PARTIES CAN ALSO HAVE

8  A CHANCE OF USING IT.

9     THE COURT:  WELL, I'M NOT SURE THAT I'D LIKE TO SEE

10  THAT AS THE TEMPLATE, BUT MAYBE RATHER THAN INSISTING THAT

11  THESE AMENDED PLEADINGS BE FILED, I SHOULD ASK THAT THEY BE

12  CIRCULATED AND MAYBE SERVED FOR COMMENT.

13       AND, YOU KNOW, MY GOAL HERE IS TO HAVE AS FEW

14  ROUNDS OF AMENDED PLEADINGS AS POSSIBLE, AND IF SOMEBODY

15  GIVES YOU SOME GOOD IDEAS TO WHAT YOU ARE PROPOSING, WE

16  MIGHT COME UP WITH A BETTER MOUSETRAP IN THE END.  I'M

17  PRETTY OPEN TO THAT.

18       ANYBODY ELSE HAVE ANY IDEAS ON THAT?

19     MR. WONG:  YOUR HONOR, GOOD AFTERNOON RAY WONG ON

20  BEHALF OF TRANSPORT INSURANCE COMPANY.

21       I THINK THE COURT'S LAST SUGGESTION IS AN

22  EXCELLENT ONE, TO THE EXTENT THAT ANY OF THE PARTIES ARE

23  INTERESTED IN AMENDED PLEADINGS TO CIRCULATE THOSE.  ONE OF

24  THE ISSUES THAT I SEE AS TO A MASTER COMPLAINT, IS WE HAVE

25  A LITTLE BIT OF A MISALIGNMENT OF PARTIES HERE, SINCE

26  VULCAN IS NOT A PLAINTIFF.  WE ARE THE PLAINTIFFS AND SO IF

27  WE CIRCULATE THESE DRAFTS, WE WOULD HAVE AN OPPORTUNITY TO

28  TAKE A LOOK AT THEM, MEET AND CONFER, AND THEN PERHAPS THAT

1    MIGHT LEAD TO A MASTER PLEADING THAT WOULD MAKE SOME SENSE.

2        THE COURT:  WHAT DO YOU THINK ABOUT THAT, MR. BROWN?

3        MR. BROWN:  I CAN'T DO THAT.  I KNOW MY CLIENT IS NOT

4    GOING TO LET ME CIRCULATE THIS PLEADING IN DRAFT FORM, AND

5    IT'S IN GREAT MEASURE, BECAUSE SOME OF THE PEOPLE WHO ARE

6    GOING TO SUE WHO AREN'T HERE YET.

7        THE COURT:  ARE WE BRINGING IN A NUMBER OF OTHER

8    INSURANCE CARRIERS, OR ARE THERE NON-INSURER

9    CROSS-DEFENDANTS THAT YOU ARE PROPOSING TO BRING IN?

10        MR. BROWN:  BOTH.

11        THE COURT:  I GUESS I'D LIKE TO SEE THAT BECAUSE, AS A

12    PRACTICAL MATTER, IT MAY NOT BE THE MOST EFFICIENT APPROACH

13    TO THE CASE, IN TERMS OF COMBINING NON-INSURANCE-RELATED

14    INDEMNITY CLAIMS THAT YOU MAY HAVE AGAINST OTHER THIRD

15    PARTIES.  I MEAN, WE MAY WANT TO SEVER THOSE OUT.  THEY ARE

16    TREATED DIFFERENTLY.  THEY ARE DIFFERENT ISSUES.  AND I

17    HAVEN'T REALLY THOUGHT THIS THROUGH.  AND I'M SURE NONE OF

18    THE OTHERS HERE HAVE EITHER, BUT I WANT TO KEEP IT ORDERED,

19    IF WE CAN.

20        WHAT IS THE PROBLEM WITH CIRCULATING A PROPOSED

21    CROSS-COMPLAINT?  IS THERE SOME SECRET?  IF IT'S GOING TO

22    LEAD TO MULTIPLE ROUNDS OF PLEADING CHALLENGES, WE'RE NOT

23    DOING ANYBODY ANY FAVORS.

24        MR. BROWN:  IT IS A SECRET, IN A WAY, BUT I SAY THAT

25    WITH A SMALL SMILE.  WE'RE GOING TO BRING IN ADDITIONAL

26    INSURERS FROM SOME OTHER YEARS, AND MAYBE AT DIFFERENT

27    LEVELS.  THE ONLY NON-INSURER WE'RE CONTEMPLATING SUING IS

28    RR STREET, THE FOLKS WHO HAVE SUED US IN ILLINOIS.

1    THE COURT:  AND RR STREET HAS SUED YOU FOR SOME FORM OF

2 INDEMNITY IN ILLINOIS?

3    MR. BROWN:  YES.

4    THE COURT:  ON AN EXPRESS INDEMNITY CLAIM OR IMPLIED?

5    MR. BROWN:  BOTH.  THEY WERE A DISTRIBUTOR.  IN 1992

6 THEY BECAME A WRITTEN SALES AGENT.  AND THERE'S A WRITTEN

7 SALES INDEMNITY CLAUSE.

8          THE LAWSUIT IN ILLINOIS IS FILED BY RR STREET AS

9 WELL AS ITS OWN INSURER, NATIONAL UNION, WHICH I'M

10 INFORMED, AND BELIEVE, HAS PAID MOST OF RR STREET'S COSTS

11 OF DEFENSE IN THE MODESTO LITIGATION.  SO NATIONAL UNION IS

12 SUING US THERE AS WELL.

13    THE COURT:  HAVE YOU HAD ANY DISCUSSIONS WITH THEIR --

14 THE OTHER THING THAT I WOULD LIKE TO SEE US TRY TO DO, AND

15 MAYBE IT MAY BE IMPRACTICAL, BECAUSE PEOPLE JUST WON'T

16 COOPERATE, BUT ALL OF THIS COVERAGE LITIGATION OUGHT TO BE

17 CENTRALIZED IN ONE PLACE.  SO IF WE EVER GET TO THE POINT

18 WHERE WE CAN SIT DOWN AND LOOK AT WHAT THE REAL ISSUES ARE,

19 OR WHAT THE EXPOSURE IS, OR SOME POTENTIAL FOR RESOLUTION,

20 YOU HAVE ALL OF THE PLAYERS THERE.  WE GOT RID OF THE ONES

21 IN ARKANSAS OR KENTUCKY.

22    UNIDENTIFIED SPEAKER:  ALABAMA.

23    THE COURT:  I KNEW IT WAS SOMEWHERE DOWN THERE.  AND

24 THAT SEEMS TO BE RESOLVED.

25          NOW, THE ILLINOIS GROUP -- IS RR STREET

26 HEADQUARTERED IN ILLINOIS OR IS IT NATIONAL UNION?

27    MR. BROWN:  STREET -- NATIONAL UNION IS IN NEW YORK.  I

28 ASSUME NATIONAL UNION IS ALREADY A PARTY IN THIS.

1   THE COURT:  BUT STREET ISN'T?

2   MR. BROWN:  NO.

3   THE COURT:  AND IS NATIONAL UNION'S INVOLVEMENT IN THIS

4  ON THE VULCAN CLAIM, OR IT THE INSURER'S CLAIM, OR BOTH?

5   MS. BAKER:  I REPRESENT NATIONAL UNION, YOUR HONOR.

6  I'M KARREN BAKER.

7      WE ARE IN AS VULCAN'S INSURER.  NATIONAL UNION

8  ALSO ISSUED POLICIES TO RR STREET.

9   THE COURT:  SO YOUR STREET POLICIES ARE NOT AT ISSUE IN

10  THIS LITIGATION?

11   MS. BAKER:  CORRECT.

12   THE COURT:  WHAT DO YOU THINK THE LIKELIHOOD IS THAT

13  NATIONAL UNION AND PERHAPS YOUR INSURED, RR STREET, WOULD

14  BE WILLING TO CONSOLIDATE AND HAVE THE LITIGATION HERE?

15   MS. BAKER:  I'M GOING TO GUESS SLIM TO NONE.

16   THE COURT:  OKAY.

17   MS. BAKER:  I DON'T REPRESENT THEM IN ILLINOIS,

18  OBVIOUSLY, BUT I AM GOING TO ASSUME, BASED ON WHAT THEY'VE

19  SAID, THAT THEY HAVE NO INTEREST IN COMING TO CALIFORNIA.

20   THE COURT:  WOULD YOU TELL ME YOUR NAME, AGAIN?

21   MS. BAKER:  KARREN BAKER.

22   THE COURT:  OKAY, MS. BAKER.

23      ALL RIGHT.  AND WHAT IS THE SUBSTANCE OF THE

24  PROPOSED AMENDMENT TO THE INSURER'S COMPLAINT?

25   MR. ELLISON:  YOUR HONOR, WELL, I CAN ONLY SPEAK AS

26  TO -- FIRST, I THINK THE AMENDMENT WOULD BE INCLUDING SOME

27  ADDITIONAL UNDERLYING LITIGATION AND CLAIMS THAT HAVE BEEN

28  FILED SINCE THE FILING OF THE ORIGINAL COMPLAINT, WHICH

1   FALL INTO TWO CATEGORIES; SOME ADDITIONAL PROPERTY DAMAGE
2   CLAIMS, AND ALSO NOW THERE ARE SOME BODILY INJURY CLAIMS
3   OUT THERE.  SO I THINK THAT WOULD BE INCLUDING ALL OF
4   THOSE.  SO AGAIN, WE HAVE EVERYTHING IN ONE LITIGATION.
5       THE COURT:  WELL, MAYBE WE'LL JUST GO WITH THE ORIGINAL
6   PLAN.  WE'LL GET THESE GET FILED.  I'M GOING TO STAY ANY
7   RESPONSIVE PLEADINGS UNTIL WE HAVE A CHANCE TO LOOK AT
8   THEM.
9       YOU CAN -- MR. BROWN, HAVE A FILED AMENDED
10  COMPLAINT.  THE INSURERS CAN HAVE A FILED AMENDED COMPLAINT
11  BUT I CAN TELL YOU, FROM MY PERSPECTIVE I'M GOING TO LOOK
12  AT THEM AS A VETTING PROCESS, AND WE'LL GET THEM ON THE
13  TABLE AND GET PEOPLE'S INPUT ABOUT HOW BEST TO APPROACH
14  THOSE COMPLAINTS, WHETHER THEY ARE CHALLENGES TO THE
15  SUBSTANTIVE OR PROCEDURAL ASPECTS OF THE COMPLAINT, OR THE
16  ALLEGATIONS, AND THEN WE'LL DECIDE WHERE WE GO FROM THERE.
17      MR. BROWN:  ALL RIGHT.
18      MR. ELLISON:  IF I COULD, JUST ON THE DEADLINE, ONE
19  THING I JUST NOTICED IN MY CALENDAR.  IS IT POSSIBLE TO
20  PUSH IT BACK A WEEK?  OBVIOUSLY PEOPLE CAN FILE THEM
21  EARLIER, BUT IF WE CAN PUSH THE DEADLINE BACK, IT WILL MAKE
22  MY LIFE A LITTLE EASIER.
23      THE COURT:  EVERYTHING IS POSSIBLE HERE.  ACTUALLY
24  MARCH 28TH IS SOME KIND OF A HOLIDAY.  I NEVER KNOW.  WE
25  GET SO MANY HOLIDAYS.  WE'D BE LOOKING AT APRIL 4TH THEN.
26      MR. ELLISON:  THAT WOULD BE FINE.
27      THE COURT:  AND THE MINUTE ORDER WILL INDICATE THAT
28  FIRST STATE AND VULCAN ARE AUTHORIZED TO FILE THESE OR ARE

