# EXHIBIT 2

1    Duane C. Miller, #57812
     Victor M. Sher, #96197
2    A. Curtis Sawyer, Jr., #101324
     **MILLER, SHER & SAWYER**
3    A Professional Corporation
     100 Howe Avenue, Suite S-120
4    Sacramento, California 95825
     Telephone: (916) 924-8600
5    Facsimile: (916) 924-3426

     Exempt from Filing
     and Motion Fees
     [Govt. Code, § 6103]

6    Mike Milich, Esq.
     City Attorney
7    **CITY OF MODESTO**
     Post Office Box 642
8    Modesto California 95354
     Telephone: (209) 577-5284

9

10   Attorneys for Plaintiffs
     CITY OF MODESTO REDEVELOPMENT AGENCY;
     and THE PEOPLE OF THE STATE OF
11   CALIFORNIA EX REL THE CITY ATTORNEY
     OF THE CITY OF MODESTO

12

        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13        **IN AND FOR THE COUNTY OF SAN FRANCISCO**

14

| | |
|---|---|
| 15   CITY OF MODESTO REDEVELOPMENT AGENCY; and THE PEOPLE OF THE STATE OF CALIFORNIA EX REL THE CITY ATTORNEY OF THE CITY OF MODESTO, <br><br> Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY; PPG INDUSTRIES, INC.; VULCAN MATERIALS COMPANY; E.I. DUPONT DE NEMOURS AND COMPANY; R.R. STREET & CO., INC.; M.B.L., INC.; WASHEX MACHINERY OF CALIFORNIA, INC.; ACME CLEANERS; MODESTO STEAM LAUNDRY & CLEANERS, INC.; SAV-ON MACHINERY COMPANY, INC.; OCCIDENTAL CHEMICAL CORPORATION [DOE 1]; STAUFFER CHEMICAL COMPANY [DOE 2]; FULLER SUPPLY COMPANY [DOE 251]; GOSS JEWETT CO. OF NORTHERN CALIFORNIA; [DOE 252]; WORKROOM SUPPLY INC. [DOE 253]; | Case No. 999345 <br><br> **FOURTH AMENDED COMPLAINT FOR TOXIC TORT DAMAGES AND OTHER RELIEF RE: (1) STRICT LIABILITY; (2) NEGLIGENCE; (3) NEGLIGENCE *PER SE*; (4) CONTINUING TRESPASS; (5) PRIVATE NUISANCE; (6) PRIVATE NUISANCE *PER SE*; (7) PUBLIC NUISANCE; (8) PUBLIC NUISANCE *PER SE*; (9) RESPONSE COSTS UNDER CALIFORNIA SUPERFUND ACT; (10) DECLARATORY RELIEF UNDER CALIFORNIA SUPERFUND ACT; (11) ULTRAHAZARDOUS ACTIVITY; AND (12) COST RECOVERY UNDER POLANCO REDEVELOPMENT ACT** <br><br> [FILED BY FACSIMILE] <br><br> RECEIVED <br><br> JAN 9 2002 |

1

# 66, 1-4-02

| | |
|---|---|
| 1 | ECHCO SALES CO. [DOE 254]; ) |
| | WAMAX CORPORATION, AKA ) |
| 2 | WASHEX MACHINERY ) |
| | CORPORATION [DOE 501]; WHITE ) |
| 3 | CONSOLIDATED INDUSTRIES, INC. ) |
| | [DOE 502]; HOYT CORPORATION ) |
| 4 | [DOE 503]; MARVEL ) |
| | MANUFACTURING [DOE 504]; ) |
| 5 | AMERICAN LAUNDRY MACHINE, ) |
| | FORMERLY A DIVISION OF McGRAW ) |
| 6 | EDISON CO. [DOE 505]; AMERICAN ) |
| | LAUNDRY MACHINERY, INC. D/B/A ) |
| 7 | AJAX MANUFACTURING DIVISION & ) |
| | MARTIN EQUIPMENT [DOE 506]; ) |
| 8 | BOEWE PASSAT, N/K/A BOWE ) |
| | PERMAC, INC. [DOE 507]; VIC ) |
| 9 | MANUFACTURING COMPANY ) |
| | [DOE 508]; LCI MACHINE [DOE 509]; ) |
| 10 | MCGRAW EDISON COMPANY, ) |
| | INDIVIDUALLY AND DBA AMERICAN ) |
| 11 | LAUNDRY MACHINERY [DOE 510]; ) |
| | and DOES 3 through 1,000, inclusive, ) |
| 12 | ) |
| | Defendants. ) |
| 13 | _____ ) |

14    Plaintiffs allege that at all relevant times:

15    # I. THE PARTIES

16    A.    **The Plaintiff**

17    1.    Plaintiff City of Modesto Redevelopment Agency ("Modesto RDA" or

18    "plaintiff") is an "agency" within the meaning of California Health and Safety Code

19    section 33003, with the power to sue under Health and Safety Code section 33125(a), and

20    charged with the statutory power to alter, improve, reconstruct, rehabilitate, modernize, and

21    clean up property in the blighted Modesto Redevelopment Project Area ("project area") in the

22    interests of the health, safety, and general welfare of the people.  In addition, plaintiff owns

23    real property in the project area, including the land under the convention center located at

24    1000 "L" Street and the parking garage located on Ninth Street between "K" and "L" Streets in

25    Modesto, California.  Generally, plaintiff alleges and contends that each of the named and

26    DOE defendants is legally responsible for the costs and damages relating to the presence and

27    abatement of toxic chlorinated solvents located in or about the project area which blight the

28

1    project area, adversely impact the use of the project area, depreciate or stagnate property values

2    and adversely affect the interests of the health, safety, and welfare of the people.

3        2.    In October 1997, plaintiff conducted an environmental investigation and testing

4    of the project area to determine whether any portion of the redevelopment area was

5    contaminated.  As a result of the 1997 investigation, plaintiff discovered that the volatile

6    organic chemicals perchloroethylene and trichloroethylene have contaminated portions of the

7    project area.

8        3.    Plaintiff The People of The State of California Ex Rel The City Attorney of The

9    City of Modesto is the Modesto City Attorney's office acting in the name of The People of the

10    State of California ("The People").  Plaintiff The People is asserting claims only in the seventh

11    and eighth causes of action herein, and not in the remaining causes of action stated in this

12    Complaint.

13        **B.    The Chlorinated Solvent Manufacturer Defendants**

14        4.    Defendant The Dow Chemical Company ("Dow") is a Delaware corporation

15    with its principal place of business located in Midland, Michigan.

16        5.    Defendant E.I. Dupont De Nemours And Company ("Dupont") is a corporation

17    with its principal place of business in Wilmington, Delaware.

18        6.    Defendant PPG Industries, Inc. ("PPG") is a Pennsylvania corporation with its

19    principal place of business in Pittsburgh, Pennsylvania.

20        7.    Defendant Vulcan Materials Company ("Vulcan") is a New Jersey corporation

21    with its principal place of business in Homewood, Alabama.

22        8.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

23    under the fictitious names of DOES 1 through 250, inclusive.  Since plaintiff filed the original

24    complaint herein, the following DOE chlorinated solvent manufacturer defendant(s) have been

25    identified and substituted in this action:  Occidental Chemical Corporation [DOE 1]; and

26    Stauffer Chemical Company [DOE 2].

27        9.    Defendants Dow, Dupont, PPG, Vulcan, and DOES 1 through 125, and each of

28    them:  (1) manufactured, distributed, transported, packaged, sold and/or disposed of toxic

1   chlorinated solvents called perchlorethylene ("PERC") and/or trichloroethylene ("TCE").

2   PERC and TCE, and their degradation products and ingredients, are referred to collectively as

3   "chlorinated solvents" in the State of California and/or were involved in the manufacture of

4   equipment sold in the State of California specifically designed to store, use, process, and

5   dispose of chlorinated solvents; (2) DOES 126 through 250, and each of them, manufactured,

6   distributed, transported, packaged, sold and/or disposed of TCE in the State of California;

7   (3) defendants Dow, Dupont, Occidental, PPG, Vulcan, and DOES 1 through 250, and each of

8   them, were legally responsible for and committed each of the tortious and wrongful acts

9   alleged in this complaint; and (4) in doing the tortious and wrongful acts alleged in the

10   complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner, agent,

11   alter ego, principal, successor-in-interest, surviving corporation, fraudulent transferee,

12   fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor

13   of each of the remaining DOE and named defendants.

14        10.    Each of the defendants named in paragraphs 3 through 9 above, and DOE

15   defendants 1 through 250, will be collectively referred to as the "manufacturer defendants" or

16   "manufacturers."

17      **C.**    **Distributor Defendants**

18        11.    Defendant M.B.L., Inc. ("MBL") is a California corporation with its principal

19   place of business in Santa Clara, California.

20        12.    Defendant R.R. Street & Co. ("Street") is a corporation with its principal

21   place of business in Naperville, Illinois.

22        13.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

23   herein under the fictitious names of DOES 251 through 500, inclusive. Since plaintiff filed the

24   original complaint herein, the following DOE distributor defendants have been identified and

25   substituted in this action: Fuller Supply Company [DOE 251]; Goss Jewett Co. of Northern

26   California [DOE 252]; Workroom Supply, Inc. [DOE 253]; and Echco Sales Co. [DOE 254].

27        14.    MBL, Street. and DOES 251 through 500 ("distributor defendants"), and each

28   of them:  (1) purchased chlorinated solvents from one or more of the manufacturer defendants,

1  and then resold the chlorinated solvents in the State of California to Modesto dry cleaners,

2  including one or more of the retailer defendants; (2) distributed, designed, assembled,

3  maintained, controlled, operated and/or repaired equipment parts, replacement parts, and

4  appurtenances, including, but not limited to, dry cleaning equipment in the State of California

5  specifically designed for the use, application, and disposal of chlorinated solvents by Modesto

6  dry cleaners, including the retailer defendants; (3) would engage in service visits and

7  inspections on the premises of Modesto dry cleaners, including the dry cleaning defendants for

8  the purposes of promoting their dry cleaning solvents and dry cleaning equipment products and

9  testing and inspecting Modesto dry cleaner equipment which included witnessing dry cleaner's

10  disposal of chlorinated solvents; (4) were legally responsible for and committed each of the

11  tortious and wrongful acts alleged in this Complaint; and (5) in doing the tortious and

12  wrongful acts alleged in the Complaint, acted in the capacity of co-conspirator, aider, abettor,

13  joint venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent

14  transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or

15  indemnitor of each of the remaining DOE and named defendants.

16      15.    In addition to engaging in the distributor activities more fully described in

17  paragraph 13 above, DOES 400 through 500 also engaged in the manufacturing acts and

18  activities fully described in paragraph 8 above, which is incorporated in full herein.

19      **D.    Chlorinated Solvent Equipment Manufacturers**

20      16.    Defendant Sav-On Machinery Company, Inc. ("Sav-On") has sold chlorinated

21  solvent equipment for the past twenty (20) years to dry cleaners in Northern California.  At all

22  relevant times, the principal place of business of Sav-On is San Francisco, California.

23  Defendant Sav-On has been dismissed from this action without prejudice.

24      17.    Defendant Washex Machinery of California, Inc. ("Washex") is a corporation

25  with its principal place of business in Burbank, California.

26      18.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

27  herein under the fictitious names of DOES 501 through 750, inclusive ("chlorinated solvent

28  equipment manufacturers").  Since plaintiff filed the original complaint herein, the following

1  DOE chlorinated solvent equipment manufacturers have been identified and substituted in this

2  action:  Wamax Corporation, aka Washex Machinery Corporation [DOE 501]; White

3  Consolidated Industries, Inc. [DOE 502]; Hoyt Corporation [DOE 503]; Marvel

4  Manufacturing [DOE 504]; American Laundry Machine, Formerly a Division of McGraw

5  Edison Co. [DOE 505]; American Laundry Machinery, Inc. d/b/a Ajax Manufacturing

6  Division & Martin Equipment [DOE 506]; Boewe Passat, n/k/a Bowe Permac, Inc.

7  [DOE 507]; Vic Manufacturing Company [DOE 508]; LCI Machine [DOE 509]; and McGraw

8  Edison Company, individually and dba American Laundry Machinery [DOE 512].

9       19.    Defendants Sav-On, Washex, and DOES 501 through 750, and each of

10  them:  (1) manufactured, distributed, designed, assembled, maintained, supervised, controlled,

11  sold, operated and/or repaired equipment, parts, and appurtenances, including, but not limited

12  to, dry cleaning equipment, in the State of California specifically designed for the storage,

13  application, and disposal of chlorinated solvents by the retailer defendants ("chlorinated

14  solvent equipment"); (2) were legally responsible for and committed each of the tortious and

15  wrongful acts alleged in this Complaint; and (3) in doing the tortious and wrongful acts alleged

16  in the Complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner,

17  agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent

18  transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of each of

19  the remaining DOE and named defendants.

20       20.    In addition to the chlorinated solvent equipment activities alleged in

21  paragraph 18 above, DOE defendants 650 through 750 also engaged in the chlorinated solvent

22  manufacturing acts and activities alleged in paragraph 9, which is incorporated herein by

23  reference.

24      **E.**    **The Retailer Defendants**

25       21.    Defendant Acme Cleaners is a business organization (form unknown) with

26  its principal place of business located in the City of Modesto, California.

27       22.    Defendant Modesto Steam Laundry & Cleaners, Inc., is a business organization

28  (form unknown) with its principal place of business located in the City of Modesto, California.

23.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names of DOES 751 through 1,000, inclusive. Plaintiffs' investigations and testing of the soils and groundwater at and in the vicinity of the project area are continuing.

24.    The defendants named in paragraphs 20 through 22 above, and DOES 751 through 1,000, and each of them: (1) owned and/or operated in the redevelopment area retail dry cleaners, laundry facilities, real property and/or some other business or personal capacity involving the use of chlorinated solvents which have been released upon or into, or otherwise threaten to be released upon or into the project area; (2) were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint; and (3) in doing the tortious and wrongful acts alleged in the complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

25.    Each of the defendants named in paragraphs 20 through 22, and DOE defendants 751 through 1,000, are collectively referred to as the "retailer defendants."

## I. BACKGROUND OF CHLORINATED SOLVENTS

26.    Perchloroethylene ("PERC") and trichloroethylene ("TCE") are toxic organic compounds. PERC and TCE have been used as cleaning solvents. Dry cleaning machines were designed and developed to use PERC and TCE. PERC was the most widely used dry cleaning chemical in the United States. PERC is also referred to as PCE, carbon dichloride, and 1,1,2,2-tetrachloroethylene. In soil, PERC can be transformed by biological degradation and by reductive dehalogenation into TCE, vinyl chloride, and trichloroethane ("TCA").

