# EXHIBIT 3

1  Duane C. Miller, Esq., #57812
2  Michael D. Axline, Esq., #229840
   A. Curtis Sawyer, Esq., #101324
   Tamarin E. Austin, Esq., #207903
3  **MILLER, AXLINE & SAWYER**
   A Professional Corporation
4  1050 Fulton Avenue, Suite 100
   Sacramento, CA  95825-4272
5  Telephone:  (916) 488-6688
   Facsimile:  (916) 488-4288
6
7  Mike Milich, Esq.   SBN : 54137
   City Attorney
8  **CITY OF MODESTO**
   P.O. Box 642
9  Modesto, CA  95354
   Telephone:  (209) 577-5284
10
   Attorneys for Plaintiffs
11 CITY OF MODESTO and CITY OF
   MODESTO SEWER DISTRICT NO. 1

Exempt from Filing and
Motion Fees
[Govt. Code, § 6103]

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

DEC 2 2 2005

GORDON PARK-LI, CLERK

CASE MANAGEMENT CONFERENCE SET  **PARAM NATT**
Deputy Clerk

MAY 2 6 2006 - 9 00 AM

DEPARTMENT 212

12        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13        **IN AND FOR THE COUNTY OF SAN FRANCISCO**

14 CITY OF MODESTO and CITY OF        )   Case No.  **CGC · 05  447952**
   MODESTO SEWER DISTRICT NO. 1,      )
15                                     )   **COMPLAINT FOR:  (1) INDEMNITY;**
              Plaintiffs,              )   **(2) STRICT LIABILITY;**
16                                     )   **(3) CONTINUING TRESPASS;  AND**
          v.                           )   **(4) CONTINUING NUISANCE**
17                                     )
   THE DOW CHEMICAL COMPANY;          )
18 M.B.L., INC.;  R.R. STREET & CO., INC.; )
   VULCAN MATERIALS COMPANY;          )
19 PPG INDUSTRIES, INC.;  OCCIDENTAL  )
   CHEMICAL CORPORATION;  HOYT        )
20 CORPORATION;  and DOES 1 through   )
   750, inclusive,                    )
21                                     )           **FAXED**
              Defendants.             )
22 _____    )

23

24

25

26

27

28

Plaintiffs allege that at all relevant times:

## I. THE PARTIES

### A.    The Plaintiffs

1.    Plaintiff City of Modesto ("Modesto") is a public and municipal entity located in Stanislaus County, California. Modesto is a charter city. Modesto owns, operates, maintains, supervises, and/or controls the sewer and water system, including, but not limited to, all wells, sewers, pipes, connectors, transmission facilities, sewage and water purification facilities, related and associated equipment, appurtenances, real property and easements, facilities, soil, and groundwater ("sewer and water system").

2.    Plaintiff City of Modesto Sewer District No. 1 ("Sewer District") is a public agency which also jointly owns, operates, maintains, supervises, and/or controls the sewer system. Modesto and the Sewer District will be collectively referred to as "plaintiffs."

3.    Plaintiffs commenced a lawsuit in the Superior Court of the State of California in and for the County of San Francisco styled City of Modesto, et al., v. The Dow Chemical Company, et al., No. 999643 ("Modesto Lawsuit"), alleging that their sewer and water system is contaminated with toxic chlorinated solvents as a direct result of defendants' negligent conduct in manufacturing, distributing, using, controlling, and disposing of chlorinated solvents, and the equipment designed to use chlorinated solvents, which caused chlorinated solvents to contaminate plaintiffs' sewer and water system. Also in the Modesto Lawsuit, plaintiffs (as cross-defendants) commenced a cross-complaint against McHenry-Modesto, a California limited partnership; Briggsmore Corp., a California corporation, general partner of McHenry-Modesto; McHenry Village, a California limited partnership; Samuel Freshman; Ardyth Freshman; and Irene Tritel (collectively referred to as "McHenry Modesto").

4.    McHenry Modesto commenced a lawsuit in the Superior Court of the State of California in and for the County of Stanislaus, styled McHenry Modesto v. Chao, et al., No. 270538 ("McHenry Modesto Lawsuit"), asserting claims relating to soil, groundwater, and sewer contamination caused by toxic chlorinated solvents at and surrounding the McHenry Village Shopping Center at 1700 McHenry Avenue, Modesto, California.

1       5.      In November 2004, plaintiffs entered into an agreement with McHenry Modesto

2  ("Agreement") whereby McHenry Modesto assigned to plaintiffs, without limitation, all

3  claims, rights, and causes of action that McHenry Modesto has asserted or could assert with

4  respect to perchloroethylene ("PERC") and/or its byproducts.

5       6.      On October 5, 2004, the San Francisco Superior Court entered its Order

6  Determining Good Faith Settlement, finding that the Agreement and settlement reached

7  between McHenry Modesto and plaintiffs was made in good faith within the meaning of Code

8  of Civil Procedure section 877.6.  The Order Determining Good Faith Settlement provides that

9  the non-settling defendants and cross-defendants in the Modesto Litigation shall collectively

10  (not each) have one single, total setoff in the Modesto Litigation for the site at 1700 McHenry

11  Avenue, Modesto, California, of $652,500.  Pursuant to subdivision (c) of section 877.6, the

12  good faith settlement determination bars any other tortfeasor or co-obligor from any further

13  clams against McHenry Modesto for equitable comparative contribution, or partial or

14  comparative indemnity, based on comparative negligence or comparative fault.  No party

15  followed the procedure in subdivision (e) of section 877.6 to petition for review of the

16  Superior Court's determination that the settlement was made in good faith;  accordingly, the

17  good faith determination has become final.

