# EXHIBIT 4

| | |
|---|---|
| 1<br>2<br>3<br>4 | ROGERS JOSEPH O'DONNELL<br>ROBERT C. GOODMAN (State Bar No. 111554)<br>AARON P. SILBERMAN (State Bar No. 161021)<br>311 California Street<br>San Francisco, California 94104<br>Telephone: 415.956.2828<br>Facsimile: 415.956.6457 |
| 5<br>6 | Attorneys for Defendants, Cross-Complainants,<br>Cross-Defendants, and Third-Party Plaintiffs<br>STEPHEN C. LYON; SUZANNE S. LYON;<br>RUSSELL R. TONDA; DIANE M. TONDA |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>STEPHEN C. LYON; SUZANNE S. LYON; RUSSELL R. TONDA; DIANE M. TONDA; RAJENDRA JAMNADAS, personal representative of the ESTATE OF SHANTALIL JAMNADAS,<br><br>   Defendants. | Case No. 1:07 CV 00491 LJO NEW (TAG)<br><br>**STEPHEN C. LYON'S THIRD PARTY COMPLAINT AND DEMAND FOR JURY TRIAL** |
| AND RELATED CROSS-COMPLAINTS. | |
| STEPHEN C. LYON,<br><br>   Third-Party Plaintiff,<br><br>vs.<br><br>THE DOW CHEMICAL COMPANY; E.I. DUPONT DE NEMOURS AND COMPANY; VULCAN MATERIALS COMPANY; OCCIDENTAL CHEMICAL CORPORATION; PPG INDUSTRIES, INC.; R.R. STREET & COMPANY, INC.; GOSS JEWETT CO. OF NORTHERN CALIFORNIA; AMERICAN LAUNDRY MACHINERY, INC. D/B/A AJAX MANUFACTURING DIVISION & MARTIN EQUIPMENT & McGRAW EDISON COMPANY, AS SUCCESSOR TO COOPER INDUSTRIES; BOWE PERMAC, INC.; M.B.L., INC.; ECHCO SALES AND EQUIPMENT CO., INC.; TECHNICHEM; VAN WATERS AND | |

| | |
|---|---|
| 1 | ROGERS; ADAM HART; JACK HART; DAWINE D. HALFORD; HILLARY'S AUTO SALES; SARK'S AUTO SALES; MODESTO MAZDA & ISUZU; RULE DALE MITSUBISHI & HYUNDAI; TRANSMATIC TRANSMISSION AUTOMOTIVE; and JOE'S AUTOMOTIVE CENTER, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Third Party-Defendants. |

## THIRD-PARTY COMPLAINT

1.  Defendant and Cross-Claimant Stephen C. Lyon ("Lyon") brings these third-party claims (collectively, "the Third-Party Claims") for indemnity, contribution, and declaratory relief against the following third-party defendants: the Dow Chemical Company ("Dow"); E.I. Dupont De Nemours and Company ("Dupont"); Vulcan Materials Company ("Vulcan"); Occidental Chemical Corporation ("Occidental"); PPG Industries, Inc. ("PPG"); R.R. Street & Company, Inc. ("RR Street"); Goss Jewett Co. of Northern California ("Goss Jewett"); American Laundry Machinery, Inc. d/b/a Ajax Manufacturing Division & Martin Equipment & McGraw Edison Company, as successor to Cooper Industries ("American Laundry"); Bowe Permac, Inc. ("Bowe Permac"); M.B.L., Inc. ("MBL"); Echco Sales and Equipment Co., Inc. ("Echco"); Technichem; Van Waters and Rogers ("Van Waters"); Adam Hart; Jack Hart; Dawine D. Halford; Hillary's Auto Sales ("Hillary's Auto"); Sark's Auto Sales ("Sark's Auto"); Modesto Mazda & Isuzu ("Modesto Mazda"); Rule Dale Mitsubishi & Hyundai ("Rule Dale"); Transmatic Transmission Automotive ("Transmatic"); and Joe's Automotive Center ("Joe's Auto") (collectively, "Third-Party Defendants"). The Third-Party Claims arise out of the same transactions, occurrences and set of circumstances as the claims set forth in the Complaint of the United States of America ("Plaintiff") in this action.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter of the Third-Party Claims pursuant to (a) 28 U.S.C. § 1367 supplemental jurisdiction; (b) Rule 14 of the Federal Rules of Civil Procedure; (c) Section 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(b); and (d) 28 U.S.C.