1    GRANTED LEAVE TO FILE AMENDED PLEADINGS.

2        MR WONG:  AND, YOUR HONOR, ALSO, TRANSPORT HAS A

3    COMPLAINT ON FILE.

4        THE COURT:  DO YOU SEEK TO AMEND YOURS AS WELL?

5        MR. WONG:  WE WOULD RESERVE THAT.

6        THE COURT:  BUT YOU ARE NOT GOING TO DO IT NOW.  YOU

7    ARE GOING TO WAIT AND SEE WHAT MR. ELLISON'S LOOKS LIKE, OR

8    DO YOU WANT TO FILE -- YOU SEE WHAT MY CONCERN IS.  THE

9    INSURERS' COMPLAINTS BASICALLY ARE PLACING AN ISSUE OF

10   COVERAGE FOR A NUMBER OF DIFFERENT LOSSES AND TRYING TO

11   INVOLVE AS MANY OF THE INSURERS WHO ARE POTENTIALLY EXPOSED

12   TO THE LOSSES AS POSSIBLE.

13       IT WOULD MAKE MORE SENSE TO ME TO HAVE A SINGLE

14   INSURER COMPLAINT, CONSOLIDATE A MASTER COMPLAINT OF SOME

15   KIND ON THE COVERAGE ISSUES.  VULCAN'S ISSUES ARE, TO SOME

16   DEGREE, OVERLAPPING, BUT WE CAN DEAL WITH THAT.  AND THEY

17   HAVE SOME OTHER ISSUES, IN TERMS OF THE INDEMNITY CLAIMS

18   AGAINST THIRD PARTY NON-INSURERS, SO WE CAN LET THEM FILE

19   THEIR CROSS-COMPLAINT AND SEE HOW WE WANT TO APPROACH IT.

20   BUT TO HAVE MULTIPLE COMPLAINTS OR AMENDED PLEADINGS BY

21   VARIOUS INSURERS THAT PLACE AN ISSUE -- MORE OR LESS, THE

22   SAME ISSUES DOESN'T MAKE MUCH SENSE TO ME.

23       MR. WONG:  YOUR HONOR, WE CERTAINLY, SPEAKING FOR

24   TRANSPORT, OBVIOUSLY, WE WOULD HAVE NO OBJECTION WORKING

25   WITH MR. ELLISON, OR INDEED ANY OF THE OTHER INSURERS WITH

26   REGARD TO, IN ESSENCE, I GUESS A MASTER COMPLAINT ON BEHALF

27   OF INSURERS.

28       THE COURT:  WHY DON'T YOU TALK WITH ONE ANOTHER.  IF

1   NOTHING ELSE, TRANSPORT MIGHT JOIN AS A PLAINTIFF ON THE
2   AMENDED COMPLAINT FILING PROPOSED TO BE FILED BY FIRST
3   STATE, IF YOU REALLY WANT TO BE IN A PLAINTIFF'S POSITION.
4        BUT TALK ABOUT IT.  AND IF YOU ARE MAKING PROGRESS
5   AND FEEL THAT THE DEADLINE MIGHT IMPEDE THAT PROGRESS, PUT
6   UP A POSTING AND LET ME KNOW WHAT'S GOING ON AND I'LL
7   EXTEND THE DATE FOR THE FILING OF THE INSURERS' AMENDED
8   COMPLAINT.
9        MR. BROWN, YOU ARE READY TO GO AND YOU WANT YOURS
10  ON FILE, SO WE PROBABLY DON'T HAVE ANY ISSUE THERE, AND WE
11  CAN'T WAIT TO LEARN YOUR SECRETS.  WE CAN'T PUT THAT OFF.
12       MR. BROWN:  I KNOW.  EVERYONE IS ON THE EDGE OF THEIR
13  SEATS.
14       THE COURT:  LET'S APPROACH IT THAT WAY AND SEE WHERE WE
15  COME OUT.
16       ANYTHING ELSE ON THE AMENDED PLEADINGS?  AND THEN
17  I PUT IN THERE, IN LIEU OF HAVING MULTIPLE CHALLENGES TO
18  COMPLAINTS AND AMENDED COMPLAINTS AND THINGS, I HAVE BEEN
19  SUCCESSFUL IN PREVAILING ON DEFENDANTS TO ANSWER AND RAISE
20  AS AFFIRMATIVE DEFENSES MATTERS THAT THEY MIGHT OTHERWISE
21  RAISE AS DEMURRERS OR MOTIONS TO STRIKE.  AND IT ALLOWS --
22  AND I COMMIT TO EARLY BRIEFING OF SIGNIFICANT AFFIRMATIVE
23  DEFENSES OR DEFENSES THAT MIGHT OTHERWISE BE THE SUBJECT OF
24  A DEMURRER.  IT PERMITS FOCUSED AND, I THINK, NEATLY
25  PACKAGED BRIEFING OF ISSUES OF LAW THAT OFTEN IN THESE
26  CASES PEOPLE SEEM TO WANT TO TAKE UP TO THE COURT OF APPEAL
27  AFTER I'VE HAD MY HANDS ALL OVER THEM.  SO IT'S MORE
28  PRACTICAL IF WE JUST HAVE DEMURRERS OR MOTIONS TO STRIKE.