27.    In or about the 1940s, the defendants knew, or should have known, that PERC could be absorbed in the lungs, skin, and gastrointestinal tract which could cause severe damage to the liver, kidneys, central nervous system and other toxic effects. PERC is a known carcinogen which causes genetic damage. The defendants also knew, or should have known,

1    that PERC and its degradation products and ingredients create a substantial risk of harm to

2    groundwater and soil.

3        28.    Similarly, TCE, including its degradation products and ingredients, is a known

4    carcinogen which can cause cancer, liver and kidney damage and death. Since the early 1900s,

5    among other things, TCE was marketed as a chemical to extract soybean meal for use as cattle

6    feed. This use of TCE was discontinued in the 1950s after numerous reports of widespread

7    hemorrhagic cattle disease and deaths directly linked to the ingestion of TCE.

8        29.    Commencing in or about the 1940s, there were published reports of

9    groundwater contamination caused by TCE which rendered water unfit for drinking.

10    Defendants knew, or should have known, that TCE and its degradation products and

11    ingredients create a substantial risk of harm to the environment, groundwater, and soil.

12        30.    Notwithstanding their knowledge of health and environmental hazards of

13    chlorinated solvents, the manufacturing defendants, chlorinated solvent equipment defendants,

14    and distributor defendants designed, manufactured, marketed, and/or supplied chlorinated

15    solvents and/or chlorinated solvent dry cleaning equipment and/or replacement parts to retail

16    dry cleaners, including the retailer defendants. The equipment was specifically designed to

17    store, use, process, and dispose of chlorinated solvents. Defendants were aware of the typical

18    use, waste, and disposal practices resulting from the intended use of their equipment, including

19    the customary practice of dumping chlorinated solvent wastewater and muck into the public

20    sewer systems, and the habitual problem with multiple leaks of chlorinated solvents into the

21    environment during the foreseeable and expected use of chlorinated solvent equipment.

22        31.    Notwithstanding the fact that the manufacturer defendants, the chlorinated

23    solvent equipment defendants, and distributor defendants knew, or should have known, of the

24    serious health hazards caused by the use and disposal of chlorinated solvents and that

25    chlorinated solvents pass through sewer pipes and concrete floors, thereby contaminating soil

26    and migrating into groundwater, defendants negligently and carelessly: (1) issued instructions

27    that chlorinated solvents could be discharged into the sewers, permitting chlorinated solvents

28    to contaminate the sewer system and surrounding property; (2) designed and operated dry

1  cleaning machines, appurtenances, and other types of machinery designed to be used with

2  chlorinated solvents to facilitate and promote the disposal of chlorinated solvents into the

3  sewer system and/or which failed to adequately prevent and/or minimize the loss of

4  chlorinated solvents; (3) failed to recall and/or warn the users of the negligently designed

5  chlorinated solvent equipment of the dangers of groundwater contamination as a result of

6  chlorinated solvents disposal in the sewer system; and (4) further failed and refused to issue

7  the appropriate warnings and/or recalls to the users of chlorinated solvents regarding the

8  proper means of use and disposal of this toxic chemical, notwithstanding the fact that the

9  respective defendant knew the identity of the purchaser of the chlorinated solvent equipment

10  and/or chlorinated solvents.

11       32.  In addition, the manufacturer defendants and distributor defendants, and each of

12  them: (a) knew, or should have known, that dry cleaners, including the retailer defendants and

13  other Modesto dry cleaners which contributed to the chlorinated solvent contamination, were

14  foreseeable users of chlorinated solvents and were using the chlorinated solvents in a

15  foreseeable manner; (b) knew, or should have known, that the chlorinated solvents were

16  dangerous to the environment or health if deposited directly on the ground, drained or flushed

17  into the sewer system, or by permeating unprotected concrete floors under dry cleaning

18  equipment; (c) knew, or should have known, that Modesto dry cleaners, including the retailer

19  defendants, foreseeably lacked knowledge of these dangers; (d) failed to warn the Modesto dry

20  cleaners, including the retailer defendants, of the dangers and/or affirmatively instructed them

21  to engage in such dangerous conduct; and (e) as a result, the Modesto dry cleaners, including

22  the retailer defendants, failed to guard against the alleged contamination which resulted in

23  harm to the plaintiffs.

24       33.  In addition, notwithstanding the manufacturing defendants' and distributor

25  defendants' knowledge of the severe environmental and health dangers and hazards posed by

26  the use and disposal of chlorinated solvents on the ground and in sewers, these defendants: (1)

27  instructed, directed, and recommended Modesto dry cleaners, including the retailer defendants,

28  to dispose of chlorinated solvents onto the ground and into the sewers; (2) instructed, directed,

1  and recommended Modesto dry cleaners, including the retailer defendants, to maintain,

2  operate, design, and construct the dry cleaning equipment to drain chlorinated solvents into the

3  sewer systems and/or operate and maintain the dry cleaning equipment by means of physically

4  disposing chlorinated solvent waste as part of the operation of the dry cleaning equipment into

5  the sewers or soil which caused substantial and serious harm to the property of others,

6  including the plaintiffs.

7      34.  Chlorinated solvent products are fungible.  The manufacturer and distributor

8  defendants concluded that it was not enough to simply sell chlorinated solvents to dry cleaners

9  in order to remain competitive.  In order to compete for larger shares of the chlorinated solvent

10  market, the manufacturer and distributor defendants, and each of them, would routinely and

11  frequently advise, instruct, assist, recommend and/or participate in the operation, maintenance,

12  inspection and/or testing of dry cleaners, including the retailer defendants and other Modesto

13  dry cleaners, in order to promote the purchase of their chlorinated solvent products and in

14  order to create brand loyalty.  These activities included personal visits by manufacturer and

15  distributor representatives to Modesto dry cleaners and written directions, instructions, and

16  brochures on dry cleaning equipment maintenance and operations.   Each of the manufacturer

17  and distributor defendants routinely engaged in these same and similar practices.  As part of

18  these activities and practices, the manufacturer and distributor defendants, and each of them,

19  instructed, directed and/or recommended to Modesto dry cleaners, including the retailer

20  defendants, to dispose of chlorinated solvents on the ground or in the drain, including using the

21  sewer system and dumping solvents on the ground as a method of disposal.

22      35.  For example, in a 1966 memorandum on chlorinated solvent marketing, defendant

23  E.I. DuPont De Nemours and Company stated that "PERK is PERK [sic]."  DuPont concluded

24  that PERC is a fungible product, and that the mere sale of PERC to customers is insufficient to

25  gain a greater share of the competitive market because its salesmen and distributors would be

26  perceived as mere "'order takers.'"  Therefore, in order to compete with other PERC

27  manufacturers and distributors, its authorized representatives became personally involved in

28  the dry cleaning business of its customers through regular and frequent personal calls to the

1   dry cleaners by providing written materials regarding the promotion, operation, and

2   maintenance of dry cleaning equipment, and by supplying items of "genuine use" to dry

3   cleaners, including "solvent resistant" gloves and bags. Each of the solvent manufacturers and

4   distributors were engaged in these same or similar practices by routinely and frequently

5   sending personal representatives to the premises of Modesto dry cleaners, including the dry

6   cleaner defendants, and, among other things: (1) regularly observing the dry cleaning

7   operations and practices, including disposal methods, of Modesto dry cleaners; (2) issuing

8   brochures, newsletters and written and/or verbal directions and/or instructions for the

9   operation, maintenance, and use of dry cleaning equipment and/or dry cleaning solvents; (3)

10   testing perchloroethylene at the dry cleaners; (4) unloading and storing perchloroethylene at

11   the Modesto dry cleaners; and (5) entering into exclusive distribution agreements between the

12   manufacturer and distributor defendants which required the distributors to act as

13   representatives of the respective manufacturers in doing these alleged acts.

14       36.  Examples of these practices include, but are not limited to, the following:

15       (a)  Dow advised, recommended and/or instructed dry cleaners to operate and maintain

16   their dry cleaning equipment to discharge separator wastewater which contained chlorinated

17   solvent contamination in such a manner to maximize a "free unimpeded water flow to the

18   drain . . ."

19       (b)  Defendant Dow instructed dry cleaners that "small amounts [of chlorinated

20   solvents] may be transported to an area where it can be placed on the ground . . ."

21       (c)  In a 1991 internal Vulcan and R.R. Street memorandum entitled "PERC Removal

22   from Water Saturated With PERC Study," R.R. Street/Vulcan concludes that significant

23   amounts of PERC remain in wastewater generated by the dry cleaning process which was

24   deposited into sewers.

25       (d)  Defendant R.R. Street instructed dry cleaners that "[t]he residue from distillations

26   of perchloroethylene may be poured on dry sand, earth, or ashes . . ."

27       (e)  Defendant MBL, Inc. agreed to "disseminate to all customers" Dow publications

28   regarding the handling of Dow perchloroethylene.

1        (f)   Defendant R.R. Street provided "instructions for building a device for the purpose

2   of detecting PERC escaping with the water from a water separator entitled "Are You Losing

3   PERC Down the Drain?"

4        (g)   PPG Industries instructed dry cleaners to dispose perchloroethylene "to a sanitary

5   sewer or bury in chemical landfill."

6        (h)   The manufacturer defendants were members of various trade groups including the

7   Manufacturing Chemists Association, Inc., which prepared written instructions which the

8   manufacturing defendants and distributor defendants supplied to Modesto dry cleaners which

9   instruct that "small amounts [of chlorinated solvents] . . . can be placed on the ground."

10        (i)   In addition, (a) the manufacturer defendants and distributor defendants of

11   chlorinated solvents provided direct technical advice and service to the retailer defendants and

12   Modesto dry cleaners relating to waste disposal in which the manufacturer defendants and

13   distributor defendants advised the retailer defendants and Modesto dry cleaners to dispose of

14   chlorinated solvents containing waste and separator water into the sewer or on the ground; (b)

15   the retailer defendants and Modesto dry cleaners relied upon the advice of the manufacturer

16   defendants and distributor defendants with regard to the operation of their facility and with

17   regard to the disposal advice and service; (c) employees and agents of the manufacturer

18   defendants and distributor defendants of chlorinated solvents had access to the facilities of the

19   retailer defendants and Modesto dry cleaners; and (d) employees and agents of the

20   manufacturer defendants and distributor defendants of chlorinated solvents performed tests on

21   chlorinated solvents containing wastes, and that process resulted in the release of chlorinated

22   solvents into the sewer and the environment causing the damage alleged herein.

23        (j) The manufacturer defendants set up, staffed, and directly controlled various trade

24   associations and distributor defendants for the study, distribution, marketing, and sale of

25   chlorinated solvents . Through these trade associations and the distributor defendants, the

26   manufacturer defendants exercised complete and direct control over the study, distribution,

27   marketing and sale of chlorinated solvents, and these trade associations and distributor

28   defendants acted as agents of the manufacturer defendants in studying, distributing, marketing,

1   and selling of chlorinated solvents. Through these trade associations and distributor

2   defendants, the manufacturer defendants knew of the toxicity and health and safety hazards

3   associated with chlorinated solvents and gave instructions and advice regarding the disposal of

4   chlorinated solvents that caused the release of chlorinated solvents into the environment. The

5   manufacturer defendants organized and created these trade association and distributor

6   defendants with the intent of shielding themselves from liability associated with their

7   knowledge and control over chlorinated solvent products and the associated releases of

8   chlorinated solvents.

9         37.  The manufacturer, distributor, and chlorinated solvent equipment manufacturer

10  defendants also (1) encouraged dry cleaners to use chlorinated solvents without adequate

11  warnings, (2) agreed through trade associations to attack any regulation of chlorinated

12  solvents, and (3) promoted the unsafe and improper disposal of chlorinated solvents in order to

13  reduce the costs of its use and to increase the market share of chlorinated solvents over other

14  competing dry cleaning substances.

15        **II.  CONTAMINATION OF THE PROJECT AREA**

16        38.  As a direct result of the defendants' acts alleged in this Complaint, the project

17  area, including soil, groundwater and improvements, has been contaminated, and will continue

18  to be contaminated, with chlorinated solvents which creates a public health hazard unless

19  abated. As a direct and proximate result thereof, plaintiff must initiate a remedial program to

20  assess, evaluate, investigate, monitor, remove, clean up, correct, and abate chlorinated solvent

21  contamination in the project area and to restore the project area at significant expense, loss and

22  damage. Costs incurred within the past three years of the filing of the Complaint, or that are to

23  be incurred in the future, include:  loss of use of property, property damage, restoration costs

24  incurred within the past three years of the filing of the Complaint or that are to be incurred in

25  the future, delay damages, property devaluation, interim and permanent remedial measures to

26  control releases and potential releases of chlorinated solvents, cleanup costs, potential

27  installation and maintenance of interceptor wells, and water treatment facilities, all in an

28  amount in the many millions of dollars.

1

## FIRST CAUSE OF ACTION

2  **(Strict Liability by Plaintiff Modesto RDA Against the Manufacturer Defendants,
   Distributor Defendants, and Chlorinated Solvent Equipment Manufacturers)**

3

4        39.    Plaintiff refers to paragraphs 1 through 38 above, and by this reference

incorporates them herein as though set forth in full.

5

6        40.    The manufacturer defendants, distributor defendants, and the chlorinated

7  solvent equipment manufacturers, and each of them, designed, manufactured, formulated,

packaged, distributed and/or sold products containing chlorinated solvents and/or equipment

8  specifically designed to store, use, process, and dispose of chlorinated solvents.

9

10       41.    The manufacturer defendants, distributor defendants, and chlorinated solvent

equipment defendants, and each of them, represented, asserted, claimed and warranted that

11  chlorinated solvents and/or chlorinated solvent equipment could be used in conformity with

12  accompanying instructions and labels in a manner which would not cause injury or damage.

13

14       42.    The manufacturer defendants, distributor defendants, and chlorinated solvent

equipment defendants, and each of them, knew, or should have know, that the chlorinated

15  solvents and/or chlorinated solvent equipment would be used without inspection for defects,

16  and if any inspection were performed, that the defects would not be discovered with the

17  exercise of reasonable diligence.

18

19       43.    These defendants, and each of them, designed, manufactured, formulated,

packaged, distributed, applied, disposed of and/or sold chlorinated solvents and/or the

20  chlorinated solvent equipment.  Defendants knew, or should have known, that exposure to

21  chlorinated solvents would create risk of harm to human health and contaminate soil, sewer

22  and water systems.

23

24       44.    Chlorinated solvents are defective products because, among other things: (a)

chlorinated solvents cause extensive groundwater contamination, even when used in their

25  foreseeable and intended manner; (b) even at extremely low levels, chlorinated solvents render

26  drinking water unfit for purveying to consumers and create a public health hazard whenever

27  normal and necessary maintenance is performed on the sewer system, or otherwise adversely

28  impacts normal use of the sewer and water system; (c) chlorinated solvents pose a significant

1  threat to public health; (d)defendants failed to provide adequate warnings of the known and

2  foreseeable risks of chlorinated solvents; and (e) defendants failed to conduct adequate

3  scientific studies to evaluate the environmental fate and potential human health effects of

4  chlorinated solvents.