18      7.      McHenry Modesto is one of several entities responding to a Clean-up and

19  Abatement Order ("CAO") issued by the Central Valley Regional Water Quality Control

20  Board.  The CAO requires clean-up of PERC contamination at and surrounding 1700 McHenry

21  Avenue, Modesto, California, to background levels (0.06 ppb in groundwater).

22      8.      McHenry Modesto and others responded to the CAO and have incurred and are

23  continuing to incur response costs, including costs of investigation and remediation.  McHenry

24  Modesto has expended in excess of $1,000,000 to investigate and remediate contamination at

25  and surrounding 1700 McHenry Avenue, Modesto, California.  The costs of remediation will

26  likely exceed several million dollars.

27

28

1       9.    Plaintiffs moved to amend their complaint in the Modesto Litigation to allege

2 the claims assigned by McHenry Modesto to plaintiffs, but the San Francisco Superior Court

3 denied the motion to amend by an order filed September 9, 2005.

4     **B.**   **The Chlorinated Solvent Manufacturer Defendants**

5       10    Defendant The Dow Chemical Company ("Dow") is a Delaware corporation

6 with its principal place of business in Midland, Michigan.

7       11    Defendant PPG Industries, Inc. ("PPG"), is a Pennsylvania corporation with its

8 principal place of business in Pittsburgh, Pennsylvania.

9       12.   Defendant Vulcan Materials Company ("Vulcan") is a New Jersey corporation

10 with its principal place of business in Homewood, Alabama.

11      13.   Defendant Occidental Chemical Corporation ("Occidental") is a Louisiana

12 corporation with its principal place of business in Dallas, Texas.

13      14.   Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

14 under the fictitious names of DOES 1 through 250, inclusive.

15      15.   Defendants Dow, PPG, Vulcan, Occidental, and DOES 1 through 125, and each

16 of them: (1) manufactured, distributed, transported, packaged, sold and/or disposed of toxic

17 chlorinated solvents called PERC (PERC and its degradation products and ingredients are

18 referred to collectively as "chlorinated solvents") in the State of California and/or were

19 involved in the manufacture of equipment sold in the State of California specifically designed

20 to store, use, process, and dispose of chlorinated solvents; (2) Dow, PPG, Vulcan, Occidental,

21 and DOES 1 through 250, and each of them, were legally responsible for and committed each

22 of the tortious and wrongful acts alleged in this Complaint; and (3) in doing the tortious and

23 wrongful acts alleged in the Complaint, acted in the capacity of co-conspirator, aider, abettor,

24 joint venturer, partner, agent, alter ego, principal, successor-in-interest, surviving corporation,

25 fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent

26 holder and/or indemnitor of each of the remaining DOE and named defendants.

27

28

16.     Each of the defendants named in paragraphs 10 through 15 above, and DOE defendants 1 through 250, will be collectively referred to as the "manufacturer defendants" or "manufacturers."

**C.     Distributor Defendants**

17.     Defendant M.B.L., Inc. ("MBL"), is a California corporation with its principal place of business in Santa Clara, California.

18.     Defendant R.R. Street & Co. ("Street") is a Delaware corporation with its principal place of business in Naperville, Illinois.

19.     Plaintiffs are ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names of DOES 251 through 500, inclusive.

20.     MBL, Street, and DOES 251 through 500 ("distributor defendants"), and each of them:  (1) purchased chlorinated solvents from one or more of the manufacturer defendants, and then resold the chlorinated solvents in the State of California to Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto, California;  (2) distributed, designed, assembled, maintained, controlled, operated, and/or repaired equipment parts, replacement parts, and appurtenances, including, but not limited to, dry cleaning equipment in the State of California specifically designed for the use, application, and disposal of chlorinated solvents by Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto, California;  (3) would engage in service visits and inspections on the premises of Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto, California, for the purposes of promoting their dry cleaning solvents and dry cleaning equipment products and testing and inspecting Modesto dry cleaner equipment, which included witnessing dry cleaners' disposal of chlorinated solvents;  (4) were legally responsible for and committed each of the tortious and wrongful acts alleged in this Complaint;  and (5) in doing the tortious and wrongful acts alleged in the Complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent

1    transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder, and/or

2    indemnitor of each of the remaining DOE and named defendants.

3         21.    In addition to engaging in the distributor activities more fully described in

4    paragraph 20 above, Street and DOES 400 through 500 also engaged in the manufacturing acts

5    and activities fully described in paragraph 15 above, which is incorporated in full herein.

6         **D.    <u>Chlorinated Solvent Equipment Manufacturers</u>**

7         22.    Defendant Hoyt Corporation is a Massachusetts corporation with its principal

8    place of business in Westport, Massachusetts.

9         23.    Plaintiffs are ignorant of the true names and/or capacities of the defendants sued

10   herein under the fictitious names of DOES 501 through 750, inclusive ("chlorinated solvent

11   equipment manufacturers").