Page 2

§ 1331. This Court also has subject matter jurisdiction over the Third-Party Claim for declaratory relief by virtue of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure. In addition, this Court has subject matter jurisdiction over the Third-Party Claims brought under state law under the doctrine of pendant jurisdiction set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). The Third-Party Claims under state law arise from the same nucleus of operative facts as the claims under federal law.

3.   Venue for the Third-Party Claims is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C.§ 9613(b) in that the conduct at issue in the Third-Party Claims occurred in this district.

### THIRD PARTY DEFENDANTS

**A.   Chlorinated Solvent Manufacturers**

4.   Dow is a Delaware corporation with its principal place of business located in Midland, Michigan.

5.   Dupont is a Delaware corporation with its principal place of business in Wilmington, Delaware.

6.   PPG is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.

7.   Vulcan is a New Jersey corporation with its principal place of business in Homewood, Alabama.

8.   Occidental is a New York corporation with its principal place of business in Dallas, Texas.

9.   Dow, Dupont, PPG, Vulcan, and Occidental (collectively, "Solvent Manufacturer Third-Party Defendants"), and each of them, manufactured, distributed, transported, packaged, sold and/or disposed of a toxic chlorinated solvent called perchloroethylene ("PERC"). PERC, and its degradation products and ingredients, are referred to collectively as "chlorinated solvents" in the State of California. The Solvent Manufacturer Third-Party Defendants, and each of them, were legally responsible for and committed each of the tortious and wrongful acts

alleged in the Third-Party Claims, and in doing those tortious and wrongful acts, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner, agent, alter ego, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of each of the remaining named Third-Party Defendants.

**B.     Solvent and Equipment Distributors**

10.    MBL is a California corporation with its principal place of business in Santa Clara, California.

11.    RR Street is a corporation with its principal place of business in Naperville, Illinois.

12.    Goss Jewett is a California corporation with its principal place of business in San Mateo, California.

13.    Echco is a California corporation with its principal place of business in Castro Valley, California.

14.    MBL, RR Street, Goss Jewett, and Echco, and each of them: (1) purchased and then resold chlorinated solvents in the State of California to Halford's, a dry cleaning facility located at 941 McHenry Avenue, located in the City of Modesto, Stanislaus County, California; (2) distributed, designed, assembled, maintained, controlled, operated and/or repaired equipment parts, replacement parts, and appurtenances, including, but not limited to, dry cleaning equipment in the State of California specifically designed for the use, application, and disposal of chlorinated solvents by Halford's; (3) would engage in service visits and inspections on the premises of Halford's, including the dry cleaning equipment products and testing and inspecting Halford's dry cleaner equipment which included witnessing Halford's disposal of chlorinated solvents; (4) were legally responsible for and committed each of the tortious and wrongful acts alleged in the Third-Party Claims; and (5) in doing the tortious and wrongful acts alleged in the Third-Party Claims, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or

indemnitor of each of the remaining named Third-Party Defendants.