1    ALL IT CAN DO, AT BEST, IS LEAD TO TWO OR THREE ROUNDS OF

2    DEFINITIVE RULING THAT YOU MIGHT BE ABLE TO TEST.  AND SO I

3    WOULD CONSIDER THAT, MAYBE IN THE BACK OF YOUR MINDS, SO

4    WHEN WE GET TO THE POINT THAT I'M GOING TO AUTHORIZE

5    RESPONSIVE PLEADINGS, YOU CAN TELL ME IF YOU HAVE STRONG

6    OPPOSITION TO THAT APPROACH, OR WHAT OTHER APPROACH WE CAN

7    TAKE.

8           THE OTHER THING IS SOME COLLECTIVE BRIEFING OF

9    SIGNIFICANT ISSUES.  I MEAN A SINGLE ISSUE DEMURRER OR A

10   SINGLE ISSUE MOTION TO STRIKE THAT RAISES SOME KEY ISSUE OF

11   LAW DOESN'T OFFEND ME.  I JUST DON'T WANT THESE OMNIBUS

12   CHALLENGES THAT HAVE EVERYTHING IN THEM.  SO NO MATTER WHAT

13   I DO WE HAVE TO GRANT LEAVE TO AMEND AND WE HAVE TO KEEP

14   GOING AROUND IN CIRCLES.  ALL RIGHT?

15          ANYTHING ELSE ON THE PLEADING ISSUES?

16          ON THE PROTECTIVE ORDER, ARE YOU MAKING ANY

17   PROGRESS?

18      MR. ELLISON:  I THINK THAT BALL IS FIRMLY IN MY COURT,

19   YOUR HONOR.

20          I HAD AN ASSOCIATE PUT TOGETHER A DRAFT PROTECTIVE

21   ORDER AND WE HAVEN'T HAD TIME TO FINISH IT.  SO WE SHOULD

22   BE ABLE TO GET IT OUT WITHIN THE NEXT WEEK OR SO, AFTER

23   THAT THEY WILL NEED A PERIOD OF TIME FOR THEM TO LOOK AT

24   IT.

25      THE COURT:  CAN WE HAVE SOME KIND OF A DEADLINE FOR YOU

26   GETTING A STIPULATION AND A PROPOSED ORDER FOR THE COURT TO

27   ENTER?

28      MR. ELLISON:  ABSOLUTELY.

1  THE COURT:  THE ONE THING I WANT TO WARN YOU ALL ON,

2  AND I DO THIS WITH EVERYBODY AND IT STILL DOESN'T DO ANY

3  GOOD SOMETIMES.  YOU MAY NOT HAVE A PROTECTIVE ORDER THAT

4  COVERS THE FILING OF CONFIDENTIAL INFORMATION WITHOUT

5  COMPLIANCE WITH 2.550, ET SEC.  AND I WON'T ENTER THAT KIND

6  OF AN ORDER, SO MAKE SURE YOU ADDRESS IT.  ANYTHING THAT

7  HAS BEEN MARKED CONFIDENTIAL THAT'S OFFERED FOR FILING IN

8  ANY PROCEEDING OTHER THAN DISCOVERY PROCEEDINGS MUST BE

9  OFFERED IN COMPLIANCE WITH THE RULES OF COURT; THAT MEANS A

10 REDACTED COPY FOR PLACEMENT IN THE COURT FILE, A SEALED

11 COPY TO BE HELD BY COURT, AND GENERALLY A 10-DAY PERIOD FOR

12 A MOTION TO BE FILED.

13      AND IF NO MOTION IS FILED, THE UNREDACTED COPIES

14 GO IN THE COURT FILE.  EVERYBODY KNOWS THE PROCEDURE, BUT A

15 LOT OF PEOPLE DON'T WANT TO ACCEPT IT.  AND, SO, BUT THAT'S

16 JUST WHAT WE HAVE TO DO HERE.  ALL RIGHT?

17      WELL, WHAT KIND OF A TIMETABLE?  YOU CAN FILE THE

18 STIPULATION AND PROPOSED ORDER, OR A JOINT STATEMENT

19 TELLING ME WHAT THE PROBLEMS ARE AND GIVE ME YOUR

20 RESPECTIVE VERSIONS.  USUALLY THE THREAT OF MY TAKING YOUR

21 RESPECTIVE VERSIONS AND JUST ENTERING A PROTECTIVE ORDER IS

22 ENOUGH TO ENCOURAGE A STIPULATION, BUT I'LL DO IT EITHER

23 WAY YOU WANT BECAUSE I'LL JUST TAKE YOUR ORDERS AND LOOK AT

24 THEM AND TELL YOU WHAT I THINK IS APPROPRIATE.  AND I'LL

25 ENTER A PROTECTIVE ORDER BECAUSE I THINK WE NEED IT TO

26 FACILITATE THE DISCOVERY AND THE EXCHANGE OF INFORMATION.

27 MR. ELLISON:  HOW ABOUT I'LL EXCHANGE OURS WITHIN SEVEN

28 DAYS AND WE'LL GIVE YOU A STATEMENT, OR A STIPULATED

1   PROTECTIVE ORDER WITHIN 30 DAYS FROM TODAY, OR SOMETHING

2   LIKE THAT?

3        MS. FENG:  WENDY FENG FOR VULCAN, YOUR HONOR.  THAT

4   SOUNDS FINE.

5        THE COURT:  OKAY.  SO A STIPULATION OR JOINT STATEMENT

6   WITH YOUR RESPECTIVE PROPOSED ORDERS, IF YOU HAVEN'T AGREED

7   ON ANYTHING, IS TO BE FILED BY APRIL 11.

8             AND THE OTHER THING IS IF YOU WIND UP FILING A

9   JOINT STATEMENT WITH PROPOSED VERSIONS, I'D ASK THAT YOU

10  E-MAIL WORD COPIES OF EACH VERSION TO MR. RULLY SO I HAVE

11  THEM AVAILABLE.

12            ALL RIGHT.  ON THE DISCOVERY ISSUES, WHO WANTS TO

13  GIVE ME THE ANSWERS TO THE QUESTIONS THAT I HAVE?

14       MR. ELLISON:  I CAN TRY.

15            ON THE POLICY REPOSITORY, WHAT WE'VE BEEN WORKING

16  ON IS THERE'S BEEN A CHANGE IN THE SOFTWARE WHICH I THINK

17  WILL MAKE IT MORE SEARCHABLE.  AND WE RECENTLY CAME UP WITH

18  A DRAFT POLICY COVER SHEET, WHICH IS GOING TO HAVE THE

19  INFORMATION FOR THE VENDOR TO PUT INTO THE DATABASE.  WE

20  CIRCULATED THAT, AND IT WILL TAKE SOME TIME FOR PEOPLE TO

21  GIVE US COMMENTS.

22            THE NEXT STEP -- I TALKED, IN GENERAL, TO THE

23  INSURER AND MS. FENG YESTERDAY ABOUT IT.  I THINK THE MOST

24  EFFICIENT WAY TO WRAP THAT UP IS TO HAVE INSURERS DO COVER

25  SHEETS -- CORRECT ME IF I'VE GOT THE TIMING WRONG -- I

26  THINK A 30-DAY PERIOD FOR THAT TO OCCUR IS SUFFICIENT.  AND

27  THEN ANOTHER 30-DAY PERIOD FOR THE PARTIES TO GET WHATEVER

28  IT IS IN TO THE VENDOR.

1    THE COURT:  AND THE COVER SHEETS WILL JUST ACCOMPANY

2    THE DOCUMENTS AND THE STIPS THAT ARE A SUMMARY.

3    MR. ELLISON:  FOR THE PURPOSES OF THE VENDOR.  SO THE

4    VENDOR WILL PUT IT INTO A SERIES OF CATEGORIES WHICH

5    INCLUDE THE POLICY LIMITS, YEARS OF COVERAGE, NAMES,

6    INSUREDS, A FEW THINGS LIKE THAT.  SO IT'S AN EASY WAY TO

7    MAKE SURE THERE ARE NO ERRORS.  SO THE VENDOR CAN INPUT THE

8    INFORMATION SO THE RECORDS IN THE DATABASE WILL BE LINKED

9    TO THE ACTUAL IMAGES OF THE POLICY.

10    THE COURT:  IS IT FAIR IF MY NOTES SAY YOU SHOULD BE

11    ABLE TO FINALIZE ALL THIS WITHIN 60 DAYS?

12    MR. ELLISON:  I THINK WE CAN GET EVERYTHING TO THE

13    VENDOR IN 60 DAYS.

14    THE COURT:  I THOUGHT YOU SAID THEY HAVE EVERYTHING

15    EXCEPT COVER SHEETS?

16    MR. ELLISON:  RIGHT.  SO I THINK WE CAN GET THE COVER

17    SHEETS TO THE VENDOR WITHIN 60 DAYS.  I DON'T KNOW HOW LONG

18    IT WOULD TAKE THEM TO GET THAT INFORMATION, BUT IT'S NOT

19    THAT BIG OF A DEAL.

20    THE COURT:  OKAY.  SO IS 60 DAYS -- YOU ARE THROWING

21    OUT TWO NUMBERS AND I'M A LITTLE SLOW.

22    MR. ELLISON:  60 DAYS FOR PARTIES TO GET THE

23    INFORMATION TO THE VENDOR.

24    THE COURT:  AND 30 DAYS FROM THEN TO FINALIZE THEM.

25    MR. ELLISON:  EXACTLY.

26    THE COURT:  ALL RIGHT.  AND I GUESS AS FAR AS THE COURT

27    HAVING ACCESS TO THE DEPOSITORY IT MEANS NOTHING UNTIL WE

28    HAVE THE DEPOSITORY FINALIZED.  AND THAT'S GOING TO BE

1    ANOTHER 60 OR 90 DAYS.

2         MR. ELLISON:  RIGHT.

3         THE COURT:  ALL RIGHT.

4              ON THE THRESHOLD ISSUES, WE CAN TAKE THEM ONE AT A

5    TIME.  ON THE EXHAUSTION AND IMPAIRMENT ISSUES, IS ANYBODY

6    INVOLVED IN THAT OTHER THAN TRANSPORT AND VULCAN?

7              IS THAT YOU, MR. WONG?

8         MR. WONG:  ON BEHALF OF TRANSPORT, YOUR HONOR, WE ARE

9    INVOLVED WITH REGARD TO IMPAIRMENT ISSUES.  WE DON'T TAKE A

10   POSITION THAT THERE IS ANY POLICY THAT'S BEEN EXHAUSTED,

11   BUT THERE IS CERTAINLY IMPAIRMENT WITH REGARD TO A NUMBER