5       45.     At all relevant times the:

6              (a)  chlorinated solvent equipment defendants were aware of the use of

7  chlorinated solvents in the dry cleaning process or as cleaning solvents;

8              (b) defendant chlorinated solvent equipment manufacturers were aware of the

9  typical waste and disposal practices resulting from the intended use of their equipment.

10  Despite such knowledge, these defendants designed their equipment in such a manner that

11  would result in spills, leaks, and/or discharge of chlorinated solvents during normal operations;

12             (c) defendants improperly designed their chlorinated solvent equipment by

13  failing to provide appropriate mechanisms to prevent and/or catch releases or spills of

14  chlorinated solvents and its by-products  for such equipment;

15             (d) defendants failed to design proper mechanisms which would

16  eliminate, prevent and/or treat contamination arising from the dry cleaning process such as

17  contamination from separator wastewater, spent filter cartridges, muck, and still bottoms;

18             (e) defendant chlorinated solvent equipment manufacturers knew, or should

19  have known, of appropriate equipment redesigns, retrofits, and/or modifications to protect

20  against environmental contamination associated with the use of such equipment, and

21  negligently and/or consciously disregarded this knowledge and failed to redesign, modify

22  and/or retrofit the subject equipment.  Safer alternative designs and cleaning processes were

23  scientifically feasible and economical;

24             (f) defendant manufacturers and distributors represented to the public and

25  regulatory authorities that the products they sold would degrade into harmless substances and

26  would not cause contamination.  At the time said representations were made, said defendants

27  knew, or should have known, these representations were false, misleading, and/or that there

28  was no reasonable basis to believe that they were true; and

1      (g) when chlorinated solvents were applied and disposed of pursuant to the

2   defendant manufacturers' recommended application and disposal procedures set forth in

3   product brochures, trade group publication funded by defendants, seminars, meetings,

4   advertisements, oral statements and by other means, chlorinated solvents contaminated the

5   sewer systems because of defendant manufacturers' failure to recommend adequate and proper

6   safeguards to avoid or prevent contamination of the sewer system.

7      46.    The chlorinated solvent equipment is a defective product because among other

8   things: (1) the chlorinated solvent equipment causes extensive contamination, even when used

9   in a foreseeable and intended manners; (2) at extremely low levels, chlorinated solvents

10  contaminate sewer and water systems; (3) the use of chlorinated solvent equipment poses a

11  significant threat to public health; (4) defendants failed to provide adequate warnings of the

12  known and foreseeable risk of the use of chlorinated solvent equipment; and (5) defendants

13  failed to conduct adequate scientific studies to evaluate the environmental fate and potential

14  human health effects of the use of chlorinated solvent equipment.

15     47.    The above-described defects in chlorinated solvents and chlorinated solvent

16  equipment existed when the chlorinated solvents and chlorinated solvent equipment left the

17  defendants' possession.  The chlorinated solvents and chlorinated solvent equipment were used

18  in a manner in which they were foreseeably intended to be used.

19     48.    As a proximate and direct result of the defects alleged herein, the  defendant

20  manufacturers, distributors, and chlorinated solvent equipment manufacturers, and each of

21  them, contaminated the project area, all to plaintiffs' damage in an amount within the

22  jurisdiction of this court.

23     49.    As a further direct and proximate result of the acts and omissions of the

24  defendants alleged herein, plaintiff has been damaged because it has been required to obtain,

25  and will require, the services of engineers, hydrogeologists, contractors, and other

26  professionals to investigate and remedy the contamination problem.

27     50.    Plaintiff is informed and believes and thereon alleges that as a further direct and

28  proximate result of the acts and omissions of the defendants alleged herein, plaintiff will

16
Fourth Amended Complaint for Toxic Tort Damages and Other Relief

1    sustain substantially increased expenses and loss of the use of plaintiff's property, all to

2    plaintiff's damage in an amount within the jurisdiction of this court.  Plaintiff is also entitled to

3    costs and prejudgment interest to the full extent permitted by law.

4        51.    The manufacturer, distributor, and chlorinated solvent equipment defendants

5    knew that it was substantially certain that their alleged acts and omissions described above

6    would cause serious injury and property damage, including the contamination of the project

7    area with chlorinated solvents.  Defendants committed each of the above-described acts and

8    omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious

9    disregard of the health and safety of others in at least the following respects:

10            a)    Defendants knew chlorinated solvents would contaminate the project

11    area, water supplies, and the aquifer used by the public.  Nonetheless, defendants instructed

12    chlorinated solvents users to dispose of chlorinated solvents into public sewers with conscious

13    disregard of the public health and safety.

14            b)    Although defendants knew that chlorinated solvents were human

15    carcinogens and that chlorinated solvent equipment habitually leaked chlorinated solvents into

16    the environment, causing property damage, defendants individually and through trade

17    associates sought to suppress unfavorable publicity regarding chlorinated solvents,

18    manufactured and funded favorable scientific studies knowing they were biased and/or

19    meritless, and suppressed information regarding the hazards of chlorinated solvents from

20    regulators, all for the sake of profit.

21        52.    This conduct is reprehensible, despicable, and was performed with the intent to

22    induce reliance by a class of persons including their customers, the public, regulatory agencies

23    and plaintiff on false representations, and to promote sales of chlorinated solvents and

24    chlorinated solvent equipment in conscious disregard of the known risks of injury to health and

25    property.  Defendants acted with willful and conscious disregard of the probable dangerous

26    consequences of that conduct and its foreseeable impact upon plaintiff.  Therefore, plaintiff

27    requests an award of punitive damages in an amount to punish defendants.

28

1

### SECOND CAUSE OF ACTION

2

**(Negligence by Plaintiff Modesto RDA Against All Defendants)**

3        53.     Plaintiff realleges paragraphs 1 through 52 of this complaint and incorporates

4   them herein by reference.

5        54.     Defendants had a duty to use due care in the design, manufacture, formulation,

6   handling, control, disposal, sale and labeling, use, instructions for use and disposal of

7   chlorinated solvents and/or chlorinated solvent equipment to prevent, and to the extent

8   feasible, to eliminate contamination of the project area with chlorinated solvents in

9   concentrations which may pose adverse health effects.

10        55.     The defendants so negligently, carelessly, and recklessly designed,

11   manufactured, formulated, handled, labeled, instructed, controlled and/or sold chlorinated

12   solvents and/or chlorinated solvent equipment, and so negligently, carelessly and recklessly

13   applied chlorinated solvents, disposed of chlorinated solvents, containers, and waste and/or

14   negligently recommended application and disposal techniques for chlorinated solvents that

15   they directly and proximately caused chlorinated solvents contamination of the project area,

16   resulting in the compensatory damages alleged in this Complaint, and a punitive damages

17   award against defendants.

18

### THIRD CAUSE OF ACTION

19

**(Negligence *Per Se* by Plaintiff Modesto RDA Against All Defendants)**

20        56.     Plaintiff realleges paragraphs 1 through 55 of this complaint and incorporates

21   them herein by reference.

22        57      Plaintiff alleges that the manufacturer defendants, chlorinated solvent

23   equipment manufacturers, distributor defendants, and retailer defendants negligently,

24   carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed,

25   controlled and/or sold chlorinated solvents and/or chlorinated solvent equipment, and so

26   negligently, carelessly and recklessly applied chlorinated solvents, disposed of chlorinated

27   solvents, containers, and waste and/or negligently recommended application and disposal

28   techniques for chlorinated solvents that they directly and proximately caused contamination of

Fourth Amended Complaint for Toxic Tort Damages and Other Relief

1    the project area, and the municipal groundwater supply underlying the project area, in violation

2    of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety

3    Code sections 5411, 5411.5, and 117555, and California Fish and Game section 5650, the

4    purpose of which are to set a standard of care or conduct to protect plaintiff and all persons or

5    property within its jurisdiction, as well as the environment, from the type of improper activities

6    engaged in by defendants, and each of them.  Therefore, such improper activities and

7    violations constitute negligence *per se*.  Plaintiff's investigation and discovery are not

8    complete.  Therefore, plaintiff will seek leave of court to amend the complaint to allege

9    additional violations or, in the alternative, give notice to the defendants of any additional

10    statutory violations when determined.

11        58.    Defendants, and each of them, have failed to comply with state law as detailed

12    above.  As a direct and proximate result of the negligence *per se* of defendants, and each of

13    them, plaintiff has suffered damages, as alleged in this Complaint, including consequential,

14    incidental and general damages to be proven at trial.

15                      **FOURTH CAUSE OF ACTION**

16       **(Continuing Trespass by Plaintiff Modesto RDA Against All Defendants)**

17        59.    Plaintiff realleges paragraphs 1 through 58 of this complaint and incorporates

18    them herein by reference.

19        60.    Plaintiff is the owner and/or actual possessor of the project area.

20        61.    The defendants so negligently, recklessly and/or intentionally failed to properly

21    control, apply, use and/or dispose of chlorinated solvents that they directly and proximately

22    caused chlorinated solvents to contaminate the project area as follows:

23           a)    The defendants participated in the use and disposal of chlorinated

24    solvents by intentionally, recklessly, and/or negligently controlling the use and disposal (and

25    providing instructions for the disposal) of chlorinated solvents by dry cleaning stores;

26    intentionally, recklessly, and/or negligently instructing dry cleaners about the purportedly

27    proper disposal methods for chlorinated solvents; and intentionally, recklessly, and/or

28    negligently calibrating, designing and manufacturing customers' chlorinated solvent equipment

1   in such a manner that chlorinated solvents were routinely disposed of into the project area on

2   an ordinary basis.  As a result of this activity, chlorinated solvents contaminated the project

3   area.

4           b)      Defendant manufacturers, distributors, and chlorinated solvent

5   equipment manufacturers intentionally, recklessly, and/or negligently instructed end-users,

6   including retail dry cleaners, about the disposal of chlorinated solvents through informational

7   brochures, instructional seminars, trade organization brochures funded, published, and

8   distributed by defendants, product labels and other literature.  Said defendants recommended

9   that chlorinated solvents be dumped into the sewer system and/or dumped on the ground,

10  notwithstanding that said defendants knew, or should have known, that chlorinated solvents

11  would contaminate the water and soil and pose a risk to health.  As a result, when chlorinated

12  solvents were disposed of pursuant to the techniques recommended by said defendants, the

13  chlorinated solvents contaminated plaintiff's property.  In addition, the chlorinated solvent

14  equipment manufacturers designed their equipment to directly discharge chlorinated solvent

15  waste into the sewer and/or instructed machine users to dispose of chlorinated solvent waste

16  into the sewer.

17          c)      During this time, defendant manufacturers, distributors, and chlorinated

18  solvent equipment manufacturers (1) knew and/or reasonably should have known that

19  chlorinated solvents had caused environmental contamination, and (2) had not conducted

20  adequate testing to determine the environmental fate and potential human health effects of

21  chlorinated solvents.  Even though said defendants had sufficient information to determine that

22  chlorinated solvents posed a threat to the environment, they did not modify their chlorinated

23  solvent disposal instructions or provide appropriate advice, instruction or information to their

24  customers regarding proper disposal and use needed to avoid environmental contamination.

25          d)      Each of the defendants knew, or should have known, to avoid cleaning

26  or rinsing empty chlorinated solvent containers and chlorinated solvent equipment residue and

27  muck into sewers and/or soil.  These defendants knew, or should have known, that this practice

28  resulted in contamination.  Despite these facts, defendants continued these negligent practices.

1           e)     Defendants knew, or should have known, that chlorinated solvents were

2    persistent, and that chlorinated solvents could contaminate soil and groundwater.

3         62.    The chlorinated solvent manufacturer defendants, the distributor defendants, the

4    chlorinated solvent equipment manufacturer defendants, and the retailer defendants were each

5    a substantial factor in bringing about the resulting contamination of plaintiff's possessory

6    interests, and each of the defendants aided and abetted the continuing trespasses and are jointly

7    responsible for the injuries and damages caused to plaintiff as alleged in this Complaint and

8    based on the following alleged conduct:

9           a)     The retailer defendants, and each of them, intentionally and carelessly

10   disposed of PERC waste into plaintiff's sewer system, or by dumping toxic PERC waste onto

11   the ground, causing it to intrude upon, contaminate, and damage plaintiff's possessory

12   interests;

13          b)     The chlorinated solvent equipment manufacturers manufactured,

14   designed, distributed, prepared and installed dry cleaning equipment and/or parts which

15   defendants knew, or should have known, would directly discharge and leak toxic PERC into

16   the sewer system and ground, and intrude upon, contaminate, and damage plaintiff's

17   possessory interests;

18          c)     The chlorinated solvent manufacturers, the distributor defendants, and

19   the chlorinated solvent equipment manufacturer defendants intentionally caused the retailer

20   defendants to dispose of the toxic chlorinated solvent waste by instructing, requesting and/or

21   inducing the retailer defendants to dump chlorinated solvent waste onto the ground, or

22   discharge chlorinated solvent waste directly into the sewer system, or pour chlorinated solvent

23   waste down the drain, which caused the toxic chlorinated solvent waste to intrude upon

24   plaintiff's possessory interests and cause the alleged harm and damage; and

25          d)     At the time, the chlorinated solvent manufacturers, the distributor

26   defendants, and the chlorinated equipment manufacturer defendants intentionally instructed,

27   requested and/or induced the alleged tortious conduct by the retailer defendants, the

28   chlorinated solvent manufacturer defendants, the distributor defendants, and the chlorinated

1  solvent equipment manufacturer defendants knew, or should have known, of the conditions

2  under which the delicts were to be done, the toxicity of the chlorinated solvent waste, and the

3  consequences of the acts.  These defendants instructed, requested and/or induced the delicts

4  and were a substantial factor in causing the resulting contamination of plaintiff's possessory

5  interests, and further aided and abetted the delicts, and are jointly liable with the retailer

6  defendants with respect to the injuries and damages sustained by plaintiff.  Plaintiff also seeks

7  punitive damages against the  defendants.

8      63.    The chlorinated solvent contamination of the project area has varied over time

9  and can be reasonably abated.  Plaintiff has engaged, or will engage, in abatement programs.

10                      **FIFTH CAUSE OF ACTION**

11      **(Private Nuisance by Plaintiff Modesto RDA Against All Defendants)**

12      64.    Plaintiff realleges paragraphs 1 through 63 of this complaint and incorporates

13  them herein by reference.

14      65.    The negligent, reckless, intentional and ultrahazardous activity of the

15  defendants, and each of them, has resulted in the contamination of plaintiff's project area and

16  constitutes a continuing nuisance within the meaning of Civil Code section 3479.  The

17  chlorinated solvent contamination of the project area, and the municipal groundwater supply

18  underlying the project area, has varied over time and can be reasonably abated.  Plaintiff has

19  engaged, and will engage, in abatement programs.