12        24.    Defendant Hoyt Corporation and DOES 501 through 750, and each of them:

13   (1) manufactured, distributed, designed, assembled, maintained, supervised, controlled, sold,

14   operated, and/or repaired equipment, parts, and appurtenances, including, but not limited to,

15   dry cleaning equipment, in the State of California specifically designed for the storage,

16   application, and disposal of chlorinated solvents by Modesto dry cleaners, including the Ideal

17   Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto, California, that have

18   contributed to the alleged contamination ("chlorinated solvent equipment"); (2) were legally

19   responsible for and committed each of the tortious and wrongful acts alleged in this complaint;

20   and (3) in doing the tortious and wrongful acts alleged in the complaint, acted in the capacity

21   of co-conspirator, aider, abettor, joint venturer, partner, agent, principal, successor-in-interest,

22   surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter ego,

23   licensee, licensor, patent holder, and/or indemnitor of each of the remaining DOE and named

24   defendants.

25        ## II. BACKGROUND OF CHLORINATED SOLVENTS

26        25.    PERC is a toxic organic compound. PERC has been used as a cleaning solvent.

27   Dry cleaning machines were designed and developed to use PERC. PERC was the most

28   widely used dry cleaning chemical in the United States. PERC is also referred to as PCE,

1  carbon dichloride, and 1,1,2,2-tetrachloroethylene. In soil, PERC can be transformed by
2  biological degradation and by reductive dehalogenation into trichloroethylene ("TCE"), vinyl
3  chloride, and trichloromethane ("TCA").

4        26     In or about the 1940's, the defendants knew, or should have known, that PERC
5  could be absorbed in the lungs, skin, and gastrointestinal tract which could cause severe
6  damage to the liver, kidneys, and central nervous system and other toxic effects. PERC is a
7  known carcinogen which causes genetic damage. The defendants also knew, or should have
8  known, that PERC and its degradation products and ingredients create a substantial risk of
9  harm to groundwater and soil.

10       27.    Notwithstanding their knowledge of health and environmental hazards of
11  chlorinated solvents, the manufacturing defendants, chlorinated solvent equipment defendants,
12  and distributor defendants designed, manufactured, marketed, and/or supplied chlorinated
13  solvents and/or chlorinated solvent dry cleaning equipment and/or replacement parts to retail
14  dry cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue,
15  Modesto, California. The equipment was specifically designed to store, use, process, and
16  dispose of chlorinated solvents. Defendants were aware of the typical use, waste, and disposal
17  practices resulting from the intended use of their equipment, including the customary practice
18  of dumping chlorinated solvent wastewater and muck into the public sewer systems, and the
19  habitual problem with multiple leaks of chlorinated solvents into the environment during the
20  foreseeable and expected use of chlorinated solvent equipment.

21       28.    Notwithstanding the fact that the manufacturer defendants, the chlorinated
22  solvent equipment defendants, and the distributor defendants knew, or should have known, of
23  the serious health hazards caused by the use and disposal of chlorinated solvents and that
24  chlorinated solvents pass through sewer pipes and concrete floors, thereby contaminating soil
25  and migrating into groundwater, defendants negligently and carelessly: (1) issued instructions
26  that chlorinated solvents could be discharged into the sewers, permitting chlorinated solvents
27  to contaminate the sewer system and surrounding property; and/or (2) designed and operated
28  dry cleaning machines, appurtenances, and other types of machinery designed to be used with

1    chlorinated solvents to facilitate and promote the disposal of chlorinated solvents into the

2    sewer system and/or which failed to adequately prevent and/or minimize the loss of chlorinated

3    solvents; and/or (3) failed to recall and/or warn the users of the negligently designed

4    chlorinated solvent equipment of the dangers of groundwater contamination as a result of

5    chlorinated solvents disposal in the sewer system; and/or (4) further failed and refused to issue

6    the appropriate warnings and/or recalls to the users of chlorinated solvents regarding the proper

7    means of use and disposal of this toxic chemical, notwithstanding the fact that the respective

8    defendant knew the identity of the purchaser of the chlorinated solvent equipment and/or

9    chlorinated solvents.

10        29.    In addition, the manufacturer defendants and distributor defendants, and each of

11   them: (a) knew, or should have known, that dry cleaners, including the Ideal Cleaners located

12   at and adjacent to 1700 McHenry Avenue, Modesto, California, were foreseeable users of

13   chlorinated solvents and were using the chlorinated solvents in a foreseeable manner; (b)

14   knew, or should have known, that the chlorinated solvents were dangerous to the environment

15   or health if deposited directly on the ground, drained or flushed into the sewer system, or by

16   permeating unprotected concrete floors under dry cleaning equipment; (c) knew, or should

17   have known, that Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to

18   1700 McHenry Avenue, Modesto, California, foreseeably lacked knowledge of these dangers;

19   (d) failed to warn the Modesto dry cleaners, including the Ideal Cleaners located at and

20   adjacent to 1700 McHenry Avenue, Modesto, California, of the dangers and/or affirmatively

21   instructed them to engage in such dangerous conduct; and (e) as a result, contamination

22   occurred at Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to 1700

23   McHenry Avenue, Modesto, California.

24        30.    In addition, notwithstanding the manufacturing defendants' and distributor

25   defendants' knowledge of the severe environmental and health dangers and hazards posed by

26   the use and disposal of chlorinated solvents on the ground and in sewers, these defendants: (1)

27   instructed, directed, and recommended Modesto dry cleaners, including the Ideal Cleaners

28   located at and adjacent to 1700 McHenry Avenue, Modesto, California, to dispose of

1  chlorinated solvents onto the ground and into the sewers; (2) instructed, directed, and
2  recommended Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to
3  1700 McHenry Avenue, Modesto, California, to maintain, operate, design, and construct the
4  dry cleaning equipment to drain chlorinated solvents into the sewer systems and/or operate and
5  maintain the dry cleaning equipment by means of physically disposing chlorinated solvent
6  waste as part of the operation of the dry cleaning equipment into the sewers or soil which
7  caused substantial and serious harm to the property of others, including the property located at
8  and surrounding 1700 McHenry Avenue.