### C.  Chlorinated Solvent Equipment Manufacturers

15. American Laundry is a California corporation with its principal place of business in Salinas, California.

16. Bowe Permac is a Texas corporation with its principal place of business in Dallas, Texas.

17. American Laundry and Bowe Permac, and each of them: (1) manufactured, distributed, designed, assembled, maintained, supervised, controlled, sold, operated and/or repaired equipment, parts, and appurtenances, including, but not limited to, dry cleaning equipment, in the State of California specifically designed for the storage, application, and disposal of chlorinated solvents by Halford's that have contributed to the alleged contamination; (2) were legally responsible for and committed each of the tortious and wrongful acts alleged in the Third-Party Claims; and (3) in doing the tortious and wrongful acts alleged in the Third-Party Claims, acted in the capacity of co-conspirator, aider, abettor, joint venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of each of the remaining named Third-Party Defendants.

### D.  Owners or Operators of Halford's

18. Third-Party Defendant Dawine D. Halford and/or her predecessors in interest owned Halford's from 1948 to 1974 and operated Halford's from 1948 to 1955.

19. Third-Party Defendants Jack Hart and Adam Hart (collectively, "the Harts"), and each of them, operated Halford's from 1955 to 1977.

### E.  Owners or Operators of Sites Adjacent or Near to Halford's

20. Hillary's Auto is a business entity (form unknown) with its principal place of business in Modesto, California.

21. Sark's Auto is a business entity (form unknown) with its principal place of business in Modesto, California.

22. Modesto Mazda is a business entity (form unknown) with its principal place of

1  business in Modesto, California.

2  23.  Rule Dale is a business entity (form unknown) with its principal place of
3  business in Modesto, California.

4  24.  Transmatic is a business entity (form unknown) with its principal place of
5  business in Modesto, California.

6  25.  Joe's Auto is a business entity Third-Party Defendant with its principal place of
7  business in Modesto, California.

8  26.  Hillary's Auto, Sark's Auto, Modesto Mazda, Rule Dale, Transmatic, and Joe's
9  Auto, and each of them:  (1) owned and operated real property and/or some other business or
10 personal capacity involving the use of chlorinated solvents and, during the time in which they
11 owned or operated those properties and/or businesses, disposed of chlorinated solvents that
12 entered the soil and groundwater; (2) were legally responsible for and committed each of the
13 tortious and wrongful acts alleged in the Third-Party Claims; and (3) in doing the tortious and
14 wrongful acts alleged in the Third-Party Claims, acted in the capacity of co-conspirator, aider,
15 abettor, joint venturer, partner, agent, principal, successor-in-interest, surviving corporation,
16 fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor, patent
17 holder and/or indemnitor of each of the remaining named Third-Party Defendants.

## **GENERAL ALLEGATIONS**

19 27.  Lyon has made no claim against any governmental hazardous substances
20 response fund and brings these Third-Party Claims solely under the private cause of action for
21 contribution of necessary response costs incurred, as afforded by section 113(f)(1) of
22 CERCLA, 42 U.S.C. § 9613(f)(1), and California common law.

23 28.  The term "CERCLA" shall mean the Comprehensive Environmental Response,
24 Compensation and Liability Act of 1980, as amended by the Superfund Amendments &
25 Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*

26 29.  The term "disposal" shall have the meaning set forth in CERCLA section
27 101(29), 42 U.S.C. § 9601(29).

28 30.  The term "environment" shall have the meaning set forth in CERCLA section

1   101(8), 42 U.S.C. § 9601(8).

2   31.   The term "facility" shall have the meaning set forth in CERCLA section 101(9), 42 U.S.C. § 9601(9).

3   32.   The term "hazardous substance" shall have the meaning set forth in CERCLA section 101(14), 42 U.S.C. § 9601(14).

4   33.   The terms "National Contingency Plan" and "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan, promulgated pursuant to CERCLA section 105, 42 U.S.C. § 9605, at 40 C.F.R. Part 300.

5   34.   The term "release" shall have the meaning set forth in CERCLA section 101(22), 42 U.S.C. § 9601(22).