12   OF POLICIES.

13             I HAVE A SUGGESTION, IN TERMS OF HOW WE COULD

14   PROCEED WITH REGARD TO TRANSPORT.  AND THAT IS, I WOULD

15   THINK IT WOULD MAKE SENSE FOR US TO MEET AND CONFER WITH

16   COUNSEL FOR VULCAN AND SHARE WITH THEM OUR METHODOLOGY WITH

17   REGARD TO WHAT WE SEE IN TERMS OF THE IMPAIRMENT AND SO

18   FORTH; GET THEIR REACTION, AND THEN WE CAN REPORT BACK TO

19   THE COURT.

20        THE COURT:  AND HOW MUCH TIME -- CAN YOU DO THAT IN

21   THE -- BEFORE THE NEXT STATUS CONFERENCE WHICH WOULD BE IN

22   THE NEXT SIX WEEKS OR SO?

23        MR. WONG:  CERTAINLY NOT A PROBLEM AS FAR AS WE'RE

24   CONCERNED, YOUR HONOR.

25        THE COURT:  ALL RIGHT.

26             ON THE PUNITIVE DAMAGES ISSUE, AGAIN, I KNOW

27   PEOPLE WANTED TO PUT IT ON THE TABLE SOMETIME AGO.  IT JUST

28   DOESN'T MAKE MUCH SENSE TO ME AT THIS JUNCTURE, IT'S GOING

1    TO BE OUT THERE FOR A LONG TIME, BUT I'M NOT SURE IT'S

2    REALLY GOING TO SOLVE ANY PROBLEMS.

3         WAS THERE ANY APPORTIONMENT OF THE SETTLEMENT IN

4    THE UNDERLYING MODESTO LITIGATION?

5    MR. BROWN:  YES.  THE SETTLEMENT EXPLICITLY SAYS THAT

6    NONE OF IT IS FOR PUNITIVE DAMAGES.  AND THE PLAINTIFFS

7    WITHDREW THEIR PUNITIVE DAMAGES CLAIM.

8         AND PERHAPS MORE SIGNIFICANTLY, THE JUDGE IN THE

9    CASE IS TREATING THE ENTIRE SETTLEMENT AMOUNT AS OFFSETS TO

10   COMPENSATORY DAMAGES THAT MAY BE AWARDED AGAINST THE

11   REMAINING DEFENDANTS.

12   MR. WONG:  YOUR HONOR, THIS MAY LEND ITSELF TO A

13   THRESHOLD ISSUE BECAUSE WE UNDERSTAND THAT IT IS VULCAN'S

14   POSITION.  ON BEHALF OF TRANSPORT WE CERTAINLY TAKE A

15   CONTRARY POSITION AND THAT IS THERE'S NO QUESTION THAT

16   THERE WERE FOUR SITES THAT WERE IN THE INITIAL TRIAL AND

17   THE UNDERLYING CASE.  THERE'S NO DOUBT THAT THERE WAS A

18   PUNITIVE DAMAGE VERDICT THAT WAS RENDERED AGAINST VULCAN

19   AND THAT PROCEEDED.  THERE WAS A REDUCTION OF THAT VERDICT

20   AND SO FORTH.  THOSE FACTS CAN BE ESTABLISHED.

21        NOW VULCAN IS TAKING THE POSITION THAT GIVEN SOME

22   AWARDINGS THAT OCCURRED IN THEIR SETTLEMENT AGREEMENT, AND

23   TO WHICH TRANSPORT -- AND TO MY KNOWLEDGE, NONE OF THE

24   OTHER INSURERS WERE A PARTY, THAT SOMEHOW WE'RE BOUND BY

25   THE WORDINGS THAT THEY AGREED TO WITH THE PLAINTIFF, AND

26   THAT JUDGE MUNTER IN THE UNDERLYING CASE MAY HAVE ENDORSED;

27   THAT'S AN ISSUE WE SHOULD PRESENT TO THIS COURT AS TO

28   WHETHER THEY CAN, IN OUR VIEW, LOAD UP THAT SETTLEMENT

1    AGREEMENT WITH WHAT WE REGARD TO BE PRETTY SELF-SERVING

2    PROVISIONS AND BIND US TO THOSE PROVISIONS.

3         AND SO THERE'S NO DOUBT ON BEHALF OF TRANSPORT

4    THAT WE THINK THERE SHOULD BE SOME SORT OF ALLOCATION OR

5    CONSIDERATION OF THE SETTLEMENT BEING DRIVEN BY PUNITIVE

6    DAMAGE EXPOSURE WHICH WE WOULD CONTEND, AND THIS WAS THE

7    MOTION THAT WE FILED, UNDER CALIFORNIA LAW IT SIMPLY IS NOT

8    COVERED.

9         THE COURT:  OKAY.  BUT -- WELL, I MEAN, I DON'T

10   NECESSARILY DISAGREE THAT THE INSURERS MAY HAVE A DOG IN

11   THE FIGHT.  THE QUESTION IS -- I GUESS HOW BEST TO PUT THAT

12   ON THE TABLE.  AND JUST HOW MUCH CONTROL YOU HAVE OVER THE

13   RESOLUTION OF THE CLAIM.  I MEAN, THEY'VE MADE THEIR DEAL

14   IN THE MODESTO LITIGATION, JUDGE MUNTER HAS APPARENTLY

15   ENDORSED THE DEAL, OR APPROVED IT; IS THAT CORRECT?

16        MR. BROWN:  YES, BUT MY POINT WAS NOT HE JUST APPROVED

17   IT.  HE'S GONE BEYOND THAT AND ENTERED AN ORDER THAT

18   ALLOCATES THE SETTLEMENT FUNDS.  THE SUM IS ALLOCATED TO

19   ATTORNEY'S FEES.  BUT HE ALLOCATES THE REMAINDER OF THE

20   SETTLEMENTS FUNDS TO SPECIFIC SITES.  AND THOSE AMOUNTS

21   WILL BE OFFSET TO COMPENSATORY DAMAGES CLAIMS THAT MAY

22   PREVAIL AGAINST THE CO-DEFENDANTS.

23        SO IT'S NOT JUST THAT HE SAID THE DEAL IS OKAY

24   WITH ME.  THE MONEY IS, IN FACT, BEING USED FOR

25   COMPENSATORY DAMAGES BY COURT ORDER.

26        THE COURT:  MR. ELLISON?

27        MR. ELLISON:  IF I COULD, YOUR HONOR.  JUST SO I'M NOT

28   CONFUSED.  I THINK THE ORDER MR. BROWN IS TALKING ABOUT IS

1   JUST A GOOD FAITH SETTLEMENT DETERMINATION.  SO I DON'T

2   THINK THERE'S BEEN ANY DETAILED EVIDENTIARY EVALUATION BY

3   THE COURT OR ANYTHING OF THAT SORT, A PRESENTATION OF

4   WITNESSES, OR ANY SORT OF EVIDENCE, TO DETERMINE HOW IT

5   SHOULD BE ESTABLISHED.  SO I THINK ALL WE'RE TALKING ABOUT

6   IS A GOOD FAITH SETTLEMENT DETERMINATION.

7            I THINK WHAT THIS HIGHLIGHTS IS AN IDEAL ISSUE FOR

8   THRESHOLD MOTION DETERMINATION BECAUSE THE QUESTION IS JUST

9   THE IMPACT THAT THE LANGUAGE IN THAT SETTLEMENT AGREEMENT

10  AND THE GOOD FAITH ORDER THAT INCORPORATES THE SETTLEMENT

11  AGREEMENT MIGHT HAVE ON THE ALLOCATION WITH RESPECT TO THE

12  VARIOUS INSURANCE POLICIES AT ISSUE.  SO I THINK THAT'S A,

13  PRETTY MUCH AN IDEAL ISSUE FOR THRESHOLD DETERMINATION

14  BECAUSE IT COULD HAVE A SUBSTANTIAL IMPACT IN THIS CASE.

15       THE COURT:  WAS IT AN 877.6 ORDER THAT YOU ARE

16  REFERRING TO?

17       MR. BROWN:  YES, WITH AN ALLOCATION THAT WAS CHALLENGED

18  AND OVERRULED.

19       THE COURT:  ALL RIGHT.  WERE ANY OF THE PARTIES THAT

20  WERE IN THIS LITIGATION IN THERE CHALLENGING IT?  THEY

21  WEREN'T, WERE THEY?

22       MR. BROWN:  CORRECT.

23       THE COURT:  OKAY.  THERE'S A COUPLE OF ISSUES HERE, IT

24  SEEMS LIKE.  AND AGAIN, I HAVEN'T REALLY THOUGHT THESE

25  THROUGH AND I'M SURE YOU ALL CAN GIVE ME MORE INPUT TO

26  FOCUS MY THINKING ON IT, BUT THE 877.6 IS MERELY ON AN

27  IMPLIED INDEMNITY CLAIM AND SAYS THAT YOUR SETTLEMENT WILL

28  CUT OFF OTHER CLAIMS AGAINST YOU.  AND GENERALLY THERE IS

1   AN APPORTIONMENT THAT APPLIES TO THE SETOFFS THAT REMAINING

2   LITIGANTS MIGHT BE ENTITLED TO FOR THE BENEFIT OF THE

3   SETTLEMENT.

4         THAT SEEMS TO ME TO BE DISTINCT AND SOMEWHAT

5   DIFFERENT FROM CLAIMS BETWEEN AN INSURED AND THEIR

6   INSURANCE COMPANIES ON THE EXPRESS POLICY TERMS AND WHAT

7   RIGHTS AND THINGS THEY MIGHT HAVE UNDER THOSE POLICIES.

8   AND THEN THE OTHER OVERLAY WOULD BE THE MANTRA THAT THE

9   INSURERS KEEP GIVING US ABOUT THE INABILITY TO INSURE FOR

10  PUNITIVE DAMAGES.

11        I'M NOT SAYING THAT THE TWO ASPECTS SEEM A LITTLE

12  BIT DIFFERENT IN CHARACTER AND MAY NOT BE BINDING ONE ON

13  THE OTHER.

14      MR. BROWN:  ALL I WAS TRYING TO SAY, AND FOCUSING JUST

15  ON -- THE ONLY ARGUMENT THEY HAVE ABOUT PUNITIVE DAMAGES,

16  THE INSURERS, IS THEY ARE UNINSURABLE AS A MATTER OF

17  CALIFORNIA PUBLIC POLICY.  SO THAT'S A DIFFERENT CATEGORY

18  OF ISSUES THAN THE ONE YOU MENTIONED ABOUT WHAT THEIR