20      66.    Since plaintiff is the property owner adversely affected by the nuisance, it is a

21  private nuisance within the meaning of Civil Code section 3481.

22      67.    As a direct and proximate result of the nuisance, plaintiff has been damaged and

23  is entitled to the compensatory damages alleged herein, and seeks punitive damages against the

24  defendants.

25                      **SIXTH CAUSE OF ACTION**

26      **(Private Nuisance *Per Se* by Plaintiff Modesto RDA Against All Defendants)**

27      68.    Plaintiff realleges paragraphs 1 through 67 of this complaint and incorporates

28  them herein by reference.

69.     The negligent, reckless, intentional and ultrahazardous activity of defendants, and each of them, resulted in the contamination of plaintiff's project area, and the municipal groundwater supply underlying the project area, in violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, and California Fish and Game section 5650, the purpose of which are to set a standard of care or conduct to protect plaintiff and all persons and property within its jurisdiction, as well as the environment, from the type of improper activities engaged in by defendants, and each of them, as alleged in this Complaint.  Therefore, such improper activities and violations constitute a private nuisance *per se*.

70.     Defendants, and each of them, have failed to comply with the state law as detailed above.

71.     Plaintiff has sustained special injury as a result of these nuisances, including incurring investigative costs.  As a further direct and proximate result of the private nuisance *per se* created by defendants, and each of them, plaintiff has suffered damages as alleged in this Complaint, including other consequential, incident, and general damages to be proven at trial.

### SEVENTH CAUSE OF ACTION

### (Public Nuisance by All Plaintiffs Against All Defendants)

72.     Plaintiffs realleges paragraphs 1 through 71 of this complaint and incorporates them herein by reference.

73.     The negligent, reckless, intentional and ultrahazardous activity of the defendants, and each of them, as described in this Complaint, gives rise to a public nuisance within the meaning of California Civil Code sections 3479 and 3480, which affects not only the plaintiff, but also the entire community of the City of Modesto, and/or the comfort and convenience of a considerable number of residents and visitors to the City of Modesto, although the extent of the damages inflicted upon individuals may be unequal.

74.     Because the contamination created by the negligent, reckless, intentional and ultrahazardous activity of defendants, and each of them, has resulted in contamination that

1    continues, and threatens to continue, to spread to adjacent properties, and into the municipal

2    groundwater supply within the jurisdiction of the plaintiff and for which plaintiff possesses a

3    legally cognizable property interest on behalf of its residents, it is of great public concern.  As

4    a result, plaintiff has incurred and will continue to incur substantial and necessary response

5    costs, including investigatory expenses, attorneys' fees, consulting fees, oversight costs,

6    interest and other response costs.  For the aforesaid reasons, plaintiff has and will suffer

7    injuries different in kind from those suffered by the general public.

8         75.    The negligent, reckless, intentional and ultrahazardous activity of the

9    defendants, and each of them, which has resulted in contamination, and threatens to continue

10   to contaminate, the plaintiff's project area and the public's right to use and enjoy its

11   groundwater supply, is also a public nuisance as defined by Title 4, Chapter 12,

12   Section 4-12.300, of the Modesto Municipal Code, for which plaintiff seeks remedies in

13   accordance with Title 4, Chapter 12, Article 2.

14        76.    Plaintiffs allege that as a proximate result of the negligent, reckless, intentional

15   and ultrahazardous activity of the defendants, and each of them, which has resulted in the

16   contamination of plaintiff's project area and constitutes a public nuisance.  Plaintiffs have, and

17   will, incur substantial expense, as previously described herein, to abate the public nuisance.

18        77.    Plaintiffs assert that litigation against defendants, and each of them, is necessary

19   because it raises issues of public importance and policy which are in need of vindication by

20   litigation, presents the necessity of enforcement of said issues and rights resulting from special

21   burdens which fall on plaintiff, and will benefit the health and safety of the community.

22        78.    Plaintiff City of Modesto Redevelopment Agency is entitled to recover from

23   defendants, and each of them, all costs presently incurred or which may be incurred in

24   investigating and verifying the contamination at the sites, for past and future costs to remediate

25   the sites.  Plaintiff is also entitled to all available remedies as described in Title 4, Chapter 12,

26   Article 2, of the Modesto Municipal Code, for attorneys' fees and interest, and for other

27   response costs and expenses.  The exact amount owing to plaintiff will be determined at trial

28   according to proof.  Plaintiff The People seeks the abatement and injunction of the nuisance

1    and all legally available damages and costs, the value of which is within the jurisdiction of this

2    court.

3                              **EIGHTH CAUSE OF ACTION**

4            **(Public Nuisance *Per Se* by All Plaintiffs Against All Defendants)**

5            79.      Plaintiffs reallege paragraphs 1 through 78 of this complaint and incorporates

6    them herein by reference.

7            80.      Plaintiffs allege that the negligent, reckless, intentional and ultrahazardous

8    activity of defendants, and each of them, which has resulted in contamination of plaintiff's

9    project area, as well as the municipal groundwater supply underlying the project area, and

10   constitutes a public nuisance, is a violation of California Water Code sections 13050(m),

11   13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, and

12   California Fish and Game section 5650, the purpose of which are to set a standard of care or

13   conduct to protect plaintiff and all persons or property within its jurisdiction, as well as the

14   environment, from the type of improper activities engaged in by defendants, and each of them.

15   Therefore, such improper activities and violations constitute a public nuisance *per se*.

16           81.      Defendants, and each of them, have failed to comply with the state law as

17   detailed above.  As a direct and proximate result of the public nuisance *per se* created by

18   defendants, and each of them, plaintiff has suffered damages as previously described herein,

19   including other consequential, incidental and general damages to be proven at trial.

20           82.      Section 731 of the California Code of Civil Procedure authorizes plaintiffs to

21   bring a civil action to abate or enjoin a public nuisance.

22           83.      Plaintiffs, and each of them, request that the public nuisance, as described in

23   this Complaint, be enjoined or abated.

24                              **NINTH CAUSE OF ACTION**

25           **(Response Costs Under California Superfund Act, Health and Safety Code §§ 25300
              et seq., by Plaintiff Modesto RDA Against All Defendants)**

26
27           84.      Plaintiff realleges paragraphs 1 through 83 of this complaint and incorporates

     them herein by reference.
28

85.    Section 25323.5(a) of the California Health and Safety Code defines a person who is liable under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("California Superfund"). Defendants, and each of them, are "responsible parties" under California Superfund and liable to plaintiff for response costs and other damages.

86.    All of the contaminants that defendants disposed of and released into the plaintiff's project area and the municipal groundwater supply constitute substances specifically listed and designated as "hazardous substances" within the meaning of California Health and Safety Code section 25316.

87.    The premises and buildings within plaintiff's project area each constitute a "facility" under California Superfund.

88.    As a proximate cause of defendants' release of hazardous substances into the environment, including plaintiff's project area, and the municipal groundwater supply underlying the project area, plaintiff has had to incur necessary response costs, including attorneys' fees and expert witness fees, for which defendants are strictly liable pursuant to California Health and Safety Code section 25363. All of the costs plaintiff has incurred to remove and/or remediate the contamination at the premises have been in accordance with Chapter 6.8 of the Hazardous Substances Account Act. Notice of commencement of this action has been given to the Director of Toxic Substances Control pursuant to California Health and Safety Code section 25363(e).

89.    Plaintiff seeks contribution and/or indemnity for all response costs under California Health and Safety Code section 25363, which provides that any person who has incurred removal or remedial action costs may seek contribution or indemnity from any responsible party.

## TENTH CAUSE OF ACTION

**(Declaratory Relief Under California Superfund Act, Health and Safety Code Section 25300 et seq., by Plaintiff Modesto RDA Against All Defendants)**

90.    Plaintiff realleges paragraphs 1 through 89 of this complaint and incorporates them herein by reference.

91.     Because the extent and magnitude of the contamination at the premises is not fully known at this time, and the investigatory and remedial works are ongoing, plaintiff will incur necessary response costs, including but not limited to investigatory, remedial and removal expenses, attorneys' fees and interest in the future.

92.     Pursuant to California Health and Safety Code section 25363, plaintiff is entitled to a declaratory judgment establishing the liability of defendants, and each of them, for such response costs for the purpose of this and any subsequent action or actions to recover further response costs.

## ELEVENTH CAUSE OF ACTION

**(Ultrahazardous Activity by Plaintiff Modesto RDA Against the Retailer Defendants)**

93.     Plaintiff reallege paragraphs 1 through 92 above, and incorporates them herein by reference.

94.     The retailer defendants, and each of them, engaged in the ultrahazardous activity of using and then disposing of chlorinated solvents into open sewers and/or on the soil, notwithstanding the fact that chlorinated solvents are a serious and substantial risk of harm to health, including cancer, liver disease and death.  Chlorinated solvents further constitute a serious and substantial toxic contamination which renders water unsuitable for drinking and contaminates sewers and soil.  The use and disposal of chlorinated solvents is unsafe and harmful, even though the utmost care is utilized in the use and disposal of chlorinated solvents.

95.     As a direct result of this ultrahazardous activity, the project area has been contaminated, resulting in the alleged damages sustained by plaintiff.

## TWELFTH CAUSE OF ACTION

**(Cost Recovery under the Polanco Redevelopment Act, Health and Safety Code Section 33459 et seq., by Plaintiff Modesto RDA Against All Defendants)**

96.     Plaintiff realleges paragraphs 1 through 95 above, and incorporates them herein by reference.

97.     Releases of PCE, TCE, and their respective degradation products listed as "hazardous substance(s)," as that term is defined in Health and Safety Code section 33459(c),

1    occurred inside the project area during the time when defendants committed the acts described

2    in this Complaint.

3        98.    Plaintiff is informed and believes that defendants, and each of them, are

4    "responsible parties" as that term is defined in Health and Safety Code section 33459(h).

5        99.    Pursuant to its authority under Health and Safety Code section 33459 et seq.,

6    plaintiff has issued Corrective Action Notices to defendants, and each of them, for the

7    hazardous substance releases inside the project area.   Defendants have failed to comply with

8    the requirements of said notices and the requirements of California Health and Safety Code

9    section 33459 et seq.

10       100.   The project area is, and at all relevant times has been, under plaintiff's

11   jurisdiction.

12       101.   Plaintiff has undertaken action to investigate, remedy and/or remove the

13   releases of hazardous substances, which actions are continuing and are not completed.

14       102.   Plaintiff has incurred and is continuing to incur investigation, remedial and/or

15   removal costs in response to the releases of hazardous substances inside the project area, which

16   costs were incurred in accordance with applicable procurement procedures.

17       103.   Plaintiff has complied with the provisions of Health and Safety Code

18   section 33459.1(a) concerning notification to local health and building departments and the

19   appropriate oversight agency.  Plaintiff has obtained and/or is obtaining cleanup guidelines and

20   necessary approvals from all appropriate regulatory agencies to remedy and/or remove the

21   releases of hazardous substances on, under, or from property within the project area.

22       104.   To date, the response actions taken by plaintiff were deemed by it to be

23   consistent with the requirements of Health and Safety Code section 33459.1(a)(1) and

24   necessary to remedy or remove releases of hazardous substances on, under, or from property

25   within the project area.

26       105.   Plaintiff is entitled to recover from defendants, and each of them, all costs

27   presently incurred or which may be incurred by plaintiff in investigating and verifying the

28   contamination in the project area, for past and future costs to remedy and/or remove the

28

1    hazardous substances from the project area, for attorneys' fees and interest, and for other costs

2    and expenses.  The exact amount owing to plaintiff will be determined at trial according to

3    proof.

4        **WHEREFORE**, plaintiff requests judgment against defendants, and each of them, for:

5        1.    Compensatory damages, according to proof;

6        2.    Punitive damages against the chlorinated solvent manufacturer defendants,

7    distributor defendants, and chlorinated solvent equipment manufacturer defendants, in an

8    amount sufficient to punish and to deter defendants from ever committing the same or similar

9    acts;

10       3.    All available remedies as described in Title 4, Chapter 12, Article 2, of the

11   Modesto Municipal Code;

12       4.    For declaratory relief and orders as to defendants' liability to plaintiff for the

13   costs and expenses as set forth in the tenth cause of action herein;

14       5.    For relief and orders of abatement or enjoinder of nuisance as set forth in the

15   seventh and eight causes of action herein;

16       6    For litigation expenses, including attorneys' fees;

17       7.    For costs of suit incurred herein, and prejudgment interest to the full extent

18   permitted by law; and

19       8.    For such other and further relief as the court may deem just and proper.

20   Dated: January 4 , 2002     **MILLER, SHER & SAWYER**
A Professional Corporation

By:     _____

A. CURTIS SAWYER, JR.
Attorneys for Plaintiffs
CITY OF MODESTO REDEVELOPMENT
AGENCY; and THE PEOPLE OF THE STATE
OF CALIFORNIA EX REL THE CITY
ATTORNEY OF THE CITY OF MODESTO

## PROOF OF SERVICE BY MAIL

I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 100 Howe Avenue, Suite S-120, Sacramento, California 95825, which is located in the county in which this mailing occurred. I am familiar with my office's business practice for collection and processing of correspondence for mailing with the United States Postal Service, and under such practice the correspondence would be deposited with the United States Postal Service, postage pre-paid, the same day in the ordinary course of business.

On January 4, 2002, I served **FOURTH AMENDED COMPLAINT FOR TOXIC TORT DAMAGES AND OTHER RELIEF RE: (1) STRICT LIABILITY; (2) NEGLIGENCE; (3) NEGLIGENCE *PER SE*; (4) CONTINUING TRESPASS; (5) PRIVATE NUISANCE; (6) PRIVATE NUISANCE *PER SE*; (7) PUBLIC NUISANCE; (8) PUBLIC NUISANCE *PER SE*; (9) RESPONSE COSTS UNDER CALIFORNIA SUPERFUND ACT; (10) DECLARATORY RELIEF UNDER CALIFORNIA SUPERFUND ACT; (11) ULTRAHAZARDOUS ACTIVITY; AND (12) COST RECOVERY UNDER POLANCO REDEVELOPMENT ACT** on the following persons or parties by placing a true copy thereof in a sealed envelope, showing the addresses set forth below, for collection and deposit in the United States Postal Service on that date following ordinary business practices:

See Attached List

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 4, 2002, at Sacramento, California.

LORI FERGUSON

1 | Duane C. Miller, #57812

Victor M. Sher, #96197

2 | A. Curtis Sawyer, Jr., #101324

**MILLER, SHER & SAWYER**

3 | A Professional Corporation

100 Howe Avenue, Suite S-120

4 | Sacramento, California  95825

Telephone:  (916) 924-8600

5 | Facsimile:  (916) 924-3426

6 | Mike Milich, Esq.