9      31.    Chlorinated solvent products are fungible. The manufacturer and distributor
10  defendants concluded that it was not enough to simply sell chlorinated solvents to dry cleaners
11  in order to remain competitive. In order to compete for larger shares of the chlorinated solvent
12  market, the manufacturer and distributor defendants, and each of them, would routinely and
13  frequently advise, instruct, assist, recommend and/or participate in the operation, maintenance,
14  inspection, and/or testing of dry cleaners, including the Ideal Cleaners located at and adjacent
15  to 1700 McHenry Avenue, Modesto, California, in order to promote the purchase of their
16  chlorinated solvent products and in order to create brand loyalty. These activities included
17  personal visits by manufacturer and distributor representatives to Modesto dry cleaners and
18  written directions, instructions, and brochures on dry cleaning equipment maintenance and
19  operations. Each of the manufacturer and distributor defendants routinely engaged in these
20  same and similar practices. As part of these activities and practices, the manufacturer and
21  distributor defendants, and each of them, instructed, directed, and/or recommended to Modesto
22  dry cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue,
23  Modesto, California, to dispose of chlorinated solvents on the ground or in the drain, including
24  using the sewer system and dumping solvents on the ground as a method of disposal.

25      32.    In order to compete with other PERC manufacturers and distributors, authorized
26  representatives became personally involved in the dry cleaning business of its customers
27  through regular and frequent personal calls to the dry cleaners, by providing written materials
28  regarding the promotion, operation, and maintenance of dry cleaning equipment, and by

9
Complaint

supplying items to dry cleaners. Each of the solvent manufacturers and distributors routinely and frequently sent personal representatives to the premises of Modesto dry cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto, California, and, among other things: (1) regularly observing the dry cleaning operations and practices, including disposal methods, of Modesto dry cleaners; (2) issuing brochures, newsletters, and written and/or verbal directions and/or instructions for the operation, maintenance, and use of dry cleaning equipment and/or dry cleaning solvents; (3) testing perchloroethylene at the dry cleaners; (4) unloading and storing perchloroethylene at the Modesto dry cleaners; and (5) entering into exclusive distribution agreements between the manufacturer and distributor defendants which required the distributors to act as representatives of the respective manufacturers in doing these alleged acts.

33.    Examples of these practices include, but are not limited to, the following:

(a)    Dow advised, recommended and/or instructed dry cleaners to operate and maintain their dry cleaning equipment to discharge separator wastewater which contained chlorinated solvent contamination in such a manner to maximize a "free unimpeded water flow to the drain . . . ."

(b)    Defendant Dow instructed dry cleaners that "small amounts [of chlorinated solvents] may be transported to an area where it can be placed on the ground . . . ."

(c)    In a 1991 internal Vulcan and R.R. Street memorandum entitled "PERC Removal from Water Saturated With PERC Study," R.R. Street/Vulcan concludes that significant amounts of PERC remain in wastewater generated by the dry cleaning process which was deposited into sewers.

(d)    Defendant R.R. Street instructed dry cleaners that "[t]he residue from distillations of perchloroethylene may be poured on dry sand, earth, or ashes . . . ."

(e)    Defendant MBL, Inc. agreed to "disseminate to all customers" Dow publications regarding the handling of Dow perchloroethylene.

1        (f)     Defendant R.R. Street provided instructions for building a device for the

2 purpose of detecting PERC escaping with the water from a water separator entitled "Are You

3 Losing PERC Down the Drain?"

4        (g)     PPG Industries instructed dry cleaners to dispose perchloroethylene "to

5 a sanitary sewer or bury in chemical landfill."

6        (h)     The manufacturer defendants were members of various trade groups

7 including the Manufacturing Chemists Association, Inc., which prepared written instructions

8 which the manufacturing defendants and distributor defendants supplied to Modesto dry

9 cleaners which instruct that "small amounts [of chlorinated solvents] . . . can be placed on the

10 ground."

11        (i)     In addition: (1) the manufacturer defendants and distributor defendants

12 of chlorinated solvents provided direct technical advice and service to Modesto dry cleaners,

13 including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto,

14 California, relating to waste disposal in which the manufacturer defendants and distributor

15 defendants advised the dry cleaners to dispose of chlorinated solvents containing waste and

16 separator water into the sewer or on the ground; (2) Modesto dry cleaners, including the Ideal

17 Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto, California, relied upon

18 the advice of the manufacturer defendants and distributor defendants with regard to the

19 operation of their facility and with regard to the disposal advice and service; (3) employees

20 and agents of the manufacturer defendants and distributor defendants of chlorinated solvents

21 had access to the facilities of Modesto dry cleaners, including the Ideal Cleaners located at and

22 adjacent to 1700 McHenry Avenue, Modesto, California; and (4) employees and agents of the

23 manufacturer defendants and distributor defendants of chlorinated solvents performed tests on

24 chlorinated solvents containing wastes, and that process resulted in the release of chlorinated

25 solvents into the sewer and the environment causing the damage alleged herein.