6   35.   The term "response costs" shall mean the costs of "removal" of hazardous substances and "remedial actions," as those terms are defined in CERCLA sections 101(23) and (24), 42 U.S.C. §§ 9601(23) and (24), and all other costs to respond, as defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), to releases of hazardous substances.  The term "response costs" shall also include any costs, damages, attorneys' fees, interest or any other remedies or expenses thereof sought or recovered by the Plaintiff in the underlying Complaint on file herein.

7   36.   As used in the Third-Party Claims, the term "Site" shall mean a geographic area of groundwater contamination emanating from the vicinity of Halford's.

## FIRST CROSS-CLAIM

### (Contribution under CERCLA § 113(f))

37.   Lyon realleges and incorporates herein by this reference paragraphs 1 through 36, inclusive.

38.   Plaintiff's Complaint alleges that Lyon is liable under CERCLA for response costs allegedly incurred by Plaintiff.  Lyon has denied any and all liability under such claims.  However, if Lyon is found to be liable under CERCLA, Third-Party Defendants, and each of them, are liable to Lyon for their acts or omissions.

39.   If the allegations in Plaintiff's Complaint are true, then there was a release or

releases of hazardous substances at the Site, as described in the Complaint.

40. If the allegations in Plaintiff's Complaint are true, then the Site constitutes a Facility within the meaning of CERCLA.

41. If the allegations in Plaintiff's Complaint are true, then Third-Party Defendants, and each of them, were owners or operators, or generators, or transporters, as defined in § 107(a) of CERCLA (42 U.S.C. § 9607), at the time hazardous substances were disposed of on the Site and/or arranged for disposal of hazardous substances, accepted hazardous substances for transport and disposal or transported hazardous substances at the Facility.

42. If the allegations in Plaintiff's Complaint are true, then Third-Party Defendants, and each of them, are liable under CERCLA, and Lyon is entitled to contribution from Third-Party Defendants toward any damages, costs, expenses, judgments, settlement sums, or penalties that Lyon may be required to pay.

## **SECOND CROSS-CLAIM**
### **(Contribution)**

43. Lyon realleges and incorporates herein by this reference the allegations contained in paragraphs 1 through 42, inclusive.

44. Section 1432 of the California Civil Code provides in pertinent part: "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."

45. Lyon is informed and believes, and based upon such information and belief, alleges that Third-Party Defendants, and each of them, were active participants in the transactions and/or occurrences at issue in Plaintiff's underlying Complaint herein and that Third-Party Defendants, and each of them, are responsible totally, or in part, for the damages, if any, allegedly sustained by Plaintiff.

46. In the event that Lyon is found liable to Plaintiff herein in any amount whatsoever, Lyon is entitled to contribution from Third-Party Defendants, and each of them, according to common law principles of comparative fault and equitable allocation of loss, and under applicable state statutory law, based on Third-Party Defendants' releases of hazardous

substances into the environment on or from the Site.

### THIRD CROSS-CLAIM

### (Equitable Indemnity)

47. Lyon realleges and incorporates herein by this reference the allegations contained in paragraphs 1 through 46, inclusive.

48. The liability, if any, that Lyon may have to any person or entity, including, without limitation, any governmental or regulatory agency, under any law, regulation, or common law principle, relating to the alleged contamination at the Site, is the result, in whole or in part, of the acts or omissions of Third-Party Defendants.

49. The alleged release of hazardous substances into the environment at, near, and about the Site, is primarily a direct and proximate result of Third-Party Defendants' actions, omissions, or conduct.

50. If Lyon is found in some manner liable to Plaintiff or to any other person, entity, or governmental agency, as a result of the incidents and occurrences described in Plaintiff's Complaint, Lyon's liability will be based upon the derivative form of liability arising, in whole or in part, from the actions, omissions, or conduct, of Third-Party Defendants. Third-Party Defendants, and each of them, are accordingly bound and obligated to indemnify and hold harmless Lyon for all response costs that have been, or will be incurred by Lyon as required by law in response to the alleged release or threatened release of hazardous substances at the Site, including any costs, damages, attorneys' fees, interest, or any other remedies or expenses thereof sought or recovered by the Plaintiff in the underlying Complaint on file herein, or in an amount this Court deems appropriate.