19  POLICIES SAY AND DON'T SAY COVER OR DON'T COVER.

20        AND SO THE THRESHOLD QUESTION IS:  DOES CALIFORNIA

21  PUBLIC POLICY PROHIBIT INSURED'S COVERAGE FOR THIS

22  SETTLEMENT AND MY ANSWER IS NO, IT DOESN'T, BECAUSE WHAT

23  CALIFORNIA PUBLIC POLICY HOLDS IS THAT IF THERE IS A

24  JUDGMENT ASSESSING PUNITIVE DAMAGES AGAINST SOMEONE FOR THE

25  SAKE OF PUNISHING THEM, CALIFORNIA LAW SAYS THAT PUNISHMENT

26  MUST HAVE ITS STING AND YOU ARE NOT ALLOWED TO HAVE

27  INSURANCE COMPANIES.

28        WE DIDN'T GET THERE.  THERE'S NO PUBLIC POLICY

1  AGAINST SETTLEMENT.

2      THE COURT:  RIGHT.

3      MR. BROWN:  SO THAT'S THE THRESHOLD ARGUMENT.  BUT IF

4  THEY SOMEHOW PREVAIL THERE -- ALL I WAS SAYING ABOUT WHAT

5  JUDGE MUNTER HAS DONE IS NOT THAT HE'S SAID THAT'S

6  REASONABLE AND THAT'S BINDING ON THEM.  I'M NOT SAYING

7  THAT.  I'M SAYING THE MONEY IS ACTUALLY BEING USED FOR

8  COMPENSATORY DAMAGES; THAT IS A FACT.  AND THAT TELLS US

9  THAT IT'S NOT PUNITIVE DAMAGES.  IT'S NOT AGAINST PUBLIC

10  POLICY TO ALLOW INSURANCE FOR IT.  THIS WAS A MAJOR ISSUE

11  COMING IN.  IT'S REALLY, FROM MY PERSPECTIVE, A VERY, VERY

12  MINOR ISSUE IN THIS CASE AT THIS POINT.  OTHERS DISAGREE,

13  BUT I FIRMLY BELIEVE THAT.

14      MR. WONG:  YOUR HONOR?

15      THE COURT:  YES.

16      MR. WONG:  WE CERTAINLY DISAGREE THAT IT'S A MINOR

17  ISSUE.  AND WE UNDERSTAND MR. BROWN'S CHARACTERIZATION OF

18  THE ISSUE, AND THE ARGUMENTS THAT THEY WOULD LIKE TO

19  ADVANCE ON THE MERITS OF THE ISSUE.  AND WE SIMPLY HAVE A

20  DIFFERENT VIEW.

21      I MEAN, THE FACT OF THE MATTER IS THAT THERE WAS A

22  PUNITIVE DAMAGE EXPOSURE.  THE FACT THAT THEY SETTLED THAT

23  PUNITIVE DAMAGE EXPOSURE LEADS US TO BELIEVE THAT THERE

24  SHOULD BE SOME SORT OF CONSIDERATION AS TO HOW MUCH OF THAT

25  SETTLEMENT SHOULD BE REFLECTIVE OF THE PUNITIVE DAMAGE

26  EXPOSURE THAT IS NOT INSURABLE.

27      AND AGAIN, THAT'S WHY WE THINK, LIKE MR. ELLISON,

28  THAT LENDS ITSELF TO BEING A THRESHOLD ISSUE FOR

1  CONSIDERATION.

2      THE COURT:  OKAY.  WHAT I'D LIKE YOU TO DO, AND MY NOTE

3  IS THAT THE PARTIES ARE GOING TO MEET AND CONFER AND

4  ATTEMPT TO DEVELOP A THRESHOLD ISSUE STIPULATION TO PERMIT

5  THE COURT TO ADDRESS THE EFFECT OF THE MODESTO SETTLEMENT

6  AND THE INTERPLAY OF THE POTENTIAL FOR PUNITIVE DAMAGES.

7      GET TOGETHER.  EITHER GIVE ME A JOINT STATEMENT,

8  OR IF YOU ARE SUCCESSFUL IN PUTTING THIS ISSUE ON THE TABLE

9  IN A STIPULATION WITH UNDISPUTED FACTS, I'LL GIVE YOU A

10  BRIEFING SCHEDULE ON IT AND WE'LL GET IT TEED UP.

11      AND TO THE EXTENT, MR. BROWN, THAT YOU THINK IT'S

12  A RELATIVELY MINOR ISSUE AND PRETTY MUCH GONE, IT WOULD

13  SEEM TO ME IT WOULD BEHOOVE YOU TO WORK WITH THEM AND SEE

14  IF WE CAN'T GET SUCH A STIPULATION AND GET A DETERMINATION.

15      MR. BROWN:  I DON'T MIND DOING THAT.  THAT'S FINE.

16      THE COURT:  SO LET'S DO THAT AND WE'LL AIM FOR THE NEXT

17  STATUS CONFERENCE TO HAVE SOME REPORT ON THAT IN THE JOINT

18  STATEMENT, OR IDEALLY, A STIPULATION THAT I CAN SET A

19  BRIEFING SCHEDULE ON.

20      ON THE SCOPE OF COVERAGE ISSUE, I'M NOT SURE THAT

21  THIS REQUIRES MUCH OF A COMMENT.  I WOULD JUST -- I THINK

22  THE PARTIES SHOULD TRY AND WORK TOGETHER TO GET THIS

23  COVERAGE LITIGATION CONSOLIDATED IN A SINGLE VENUE, TO THE

24  EXTENT POSSIBLE.

25      AND MAYBE YOUR CROSS-COMPLAINT, MR. BROWN, WILL

26  ASSIST OR GIVE US SOME VEHICLE WITH WHICH TO DO THAT.  BUT

27  IT JUST DOESN'T MAKE A LOT OF SENSE TO HAVE DETERMINATIONS

28  MADE OF SIMILAR ISSUES IN MULTIPLE JURISDICTIONS THAT CAN

1  ONLY LEAD TO FURTHER CONFUSION.

2      MR. BROWN:  THAT'S MY VIEW.

3      THE COURT:  AND MS. BAKER HAS TOLD US IT'S NOT LIKELY

4  THAT FIRST STATE AND THEIR INSURER ARE GOING TO COOPERATE.

5  SO MY COMMENT THERE MAY BE FOR NAUGHT.

6      MR. ELLISON:  YOUR HONOR, IF I COULD, I THINK THERE'S A

7  TYPOGRAPHIC ERROR.  THE REFERENCE IS THAT MY CLIENT IS

8  FIRST STATE, BUT I THINK THE REFERENCE IS TO BE TO RR

9  STREET.

10      THE COURT:  THAT'S WHAT I MEANT.  I THINK THAT'S WHAT

11  IT WAS.  THAT'S MY MISTAKE.  THANK YOU.

12          DID RR STREET GET A GOOD FAITH DETERMINATION?

13      MR. BROWN:  THE CASE IS STILL PENDING AGAINST RR

14  STREET.

15      THE COURT:  OKAY.

16      MR. BROWN:  IT'S OUR POSITION THAT 877.6 DOES BAR ALL

17  OF RR STREET'S INDEMNITY CLAIMS AGAINST VULCAN IN THE

18  MODESTO CASES, BUT FOR THE ONE CLAIM THEY DO MAKE, WHICH IS

19  BASED UPON AN EXPRESSED CONTRACTUAL INDEMNITY.

20          BUT THEY'VE MADE IMPLIED INDEMNITY CLAIMS, COMMON

21  LAW INDEMNITY CLAIMS, PROMISSORY ESTOPPEL CLAIMS.  THE

22  CALIFORNIA SUPREME COURT HAS MADE IT CLEAR THAT THOSE

23  CLAIMS ARE BARRED.  WHY THEY'VE BROUGHT THEM, I HAVE NO

24  IDEA.

25      THE COURT:  AND THEY ARE BRINGING THOSE IN ILLINOIS?

26      MR. BROWN:  RIGHT.  THEY ARE BRINGING THEM IN ILLINOIS.

27      THE COURT:  AND YOU ARE GOING TO BRING A

28  CROSS-COMPLAINT, THEORETICALLY PLACING AT ISSUE AT LEAST

1   THE EXPRESS INDEMNITY CLAIMS?

2      MR. BROWN:  IF IT DOES ANYTHING IT WILL PLACE AN ISSUE

3   OF THE 877.6 BAR AGAINST THE NON-EXPRESS INDEMNITY CLAIMS.

4   BUT IT WILL PROBABLY GO AS FAR AS YOU SAY AS WELL.

5      THE COURT:  I WOULD SAY THAT YOU OUGHT TO PUT -- AT

6   LEAST IT'S PENDING HERE.  IF YOU LEAVE IT OUT THERE AND THE

7   ONLY EXPRESS INDEMNITY CLAIM IS IN ILLINOIS, I DON'T THINK

8   YOU ARE REALLY DOING YOURSELF ANY FAVORS.

9      MR. BROWN:  RIGHT.  I AGREE.

10      THE COURT:  ALL RIGHT.  AND IS FIRST STATE AN

11   ADDITIONAL INSURED ON ANY OF THE POLICIES HERE?

12      MR. BROWN:  SOME, YES.  AND SOME OF THE POLICIES ALSO

13   COVER LIABILITIES OF THIRD PARTIES ASSUMED BY VULCAN.  SO

14   ON THOSE POLICIES RR STREET MAY NOT BE A NAMED INSURED, AND

15   RR STREET LIABILITY, IF INDEED WE'VE ASSUMED IT BY

16   CONTRACT --

17      THE COURT:  THEY HAVE A CONTRACTUAL LIABILITY,

18   ENDORSEMENT, OR WHATEVER THEY HAVE IN THERE THAT SAYS

19   THEY'LL COVER THAT AS WELL.

20      MR. BROWN:  BUT YOU ARE RIGHT.  STREET IS EXPLICITLY AN

21   ADDITIONAL NAMED INSURED ON SOME OF THE POLICIES.

22      THE COURT:  ALL RIGHT.  ANYTHING ELSE ON -- I'M JUST

23   TRYING TO GET MY ARMS AROUND THIS.  AND I HOPE YOU ALL CAN

24   COME UP WITH SOME APPROACH THAT HELPS US MOVE THIS FORWARD.

25      ON THE ABSOLUTE -- ON THE POLLUTION EXCLUSION

26   ISSUES, THE SUDDEN AND ACCIDENTAL, I DON'T KNOW HOW YOU PUT

27   THAT ON THE TABLE WITHOUT PEOPLE JUMPING UP AND SAYING,

28   "WE'VE GOT TO HAVE ALL SORTS OF SITE-SPECIFIC DISCOVERY,"