City Attorney

7 | **CITY OF MODESTO**

Post Office Box 642

8 | Modesto California  95354

Telephone:  (209) 577-5284

9 |

10 | Attorneys for Plaintiffs

CITY OF MODESTO; CITY OF

MODESTO SEWER DISTRICT NO. 1; and

11 | THE PEOPLE OF THE STATE OF CALIFORNIA

EX REL THE CITY ATTORNEY OF

12 | THE CITY OF MODESTO

Exempt from Filing and
Motion Fees
[Govt. Code, § 6103]

13 |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14 |

**IN AND FOR THE COUNTY OF SAN FRANCISCO**

15 |

| | |
|---|---|
| CITY OF MODESTO; CITY OF MODESTO SEWER DISTRICT NO. 1; and THE PEOPLE OF THE STATE OF CALIFORNIA EX REL THE CITY ATTORNEY OF THE CITY OF MODESTO | Case No. 999643 |
| Plaintiffs, | **THIRD AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF (SOLVENT CONTAMINATION):** (1) STRICT LIABILITY; (2) NEGLIGENCE; (3) NEGLIGENCE *PER SE*; (4) CONTINUING TRESPASS; (5) PRIVATE NUISANCE; (6) PRIVATE NUISANCE *PER SE*; (7) PUBLIC NUISANCE; (8) PUBLIC NUISANCE *PER SE*; (9) RESPONSE COSTS UNDER CALIFORNIA SUPERFUND ACT; (10) DECLARATORY RELIEF UNDER CALIFORNIA SUPERFUND ACT; (11) ULTRAHAZARDOUS ACTIVITY; AND (12) UTILITY TAMPERING |
| v. | |
| THE DOW CHEMICAL COMPANY; E.I. DUPONT DE NEMOURS AND COMPANY; M.B.L., INC.; R.R. STREET & CO., INC.; VULCAN MATERIALS COMPANY; PPG INDUSTRIES, INC.; WASHEX MACHINERY OF CALIFORNIA, INC.; ACME CLEANERS; MODERNISTIC CLEANERS; MODESTO STEAM LAUNDRY & CLEANERS, INC.; HALFORD CLEANERS; SAV-ON MACHINERY COMPANY, INC.; OCCIDENTAL CHEMICAL CORPORATION [DOE 1]; STAUFFER CHEMICAL COMPANY [DOE 2]; | **[FILED BY FACSIMILE]**

JAN   9 2002 |

| | |
|---|---|
| 1 | FULLER SUPPLY COMPANY |
| | [DOE 251]; GOSS JEWETT CO. OF |
| 2 | NORTHERN CALIFORNIA; [DOE 252]; |
| | WORKROOM SUPPLY INC. [DOE 253]; |
| 3 | ECHCO SALES CO. [DOE 254]; |
| | WAMAX CORPORATION, AKA |
| 4 | WASHEX MACHINERY |
| | CORPORATION [DOE 501]; WHITE |
| 5 | CONSOLIDATED INDUSTRIES, INC. |
| | [DOE 502]; HOYT CORPORATION |
| 6 | [DOE 503]; MARVEL |
| | MANUFACTURING [DOE 504]; |
| 7 | AMERICAN LAUNDRY MACHINE, |
| | FORMERLY A DIVISION OF McGRAW |
| 8 | EDISON CO. [DOE 505]; AMERICAN |
| | LAUNDRY MACHINERY, INC. D/B/A |
| 9 | AJAX MANUFACTURING DIVISION & |
| | MARTIN EQUIPMENT [DOE 506]; |
| 10 | BOEWE PASSAT, N/K/A BOWE |
| | PERMAC, INC. [DOE 507]; VIC |
| 11 | MANUFACTURING COMPANY |
| | [DOE 508]; LCI MACHINE [DOE 509]; |
| 12 | MCGRAW EDISON COMPANY, |
| | INDIVIDUALLY AND DBA AMERICAN |
| 13 | LAUNDRY MACHINERY [DOE 510]; |
| | and DOES 3 through 1,000, inclusive, |
| 14 | |
| | Defendants. |
| 15 | |

16      Plaintiffs allege that at all relevant times:

17      ## I. THE PARTIES

18      **A.      The Plaintiffs**

19      1.      Plaintiff, the City of Modesto ("Modesto"), is a public and municipal entity

20      located in Stanislaus County, California. Modesto is a charter city. Modesto owns, operates,

21      maintains, supervises, and/or controls the sewer and water system, including, but not limited

22      to, all wells, sewers, pipes, connectors, transmission facilities, sewage and water purification

23      facilities, related and associated equipment, appurtenances, real property and easements,

24      facilities, soil and groundwater ("sewer and water system").

25      2.      Plaintiff, City of Modesto Sewer District No. 1 ("Sewer District"), is a public

26      agency which also jointly owns, operates, maintains, supervises, and/or controls the sewer

27      system. Modesto and the Sewer District will be collectively referred to as "plaintiffs."

28      3.      Generally, plaintiffs allege that its sewer and water system is contaminated with

2

Third Amended Complaint for Damages and Other Relief (Solvent Contamination)

1 | toxic chlorinated solvents as a direct result of defendants' negligent conduct in manufacturing,

2 | distributing, using, controlling, and disposing of chlorinated solvents, and the equipment

3 | designed to use chlorinated solvents, which caused chlorinated solvents to contaminate

4 | plaintiffs' sewer and water system.

5 |     4.    Plaintiff The People of the State of California Ex Rel the City Attorney of the

6 | City of Modesto is the Modesto City Attorney's office acting in the name of the people of the

7 | State of California ("The People").  Plaintiff The People is asserting claims only in the seventh

8 | and eighth causes of action herein, and not in the remaining causes of action stated in this

9 | complaint.

10 |     **B.**    **The Chlorinated Solvent Manufacturer Defendants**

11 |     5.    Defendant The Dow Chemical Company ("Dow") is a Delaware corporation

12 | with its principal place of business located in Midland, Michigan.

13 |     6.    Defendant E.I. Dupont De Nemours and Company ("Dupont") is a Delaware

14 | corporation with its principal place of business in Wilmington, Delaware.

15 |     7.    Defendant PPG Industries, Inc. ("PPG") is a Pennsylvania corporation with its

16 | principal place of business in Pittsburgh, Pennsylvania.

17 |     8.    Defendant Vulcan Materials Company ("Vulcan") is a New Jersey corporation

18 | with its principal place of business in Homewood, Alabama.

19 |     9.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

20 | under the fictitious names of DOES 1 through 250, inclusive.  Since plaintiffs filed the original

21 | Complaint herein, the following DOE defendant(s) have been identified and substituted in this

22 | action:  Occidental Chemical Corporation [DOE 1]; and Stauffer Chemical Company [DOE 2].

23 |     10.    Defendants Dow, Dupont, PPG, Vulcan, and DOES 1 through 125, and each of

24 | them:  (1) manufactured, distributed, transported, packaged, sold and/or disposed of toxic

25 | chlorinated solvents called perchloroethylene ("PERC") and/or trichloroethylene ("TCE").

26 | PERC and TCE, and their degradation products and ingredients, are referred to collectively as

27 | "chlorinated solvents" in the State of California and/or were involved in the manufacture of

28 | equipment sold in the State of California specifically designed to store, use, process, and

1 | dispose of chlorinated solvents; (2) DOES 126 through 250, and each of them, manufactured,

2 | distributed, transported, packaged, sold and/or disposed of TCE in the State of California;

3 | (3) defendants Dow, Dupont, Occidental, PPG, Vulcan, and DOES 1 through 250, and each of

4 | them, were legally responsible for and committed each of the tortious and wrongful acts

5 | alleged in this Complaint; and (4) in doing the tortious and wrongful acts alleged in the

6 | Complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner, agent,

7 | alter ego, principal, successor-in-interest, surviving corporation, fraudulent transferee,

8 | fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor

9 | of each of the remaining DOE and named defendants.

10 |      11.    Each of the defendants named in paragraphs 1 through 10 above, and DOE

11 | defendants 1 through 250, will be collectively referred to as the "manufacturer defendants" or

12 | "manufacturers."

13 |      **C.**    **Distributor Defendants**

14 |      12.    Defendant M.B.L., Inc. ("MBL") is a California corporation with its principal

15 | place of business in Santa Clara, California.

16 |      13.    Defendant R.R. Street & Co. ("Street") is a corporation with its principal

17 | place of business in Naperville, Illinois.

18 |      14.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

19 | herein under the fictitious names of DOES 251 through 500, inclusive.  Since plaintiffs filed

20 | the original Complaint herein, the following DOE distributor defendants have been identified

21 | and substituted in this action: Fuller Supply Company [DOE 251]; Goss Jewett Co. of

22 | Northern California [DOE 252]; Workroom Supply, Inc. [DOE 253]; and Echco Sales Co.

23 | [DOE 254].

24 |      15.    MBL, Street, and DOES 251 through 500 ("distributor defendants"), and each

25 | of them: (1) purchased chlorinated solvents from one or more of the manufacturer defendants,

26 | and then resold the chlorinated solvents in the State of California to Modesto dry cleaners,

27 | including one or more of the retailer defendants; (2) distributed, designed, assembled,

28 | maintained, controlled, operated and/or repaired equipment parts, replacement parts, and

1  appurtenances, including, but not limited to, dry cleaning equipment in the State of California

2  specifically designed for the use, application, and disposal of chlorinated solvents by Modesto

3  dry cleaners, including the retailer defendants; (3) would engage in service visits and

4  inspections on the premises of Modesto dry cleaners, including the dry cleaning defendants for

5  the purposes of promoting their dry cleaning solvents and dry cleaning equipment products and

6  testing and inspecting Modesto dry cleaner equipment which included witnessing dry cleaner's

7  disposal of chlorinated solvents; (4) were legally responsible for and committed each of the

8  tortious and wrongful acts alleged in this Complaint; and (5) in doing the tortious and

9  wrongful acts alleged in the Complaint, acted in the capacity of co-conspirator, aider, abettor,

10  joint venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent

11  transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or

12  indemnitor of each of the remaining DOE and named defendants.

13      16.    In addition to engaging in the distributor activities more fully described in

14  paragraph 15 above, DOES 400 through 500 also engaged in the manufacturing acts and

15  activities fully described in paragraph 10 above, which is incorporated in full herein.

16      **D.    Chlorinated Solvent Equipment Manufacturers**

17      17.    Defendant Sav-on Machinery Company, Inc. ("Sav-On") has sold chlorinated

18  solvent equipment for the past twenty (20) years to dry cleaners in Northern California.  At all

19  relevant times, the principal place of business of Sav-On is San Francisco, California.

20  Defendant Sav-On has been dismissed from this action without prejudice.

21      18.    Defendant Washex Machinery of California, Inc. ("Washex") is a corporation

22  with its principal place of business in Burbank, California.

23      19.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

24  herein under the fictitious names of DOES 501 through 750, inclusive ("chlorinated solvent

25  equipment manufacturers").  Since plaintiffs filed the original Complaint herein, the following

26  DOE chlorinated solvent equipment manufacturers have been identified and substituted in this

27  action:  Wamax Corporation, aka Washex Machinery Corporation [DOE 501]; White

28  Consolidated Industries, Inc. [DOE 502]; Hoyt Corporation [DOE 503]; Marvel

1  Manufacturing [DOE 504]; American Laundry Machine, Formerly a Division of McGraw

2  Edison Co. [DOE 505]; American Laundry Machinery, Inc. d/b/a Ajax Manufacturing

3  Division & Martin Equipment [DOE 506]; Boewe Passat, n/k/a Bowe Permac, Inc.

4  [DOE 507]; Vic Manufacturing Company [DOE 508]; LCI Machine [DOE 509]; and McGraw

5  Edison Company, individually and dba American Laundry Machinery [DOE 510].

6       20.    Defendants Sav-On, Washex, and DOES 501 through 750, and each of them:

7  (1) manufactured, distributed, designed, assembled, maintained, supervised, controlled, sold,

8  operated and/or repaired equipment, parts, and appurtenances, including, but not limited to, dry

9  cleaning equipment, in the State of California specifically designed for the storage, application,

10 and disposal of chlorinated solvents by the retailer defendants and Modesto dry cleaners that

11 have contributed to the alleged contamination ("chlorinated solvent equipment"); (2) were

12 legally responsible for and committed each of the tortious and wrongful acts alleged in this

13 complaint; and (3) in doing the tortious and wrongful acts alleged in the complaint, acted in the

14 capacity of co-conspirator, aider, abettor, joint venturer, partner, agent, principal, successor-in-

15 interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller,

16 alter ego, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and

17 named defendants.

18      21.    In addition to the chlorinated solvent equipment activities alleged in

19 paragraph 20 above, DOE defendants 650 through 750 also engaged in the chlorinated solvent

20 manufacturing acts and activities alleged in paragraph 10, which is incorporated herein by

21 reference.

22     **E.**    **The Retailer Defendants**

23      22.    Defendant Acme Cleaners is a business organization (form unknown) with its

24 principal place of business located in the City of Modesto, California.

25      23.    Defendant Modernistic Cleaners ("Modernistic") is a business organization

26 (form unknown) with its principal place of business located in the City of Modesto, California.

27      24.    Defendant Modesto Steam Laundry & Cleaners, Inc. is a business organization

28 (form unknown) with its principal place of business located in the City of Modesto, California.

1      25     Defendant Halford Cleaners ("Halford") is a business organization

2  (form unknown) with its principal place of business located in the City of Modesto, California.

3      26     Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

4  herein under the fictitious names of DOES 751 through 1,000, inclusive.  Plaintiffs'

5  investigation and testing of the sewer systems, soils and groundwater is continuing.

6      27.    The defendants named in paragraphs 22 through 25 above, and DOES 751

7  through 1,000, and each of them:  (1) owned and/or operated retail dry cleaners, laundry

8  facilities, real property, and/or some other business or personal capacity involving the use of

9  chlorinated solvents; (2) were legally responsible for and committed each of the tortious and

10  wrongful acts alleged in this complaint; and (3) in doing the tortious and wrongful acts alleged

11  in the complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer, agent,

12  principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent

13  transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of each of

14  the remaining DOE and named defendants.

15      28     Each of the defendants named in paragraphs 22 through 25, and DOE

16  defendants 751 through 1,000, are collectively referred to as the "retailer defendants."

17      **II.  BACKGROUND OF CHLORINATED SOLVENTS**

18      29.    Perchloroethylene ("PERC") and trichloroethylene ("TCE") are toxic organic

19  compounds.  PERC and TCE have been used as cleaning solvents.  Dry cleaning machines

20  were designed and developed to use PERC and TCE.  PERC was the most widely used dry

21  cleaning chemical in the United States.  PERC is also referred to as PCE, carbon dichloride,

22  and 1,1,2,2-tetrachloroethylene.  In soil, PERC can be transformed by biological degradation

23  and by reductive dehalogenation into TCE, vinyl chloride, and trichloromethane ("TCA").