26        (j)     The manufacturer defendants set up, staffed, and directly controlled

27 various trade associations and distributor defendants for the study, distribution, marketing, and

28 sale of chlorinated solvents . Through these trade associations and the distributor defendants,

1   the manufacturer defendants exercised complete and direct control over the study, distribution,

2   marketing, and sale of chlorinated solvents, and these trade associations and distributor

3   defendants acted as agents of the manufacturer defendants in studying, distributing, marketing,

4   and selling of chlorinated solvents.  Through these trade associations and distributor

5   defendants, the manufacturer defendants knew of the toxicity and health and safety hazards

6   associated with chlorinated solvents and gave instructions and advice regarding the disposal of

7   chlorinated solvents that caused the release of chlorinated solvents into the environment.  The

8   manufacturer defendants organized and created these trade association and distributor

9   defendants with the intent of shielding themselves from liability associated with their

10  knowledge and control over chlorinated solvent products and the associated releases of

11  chlorinated solvents.

12      34.    The manufacturer, distributor, and chlorinated solvent equipment manufacturer

13  defendants also: (1) encouraged dry cleaners to use chlorinated solvents without adequate

14  warnings;  (2) agreed through trade associations to attack any regulation of chlorinated

15  solvents;  and (3) promoted the unsafe and improper disposal of chlorinated solvents in order

16  to reduce the costs of its use and to increase the market share of chlorinated solvents over other

17  competing dry cleaning substances.

18  III.  CONTAMINATION OF THE PROPERTY LOCATED AT AND
    SURROUNDING 1700 MCHENRY AVENUE, MODESTO, CALIFORNIA.
19

20      35.    As a direct result of the defendants' acts alleged in this Complaint, the sewer

21  lateral, soil, and property located at and surrounding 1700 McHenry Avenue, Modesto,

22  California, have been contaminated, and will continue to be contaminated, with chlorinated

23  solvents which create a public health hazard unless abated.  As a direct and proximate result

24  thereof, McHenry Modesto initiated a remedial program to assess, evaluate, investigate,

25  monitor, remove, clean up, correct, and abate chlorinated solvent contamination and to restore

26  plaintiffs' property and the McHenry Modesto property at significant expense, loss, and

27  damage.  Costs incurred within the past three (3) years of the filing of the Complaint, or that

28  are to be incurred in the future, include:  loss of use of property, property damage, restoration

1 costs incurred within the past three (3) years of the filing of the Complaint or that are to be
2 incurred in the future, delay damages, property devaluation, interim and permanent remedial
3 measures to control releases and potential releases of chlorinated solvents, cleanup costs,
4 potential installation and maintenance of interceptor wells, and water treatment facilities, all in
5 an amount in the many millions of dollars.

6 ## FIRST CAUSE OF ACTION

7 **(Indemnity Against All Defendants)**

8     36.   Plaintiffs refer to paragraphs 1 through 35 above, and by this reference
9 incorporates them herein as though set forth in full.

10     37.   McHenry Modesto is the current owner of the property known as the McHenry
11 Village Shopping Center, located at 1700 McHenry Avenue, Modesto, California. McHenry
12 Modesto has expended in excess of $1,000,000 to investigate and remediate chlorinated
13 solvent contamination at and surrounding 1700 McHenry Avenue, Modesto, California.
14 McHenry Modesto has engaged in extensive soil and groundwater remediation at the site,
15 which includes City Water Well No. 21. Substantial sums will also be necessary in the future
16 to continue and finalize remediation at and surrounding 1700 McHenry Avenue, Modesto,
17 California, as directed by the Central Valley Regional Water Quality Control Board.

18     38.   McHenry Modesto did not at any time buy, sell, distribute, use, possess, or
19 provide PERC. McHenry's Modesto's liability arises solely from record ownership of 1700
20 McHenry Avenue, Modesto, California. McHenry Modesto has sustained damages, as alleged
21 herein, which were caused, entirely or in part, by the acts and omissions of defendants as set
22 forth herein. McHenry Modesto's liability is based solely upon a derivative form of liability
23 not resulting from McHenry Modesto's conduct, but only from an obligation imposed on
24 McHenry Modesto by law; therefore, McHenry is entitled to complete indemnity from each
25 defendant.

26     39.   McHenry Modesto assigned to plaintiffs, without limitation, all claims, rights,
27 and causes of action that McHenry Modesto has asserted or could assert with respect to PERC
28 and/or its byproducts. Plaintiffs are now the owners and holders of all claims, rights, and

1    causes of action that McHenry Modesto has asserted or could assert with respect to PERC
2    and/or its byproducts.  Therefore, plaintiffs are entitled to complete indemnity from each
3    defendant for the damages sustained by McHenry Modesto, including the sums expended by
4    McHenry Modesto to investigate and remediate chlorinated solvent contamination at and
5    surrounding 1700 McHenry Avenue, Modesto, California, and the sums which will be
6    expended by McHenry Modesto in the future to continue and finalize remediation of the
7    chlorinated solvent contamination at and surrounding 1700 McHenry Avenue, Modesto,
8    California.

## SECOND CAUSE OF ACTION

### (Strict Liability Against All Defendants)

11    40.    Plaintiffs refer to paragraphs 1 through 39 above, and by this reference
12    incorporates them herein as though set forth in full.