### FOURTH CROSS-CLAIM

### (Federal Declaratory Relief)

51. Lyon realleges and incorporates herein by this reference the allegations contained in paragraphs 1 through 50, inclusive.

52. A dispute has arisen and an actual controversy exists between Lyon and Third-Party Defendants in that Lyon claims that Third-Party Defendants, and each of them, are

Page 9

obligated to indemnify Lyon in whole or in part for any specific performance obligations or sums for which Lyon may be found liable or indebted to Plaintiff for alleged response costs and any other costs and attorneys' fees heretofore or hereafter sought by Plaintiff or to any other person or entity, including without limitation, any governmental or regulatory agency in responding to the alleged release or threatened release of hazardous substances as a result of Third-Party Defendants' individual acts and conduct complained of herein.  Lyon is informed and believes, and on that basis alleges, that Third-Party Defendants deny such obligation.

53.     An actual controversy has arisen and now exists between Lyon and Third-Party Defendants concerning their respective rights, obligations and duties in that Lyon contends that Third-Party Defendants are in whole, or in part, legally responsible for the damages and relief sought by Plaintiff herein, and Third-Party Defendants are liable to Lyon in direct proportion to their share of liability, and Lyon is informed and believes, and on that basis alleges, that Third-Party Defendants dispute this contention and deny any liability to Lyon.

54.     Substantial costs will be incurred by Lyon over time and after conclusion of this action in the event the Plaintiff prevails on its underlying Complaint herein.  Unless declaratory relief is granted, it will be necessary for Lyon to commence a later action against Third-Party Defendants to secure compensation for the costs incurred and damages sustained, if any.

55.     Lyon is entitled to and hereby seeks a declaratory judgment, pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), of Third-Party Defendants' liability to Lyon for all response costs incurred or to be incurred by Lyon in responding to the alleged releases and threatened releases of hazardous wastes, and/or hazardous substances and adverse environmental consequences at issue herein.

56.     Lyon is entitled to, and hereby seeks, a judicial determination pursuant to the Federal Declaratory Relief Act, 28 U.S.C. § 2201, of Lyon's right to indemnification and contribution from Third-Party Defendants, and each of them, for all response costs that have been, or will be incurred by Lyon as required by law in response to the alleged release or threatened release of hazardous substances at the Site, including any costs, damages, attorneys' fees, interest or any other remedies or expenses thereof sought or recovered by Plaintiff in the

underlying Complaint on file herein.

**PRAYER FOR RELIEF**

WHEREFORE, Lyon prays as follows:

1. That judgment be entered in favor of Lyon on his Third-Party Complaint;

2. That Lyon be awarded costs of suit and attorneys' fees incurred in prosecution of this Third-Party Complaint; and

3. For such other and further relief as the Court may deem just and proper.

Dated:  September 10, 2007          ROGERS JOSEPH O'DONNELL


By:  */s/ Aaron P. Silberman*
       ROBERT C. GOODMAN
       AARON P. SILBERMAN

Attorneys for Defendants, Cross-Complainants, Cross-Defendants and Third-Party Plaintiffs
STEPHEN C. LYON; SUZANNE S. LYON; RUSSELL R. TONDA; DIANE M. TONDA

**DEMAND FOR JURY TRIAL**

Lyon hereby demands a trial by jury.

Dated: September 10, 2007        ROGERS JOSEPH O'DONNELL

By:   */s/ Aaron P. Silberman*
     ROBERT C. GOODMAN
     AARON P. SILBERMAN

Attorneys for Defendants, Cross-Complainants, Cross-Defendants and Third-Party Plaintiffs STEPHEN C. LYON; SUZANNE S. LYON; RUSSELL R. TONDA; DIANE M. TONDA