1  AND I, FOR ONE, WOULD LIKE TO DEFER THAT OR AVOID IT FOR A

2  WHILE AND SEE IF WE CAN'T NARROW THINGS DOWN WITH WHAT WE

3  CAN WORK WITH WITHOUT A LOT OF DISCOVERY.  SO I DON'T SEE

4  THAT AS BEING A PARTICULARLY GOOD THRESHOLD ISSUE.

5       ADJUDICATION OF THE ENFORCEABILITY OF THE ABSOLUTE

6  POLLUTION EXCLUSION, ON THE OTHER HAND, MAY BE A DIFFERENT

7  ISSUE.

8       ANYBODY HAVE ANY THOUGHTS ON THOSE ISSUES?

9       MS. BAKER:  I HAVE A COUPLE OF THOUGHTS, YOUR HONOR.

10      I UNDERSTAND YOUR POINT ON THE SUDDEN AND

11  ACCIDENTAL DISCOVERY.  WHAT I WOULD SUGGEST THOUGH, AND I

12  HAVE NOT TALKED TO VULCAN ABOUT THIS BECAUSE I WAS TRYING

13  TO THINK OF WAYS TO DO THIS, IS IF WE COULD GET THE

14  DISCOVERY THAT THEY PRODUCED IN THE UNDERLYING CASE.

15      I DON'T THINK THERE SHOULD BE AN OBJECTION TO WHAT

16  THEY'VE ALREADY PRODUCED.  THIS CASE HAS BEEN PENDING FOR

17  TWO YEARS AND WE'RE STILL AT THE PLEADING STAGE.  AND I

18  KNOW THAT THESE CASES TAKE A LONG TIME, I'VE BEEN DOING

19  THEM AS LONG AS ANYONE ELSE.  BUT WE WOULD LIKE -- WE WERE

20  HOPEFUL THAT WE WOULD BE ABLE TO SETTLE THE CASE.  IT

21  HASN'T HAPPENED AND IT DOESN'T LOOK LIKELY FOR THE

22  IMMEDIATE FUTURE.

23      WE WOULD LIKE TO START MOVING THE CASE FORWARD ON

24  A DISCOVERY BASIS, WITHOUT PREJUDICING VULCAN AND THE NEW

25  CLAIMS THAT THEY HAVE, OR ANY OTHER POTENTIAL CLAIMS.

26  THEY'VE SETTLED THE MAIN MODESTO ACTION, SO THEY SHOULDN'T

27  HAVE ANY CONSIDERATION ABOUT THAT PARTICULAR CASE.

28      I THINK IF WE COULD GET WHAT THEY'VE ALREADY

1   PRODUCED, THAT WOULD AT LEAST BE A HEAD START FOR US TO SEE

2   WHAT WE MIGHT WANT AND WHAT WE MIGHT BE ABLE TO USE FROM

3   THE UNDERLYING CASE, POTENTIALLY.  IF WE COULD AGREE TO

4   THAT I GUESS WE WOULD SERVE THE SAME DISCOVERY OVER AGAIN,

5   BUT I THINK THAT WOULD BE A WASTE OF TIME, PERSONALLY.

6        THE COURT:  ALL RIGHT.

7             WHAT'S YOUR VIEW ON THAT?  AT ONE POINT,

8   MR. BROWN, WE WERE HEARING THAT YOU CAN'T MAKE ME DO ALL

9   THIS BECAUSE IT'S GOING TO PREJUDICE OUR DEFENSE.  THAT

10  ONE, BY YOUR SETTLEMENT, SEEMS TO HAVE GONE OUT THE WINDOW,

11  AT LEAST ON THAT CLAIM.

12       MR. BROWN:  I CAN LOOK INTO THIS.  I DON'T KNOW WHAT

13  WAS PRODUCED THERE.  I DON'T KNOW WHAT PROTECTIVE ORDERS,

14  IF ANY, EXIST WITH RESPECT TO WHAT WAS PRODUCED THERE.  I

15  DON'T KNOW IF ANY OTHER PARTY WOULD HAVE A SAY --

16       THE COURT:  I WENT TO JUDGES' COLLEGE WITH JUDGE MUNTER

17  SO MAYBE I CAN GIVE HIM A CALL AND WE CAN WORK SOMETHING

18  OUT.

19       MS. BAKER:  LIKE I SAID, I'M JUST SPRINGING THIS ON DON

20  RIGHT NOW, AND I DON'T REALLY MEAN TO, BUT I'M TRYING TO

21  THINK OF A WAY TO PROCEED WITHOUT GRINDING OUR WHEELS.

22       THE COURT:  ALL RIGHT.

23            MR. BROWN, YOU LOOK INTO IT.  AND YOU TALK TO

24  MS. BAKER ABOUT IT.  ANYTHING WE CAN DO ON A VOLUNTARY

25  BASIS, IN TERMS OF PUTTING INFORMATION ON THE TABLE SEEMS

26  TO ME TO BE PRODUCTIVE AND I ENCOURAGE YOU TO DO THAT.

27            THE OTHER SIDE OF THE COIN IS I'M NOT INTERESTED

28  IN JUMPING OFF INTO A MAJOR DISCOVERY PHASE IN THIS CASE

1    BECAUSE I THINK THERE ARE SOME PRELIMINARY THINGS THAT WE

2    COULD PUT MORE EFFORT INTO WHICH WOULD HELP TO NARROW THIS

3    DOWN.

4        MS. BAKER:  I UNDERSTAND, YOUR HONOR.

5        THE COURT:  SO WHATEVER WE DO ON A COOPERATIVE BASIS IS

6    GOOD, AND MAYBE SOME LIMITED AND FOCUSED DISCOVERY MIGHT BE

7    PERMITTED, BUT AS FAR AS OPENING UP THE DISCOVERY GATES,

8    I'M NOT LIKELY TO DO THAT.

9        MR. WONG?

10       MR. WONG:  YES, WE WOULD JOIN IN MS. BAKER'S SUGGESTION

11   IN THAT IF IT'S, AS A STARTING POINT, SOLELY THE DISCOVERY

12   THAT WAS PRODUCED IN THE UNDERLYING CASE, HAS ALREADY BEEN

13   PRODUCED.  AND THEN JUST A REMINDER THAT ONE OF THE THINGS

14   THAT'S ON MR. ELLISON'S HOMEWORK LIST IS TO GET THE

15   PROTECTIVE ORDER IN PLACE.  OBVIOUSLY THAT DISCOVERY, IF IT

16   IS PRODUCED, CAN BE PRODUCED SUBJECT TO ANY APPROPRIATE

17   PROTECTIVE ORDER.

18       THE COURT:  I THINK THAT'S A GREAT APPROACH.  AND IT'S

19   SOMETHING THAT'S ALREADY OUT AND ON THE TABLE.  IT

20   SHOULDN'T BE THAT HARD TO IDENTIFY.

21       WE WILL HAVE TO GET COUNSEL THAT WAS INVOLVED IN

22   THE DEFENSE OF THE UNDERLYING ACTION, THAT'S MR. BROWN'S

23   TASK, TO GO TALK TO THEM, SEE WHAT'S INVOLVED, WHAT'S

24   THERE, WHAT KIND OF PROTECTIVE ORDER IT'S OBJECT TO.

25       I'M MORE THAN HAPPY TO ISSUE SOME COMPANION ORDER

26   THAT WOULD INSURE THE CONTINUING CONFIDENTIALITY SUBJECT TO

27   THE TERMS OF ANY ORDER ISSUED IN THE MODESTO LITIGATION, IF

28   THAT'S NECESSARY.

1       AND YOU MIGHT GET THE PROTECTIVE ORDER THAT WAS

2   ISSUED THERE, GIVE IT TO MR. ELLISON, OR IN YOUR

3   DISCUSSIONS OF ONE TO BE ENTERED HERE, TO SEE WHAT WE CAN

4   DO TO MAKE THEM COMPATIBLE.  SO THAT WOULD TAKE AWAY THAT

5   ISSUE.

6       HOW MANY OF THE POLICIES DO WE HAVE THAT HAVE

7   ABSOLUTE POLLUTION EXCLUSIONS IN THEM?

8       MR. BROWN:  WELL, IT DEPENDS -- PEOPLE HAVE DIFFERENT

9   IDEAS OF WHAT QUALIFY AS AN ABSOLUTE POLLUTION EXCLUSION.

10  I THINK THE ANSWER IS THREE OR FOUR.

11      THE COURT:  AND THAT'S THREE TO FOUR PRIMARY POLICIES

12  OR --

13      MR. BROWN:  UPPER LAYER EXCESS.

14      THE COURT:  AND THEY ARE NOT FOLLOWING FORM?  THEY HAVE

15  SPECIFIC ABSOLUTE POLLUTION EXCLUSIONS IN UPPER LEVEL

16  EXCESS POLICIES HERE?

17      MR. BROWN:  AT THIS POINT I'LL TURN IT OVER TO

18  MS. FENG.

19      MS. FENG:  I THINK THAT'S RIGHT.  WE'VE IDENTIFIED

20  THREE, POSSIBLY FOUR WITH STANDARD POLLUTION EXCLUSION

21  LANGUAGE IN THE EXCESS LAYERS IN 1985.

22      THE COURT:  OKAY.  MR. WONG?

23      MR. WONG:  YOUR HONOR, AGAIN, I'M NOT SURE HOW THEY ARE

24  COUNTING THREE OR FOUR POLICIES.  BUT ON BEHALF OF

25  TRANSPORT, WE HAVE A POLICY THAT INCEPTED IN 1981 THAT WE

26  CONTEND IS AN ABSOLUTE POLLUTION EXCLUSION POLICY.

27      THE COURT:  YES, MA'AM.

28      MS. FENG:  YOU ARE RIGHT, YOUR HONOR.  THERE MAY BE

1    OTHER POLICIES THAT WE DON'T CONSIDER STANDARD ABSOLUTE

2    POLLUTION EXCLUSION LANGUAGE.  I DON'T THINK MR. WONG WOULD

3    DISPUTE THAT HIS LANGUAGE ISN'T WHAT YOU THINK OF AS A

4    STANDARD ABSOLUTE POLLUTION EXCLUSION LANGUAGE.

5        THE COURT:  I GUESS FROM MY PERSPECTIVE I LIKE TO SEE

6    SOME ACTION IN THESE CASES THAT SOMETHING IS HAPPENING

7    RATHER THAN JUST MEETING EVERY SIX WEEKS AND TALKING ABOUT

8    WHAT WE MIGHT BE ABLE TO DO.

9        I WOULD WELCOME AN OPPORTUNITY TO PLACE, AT LEAST

10   SAY THE TRANSPORT INDEMNITY A.P.E. ON THE TABLE, IF IT'S AN

11   UNDISPUTED POLICY TERM.  AND YOU CAN PUT TOGETHER A

12   STIPULATION BRIEFING THAT ISSUE.  AND SOMETIMES JUST MAKING

13   A DECISION ON ONE POLICY WILL HELP US IN INTERPRETING

14   OTHERS OR MOVING FORWARD.

15       IF THAT'S NOT THE BEST POLICY TO PUT AT ISSUE OR

16   THE BEST CLAUSE, FROM VULCAN'S PERSPECTIVE, THEN MAYBE WE

17   DO IT ON TWO POLICIES.  BUT I DON'T WANT TO BRIEF EVERY

18   POSSIBLE ABSOLUTE POLLUTION EXCLUSION POLICY TERM AND MAKE

19   THAT KIND OF -- IT JUST BECOMES TOO BURDENSOME.  IF WE TAKE

20   A COUPLE OF THEM AND PUT THEM ON THE TABLE, IT CAN'T HURT.

21       MR. BROWN:  THAT'S FINE.  WHAT'S IN THAT TRANSPORT

22   POLICY IS UNIQUE, HOTLY DISPUTED AND ISN'T GOING TO TELL US

23   WHAT TO DO ABOUT ANY OTHER INSURANCE COMPANY.  BUT THERE

24   ARE THREE OR FOUR THAT HAVE A STANDARD FORM ABSOLUTE

25   POLLUTION EXCLUSION; THAT TRANSPORT POLICY IS CERTAINLY NOT

26   ONE OF THEM.

27       MR. WONG:  BUT, YOUR HONOR, WE WOULD WELCOME THE

28   OPPORTUNITY TO MEET AND CONFER.  THIS IS THE FIRST TIME

1   WE'VE HEARD THERE'S A HOT DISPUTE ABOUT THIS WORDING THAT

2   SEEMS PRETTY PLAIN TO US.  BUT WE'RE HAPPY TO MEET AND

3   CONFER WITH COUNSEL AND SEE IF THIS IS AN ISSUE THAT WE CAN

4   PRESENT TO THE COURT.

5      THE COURT:  YES, MR. ELLISON?

6      MR. ELLISON:  JUST ON A PROCEDURAL MATTER.  AT PRESENT,

7   THE ONLY CLAIMS THAT HAVE BEEN ASSERTED AGAINST ANY

8   INSURERS, HAVE BEEN SERVED BY MY CLIENT.  AND I DON'T THINK

9   IT WAS OUR INTENT TO SUE ANY ABSOLUTE POLLUTION EXCLUSION

10   CARRIERS.  PROCEDURALLY, WE MAY WANT TO WAIT UNTIL VULCAN

11   ASSERTS THEIR CLAIMS OR ANY OTHER INSURERS ASSERT THEIR

12   CLAIMS BECAUSE WE'LL BE AMENDING THE COMPLAINT IF PEOPLE

13   HAVE ABSOLUTE POLLUTION EXCLUSION AND IF THEY WANT TO

14   CONTACT ME, I THINK WE JUST DISMISSED ONE.

15      AND SO THE POLICIES AT ISSUE ARE CLEARLY IN FLUX

16   AT THIS POINT.  AND I GUESS WE MAY WANT TO SEE IF VULCAN

17   MAINTAINS THAT ANY OF THE ABSOLUTE POLLUTION EXCLUSION

18   POLICIES ACTUALLY PROVIDE COVERAGE.

19      THE COURT:  WE'VE GOT A LOT OF CARRIERS HERE AND WHAT

20   ABOUT IF IN TODAY'S ORDER I SAY THAT THE PARTIES ARE TO

21   MEET AND CONFER FOR THE DEVELOPMENT OF A STIPULATION TO

22   TENDER THE ABSOLUTE POLLUTION EXCLUSION ISSUES ON A LIMITED

23   NUMBER OF POLICIES; THAT ALL INSURER PARTIES ARE TO FILE,

24   WITHIN 15 DAYS, A NOTICE OF INTENT TO ASSERT AN ABSOLUTE

25   POLLUTION EXCLUSION DEFENSE SO THAT PEOPLE HAVE TO COME UP

26   AND PUT IT ON THE TABLE THAT THEY ARE ASSERTING THAT

27   DEFENSE, AND THEN WE'LL KNOW WHICH INSURERS ARE TAKING THAT

28   POSITION.

1    MR. ELLISON:  THE ONLY ISSUE AGAIN, YOUR HONOR, IS WE

2  DON'T KNOW WHICH POLICIES ARE AT ISSUE YET.  I GUESS UNTIL

3  VULCAN FILES IT'S CROSS-COMPLAINT AGAINST -- MY CLIENT'S

4  INTENT WAS NOT TO SUE AFTER THE POLLUTION EXCLUSION

5  CARRIERS.  AND SO IF THERE ARE ANY IN THERE, THEY ARE

6  PROBABLY IN THERE ACCIDENTLY AT THIS POINT.

7    VULCAN MAY ASSERT THAT -- MY CLIENT MAY HAVE

8  ISSUED POLICIES AFTER 1985.  I HAVE NO IDEA.  BUT IF VULCAN

9  WERE TO MAINTAIN THAT SOME OF THOSE POLICIES WHICH ARE NOT

10  IN THIS LITIGATION ARE AT ISSUE, THEN WE WOULD HAVE AN

11  ISSUE.  THEY MAY NOT -- VULCAN MAY AGREE THAT SOME OF THESE

12  POLICIES PROVIDE NO COVERAGE.

13    THE COURT:  ALL RIGHT.

14    MR. BROWN.

15    MR. BROWN:  I WAS JUST GOING TO SAY THE FACT THAT THERE

16  ARE SOME PARTIES WHO AREN'T PARTIES YET MAY BE SOMETHING WE

17  SHOULD CONSIDER.  THE POLICY MR. WONG DESCRIBED, FOR

18  EXAMPLE, IS A POLICY ON WHICH STREET IS AN ADDITIONAL

19  INSURED.  SO IF STREET IS GOING TO BE ADDED TO THIS CASE,

20  RESOLVING IT WITHOUT THEM DOESN'T REALLY RESOLVE IT.

21    WHAT WE HAVE HERE WHERE WE TALK ABOUT THAT POLICY

22  AS AN EXAMPLE WHERE THE INSURER THINKS IT'S ABSOLUTE.  WE

23  THINK IT'S NOT.

24    THE COURT:  BUT THAT'S USUALLY A QUESTION OF LAW THAT

25  YOU OUGHT TO BE ABLE TO PUT ON THE TABLE.  AND FOR WANT OF

26  A BETTER DECISION MAKER, I'LL GIVE YOU WHAT I CAN AND YOU

27  CAN TAKE IT WHERE YOU WANT.

28    MR. BROWN:  WHAT I WAS GOING TO SAY WAS IT'S

1  CONCEIVABLE THAT ANOTHER INSURANCE COMPANY WOULD AGREE WITH
2  ME RATHER THAN WITH MR. WONG.  THAT IT'S NOT AN ABSOLUTE
3  POLLUTION EXCLUSION.  IT EXCLUDES SOME THINGS AND NOT
4  OTHERS.
5      THE COURT:  UNLESS THEY ARE IN EITHER A VERTICAL LINE
6  WITH MR. WONG'S POLICY OR SOMETHING -- IT ISN'T A FREE FOR
7  ALL.  EVERY INSURER THAT'S IN THE ROOM DOESN'T HAVE A SAY
8  IN EVERY ISSUE THAT GETS PUT ON THE TABLE.  AND I FOUGHT
9  THAT BATTLE IN OTHER PROCEEDINGS AND I'M WILLING TO LET ALL
10  THOSE WHO TRULY HAVE A DOG IN THE FIGHT MAKE THEIR POSITION
11  KNOWN.  BUT SOME PARTIES HAVE TO SIT ON THE SIDELINES
12  BECAUSE IT DOESN'T AFFECT THEM.
13      MR. BROWN:  YES.
14      MR. WONG:  YOUR HONOR, I WONDER IF WE COULD ADDRESS
15  MR. ELLISON'S CONCERN AND INDEED MR. BROWN'S CONCERN, IF
16  SOMETHING LIKE MAYBE 15 DAYS AFTER THE CROSS-COMPLAINT IS
17  FILED WE'LL KNOW WHAT POLICIES HAVE BEEN NAMED OR WHAT
18  INSURERS HAVE BEEN INCLUDED.  AND I CAN ASSURE THE COURT
19  THAT ON BEHALF OF TRANSPORT IT WOULD NOT BE A PROBLEM,
20  LET'S SAY 15 DAYS THEREAFTER FOR US TO FILE SOME SORT OF
21  NOTICE OF INTENT THAT WE WILL BE ASSERTING AN ABSOLUTE
22  POLLUTION EXCLUSION WITH REGARD TO THIS 1981 POLICY --
23      THE COURT:  LET'S DO THIS.  WE'RE GOING TO HAVE ANOTHER
24  STATUS CONFERENCE IN SIX WEEKS OR SO.  THE AMENDED
25  CROSS-COMPLAINT WILL BE ON FILE.  YOU WILL BE GIVING ME A
26  JOINT STATEMENT.  YOU WILL HAVE HAD A CHANCE TO MEET AND
27  CONFER.
28          IF YOU CAN COME TO ME WITH -- IF YOU ARE REALLY