24      30     In or about the 1940's, the defendants knew, or should have known, that PERC

25  could be absorbed in the lungs, skin, and gastrointestinal tract which could cause severe

26  damage to the liver, kidneys, central nervous system and other toxic effects.  PERC is a known

27  carcinogen which causes genetic damage.  The defendants also knew, or should have known,

28

1    that PERC and its degradation products and ingredients create a substantial risk of harm to

2    groundwater and soil.

3        31.    Similarly, TCE, including its degradation products and ingredients, is a known

4    carcinogen which can cause cancer, liver and kidney damage and death.  Since the early

5    1900's, among other things, TCE was marketed as a chemical to extract soybean meal for use

6    as cattle feed.  This use of TCE was discontinued in the 1950's after numerous reports of

7    widespread hemorrhagic cattle disease and deaths directly linked to the ingestion of TCE.

8        32.    Commencing in or about the 1940's, there were published reports of

9    groundwater contamination caused by TCE which rendered water unfit for drinking.

10    Defendants knew, or should have known, that TCE and its degradation products and

11    ingredients create a substantial risk of harm to the environment, groundwater, and soil.

12        33.    Notwithstanding their knowledge of health and environmental hazards of

13    chlorinated solvents, the manufacturing defendants, chlorinated solvent equipment defendants,

14    and distributor defendants designed, manufactured, marketed, and/or supplied chlorinated

15    solvents and/or chlorinated solvent dry cleaning equipment and/or replacement parts to retail

16    dry cleaners, including the retailer defendants.  The equipment was specifically designed to

17    store, use, process, and dispose of chlorinated solvents.  Defendants were aware of the typical

18    use, waste, and disposal practices resulting from the intended use of their equipment, including

19    the customary practice of dumping chlorinated solvent wastewater and muck into the public

20    sewer systems, and the habitual problem with multiple leaks of chlorinated solvents into the

21    environment during the foreseeable and expected use of chlorinated solvent equipment.

22        34.    Notwithstanding the fact that the manufacturer defendants, the chlorinated

23    solvent equipment defendants, and distributor defendants knew, or should have known, of the

24    serious health hazards caused by the use and disposal of chlorinated solvents and that

25    chlorinated solvents pass through sewer pipes and concrete floors, thereby contaminating soil

26    and migrating into groundwater, defendants negligently and carelessly:  (1) issued instructions

27    that chlorinated solvents could be discharged into the sewers, permitting chlorinated solvents

28    to contaminate the sewer system and surrounding property; and/or (2) designed and operated

1    dry cleaning machines, appurtenances, and other types of machinery designed to be used with

2    chlorinated solvents to facilitate and promote the disposal of chlorinated solvents into the

3    sewer system and/or which failed to adequately prevent and/or minimize the loss of

4    chlorinated solvents; and/or (3) failed to recall and/or warn the users of the negligently

5    designed chlorinated solvent equipment of the dangers of groundwater contamination as a

6    result of chlorinated solvents disposal in the sewer system; and/or (4) further failed and refused

7    to issue the appropriate warnings and/or recalls to the users of chlorinated solvents regarding

8    the proper means of use and disposal of this toxic chemical, notwithstanding the fact that the

9    respective defendant knew the identity of the purchaser of the chlorinated solvent equipment

10   and/or chlorinated solvents.

11        35. In addition, the manufacturer defendants and distributor defendants, and each of

12   them: (a) knew, or should have known, that dry cleaners, including the retailer defendants and

13   other Modesto dry cleaners which contributed to the chlorinated solvent contamination, were

14   foreseeable users of chlorinated solvents and were using the chlorinated solvents in a

15   foreseeable manner; (b) knew, or should have known, that the chlorinated solvents were

16   dangerous to the environment or health if deposited directly on the ground, drained or flushed

17   into the sewer system, or by permeating unprotected concrete floors under dry cleaning

18   equipment; (c) knew, or should have known, that Modesto dry cleaners, including the retailer

19   defendants, foreseeably lacked knowledge of these dangers; (d) failed to warn the Modesto dry

20   cleaners, including the retailer defendants, of the dangers and/or affirmatively instructed them

21   to engage in such dangerous conduct; and (e) as a result, the Modesto dry cleaners, including

22   the retailer defendants, failed to guard against the alleged contamination which resulted in

23   harm to the plaintiffs.

24        36. In addition, notwithstanding the manufacturing defendants' and distributor

25   defendants' knowledge of the severe environmental and health dangers and hazards posed by

26   the use and disposal of chlorinated solvents on the ground and in sewers, these defendants: (1)

27   instructed, directed, and recommended Modesto dry cleaners, including the retailer defendants,

28   to dispose of chlorinated solvents onto the ground and into the sewers; (2) instructed, directed,

9

1    and recommended Modesto dry cleaners, including the retailer defendants, to maintain,

2    operate, design, and construct the dry cleaning equipment to drain chlorinated solvents into the

3    sewer systems and/or operate and maintain the dry cleaning equipment by means of physically

4    disposing chlorinated solvent waste as part of the operation of the dry cleaning equipment into

5    the sewers or soil which caused substantial and serious harm to the property of others,

6    including the plaintiffs.

7         37. Chlorinated solvent products are fungible. The manufacturer and distributor

8    defendants concluded that it was not enough to simply sell chlorinated solvents to dry cleaners

9    in order to remain competitive. In order to compete for larger shares of the chlorinated solvent

10    market, the manufacturer and distributor defendants, and each of them, would routinely and

11    frequently advise, instruct, assist, recommend and/or participate in the operation, maintenance,

12    inspection and/or testing of dry cleaners, including the retailer defendants and other Modesto

13    dry cleaners, in order to promote the purchase of their chlorinated solvent products and in

14    order to create brand loyalty. These activities included personal visits by manufacturer and

15    distributor representatives to Modesto dry cleaners and written directions, instructions, and

16    brochures on dry cleaning equipment maintenance and operations.   Each of the manufacturer

17    and distributor defendants routinely engaged in these same and similar practices. As part of

18    these activities and practices, the manufacturer and distributor defendants, and each of them,

19    instructed, directed and/or recommended to Modesto dry cleaners, including the retailer

20    defendants, to dispose of chlorinated solvents on the ground or in the drain, including using the

21    sewer system and dumping solvents on the ground as a method of disposal.

22         38. For example, in a 1966 memorandum on chlorinated solvent marketing, defendant

23    E.I. DuPont De Nemours and Company stated that "PERK is PERK [sic]." DuPont concluded

24    that PERC is a fungible product, and that the mere sale of PERC to customers is insufficient to

25    gain a greater share of the competitive market because its salesmen and distributors would be

26    perceived as mere "'order takers.'" Therefore, in order to compete with other PERC

27    manufacturers and distributors, its authorized representatives became personally involved in

28    the dry cleaning business of its customers through regular and frequent personal calls to the

1  dry cleaners by providing written materials regarding the promotion, operation, and

2  maintenance of dry cleaning equipment, and by supplying items of "genuine use" to dry

3  cleaners, including "solvent resistant" gloves and bags.  Each of the solvent manufacturers and

4  distributors were engaged in these same or similar practices by routinely and frequently

5  sending personal representatives to the premises of Modesto dry cleaners, including the dry

6  cleaner defendants, and, among other things: (1) regularly observing the dry cleaning

7  operations and practices, including disposal methods, of Modesto dry cleaners; (2) issuing

8  brochures, newsletters and written and/or verbal directions and/or instructions for the

9  operation, maintenance, and use of dry cleaning equipment and/or dry cleaning solvents; (3)

10  testing perchloroethylene at the dry cleaners; (4) unloading and storing perchloroethylene at

11  the Modesto dry cleaners; and (5) entering into exclusive distribution agreements between the

12  manufacturer and distributor defendants which required the distributors to act as

13  representatives of the respective manufacturers in doing these alleged acts.

14      39.  Examples of these practices include, but are not limited to, the following:

15      (a)  Dow advised, recommended and/or instructed dry cleaners to operate and maintain

16  their dry cleaning equipment to discharge separator wastewater which contained chlorinated

17  solvent contamination in such a manner to maximize a "free unimpeded water flow to the

18  drain . . ."

19      (b)  Defendant Dow instructed dry cleaners that "small amounts [of chlorinated

20  solvents] may be transported to an area where it can be placed on the ground . . ."

21      (c)  In a 1991 internal Vulcan and R.R. Street memorandum entitled "PERC Removal

22  from Water Saturated With PERC Study," R.R. Street/Vulcan concludes that significant

23  amounts of PERC remain in wastewater generated by the dry cleaning process which was

24  deposited into sewers.

25      (d)  Defendant R.R. Street instructed dry cleaners that "[t]he residue from distillations

26  of perchloroethylene may be poured on dry sand, earth, or ashes . . ."

27      (e)  Defendant MBL, Inc. agreed to "disseminate to all customers" Dow publications

28  regarding the handling of Dow perchloroethylene.

1     (f)  Defendant R.R. Street provided "instructions for building a device for the purpose

2 of detecting PERC escaping with the water from a water separator entitled "Are You Losing

3 PERC Down the Drain?"

4     (g)  PPG Industries instructed dry cleaners to dispose perchloroethylene "to a sanitary

5 sewer or bury in chemical landfill."

6     (h)  The manufacturer defendants were members of various trade groups including the

7 Manufacturing Chemists Association, Inc., which prepared written instructions which the

8 manufacturing defendants and distributor defendants supplied to Modesto dry cleaners which

9 instruct that "small amounts [of chlorinated solvents] . . . can be placed on the ground."

10     (i)  In addition, (a) the manufacturer defendants and distributor defendants of

11 chlorinated solvents provided direct technical advice and service to the retailer defendants and

12 Modesto dry cleaners relating to waste disposal in which the manufacturer defendants and

13 distributor defendants advised the retailer defendants and Modesto dry cleaners to dispose of

14 chlorinated solvents containing waste and separator water into the sewer or on the ground; (b)

15 the retailer defendants and Modesto dry cleaners relied upon the advice of the manufacturer

16 defendants and distributor defendants with regard to the operation of their facility and with

17 regard to the disposal advice and service; (c) employees and agents of the manufacturer

18 defendants and distributor defendants of chlorinated solvents had access to the facilities of the

19 retailer defendants and Modesto dry cleaners; and (d) employees and agents of the

20 manufacturer defendants and distributor defendants of chlorinated solvents performed tests on

21 chlorinated solvents containing wastes, and that process resulted in the release of chlorinated

22 solvents into the sewer and the environment causing the damage alleged herein.

23     (j) The manufacturer defendants set up, staffed, and directly controlled various trade

24 associations and distributor defendants for the study, distribution, marketing, and sale of

25 chlorinated solvents . Through these trade associations and the distributor defendants, the

26 manufacturer defendants exercised complete and direct control over the study, distribution,

27 marketing and sale of chlorinated solvents, and these trade associations and distributor

28 defendants acted as agents of the manufacturer defendants in studying, distributing, marketing,

1    and selling of chlorinated solvents. Through these trade associations and distributor

2    defendants, the manufacturer defendants knew of the toxicity and health and safety hazards

3    associated with chlorinated solvents and gave instructions and advice regarding the disposal of

4    chlorinated solvents that caused the release of chlorinated solvents into the environment. The

5    manufacturer defendants organized and created these trade association and distributor

6    defendants with the intent of shielding themselves from liability associated with their

7    knowledge and control over chlorinated solvent products and the associated releases of

8    chlorinated solvents.

9        40. The manufacturer, distributor, and chlorinated solvent equipment manufacturer

10   defendants also (1) encouraged dry cleaners to use chlorinated solvents without adequate

11   warnings, (2) agreed through trade associations to attack any regulation of chlorinated

12   solvents, and (3) promoted the unsafe and improper disposal of chlorinated solvents in order to

13   reduce the costs of its use and to increase the market share of chlorinated solvents over other

14   competing dry cleaning substances.

15          **III. CONTAMINATION OF THE SEWER AND WATER SYSTEM**

16       41.    As a direct result of the defendants' acts alleged in this Complaint, the sewer

17   and water system, including groundwater and improvements, have been contaminated, and will

18   continue to be contaminated, with chlorinated solvents which create a public health hazard

19   unless abated. As a direct and proximate result thereof, plaintiffs must initiate a remedial

20   program to assess, evaluate, investigate, monitor, remove, clean up, correct, and abate

21   chlorinated solvent contamination and to restore plaintiff's property at significant expense, loss

22   and damage. Costs incurred within the past three (3) years of the filing of the Complaint, or

23   that are to be incurred in the future, include: loss of use of property, property damage,

24   restoration costs incurred within the past three (3) years of the filing of the Complaint or that

25   are to be incurred in the future, delay damages, property devaluation, interim and permanent

26   remedial measures to control releases and potential releases of chlorinated solvents, cleanup

27   costs, potential installation and maintenance of interceptor wells, and water treatment facilities,

28   all in an amount in the many millions of dollars.

1

## FIRST CAUSE OF ACTION

2
3

**(Strict Liability by Plaintiffs Modesto and Sewer District Against the Manufacturer Defendants, Distributor Defendants, and Chlorinated Solvent Equipment Manufacturers)**

4     42.     Plaintiffs refer to paragraphs 1 through 41 above, and by this reference

5  incorporates them herein as though set forth in full.

6     43.     The manufacturer defendants, distributor defendants, and the chlorinated

7  solvent equipment manufacturers, and each of them, designed, manufactured, formulated,

8  packaged, distributed and/or sold products containing chlorinated solvents and/or equipment

9  specifically designed to store, use, process, and dispose of chlorinated solvents.

10     44.     The manufacturer defendants, distributor defendants, and chlorinated solvent

11  equipment defendants, and each of them, represented, asserted, claimed and warranted that

12  chlorinated solvents and/or chlorinated solvent equipment could be used in conformity with

13  accompanying instructions and labels in a manner which would not cause injury or damage.

14     45.     The manufacturer defendants, distributor defendants, and chlorinated solvent

15  equipment defendants, and each of them, knew, or should have known, that the chlorinated

16  solvents and/or chlorinated solvent equipment would be used without inspection for defects,

17  and if any inspection were performed, that the defects would not be discovered with the

18  exercise of reasonable diligence.

19     46.     These defendants, and each of them, designed, manufactured, formulated,

20  packaged, distributed, applied, disposed of and/or sold chlorinated solvents and/or the

21  chlorinated solvent equipment. Defendants knew, or should have known, that exposure to

22  chlorinated solvents would create risk of harms to human health and contaminate sewer, and

23  water systems.

24     47.     Chlorinated solvents are defective products because, among other things: (a)

25  chlorinated solvents cause extensive groundwater contamination, even when used in their

26  foreseeable and intended manner; (b) even at extremely low levels, chlorinated solvents render

27  drinking water unfit for purveying to consumers and create a public health hazard whenever

28  normal and necessary maintenance is performed on the sewer system, or otherwise adversely

1    impacts normal use of the sewer and water system; (c) chlorinated solvents pose a significant

2    threat to public health; (d)defendants failed to provide adequate warnings of the known and

3    foreseeable risks of chlorinated solvents; and (e) defendants failed to conduct adequate

4    scientific studies to evaluate the environmental fate and potential human health effects of

5    chlorinated solvents.