13    41.    The manufacturer defendants, distributor defendants, and chlorinated solvent
14    equipment manufacturers, and each of them, designed, manufactured, formulated, packaged,
15    distributed, and/or sold products containing chlorinated solvents and/or equipment specifically
16    designed to store, use, process, and dispose of chlorinated solvents.

17    42.    The manufacturer defendants, distributor defendants, and chlorinated solvent
18    equipment defendants, and each of them, represented, asserted, claimed, and warranted that
19    chlorinated solvents and/or chlorinated solvent equipment could be used in conformity with
20    accompanying instructions and labels in a manner which would not cause injury or damage.

21    43.    The manufacturer defendants, distributor defendants, and chlorinated solvent
22    equipment defendants, and each of them, knew, or should have known, that the chlorinated
23    solvents and/or chlorinated solvent equipment would be used without inspection for defects,
24    and if any inspection were performed, that the defects would not be discovered with the
25    exercise of reasonable diligence.

26    44.    These defendants, and each of them, designed, manufactured, formulated,
27    packaged, distributed, applied, disposed of, and/or sold chlorinated solvents and/or the
28    chlorinated solvent equipment.  Defendants knew, or should have known, that exposure to

chlorinated solvents would create risk of harms to human health and contaminate sewer and water systems.

45.     Chlorinated solvents are defective products because, among other things: (a) chlorinated solvents cause extensive groundwater contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, chlorinated solvents render drinking water unfit for purveying to consumers and create a public health hazard whenever normal and necessary maintenance is performed on the sewer system, or otherwise adversely impacts normal use of the sewer and water system; (c) chlorinated solvents pose a significant threat to public health; (d) defendants failed to provide adequate warnings of the known and foreseeable risks of chlorinated solvents; and (e) defendants failed to conduct adequate scientific studies to evaluate the environmental fate and potential human health effects of chlorinated solvents.

46.     At all relevant times the:

        (a)     chlorinated solvent equipment defendants were aware of the use of chlorinated solvents in the dry cleaning process or as cleaning solvents;

        (b)     defendant chlorinated solvent equipment manufacturers were aware of the typical waste and disposal practices resulting from the intended use of their equipment. Despite such knowledge, these defendants designed their equipment in such a manner that would result in spills, leaks, and/or discharge of chlorinated solvents during normal operations;

        (c)     defendants improperly designed their chlorinated solvent equipment by failing to provide appropriate mechanisms to prevent and/or catch releases or spills of chlorinated solvents and its by-products for such equipment;

        (d)     defendants failed to design proper mechanisms which would eliminate, prevent, and/or treat contamination arising from the dry cleaning process such as contamination from separator wastewater, spent filter cartridges, muck, and still bottoms;

        (e)     defendant chlorinated solvent equipment manufacturers knew, or should have known, of appropriate equipment redesigns, retrofits, and/or modifications to protect against environmental contamination associated with the use of such equipment, and

1   negligently and/or consciously disregarded this knowledge and failed to redesign, modify,

2   and/or retrofit the subject equipment.  Safer alternative designs and cleaning processes were

3   scientifically feasible and economical;

4           (f)    defendant manufacturers and distributors represented to the public and

5   regulatory authorities that the products they sold would degrade into harmless substances and

6   would not cause contamination.  At the time said representations were made, said defendants

7   knew, or should have known, these representations were false, misleading, and/or that there

8   was no reasonable basis to believe that they were true;  and

9           (g)    when chlorinated solvents were applied and disposed of pursuant to the

10  defendant manufacturers' recommended application and disposal procedures set forth in

11  product brochures, trade group publications funded by defendants, seminars, meetings,

12  advertisements, oral statements, and by other means, chlorinated solvents contaminated the

13  sewer systems because of defendant manufacturers' failure to recommend adequate and proper

14  safeguards to avoid or prevent contamination of the sewer system.

15       47.    The chlorinated solvent equipment is a defective product because among other

16  things: (1) the chlorinated solvent equipment causes extensive contamination, even when used

17  in a foreseeable and intended manners; (2) at extremely low levels, chlorinated solvents

18  contaminate sewer and water systems; (3) the use of chlorinated solvent equipment poses a

19  significant threat to public health; (4) defendants failed to provide adequate warnings of the

20  known and foreseeable risk of the use of chlorinated solvent equipment;  and (5) defendants

21  failed to conduct adequate scientific studies to evaluate the environmental fate and potential

22  human health effects of the use of chlorinated solvent equipment.

23       48.    The above-described defects in chlorinated solvents and chlorinated solvent

24  equipment existed when the chlorinated solvents and chlorinated solvent equipment left the

25  defendants' possession.  The chlorinated solvents and chlorinated solvent equipment were used

26  in a manner in which they were foreseeably intended to be used.

27       49.    As a proximate and direct result of the defects alleged herein, the defendant

28  manufacturers, distributors, and chlorinated solvent equipment manufacturers, and each of

1   them, contaminated the property located at and surrounding 1700 McHenry Avenue, Modesto,

2   California, damages in an amount within the jurisdiction of this court.

3       50.    As a further direct and proximate result of the acts and omissions of the

4   defendants alleged herein, McHenry Modesto has been damaged because it has been required

5   to obtain, and will require, the services of engineers, hydrogeologists, contractors, and other

6   professionals to investigate and remedy the contamination problem.

7       51.    Plaintiffs are informed and believe and thereon allege that as a further direct and

8   proximate result of the acts and omissions of the defendants alleged herein, McHenry Modesto

9   has sustained increased expenses and loss of use of the property, damages in an amount within

10  the jurisdiction of this court.  Plaintiffs are also entitled to costs and prejudgment interest to the

11  full extent permitted by law.