1   ANXIOUS TO GO FORWARD, MR. WONG, I'M NOT OPPOSED TO PUTTING

2   AN ISSUE ON THE ABLE FOR TRANSPORT OR FOR SOME OTHER

3   CARRIER.

4          MR. BROWN, IF YOU THINK THERE'S ANOTHER A.P.E. AT

5   ISSUE ON THE CLAIMS THAT YOU ARE ASSERTING WITH A CARRIER

6   THAT WOULD BE MORE USEFUL TO HAVE A DETERMINATION ON, PUT

7   IT ON THE TABLE.

8          NOW, IF WE'RE BRINGING NEW PARTIES IN, THEY ARE

9   ALL GOING TO JUMP UP AND DOWN AND SAY WE NEED SOME MORE

10  TIME TO FIGURE OUT WHAT'S GOING ON.  SO WE MIGHT NOT BE

11  ABLE TO DO IT AS FAST AS WE'D LIKE TO, BUT EXPLORE THOSE

12  IDEAS.  RIGHT NOW WE'RE GETTING OUR ARMS AROUND ALL THIS

13  STAGE, EVEN THOUGH IT'S BEEN TWO YEARS, IT TAKES TIME FOR

14  THESE THINGS TO MOVE.  IT'S LIKE TURNING A BIG SHIP AROUND

15  IN A SMALL CANAL.  IT'S TOUGH TO DO, AND IT TAKES A LOT OF

16  TIME.  WE'LL JUST DO THE BEST WE CAN.

17         AT THE NEXT STATUS CONFERENCE I WOULD HOPE -- I

18  KEEP PRETTY GOOD NOTES.  I LOOK AT THESE NOTES BEFORE EACH

19  STATUS CONFERENCE.  WHEN YOU FILE YOUR STATEMENTS I TRY TO

20  FOLLOW UP AND KEEP THINGS ON THE TABLE, SO THEY CAN'T JUST

21  SLIP BY THE WAYSIDE.  AND WE'LL SEE WHERE WE ARE IN SIX

22  WEEKS OR SO.

23         OKAY.  ON THIS LAST ISSUE I'M THE FIRST TO ADMIT I

24  DON'T EVEN KNOW ENOUGH TO BE DANGEROUS ABOUT THIS TOPIC AND

25  I'M SURE I'LL LEARN MORE ABOUT IT.  BUT ON THESE INSOLVENT

26  INSURERS AND DROP-DOWN ISSUES, IS IT A WIDE-OPEN ISSUE AS

27  WELL AS A LOT OF OTHER THINGS PEOPLE SEEM TO BRING HERE, OR

28  IS THERE SOME PRECEDENT THAT EXPLAINS WHAT IT IS?

1    MR. ELLISON:  YOUR HONOR, I'LL ADDRESS THIS BECAUSE
2  IT'S AN ISSUE I TEED UP.  AND AGAIN, I WAS -- IN THE THEME
3  OF TRYING TO FIND SOME THINGS WE COULD RESOLVE IN THE CASE,
4  I THOUGHT THIS MIGHT BE A GOOD ONE.  IT'S NOT A WIDE-OPEN
5  ISSUE.  I THINK THERE'S PRETTY SET LAW.  I DON'T KNOW IF
6  THERE'S DISAGREEMENT ON IT.

7        I THINK THERE ARE CERTAINLY INSOLVENT -- POLICIES
8  ISSUED BY INSOLVENT INSURERS.  THEY ARE AT JUST ABOUT THE
9  LOWEST LEVEL AND SOME HIGHER LEVEL.  AND SO AS A NOT SIMPLY
10  ACADEMIC ISSUE, WHETHER ANY INSURERS HAVE TO DROP DOWN THAT
11  ARE EXCESS TO THOSE POLICIES, THE CASE LAW IN CALIFORNIA
12  CERTAINLY IS FAIRLY CLEAR ON WHAT CERTAIN TYPES OF
13  LANGUAGE -- WHAT THE LEGAL IMPACT OF CERTAIN TYPES OF
14  LANGUAGE IS.  AND SO I THINK IT CAN BE FAIRLY EASILY
15  BRIEFED.  SIMILARLY IN OTHER STATES THAT MAY BE RELEVANT, I
16  THINK THERE'S PRETTY GOOD LAW.

17        SO I'D SUGGEST THIS IS ONE THAT WOULD BE PERFECT
18  FOR THE PARTIES TO TRY AND MEET AND CONFER AND SEE IF WE
19  CAN REACH A STIPULATION.  AND IF NOT, TEE IT UP FOR A
20  THRESHOLD ISSUES DETERMINATION BASED ON JUST A COUPLE OF
21  EXEMPLARS.  THERE'S ONLY A FEW DIFFERENT TYPES OF LANGUAGE.
22  SO WE COULD TEE THAT UP AND GET THAT ISSUE OFF THE TABLE AT
23  LEAST.

24    THE COURT:  WHAT ABOUT YOUR VIEW ON THAT, MR. BROWN?
25    MR. BROWN:  I THINK MEETING AND CONFERRING IS A GOOD
26  IDEA.  THERE IS A LOT OF LAW ON IT, BUT WHAT THERE ISN'T A
27  LOT OF CLEAR LAW ON IS HOW THAT ISSUE, ONCE IT'S RESOLVED,
28  INTERRELATES WITH OTHER ISSUES.