6        48.    At all relevant times the:

7            (a) chlorinated solvent equipment defendants were aware of the use of

8    chlorinated solvents in the dry cleaning process or as cleaning solvents;

9            (b) defendant chlorinated solvent equipment manufacturers were aware of the

10   typical waste and disposal practices resulting from the intended use of their equipment.

11   Despite such knowledge, these defendants designed their equipment in such a manner that

12   would result in spills, leaks, and/or discharge of chlorinated solvents during normal operations;

13           (c) defendants improperly designed their chlorinated solvent equipment by

14   failing to provide appropriate mechanisms to prevent and/or catch releases or spills of

15   chlorinated solvents and its by-products  for such equipment;

16           (d) defendants failed to design proper mechanisms which would

17   eliminate, prevent and/or treat contamination arising from the dry cleaning process such as

18   contamination from separator wastewater, spent filter cartridges, muck, and still bottoms;

19           (e) defendant chlorinated solvent equipment manufacturers knew, or should

20   have known, of appropriate equipment redesigns, retrofits, and/or modifications to protect

21   against environmental contamination associated with the use of such equipment, and

22   negligently and/or consciously disregarded this knowledge and failed to redesign, modify

23   and/or retrofit the subject equipment.  Safer alternative designs and cleaning processes were

24   scientifically feasible and economical;

25           (f) defendant manufacturers and distributors represented to the public and

26   regulatory authorities that the products they sold would degrade into harmless substances and

27   would not cause contamination.  At the time said representations were made, said defendants

28

1  knew, or should have known, these representations were false, misleading, and/or that there

2  was no reasonable basis to believe that they were true; and

3          (g) when chlorinated solvents were applied and disposed of pursuant to the

4  defendant manufacturers' recommended application and disposal procedures set forth in

5  product brochures, trade group publication funded by defendants, seminars, meetings,

6  advertisements, oral statements and by other means, chlorinated solvents contaminated the

7  sewer systems because of defendant manufacturers' failure to recommend adequate and proper

8  safeguards to avoid or prevent contamination of the sewer system.

9          49.    The chlorinated solvent equipment is a defective product because among other

10  things: (1) the chlorinated solvent equipment causes extensive contamination, even when used

11  in a foreseeable and intended manners; (2) at extremely low levels, chlorinated solvents

12  contaminate sewer and water systems; (3) the use of chlorinated solvent equipment poses a

13  significant threat to public health; (4) defendants failed to provide adequate warnings of the

14  known and foreseeable risk of the use of chlorinated solvent equipment; and (5) defendants

15  failed to conduct adequate scientific studies to evaluate the environmental fate and potential

16  human health effects of the use of chlorinated solvent equipment.

17          50.    The above-described defects in chlorinated solvents and chlorinated solvent

18  equipment existed when the chlorinated solvents and chlorinated solvent equipment left the

19  defendants' possession. The chlorinated solvents and chlorinated solvent equipment were used

20  in a manner in which they were foreseeably intended to be used.

21          51.    As a proximate and direct result of the defects alleged herein, the defendant

22  manufacturers, distributors, and chlorinated solvent equipment manufacturers, and each of

23  them, contaminated the sewer and water system, all to plaintiffs' damage in an amount within

24  the jurisdiction of this court.

25          52.    As a further direct and proximate result of the acts and omissions of the

26  defendants alleged herein, plaintiffs have been damaged because it has been required to obtain,

27  and will require, the services of engineers, hydrogeologists, contractors, and other

28  professionals to investigate and remedy the contamination problem.

1   53.    Plaintiffs are informed and believe and thereon allege that as a further direct

2   and proximate result of the acts and omissions of the defendants alleged herein, plaintiffs will

3   sustain substantially increased expenses and loss of the use of plaintiffs' property and sewer

4   and water system, all to plaintiffs' damage in an amount within the jurisdiction of this court.

5   Plaintiffs are also entitled to costs and prejudgment interest to the full extent permitted by law.

6   54.    The manufacturer, distributor, and chlorinated solvent equipment defendants

7   knew that it was substantially certain that their alleged acts and omissions described above

8   would cause serious injury and property damage, including the contamination of the sewer and

9   water system with chlorinated solvents.  Defendants committed each of the above-described

10  acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with

11  conscious disregard of the health and safety of others in at least the following respects:

12              (a)    Defendants knew chlorinated solvents would contaminate the sewer

13  system, groundwater, and public drinking water supplies.  Nonetheless, defendants instructed

14  chlorinated solvents users to dispose of chlorinated solvents into public sewers with conscious

15  disregard of the public health and safety.

16              (b)    Although defendants knew that chlorinated solvents were human

17  carcinogens and that chlorinated solvent equipment habitually leaked chlorinated solvents into

18  the environment, causing property damage, defendants individually and through trade

19  associates sought to suppress unfavorable publicity regarding chlorinated solvents,

20  manufactured and funded favorable scientific studies knowing they were biased and/or

21  meritless, and suppressed information regarding the hazards of chlorinated solvents from

22  regulators, all for the sake of profit.

23  55.    This conduct is reprehensible, despicable, and was performed with the intent to

24  induce reliance by a class of persons including their customers, the public, regulatory agencies

25  and plaintiffs on false representations, and to promote sales of chlorinated solvents and

26  chlorinated solvent equipment in conscious disregard of the known risks of injury to health and

27  property.  Defendants acted with willful and conscious disregard of the probable dangerous

28

17

1   consequences of that conduct and its foreseeable impact upon plaintiffs. Therefore, plaintiffs

2   request an award of punitive damages in an amount to punish defendants.

3                              **SECOND CAUSE OF ACTION**

4        **(Negligence by Plaintiffs Modesto and Sewer District Against All Defendants)**

5        56.    Plaintiffs reallege paragraphs 1 through 55, inclusive, of this complaint and

6   incorporate them herein by reference.

7        57.    Defendants had a duty to use due care in the design, manufacture, formulation,

8   handling, control, disposal, sale and labeling, use, instructions for use and disposal of

9   chlorinated solvents and/or chlorinated solvent equipment to prevent, and to the extent

10  feasible, to eliminate contamination of the sewer and water system with chlorinated solvents in

11  concentrations which may pose adverse health effects.

12       58.    The defendants so negligently, carelessly, and recklessly designed,

13  manufactured, formulated, handled, labeled, instructed, controlled and/or sold chlorinated

14  solvents and/or chlorinated solvent equipment, and so negligently, carelessly and recklessly

15  applied chlorinated solvents, disposed of chlorinated solvents, containers, and waste and/or

16  negligently recommended application and disposal techniques for chlorinated solvents that

17  they directly and proximately caused chlorinated solvents contamination of the sewer and

18  water system, resulting in the compensatory damages alleged in this complaint, and a punitive

19  damages award against defendants.

20                              **THIRD CAUSE OF ACTION**

21     **(Negligence *Per Se* by Plaintiffs Modesto and Sewer District Against All Defendants)**

22       59.    Plaintiffs reallege paragraphs 1 through 58, inclusive, of this complaint and

23  incorporate them herein by reference.

24       60.    Plaintiffs allege that the manufacturing defendants, chlorinated solvent

25  equipment manufacturers, distributor defendants, and retailer defendants negligently,

26  carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed,

27  controlled and/or sold chlorinated solvents and/or chlorinated solvent equipment, and so

28  negligently, carelessly and recklessly applied chlorinated solvents, disposed of chlorinated

                                        18

1 | solvents, containers, and waste and/or negligently recommended application and disposal
2 | techniques for chlorinated solvents that they directly and proximately caused contamination of
3 | the sewer and water system, and the municipal groundwater supply, in violation of California
4 | Water Code sections 13050(m), 13350(a), and 13387(a)(5), California Health and Safety Code
5 | sections 5411, 5411.5, and 117555, and California Fish and Game Code section 5650, the
6 | purpose of which are to set a standard of care or conduct to protect plaintiffs and all persons or
7 | property within its jurisdiction, as well as the environment, from the type of improper activities
8 | engaged in by defendants, and each of them.  Therefore, such improper activities and
9 | violations constitute negligence *per se*.  Plaintiffs' investigation and discovery are not yet
10 | complete, and therefore plaintiffs will seek leave of court to amend the complaint to allege
11 | additional violations or, in the alternative, give notice to defendants  of any additional statutory
12 | violations when determined.

13 | 61.    Defendants, and each of them, have failed to comply with state law as detailed
14 | above.  As a direct and proximate result of the negligence *per se* of defendants, and each of
15 | them, plaintiffs has suffered damages, as alleged in this Complaint, including consequential,
16 | incidental and general damages to be proven at trial.

17 | **FOURTH CAUSE OF ACTION**

18 | **(Continuing Trespass by Plaintiffs Modesto and Sewer District Against All Defendants)**

19 | 62.    Plaintiffs reallege paragraphs 1 through 61, inclusive, of this complaint and
20 | incorporate them herein by reference.

21 | 63.    Plaintiffs are the owners and/or actual possessors of the sewer and water
22 | system.

23 | 64.    The defendants so negligently, recklessly and/or intentionally failed to properly
24 | control, apply, use and/or dispose of chlorinated solvents that they directly and proximately
25 | caused chlorinated solvents to contaminate plaintiffs' possessory interests as follows:

26 | (a) The defendants participated in the use and disposal of chlorinated solvents
27 | by intentionally, recklessly, and/or negligently controlling the use and disposal (and providing
28 | instructions for the disposal) of chlorinated solvents by dry cleaning stores; intentionally,

19

1  recklessly, and/or negligently instructing dry cleaners about the purportedly proper disposal

2  methods for chlorinated solvents; and intentionally, recklessly, and/or negligently calibrating,

3  designing and manufacturing customers' chlorinated solvent equipment in such a manner that

4  chlorinated solvents were routinely disposed of into the project area on an ordinary basis.  As a

5  result of this activity, chlorinated solvents contaminated the sewer and water  system.

6          (b)  Defendant manufacturers, distributors, and chlorinated solvent equipment

7  manufacturers intentionally, recklessly, and/or negligently instructed end-users, including

8  retail dry cleaners, about the disposal of chlorinated solvents through informational brochures,

9  instructional seminars, trade organization brochures funded, published, and distributed by

10 defendants, product labels and other literature.  Said defendants recommended that chlorinated

11 solvents be dumped into the sewer system and/or dumped on the ground, notwithstanding that

12 said defendants knew, or should have known, that chlorinated solvents would contaminate the

13 water and soil and pose a risk to health.  As a result, when chlorinated solvents were disposed

14 of pursuant to the techniques recommended by said defendants, the chlorinated solvents

15 contaminated the property of plaintiffs which is part of plaintiffs's sewer and water system.  In

16 addition, the chlorinated solvent equipment manufacturers designed their equipment to directly

17 discharge chlorinated solvent waste into the sewer and/or instructed machine users to dispose

18 of chlorinated solvent waste into the sewer.

19          (c)  During this time, defendant manufacturers, distributors, and chlorinated

20 solvent equipment manufacturers (1) knew and/or reasonably should have known that

21 chlorinated solvents had caused environmental contamination, and (2) had not conducted

22 adequate testing to determine the environmental fate and potential human health effects of

23 chlorinated solvents.  Even though said defendants had sufficient information to determine that

24 chlorinated solvents posed a threat to the environment, they did not modify their chlorinated

25 solvent disposal instructions or provide appropriate advice, instruction or information to their

26 customers regarding proper disposal and use needed to avoid environmental contamination.

27          (d)  Each of the defendants knew, or should have known, to avoid cleaning or

28 rinsing empty chlorinated solvent containers and chlorinated solvent equipment residue and

1   muck into sewers and/or soil. These defendants knew, or should have known, that this practice
2   resulted in contamination. Despite these facts, defendants continued these negligent practices.

3              (e) Defendants knew, or should have known, that chlorinated solvents were
4   persistent, and that chlorinated solvents could contaminate soil and groundwater.

5       65.    The chlorinated solvent manufacturer defendants, the distributor defendants, the
6   chlorinated solvent equipment manufacturer defendants, and the retailer defendants were each
7   a substantial factor in bringing about the resulting contamination of plaintiffs' possessory
8   interests, and each of the defendants aided and abetted the continuing trespasses and are jointly
9   responsible for the injuries and damages caused to plaintiffs as alleged in this Complaint and
10  based on the following alleged conduct:

11             (a) The retailer defendants, and each of them, intentionally and carelessly
12  disposed of PERC waste into plaintiffs's sewer system, or by dumping toxic PERC waste onto
13  the ground, causing it to intrude upon, contaminate, and damage plaintiffs' possessory
14  interests;

15             (b) The chlorinated solvent equipment manufacturers manufactured, designed,
16  distributed, prepared and installed dry cleaning equipment and/or parts which defendants
17  knew, or should have known, would directly discharge and leak toxic PERC into the sewer
18  system and ground, and intrude upon, contaminate, and damage plaintiffs' possessory interests;

19             (c) The chlorinated solvent manufacturers, the distributor defendants, and the
20  chlorinated solvent equipment manufacturer defendants intentionally caused the retailer
21  defendants to dispose of the toxic chlorinated solvent waste by instructing, requesting and/or
22  inducing the retailer defendants to dump chlorinated solvent waste onto the ground, or
23  discharge chlorinated solvent waste directly into the sewer system, or pour chlorinated solvent
24  waste down the drain, which caused the toxic chlorinated solvent waste to intrude upon
25  plaintiffs' possessory interests and cause the alleged harm and damage; and

26             (d) At the time, the chlorinated solvent manufacturers, the distributor
27  defendants, and the chlorinated equipment manufacturer defendants intentionally instructed,
28  requested and/or induced the alleged tortious conduct by the retailer defendants, the

1  chlorinated solvent manufacturer defendants, the distributor defendants, and the chlorinated
2  solvent equipment manufacturer defendants knew, or should have known, of the conditions
3  under which the delicts were to be done, the toxicity of the chlorinated solvent waste, and the
4  consequences of the acts.  These defendants instructed, requested and/or induced the delicts
5  and were a substantial factor in causing the resulting contamination of plaintiffs' possessory
6  interests, and further aided and abetted the delicts, and are jointly liable with the retailer
7  defendants with respect to the injuries and damages sustained by plaintiffs.  Plaintiffs also seek
8  punitive damages against the  defendants.

9       66.      The chlorinated solvent contamination of the sewer and water system has varied
10  over time and can be reasonably abated.  Plaintiffs have engaged, or will engage, in abatement
11  programs.

12                          **FIFTH CAUSE OF ACTION**

13     **(Private Nuisance by Plaintiffs Modesto and Sewer District Against All Defendants)**

14       67.      Plaintiffs reallege paragraphs 1 through 66 of this complaint and incorporate
15  them herein by reference.