12      52.    The manufacturer, distributor, and chlorinated solvent equipment defendants

13  knew that it was substantially certain that their alleged acts and omissions described above

14  would cause serious injury and property damage, including the contamination of the sewer and

15  water system with chlorinated solvents.  Defendants committed each of the above-described

16  acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with

17  conscious disregard of the health and safety of others in at least the following respects:

18          (a)    Defendants knew chlorinated solvents would contaminate the sewer

19  system, groundwater, and public drinking water supplies.  Nonetheless, defendants instructed

20  chlorinated solvents users to dispose of chlorinated solvents into public sewers or onto the

21  ground with conscious disregard of the public health and safety.

22          (b)    Although defendants knew that chlorinated solvents were human

23  carcinogens and that chlorinated solvent equipment habitually leaked chlorinated solvents into

24  the environment, causing property damage, defendants individually and through trade

25  associations sought to suppress unfavorable publicity regarding chlorinated solvents,

26  manufactured and funded favorable scientific studies knowing they were biased and/or

27  meritless, and suppressed information regarding the hazards of chlorinated solvents from

28  regulators, all for the sake of profit.

1    53.    This conduct is reprehensible, despicable, and was performed with the intent to

2    induce reliance by a class of persons including their customers, the public, regulatory agencies,

3    plaintiffs, and McHenry Modesto on false representations, and to promote sales of chlorinated

4    solvents and chlorinated solvent equipment in conscious disregard of the known risks of injury

5    to health and property.  Defendants acted with willful and conscious disregard of the probable

6    dangerous consequences of that conduct and its foreseeable impact upon McHenry Modesto.

7    Therefore, on behalf of McHenry Modesto, plaintiffs request an award of punitive damages in

8    an amount to punish defendants.

9                              **THIRD CAUSE OF ACTION**

10                   **(Continuing Trespass Against All Defendants)**

11    54.    Plaintiffs reallege paragraphs 1 through 53, inclusive, of this complaint and

12    incorporate them herein by reference.

13    55.    Plaintiffs are the owners and/or actual possessors of the sewer and water

14    system.

15    56.    McHenry Modesto is the owner of the property located at 1700 McHenry

16    Avenue, Modesto, California, and has assigned to plaintiffs all claims, rights, and causes of

17    action that McHenry Modesto has asserted or could assert with respect to PERC and/or its

18    byproducts.

19    57.    The defendants so negligently, recklessly, and/or intentionally failed to properly

20    control, apply, use, and/or dispose of chlorinated solvents that they directly and proximately

21    caused chlorinated solvents to contaminate the property located at and surrounding 1700

22    McHenry Avenue, Modesto, California, as follows:

23                   (a)    The defendants participated in the use and disposal of chlorinated

24    solvents by intentionally, recklessly, and/or negligently controlling the use and disposal (and

25    providing instructions for the disposal) of chlorinated solvents by dry cleaning stores;

26    intentionally, recklessly, and/or negligently instructing dry cleaners about the purportedly

27    proper disposal methods for chlorinated solvents;  and intentionally, recklessly, and/or

28    negligently calibrating, designing, and manufacturing customers' chlorinated solvent

1   equipment in such a manner that chlorinated solvents were routinely disposed of into the
2   property at and surrounding 1700 McHenry Avenue, Modesto, California, on an ordinary basis.
3   As a result of this activity, chlorinated solvents contaminated the sewer lateral to and property
4   at and surrounding 1700 McHenry Avenue, Modesto, California.

5          (b)   Defendant manufacturers, distributors, and chlorinated solvent
6   equipment manufacturers intentionally, recklessly, and/or negligently instructed end-users,
7   including retail dry cleaners, about the disposal of chlorinated solvents through informational
8   brochures, instructional seminars, trade organization brochures funded, published, and
9   distributed by defendants, product labels, and other literature.  Said defendants recommended
10  that chlorinated solvents be dumped into the sewer system and/or dumped on the ground,
11  notwithstanding that said defendants knew, or should have known, that chlorinated solvents
12  would contaminate the water and soil and pose a risk to health.  As a result, when chlorinated
13  solvents were disposed of pursuant to the techniques recommended by said defendants, the
14  chlorinated solvents contaminated the property at and surrounding 1700 McHenry Avenue,
15  Modesto, California.  In addition, the chlorinated solvent equipment manufacturers designed
16  their equipment to directly discharge chlorinated solvent waste into the sewer and/or instructed
17  machine users to dispose of chlorinated solvent waste into the sewer.

18         (c)   During this time, defendant manufacturers, distributors, and chlorinated
19  solvent equipment manufacturers:  (1) knew and/or reasonably should have known that
20  chlorinated solvents had caused environmental contamination; and  (2) had not conducted
21  adequate testing to determine the environmental fate and potential human health effects of
22  chlorinated solvents.  Even though said defendants had sufficient information to determine that
23  chlorinated solvents posed a threat to the environment, they did not modify their chlorinated
24  solvent disposal instructions or provide appropriate advice, instruction, or information to their
25  customers regarding proper disposal and use needed to avoid environmental contamination.

26         (d)   Each of the defendants knew, or should have known, to avoid cleaning
27  or rinsing empty chlorinated solvent containers and chlorinated solvent equipment residue and
28

1   muck into sewers and/or soil. These defendants knew, or should have known, that this practice
2   resulted in contamination. Despite these facts, defendants continued these negligent practices.