1          IF YOU HAVE AN INSOLVENT CARRIER IN THESE THREE

2     YEARS AND YOU HAVE A SOLVENT CARRIER IN THESE OTHER THREE

3     YEARS, AND YOU SELECT THE SOLVENT CARRIER TO PAY THE CLAIMS

4     AND EXHAUST THE SOLVENT CARRIER'S POLICY, I WOULD SAY THAT

5     YOU THEN COULD TURN TO THE EXCESS INSURER, EXCESS OF THE

6     INSOLVENT PRIMARY TO PAY THE REMAINDER.

7          THE COURT:  SO YOU HAVE YOU MULTIPLE PRIMARIES.  THE

8     INSURED SELECTS THE POLICY IT WANTS TO MAKE THE CLAIMS ON.

9     AND THE QUESTION IS WHETHER THERE'S GOT TO BE SOME

10    HORIZONTAL EXHAUSTION.

11         AND IF THERE'S NO -- IF THIS IS AN INSOLVENT

12    CARRIER, I GUESS THE ISSUE THAT I RAISE, AND I DON'T KNOW

13    IF THIS IS WHERE IT GOES, IS THAT POTENTIALLY VULCAN HAS TO

14    MAKE UP THE MISSING COVERAGE, OR DO YOU GO STRAIGHT UP ON A

15    VERTICAL LINE, OR DO YOU HAVE TO ALLOCATE AMONG

16    NON-SELECTED PRIMARY POLICIES?

17         I DON'T KNOW THE ANSWER.  YOU ALL PROBABLY KNOW IT

18    BETTER THAN I DO.  I'VE GOT IT PENDING IN ANOTHER CASE.

19    IT'S HEATING UP PRETTY GOOD.

20         MR. BROWN:  IF THIS WERE A CASE THAT REQUIRED

21    HORIZONTAL EXHAUSTION, I'M NOT SAYING THAT IT IS.  WE

22    WOULD -- UNDER CALIFORNIA LAW WE CLEARLY, THE INSURED,

23    WOULD NOT EAT A SHARE FOR THE SAKE OF THE INSOLVENTS.

24         BUT THE POINT I WAS MAKING IS THAT ONE MIGHT BE

25    ABLE TO EXHAUST THE UNDERLYING COVERAGE, IF YOU WILL, BY

26    USING UP A NEXT DOOR NEIGHBOR PRIMARY POLICY RATHER THAN

27    THE INSOLVENT POLICY.

28         THE COURT:  WELL, VULCAN IS NEVER GOING TO SELECT AN

1  INSOLVENT INSURER'S POLICY AS TO THE POLICY THEY WANT TO

2  MAKE A CLAIM ON.

3       MR. BROWN:  RIGHT.  I'M JUST SAYING IF THERE'S A

4  DECISION BY THIS COURT THAT THE LANGUAGE IN THIS FIRST

5  STATE POLICY DOES NOT REQUIRE IT TO DROP DOWN AND TAKE THE

6  PLACE OF THIS INSOLVENT IDEAL POLICY, THAT DOESN'T GET THE

7  FIRST STATE POLICY OUT OF THE MIX; THAT'S ALL.

8       I DON'T MIND MEETING AND CONFERRING AND --

9       THE COURT:  YOU SHOULD FOCUS SOME OF THESE ISSUES.

10  BRING THEM TO ME.  I WANT TO HELP YOU GET THEM ON THE TABLE

11  AND GET SOME RESOLUTION.  THERE'S JUST NO EASY WAY TO SAY

12  WE'LL SET A TRIAL DATE IN THIS CASE AND WE'LL GO FORWARD

13  AND SEE WHAT HAPPENS.  IT'S NOT THE BEST WAY TO DO IT.

14       WE'VE MADE A LOT OF PROGRESS IN OTHER CASES THAT

15  ARE SIMILAR TO THIS, AND I BELIEVE WE CAN DO IT HERE, TOO.

16  BUT IT TAKES SOME LEVEL OF COOPERATION WITH THE COURT TO

17  GET THESE ISSUES ON THE TABLE.  SO LET'S HOPE TO HAVE SOME

18  OF THAT BACK NEXT MONTH.

19       ALL RIGHT.  THERE WAS A CASE THAT CAME DOWN WITHIN

20  THE LAST WEEK -- MAYBE LAST MONTH -- THAT TALKED ABOUT --

21  AND I THINK IT WAS IN A PROPERTY CLAIM.  THE AEROJET CASE

22  OUT OF SACRAMENTO -- IT BASICALLY WENT BACK AND SAID IF YOU

23  DON'T HAVE A JUDGMENT YOU CAN'T RECOVER FOR SETTLEMENTS.

24       IS THAT GOING TO COME INTO PLAY IN THIS CASE?

25       I ASK THESE QUESTIONS JUST TO LIGHTEN THE LOAD

26  HERE.

27       MR. WONG:  YOUR HONOR, I'LL MAKE FULL DISCLOSURE.  I

28  WAS COUNSEL OF RECORD IN THAT CASE, AND SO FULLY AWARE OF

1   THE CASE.

2          AND AS MR. BROWN -- INDEED, AS ALL THE PARTIES

3   KNOW, THAT HAS BEEN THE TOPIC OF DISCUSSION WITH REGARD TO

4   SOME OF THE MEDIATIONS THAT WE'VE HAD.  SO IT'S CERTAINLY

5   SOMETHING THAT THE PARTIES HAVE CONSIDERED.

6       THE COURT:  WELL, IF IT'S A REAL ISSUE -- I READ THESE

7   THINGS AND I TRY AND TUCK THEM IN THE FILES THAT I KEEP IN

8   THESE VARIOUS CASES THINKING IT MIGHT HAVE SOME IMPACT; IT

9   MIGHT NOT, I DON'T KNOW.  BUT I LIKE TO STAY CURRENT.  AND

10  I THINK IF THAT'S A BIG ISSUE, THAT'S ONE THAT WE OUGHT TO

11  BE LOOKING AT.

12      MR. BROWN:  I THINK IT'S NOT A BIG ISSUE WITH RESPECT

13  TO THE MODESTO CLAIM THAT SETTLED.  WE WERE AWARE OF THAT

14  CASE BEFORE THE DEFENSE LAWYERS SETTLED THE MODESTO CASE.

15  WE TALKED WITH THE INSURERS ABOUT THAT ISSUE.  AND AT LEAST

16  MOST OF THE INSURERS IN VULCAN ARE OF THE SAME MIND OF THAT

17  NOT BEING AN ISSUE AS TO THAT SETTLEMENT.

18      THE COURT:  OKAY.  AND I FULLY ACCEPT THAT.  AGAIN,

19  OFTEN I ONLY KNOW ENOUGH TO BE DANGEROUS, BUT I WANT TO

20  MAKE SURE WE'RE PAYING ATTENTION TO WHAT'S GOING ON.  AND

21  IF IT HAS SOME BEARING ON IT, BRING IT IN.

22          MR. WONG, I'M SURE THAT IF YOU THINK IT APPLIES IN

23  SOME WAY, YOU DO THAT.  I WOULDN'T THINK KNOWING THAT THE

24  CASE WAS PENDING, AND KNOWING THAT THAT WAS OUT THERE YOU

25  WOULD MAKE THE SETTLEMENTS WITHOUT GETTING SOME CONSENTS OR

26  SOMETHING LIKE THAT.

27      MR. BROWN:  THE FUN THING WAS IT ALL HAPPENED THE SAME

28  WEEK.

1    THE COURT:  IT WAS THE END OF JANUARY?

2    MR. BROWN:  IT HAD BECOME FINAL THEN, IN THE SENSE THAT

3  THE PETITION FOR REVIEW WAS DENIED, BUT THE DECISION ITSELF

4  CAME OUT IN SEPTEMBER, LATE AUGUST.

5    THE COURT:  I THOUGHT IT WAS MORE RECENTLY THAN THAT

6  THAT I HAD SEEN SOMETHING.

7    ANY OTHER ISSUES WE NEED TO TALK ABOUT?  IT SEEMS

8  LIKE WE HAVE A LOT ON OUR PLATE.  WE'RE NOT MAKING A LOT OF

9  PROGRESS, WE CERTAINLY HAVEN'T TODAY.  WE'VE TALKED ABOUT

10  ISSUES THAT I WOULD EXPECT TO COME BACK ON A LITTLE MORE

11  FOCUSED BASIS BY THE NEXT STATUS CONFERENCE.

12    DO WE HAVE A FURTHER DATE IN THIS CASE?  IF WE

13  DON'T, I'M GOING TO GIVE YOU ONE.

14    MR. WONG:  YOUR HONOR, BEFORE WE DO THAT --

15    THE COURT:  I HAVE THAT BEFORE ME.  I WAS SO IMPRESSED,

16  MR. WONG, ALL THE COLORS AND EVERYTHING.

17    MR. WONG:  I STOOD UP, YOUR HONOR, NOT TO TRY TO TAKE

18  CREDIT BECAUSE I CERTAINLY DON'T DESERVE ANY CREDIT WITH

19  REGARD TO THIS, BUT CERTAINLY MS. CHANG AND MS. FENG HAVE

20  TAKEN THE LABORING OAR.  THEY'VE HAD A LOT OF QUALITY

21  SUGGESTIONS TO REACH THIS POINT.  AND I THINK THEY SHOULD

22  BE COMMENDED, YOUR HONOR.

23    THE COURT:  I NEED A TUTORIAL ON HOW TO READ IT.  IT'S

24  GOING TO TAKE SOME TIME, BUT IT WAS VERY IMPRESSIVE.  I

25  ALSO LIKE THE COLORS AND ALL THAT STUFF.

26    HAS THIS BEEN CIRCULATED?  I KNOW YOU FILED IT.

27  SO EVERYBODY GOT A COPY OF IT?

28    MS. BAKER:  YES, YOUR HONOR.

1    THE COURT:  DOES THIS COVER -- THIS GOES FROM '60 TO
2  '86.  IS THAT BASICALLY THE COVERAGE PERIOD THAT WE'RE
3  LOOKING AT HERE?
4    UNIDENTIFIED SPEAKER:  DO YOU WANT TO GO OR DO YOU WANT
5  ME TO GO?
6    MR. BROWN:  I LIKE TO HEAR WHAT YOU HAVE TO SAY.
7    UNIDENTIFIED SPEAKER:  THERE'S ONE POLICY, A LEXINGTON
8  POLICY, THAT'S MY CLIENT THAT'S A '97 TO '99 POLICY THAT'S
9  NOT REFLECTED IN THE CHART.  IT'S A CLAIMS MADE STAND-ALONE
10  EXCESS, THAT HAS A LARGE NAME, AND IT'S NOT A TYPICAL CGL
11  POLICY; THAT ISSUE HAS BEEN AN ISSUE IN DISCUSSIONS BETWEEN
12  LEXINGTON AND VULCAN.
13    FIRST THEY DIDN'T INCLUDE THAT POLICY SO
14  TECHNICALLY AT THIS POINT IT MAY NOT BE INVOLVED IN THE
15  CASE, BUT IT MAY BE AT ISSUE.
16    THE COURT:  AND YOU ARE GOING TO BRING IT IN IN YOUR
17  CROSS-COMPLAINT, MR. BROWN?
18    MR. BROWN:  THAT'S MY INTENTION.
19    THE COURT:  ALL RIGHT.  WELL, WHAT I'VE ALWAYS TRIED TO
20  DO, WITH A LIMITED AMOUNT OF SUCCESS, IS TO GET PEOPLE TO
21  AGREE ON A POLICY CHART THAT WE CAN USE IN GOING FORWARD
22  AND KIND OF KEEP TRACK OF WHERE WE ARE AND WHAT WE'RE
23  DEALING WITH.
24    THIS IS OUT ON THE TABLE, AT LEAST IT'S A START.
25  AND I THANK ALL OF THE PEOPLE THAT WERE INVOLVED IN PUTTING
26  IT TOGETHER.  AND WE'LL SEE WHERE WE GO FROM THERE.
27    ALL RIGHT.  HOW MUCH TIME DO YOU WANT TO DO ALL
28  THESE HOMEWORK ASSIGNMENTS AND THEN COME BACK?

1    MR. ELLISON:  SIX WEEKS.

2    THE COURT:  APRIL 29TH IS A GOOD DAY FOR US; THAT WOULD

3  BE EITHER MORNING OR AFTERNOON, APRIL 30TH, MAY 6TH, MAY

4  1ST, I THROW OUT A LOT OF DATES BECAUSE THERE ARE ALWAYS A

5  LOT OF CONFLICTS AND I'D LIKE TO ACCOMMODATE AS MANY PEOPLE

6  AS WE CAN.

7    MR. WONG:  YOUR HONOR, I'M JUST WONDERING WHETHER WE

8  MIGHT BE ABLE TO HAVE A FURTHER CASE MANAGEMENT CONFERENCE

9  EARLIER THAN THAT.  MS. ROLAND AND I ARE INVOLVED IN A CASE

10  THAT'S SET FOR TRIAL IN EARLY MAY.  SO TO THE EXTENT THAT

11  WE CAN DO SOMETHING EARLIER IN APRIL THAT WOULD BE HELPFUL.

12    THE COURT:  ALL RIGHT.  WELL, I'M OUT THE 23RD THROUGH

13  THE 25TH.

14        WOULD THE 28TH -- IS THAT TOO LATE?  DO YOU WANT

15  TO KEEP THAT WHOLE WEEK CLEAR?  BECAUSE THAT DAY IS OPEN

16  ALSO.

17    MR. ELLISON:  I ACTUALLY HAVE A TRIAL STARTING THE

18  28TH.

19    THE COURT:  THE AFTERNOON OF THE 16TH?  THAT'S ONLY

20  FOUR OR FIVE WEEKS.  AND I'M HAPPY TO SET YOU FOR THAT, BUT

21  I'M NOT SURE IT'S ENOUGH TIME TO REALLY MEANINGFULLY TALK

22  ABOUT ALL OF THE ISSUES YOU WANT TO TALK ABOUT AND TO GIVE

23  ME SOME REASONABLE RESPONSE.

24        LET ME LOOK AT -- YEAH, THE 22ND IS BAD FOR US.  I

25  COULD PROBABLY DO A LATE AFTERNOON CONFERENCE, THAT WOULD

26  BE 2:30 OR 3:00 ON THE 21ST?

27    MR. WONG:  THAT WOULD BE FINE, YOUR HONOR.

28    THE COURT:  IS THAT GOOD ENOUGH?

1        ALL RIGHT.

2     MR. BROWN:  THAT'S FINE.

3     MS. ROLAND:  WHAT TIME WAS THAT, YOUR HONOR?

4     THE COURT:  3 O'CLOCK.  I HAVE A 1:30 AND I GENERALLY

5   DON'T SET MORE THAN ONE SO THAT PEOPLE DON'T WAIT AROUND.

6   LET'S SAY 3 O'CLOCK.  DO WE HAVE TRAVELERS THAT THAT CAUSES

7   A PROBLEM FOR?  THERE AREN'T MANY SOUTHWEST PLANES FLYING

8   ANYWAY, SO YOU MAY HAVE TO FIND ANOTHER WAY TO TRAVEL.

9        AND THE JOINT STATEMENT FOR THAT STATUS CONFERENCE

10  WILL BE DUE, SAY THE 17TH -- 4/17, ALONG WITH ANY

11  STIPULATIONS.  AND I'M NOT OPPOSED TO HAVING YOU FILE TWO

12  OR THREE DIFFERENT JOINT STATEMENTS ON THE ISSUES THAT

13  WE'VE TALKED ABOUT.  IT DOESN'T ALL HAVE TO BE IN ONE

14  STATEMENT, HOWEVER YOU WANT TO APPROACH IT.  BUT IF YOU GET

15  THEM ALL ENTERED BY THE 17TH, I'LL TRY AND GET THROUGH THEM

16  AND HAVE SOME RESPONSE TO YOU THROUGH THAT HEARING.  ALL

17  RIGHT.

18        ANYTHING ELSE?

19     MR. WONG:  THANK YOU, YOUR HONOR.

20     MR. BROWN:  THANK YOU, YOUR HONOR.

21     THE COURT:  THANK YOU.

22

23        (THE PROCEEDINGS WERE CONCLUDED.)

24

25

26

27

28

<pre>
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   FOR THE COUNTY OF LOS ANGELES

 3

 4   DEPARTMENT 311              HON. CARL J. WEST, JUDGE

 5   FIRST STATE INSURANCE COMPANY,  )
                                     )
 6                    PLAINTIFF,     )   NO. BC 354664
                                     )
 7             VS.                   )
                                     )
 8   VULCAN MATERIALS COMPANY, ET AL,)   REPORTER'S
                                     )   CERTIFICATE
 9                    DEFENDANTS.    )
     _____)

10

11

12

13            I, WENDY OILLATAGUERRE, OFFICIAL REPORTER OF

14   THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF

15   LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES 1

16   THROUGH 38, INCLUSIVE, COMPRISE A FULL, TRUE, AND CORRECT

17   TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE MATTER OF THE

18   ABOVE-ENTITLED CAUSE ON WEDNESDAY, MARCH 12, 2008.

19

20            DATED THIS  23RD  DAY OF MARCH, 2008.

21

22

23   _____ , CSR NO. 10978
                    OFFICIAL REPORTER

24

25

26

27

28
</pre>