16       68.      The negligent, reckless, intentional and ultrahazardous activity of the
17  defendants, and each of them, has resulted in the contamination of plaintiffs' sewer and water
18  system and constitutes a continuing nuisance within the meaning of Civil Code section 3479.
19  The chlorinated solvent contamination of the sewer and water system, and the municipal
20  groundwater supply, has varied over time and can be reasonably abated.  Plaintiffs have
21  engaged, and will engage, in abatement programs.

22       69.      Since plaintiffs are the property owner adversely affected by the nuisance, it is a
23  private nuisance within the meaning of Civil Code section 3481.

24       70.      As a direct and proximate result of the nuisance, plaintiffs have been damaged
25  and are entitled to the compensatory damages alleged herein, and seek punitive damages
26  against the  defendants.[1]

27  _____

28       [1]The court sustained a demurrer without leave to amend regarding plaintiffs's prior cause
of action for declaratory relief.  Accordingly, the complaint is being amended to reflect the court's

## SIXTH CAUSE OF ACTION

### (Private Nuisance *Per Se* by Plaintiffs Modesto and Sewer District Against All Defendants)

71.    Plaintiffs reallege paragraphs 1 through 70 of this complaint and incorporate them herein by reference.

72.    The negligent, reckless, intentional and ultrahazardous activity of defendants, and each of them, resulted in the contamination of plaintiffs' sewer and water system, and the municipal groundwater supply underlying the sewer and water system, in violation of California Water Code sections 13050(m), 13350, and 13387, Health and Safety Code sections 5411, 5411.5, and 117555, and California Fish and Game Code section 5650, as well as various other state and federal statutes, rules and regulations referenced in the aforesaid Water Code, the purpose of which are to set a standard of care or conduct to protect plaintiffs and all persons and property within their jurisdiction, as well as the environment, from the type of improper activities engaged in by defendants, and each of them, as alleged in this complaint. Therefore, such improper activities and violations constitute a private nuisance *per se*.

73.    Defendants, and each of them, have failed to comply with the state law as detailed above.

74.    Plaintiffs have sustained special injury as a result of these nuisances, including incurring investigation costs.  As a further direct and proximate result of the private nuisance *per se* created by defendants, and each of them, plaintiffs have suffered damages as alleged in this complaint, including other consequential, incident, and general damages to be proven at trial.

## SEVENTH CAUSE OF ACTION

### (Public Nuisance by All Plaintiffs Against All Defendants)

75.    Plaintiffs reallege paragraphs 1 through 74 of this complaint and incorporate them herein by reference.

---

ruling, and not because plaintiffs are waiving or dismissing the declaratory relief cause of action. This statement is made in order to preserve the issue on appeal

76.     The negligent, reckless, intentional and ultrahazardous activity of the defendants, and each of them, as described in this complaint, gives rise to a public nuisance within the meaning of California Civil Code sections 3479 and 3480, which affects not only the plaintiffs, but also the entire community of the City of Modesto, and/or the comfort and convenience of a considerable number of residents and visitors to the City of Modesto, although the extent of the damages inflicted upon individuals may be unequal.

77.     Because the contamination created by the negligent, reckless, intentional and ultrahazardous activity of defendants, and each of them, has resulted in contamination that continues, and threatens to continue, to spread to the sewer and water system, adjacent properties, and into the municipal groundwater supply within the jurisdiction of the plaintiffs and for which plaintiffs possess a legally cognizable property interest on behalf of its residents, it is of great public concern. As a result, plaintiffs have incurred and will continue to incur substantial and necessary response costs, including investigatory expenses, attorneys' fees, consulting fees, oversight costs, interest and other response costs. For the aforesaid reasons, plaintiffs have and will suffer injuries different in kind from those suffered by the general public.

78.     The negligent, reckless, intentional and ultrahazardous activity of the defendants, and each of them, which has resulted in contamination, and threatens to continue to contaminate, the plaintiffs' sewer and water system and the public's right to use and enjoy its groundwater supply, is also a public nuisance as defined by Title 4, Chapter 12, Section 4-12.300, of the Modesto Municipal Code, for which plaintiffs seek remedies in accordance with Title 4, Chapter 12, Article 2.

79.     Plaintiffs City of Modesto and City of Modesto Sewer District No. 1 allege that as a proximate result of the negligent, reckless, intentional and ultrahazardous activity of the defendants, and each of them, which has resulted in the contamination of plaintiffs' sewer and water system, groundwater and constitutes a public nuisance, plaintiffs have and will incur substantial expense, as previously described herein, to abate the public nuisance.

1    80.    Plaintiffs assert that litigation against defendants, and each of them, is necessary

2    because it raises issues of public importance and policy which are in need of vindication by

3    litigation, presents the necessity of enforcement of said issues and rights resulting from special

4    burdens which fall on plaintiffs, and will benefit the health and safety of the community.

5    81.    Plaintiffs City of Modesto and City of Modesto Sewer District No. 1 are

6    entitled to recover from defendants, and each of them, all costs presently incurred or which

7    may be incurred in investigating and verifying the contamination at the sites, for past and

8    future costs to remediate the sites and threat contaminated water.  Plaintiffs are also entitled to

9    all available remedies as described in Title 4, Chapter 12, Article 2, of the Modesto Municipal

10    Code, for attorneys' fees and interest, and for other response costs and expenses.  The exact

11    amount owing to plaintiffs will be determined at trial according to proof.  Plaintiffs City of

12    Modesto and City of Modesto Sewer District No. 1 also request that the public nuisance

13    described in this complaint be enjoined and abated.  Plaintiff The People seeks the abatement

14    and injunction of the nuisance and all other legally available damages and costs, the value of

15    which is within the jurisdiction of this court.

16    **EIGHTH CAUSE OF ACTION**

17    **(Public Nuisance *Per Se* by All Plaintiffs Against All Defendants)**

18    82.    Plaintiffs reallege paragraphs 1 through 81 of this complaint and incorporate

19    them herein by reference.

20    83.    Plaintiffs allege that the negligent, reckless, intentional and ultrahazardous

21    activity of defendants, and each of them, which has resulted in contamination of plaintiffs's

22    project area, as well as the municipal groundwater supply underlying the sewer and water

23    system, and constitutes a public nuisance, is a violation of California Water Code sections

24    13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and

25    117555, and California Fish and Game Code section 5650, the purpose of which are to set a

26    standard of care or conduct to protect plaintiffs and all persons or property within its

27    jurisdiction, as well as the environment, from the type of improper activities engaged in by

28

1  defendants, and each of them.  Therefore, such improper activities and violations constitute a

2  public nuisance *per se*.

3       84.    Defendants, and each of them, have failed to comply with the state law as

4  detailed above.  Plaintiffs City of Modesto and City of Modesto Sewer District No. 1 have

5  sustained special injury as a result of this public nuisance, including investigative costs.  As a

6  further direct and proximate result of the public nuisance *per se* created by defendants, and

7  each of them, plaintiffs City of Modesto and City of Modesto Sewer District No. 1 have

8  suffered damages as previously described herein, including other consequential, incidental and

9  general damages to be proven at trial.  Plaintiff The People seeks the abatement of the nuisance

10  and all other legally available costs and damages.

11       85.    Section 731 of the California Code of Civil Procedure authorizes the respective

12  plaintiffs to bring a civil action to abate or enjoin a public nuisance.  The conduct of

13  defendants, and each of them, has created a public nuisance as described in this complaint.

14       86.    Plaintiffs and each of them, request that the public nuisance, as described in this

15  complaint, be enjoined or abated.

16                                    **NINTH CAUSE OF ACTION**

17  **(Response Costs Under California Superfund Act, Health and Safety Code §§ 25300
    et seq., by Plaintiffs Modesto and Sewer District Against All Defendants)**

18

19       87.    Plaintiffs reallege paragraphs 1 through 86 of this complaint and incorporate

20  them herein by reference.

21       88.    Section 25323.5(a) of the California Health and Safety Code defines a person

22  who is liable under the Carpenter-Presley-Tanner Hazardous Substance Account Act

23  ("California Superfund").  Defendants, and each of them, are "responsible parties" under

24  California Superfund and liable to plaintiffs for response costs and other damages.

25       89.    All of the contaminants that defendants disposed of and released into the

26  plaintiffs' sewer system and the municipal groundwater supply constitute substances

27  specifically listed and designated as "hazardous substances" within the meaning of California

28  Health and Safety Code section 25316.

1    90.    The improvements within plaintiffs' sewer system and the municipal

2   groundwater supply systems and constitute a "facility" under California Superfund.

3    91.    As a proximate cause of defendants' release of hazardous substances into the

4   environment, including plaintiffs' sewer system, and the municipal groundwater supply,

5   plaintiffs have had to incur necessary response costs, including attorneys' fees and expert

6   witness fees, for which defendants are strictly liable pursuant to California Health and Safety

7   Code section 25363.  All of the costs plaintiffs have incurred to remove and/or remediate the

8   contamination at the premises have been in accordance with Chapter 6.8 of the Hazardous

9   Substances Account Act.  Notice of commencement of this action has been given to the

10  Director of Toxic Substances Control pursuant to California Health and Safety Code

11  section 25363(e).

12    92.    Plaintiffs seek contribution and/or indemnity for all response costs under

13  California Health and Safety Code section 25363, which provides that any person who has

14  incurred removal or remedial action costs may seek contribution or indemnity from any

15  responsible party.

16                    **TENTH CAUSE OF ACTION**

17   **(Declaratory Relief Under California Superfund Act, Health and Safety Code
     Section 25300 et seq., by Plaintiffs Modesto and Sewer District Against All Defendants)**

18    93.    Plaintiffs reallege paragraphs 1 through 92 of this complaint and incorporate

19  them herein by reference.

20    94.    Because the extent and magnitude of the contamination at the premises is not

21  fully known at this time, and the investigatory and remedial works are ongoing, plaintiffs will

22  incur necessary response costs, including but not limited to investigatory, remedial and

23  removal expenses, attorneys' fees and interest in the future.

24    95.    Pursuant to California Health and Safety Code section 25363, plaintiffs are

25  entitled to a declaratory judgment establishing the liability of defendants, and each of them, for

26  such response costs for the purpose of this and any subsequent action or actions to recover

27  further response costs.

28

## ELEVENTH CAUSE OF ACTION

### (Ultrahazardous Activity by Plaintiffs Modesto and Sewer District Against the Retailer Defendants)

96.    Plaintiffs reallege paragraphs 1 through 95 above, and incorporate them herein by reference.

97.    The retailer defendants, and each of them, engaged in the ultrahazardous activity of using and then disposing of chlorinated solvents into the sewer system and/or on the soil, or into the groundwater, notwithstanding the fact that chlorinated solvents are a serious and substantial risk of harm to health, including cancer, liver disease and death.  Chlorinated solvents further constitute a serious and substantial toxic contamination which renders water unsuitable for drinking and contaminates sewers and soil.  The use and disposal of chlorinated solvents is unsafe and harmful, even though the utmost care is utilized in the use and disposal of chlorinated solvents.

98.    As a direct result of this ultrahazardous activity, the sewer systems, soil and groundwater have been contaminated, resulting in the alleged damages sustained by plaintiffs.

## TWELFTH CAUSE OF ACTION

### (Utility Tampering [Civil Code § 1882.1] by Plaintiffs Modesto and Sewer District Against All Defendants)

99.    Plaintiffs reallege paragraphs 1 through 98 above, and incorporate them herein by reference.

100.    Plaintiffs are a utility as defined at California Civil Code section 1882(f).

101.    The conduct and activities of defendants, and each of them, was a tampering of property owned, operated, controlled and/or used by the plaintiffs to provide water and sewer services.  Defendants, and each of them, assisted, aided, and abetted in introducing contaminants into the drinking water supplies of plaintiffs.

102.    As a direct and proximate result of this conduct and activity, plaintiffs have been damaged and are entitled to recover damages from defendants, and each of them, as authorized by California Civil Code section 1882.1.

103.   Plaintiffs are entitled to recover three times the amount of actual damages, plus costs of suit and attorneys' fees, as authorized by California Civil Code section 1882.2.

**WHEREFORE**, plaintiffs request judgment against defendants, and each of them, for:

1.   Compensatory damages, including treble damages, according to proof;

2.   Punitive damages against the chlorinated solvent manufacturer defendants, distributor defendants and chlorinated solvent equipment manufacturer defendants, in an amount sufficient to punish and to said deter defendants from ever committing the same or similar acts;

3.   All available remedies as described in Title 4, Chapter 12, Article 2, of the Modesto Municipal Code;

4.   For declaratory relief and orders as to defendants' liability to plaintiffs for the costs and expenses as set forth in the tenth cause of action herein;

5.   For relief and order of abatement or enjoinder of nuisance as set forth in the seventh and eighth causes of action herein;

6.   For three times the amount of actual damages, plus costs of suit and attorneys' fees as set forth in the twelfth cause of action herein;

7.   For litigation costs, including attorneys' fees;

8.   For costs of suit incurred herein, and prejudgment interest to the full extent permitted by law; and

9.   For such other and further relief as the court may deem just and proper.

Dated: January _4_, 2002

MILLER, SHER & SAWYER
A Professional Corporation

By: _____
A. CURTIS SAWYER, JR.
Attorneys for Plaintiffs
City of Modesto; Modesto Sewer District
No. 1 and the People of the State of California
Ex Rel the City Attorney of the City of Modesto

1

### PROOF OF SERVICE BY MAIL

2      I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 100
3  Howe Avenue, Suite S-120, Sacramento, California 95825, which is located in the county in which this mailing occurred.  I am familiar with my office's business practice for collection and
4  processing of correspondence for mailing with the United States Postal Service, and under such practice the correspondence would be deposited with the United States Postal Service, postage
5  pre-paid, the same day in the ordinary course of business.

6      On January 4, 2002, I served **THIRD AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF (SOLVENT CONTAMINATION):  (1) STRICT LIABILITY;**
7  **(2) NEGLIGENCE; (3) NEGLIGENCE *PER SE*; (4) CONTINUING TRESPASS; (5) PRIVATE NUISANCE; (6) PRIVATE NUISANCE *PER SE*; (7) PUBLIC NUISANCE;**
8  **(8) PUBLIC NUISANCE *PER SE*; (9) RESPONSE COSTS UNDER CALIFORNIA SUPERFUND ACT; (10) DECLARATORY RELIEF UNDER CALIFORNIA**
9  **SUPERFUND ACT; (11) ULTRAHAZARDOUS ACTIVITY; AND (12) UTILITY TAMPERING** on the following persons or parties by placing a true copy thereof in a sealed
10  envelope, showing the addresses set forth below, for collection and deposit in the United States Postal Service on that date following ordinary business practices:

11
                            See Attached List
12
       I declare under penalty of perjury under the laws of the State of California and the United
13  States of America that the foregoing is true and correct.

14      Executed on January 4, 2002, at Sacramento, California.

15

16

                                    LORI FERGUSON
17

18

19

20

21

22

23

24

25

26

27

28