3           (e)     Defendants knew, or should have known, that chlorinated solvents were
4   persistent, and that chlorinated solvents could contaminate soil and groundwater.

5       58.     The chlorinated solvent manufacturer defendants, the distributor defendants,
6   and the chlorinated solvent equipment manufacturer defendants were each a substantial factor
7   in bringing about the resulting contamination of plaintiffs' and McHenry Modesto's possessory
8   interests, and each of the defendants aided and abetted the continuing trespasses and are jointly
9   responsible for the injuries and damages as alleged in this Complaint and based on the
10   following alleged conduct:

11           (a)     The chlorinated solvent equipment manufacturers manufactured,
12   designed, distributed, prepared, and installed dry cleaning equipment and/or parts which
13   defendants knew, or should have known, would directly discharge and leak toxic PERC into
14   the sewer system and ground, and intrude upon, contaminate, and damage property, including
15   the property at and surrounding 1700 McHenry Avenue, Modesto, California;

16           (b)     The chlorinated solvent manufacturers, the distributor defendants, and
17   the chlorinated solvent equipment manufacturer defendants intentionally caused Modesto dry
18   cleaners, including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue,
19   Modesto, California, to dispose of the toxic chlorinated solvent waste by instructing,
20   requesting, and/or inducing Modesto dry cleaners, including the Ideal Cleaners located at and
21   adjacent to 1700 McHenry Avenue, Modesto, California, to dump chlorinated solvent waste
22   onto the ground, or discharge chlorinated solvent waste directly into the sewer system, or pour
23   chlorinated solvent waste down the drain, which caused the toxic chlorinated solvent waste to
24   intrude upon the property located at and surrounding 1700 McHenry Avenue and cause the
25   alleged harm and damage; and

26           (c)     At the time, the chlorinated solvent manufacturers, the distributor
27   defendants, and the chlorinated equipment manufacturer defendants intentionally instructed,
28   requested, and/or induced the alleged tortious conduct by retailer Modesto dry cleaners,

1 including the Ideal Cleaners located at and adjacent to 1700 McHenry Avenue, Modesto,

2 California, the chlorinated solvent manufacturer defendants, the distributor defendants, and the

3 chlorinated solvent equipment manufacturer defendants knew, or should have known, of the

4 conditions under which the delicts were to be done, the toxicity of the chlorinated solvent

5 waste, and the consequences of the acts. These defendants instructed, requested, and/or

6 induced the delicts and were a substantial factor in causing the resulting contamination of the

7 property located at and surrounding 1700 McHenry Avenue, Modesto, California, and further

8 aided and abetted the delicts, and are jointly liable with respect to the injuries and damages

9 sustained. Plaintiffs, on behalf of McHenry Modesto, also seek punitive damages against the

10 defendants.

11      59.    The chlorinated solvent contamination of the sewer and water system,

12 plaintiffs' property, and the property located at and surrounding 1700 McHenry Avenue,

13 Modesto, California, has varied over time and can be reasonably abated. McHenry Modesto

14 has engaged, and will continue to engage, in abatement programs.

15 ### FOURTH CAUSE OF ACTION

16 **(Continuing Nuisance Against All Defendants)**

17      60.    Plaintiffs reallege paragraphs 1 through 59 of this complaint and incorporate

18 them herein by reference.

19      61.    The negligent, reckless, intentional, and ultrahazardous activity of the

20 defendants, and each of them, has resulted in the contamination of the property located at and

21 surrounding 1700 McHenry Avenue, Modesto, California, plaintiffs' property, and plaintiffs'

22 sewer and water system, and constitutes a continuing nuisance within the meaning of Civil

23 Code section 3479. The chlorinated solvent contamination has varied over time and can be

24 reasonably abated. McHenry Modesto has engaged, and will continue to engage, in abatement

25 programs.

26      62.    Since plaintiffs have rights to the causes of action stated herein from McHenry

27 Modesto, a property owner adversely affected by the nuisance, it is a private nuisance within

28 the meaning of Civil Code section 3481.

1    63.    As a direct and proximate result of the nuisance, McHenry Modesto has been

2  damaged.  On behalf of McHenry Modesto, plaintiffs are entitled to the compensatory damages

3  alleged herein, and seek punitive damages against the defendants.

4    **WHEREFORE**, plaintiffs request judgment against defendants, and each of them, for:

5    1.    Compensatory damages, according to proof;

6    2.    Punitive damages against the chlorinated solvent manufacturer defendants,

7  distributor defendants, and chlorinated solvent equipment manufacturer defendants, in an

8  amount sufficient to punish and to deter said defendants from ever committing the same or

9  similar acts;

10    3.    For relief and order of abatement or enjoinder of nuisance as set forth in the

11  fourth cause of action herein;

12    4.    For litigation costs, including attorneys' fees;

13    5.    For costs of suit incurred herein, and prejudgment interest to the full extent

14  permitted by law;  and

15    6.    For such other and further relief as the court may deem just and proper.

16  Dated:  December 22, 2005            **MILLER, AXLINE & SAWYER**
                                        A Professional Corporation
17

18                                By:

19                                      DUANE C. MILLER
                                        Attorneys for Plaintiffs City of Modesto and City
20                                      of Modesto Sewer District No. 1

21

22

23

24

25

26

27

28