# EXHIBIT 11

1  DONALD W. BROWN (SBN 83347)
   WENDY L. FENG (SBN 200813)
2  STEPHEN C. CHIEN (SBN 244267)
   COVINGTON & BURLING LLP
3  One Front Street
   San Francisco, CA 94111
4  Telephone: (415) 591-6000
   Facsimile: (415) 591-6091
5  Email: dwbrown@cov.com, wfeng@cov.com,
   schien@cov.com
6
   Attorneys for Defendant and Cross-Complainant
7  Legacy Vulcan Corp.

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF LOS ANGELES

11  In re:
                                              Lead Case No.: BC328022
12  VULCAN MATERIALS CONSOLIDATED
    COVERAGE LITIGATION
13

14  TRANSPORT INSURANCE CO.,                  Case No.: BC328022

15              Plaintiff,

16      v.

17  VULCAN MATERIALS CO.,

18              Defendant.

19

20  FIRST STATE INSURANCE CO., et al.,
                                              Case No.: BC354664
21              Plaintiffs,

22      v.

23  VULCAN MATERIALS CO., et al.,

24              Defendants.

25

26

27

28

| | |
|---|---|
| 1 | |
| 2 | LEGACY VULCAN CORP., |
| |                 Cross-Complainant, |

LEGACY VULCAN CORP.,

           Cross-Complainant,

     v.

INSURANCE COMPANY OF NORTH AMERICA, LEXINGTON INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, TRANSPORT INSURANCE COMPANY, AFFILIATED FM INSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, ALLIANZ UNDERWRITERS INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AMERICAN RE-INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, EMPLOYERS REINSURANCE CORPORATION, EXECUTIVE RISK INDEMNITY INC., FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, HDI-GERLING INDUSTRIE VERSICHERUNG AG, GRANITE STATE INSURANCE COMPANY, GERLING-KONZERN GENERAL INSURANCE COMPANY - U.K. BRANCH, HARBOR INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, CERTAIN UNDERWRITING SYNDICATES AT LLOYD'S, LONDON, ALBA GENERAL INSURANCE COMPANY, ANDREW WEIR INSURANCE COMPANY LIMITED, EXCESS INSURANCE COMPANY LIMITED, LONDON & OVERSEAS INSURANCE COMPANY LIMITED, ORION INSURANCE COMPANY LIMITED, RIVER THAMES INSURANCE COMPANY LIMITED, WORLD AUXILIARY INSURANCE CORPORATION LIMITED, NORTHWESTERN NATIONAL INSURANCE COMPANY, NORTH STAR REINSURANCE CORPORATION, NUTMEG INSURANCE COMPANY, FAIRMONT SPECIALTY INSURANCE COMPANY, R.R. STREET & COMPANY, INC., STONEWALL INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, UNIGARD INDEMNITY COMPANY, UNITED NATIONAL INSURANCE COMPANY,

Case Nos. BC328022 & BC 354664

**LEGACY VULCAN CORP.'S CROSS-COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; FOR AN ACCOUNTING; AND FOR DECLARATORY RELIEF**

Dept:        CCW-311
Judge:     Hon. Carl J. West

Date actions filed:
    January 30, 2005; June 28, 2006

Trial Date: None set

2

1 UNITED STATES FIRE INSURANCE
  COMPANY, WINTERTHUR SWISS
2 INSURANCE COMPANY, XL INSURANCE
  AMERICA, INC. COMPANY, ZURICH
3 INTERNATIONAL (BERMUDA) LTD.,
  ZURICH REINSURANCE (LONDON)
4 LIMITED, ROES 1 through 500, inclusive,
  and DOES 1 through 9,000, inclusive,
5
                    Cross-Defendants.
6

7                        **INTRODUCTION**

8             This is an insurance coverage action brought by insurance policy holder Legacy

9 Vulcan Corp., formerly known as Vulcan Materials Company ("Vulcan").  Vulcan at one time

10 had a chemical division that manufactured and sold perchloroethylene ("perc"), a chemical

11 product used in the dry cleaning process.  Vulcan has been sued in five cases alleging that

12 Vulcan's product (known as "PerSec") has contaminated soil, groundwater, drinking wells and

13 the sewer system in Modesto, California, causing property damage (four cases) and personal

14 injury (one case).  Three of the lawsuits, filed by the City of Modesto and related entities,

15 recently settled after nearly nine years of litigation.  The other two lawsuits were only recently

16 filed.  In this coverage action, Vulcan seeks to recover from its general liability insurers the

17 amounts Vulcan paid to settle the three City of Modesto cases ($20,395,000.00), and the

18 amounts Vulcan has paid and continues to pay for attorneys fees and other costs in defense of

19 the five Modesto lawsuits ($15.3 million).

20             The plaintiffs in the Modesto perc cases also sued R.R. Street & Company, Inc.

21 ("Street").  From 1961 to 1992, Street purchased PerSec from Vulcan, which Street then resold.

22 In 1992, Street became an agent of Vulcan with a limited role of soliciting orders for PerSec

23 from distributors.  Between 1976 and 1992, Street was included on Vulcan's insurance policies

24 as an additional insured.  Street has been defended in the Modesto perc cases by its own insurer,

25 National Union Fire Insurance Company of Pittsburgh, PA ("National Union").  National Union

26 also insured Vulcan and, along with several other members of the American International Group

27 ("AIG") of insurance companies, has been a party to this insurance coverage action since 2006.

28

                                            3

1    AIG, including National Union, has denied coverage for Vulcan's defense and

2    settlement costs in the Modesto perc litigation.  At the same time, National Union has over

3    several years paid millions of dollars for Street's defense in that same litigation.  In recent

4    weeks, National Union decided to sue its own insured – Vulcan – claiming that Vulcan is liable

5    to indemnify Street to the extent Street incurs liability in the Modesto perc litigation, and

6    contending that National Union is subrogated to and may enforce Street's indemnity rights

7    against Vulcan.  Vulcan denies that it owes Street any indemnity with respect the Modesto perc

8    litigation.  But, *if* Vulcan *were* liable to Street, Vulcan's liability insurers – *including AIG,*

9    *including National Union* – are obligated to cover Vulcan's liability.  In suing Vulcan on behalf

10    of Street, AIG has, in effect, sued itself.

11    National Union has asserted its subrogation claim in a lawsuit it and Street

12    recently filed against Vulcan in Illinois.  That claim necessarily and properly should be

13    adjudicated here, in this action, along with the related disputes between Vulcan and AIG and

14    with Vulcan's other insurers over their respective rights and obligations in relation to the

15    Modesto perc litigation.  In this cross-complaint, Vulcan seeks a determination that court orders

16    finding that Vulcan's settlements with the City of Modesto were made in good faith pursuant to

17    Cal. Code Civ. Proc. §§ 877 and 877.6, bar any claim by Street (and by National Union as

18    Street's subrogee) to equitable contribution or indemnity in the City of Modesto cases.  Vulcan

19    further seeks a declaration that it is not liable to National Union for Street's defense costs and

20    liabilities in the Modesto perc litigation.  Vulcan also seeks a declaration that if, and to the

21    extent that, Street has not been fully indemnified for its defense costs by National Union,

22    Vulcan is not obligated to indemnify Street.

23    Finally, importantly, Vulcan seeks a declaration that, to the extent Vulcan is or

24    may be liable to National Union (or Street) with respect to Street's defense costs and liabilities

25    in the Modesto perc litigation, Vulcan's insurers are obligated pursuant to the liability insurance

26    policies they issued to Vulcan to cover that liability on Vulcan's behalf.

27

28

**PARTIES**

1.   Cross-Complainant Legacy Vulcan Corp., formerly known as Vulcan Materials Company ("Vulcan"), is a corporation organized under the laws of New Jersey and headquartered in Birmingham, Alabama.  Vulcan at one time had a chemicals division, which manufactured and sold a chemical product known as "PerSec."  Vulcan is and at all times relevant to this Cross-Complaint qualified to conduct business in the State of California.

2.   Cross-Defendant Insurance Company of North America ("INA") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in New York.  At all times relevant hereto, INA was licensed to do business, and was doing and transacting business, in the State of California.  INA issued primary comprehensive general liability ("CGL") insurance policies to Vulcan for, at least, the period September 1, 1958, through December 31, 1962.  INA also issued several excess level CGL insurance policies to Vulcan at various times.

3.   Cross-Defendant Lexington Insurance Company "(Lexington") is a corporation organized under the laws of Delaware with its principal place of business in Massachusetts.  At all times relevant hereto, Lexington was licensed to do business, and was doing and transacting business, in the State of California.  Lexington is a subsidiary of American International Group, Inc. ("AIG"), which engages in the business of insurance through its subsidiary members, including Lexington.  Lexington issued primary CGL insurance policies to Vulcan for, at least, the period June 30, 1997, to June 30, 1999.  Lexington also issued several excess level CGL insurance policies to Vulcan at various times.

4.   Cross-Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  Like Lexington, National Union is an AIG company.  At all times relevant hereto, National Union was licensed to do business, and was doing and transacting business, in the State of California.  National Union issued primary CGL insurance policies to Vulcan for, at least, the period January 1, 1985, to January 1, 1986.  National Union also issued several excess level CGL insurance policies to Vulcan at various times.

1    5.   Cross-Defendant Transport Insurance Company ("Transport") is a

2    corporation organized under the laws of Ohio.  Vulcan is informed and believes, and on that

3    basis alleges, that Transport's principal place of business is in Massachusetts.  At all times

4    relevant hereto, Transport was licensed to do business, and was doing and transacting business,

5    in the State of California.  Transport issued primary CGL insurance policies to Vulcan for, at

6    least, the periods January 1, 1972, to January 1, 1976, and January 1, 1976, to January 1, 1982.

7    6.   Cross-Defendant Affiliated FM Insurance Company ("Affiliated FM") is a

8    corporation organized under the laws of Rhode Island with its principal place of business in

9    Rhode Island.  Affiliated FM Insurance Company is licensed to conduct insurance business in

10   California.

11   7.   Cross-Defendant Great American E&S Insurance Company ("Great

12   American"), formerly known as Agricultural Excess & Surplus Insurance Company, is a

13   corporation organized under the laws of Delaware, with its principal place of business in Ohio.

14   Great American is authorized to issue insurance on a surplus lines basis in California.

15   8.   Cross-Defendant Allianz Underwriters Insurance Company ("Allianz") is a

16   corporation organized under the laws of California with its principal place of business in

17   California.

18   9.   Cross-Defendant American Home Assurance Company ("American Home")

19   is a corporation organized under the laws of New York with its principal place of business in

20   New York.  Like Lexington and National Union, American Home is an AIG company.

21   American Home is licensed to conduct insurance business in California.

22   10. Cross-Defendant American Re-Insurance Company ("American Re") is a

23   corporation organized under the laws of Delaware with its principal place of business in New

24   Jersey.  American Re is licensed to conduct insurance business in California.

25   11. Cross-Defendant Continental Casualty Company ("CNA") is a corporation

26   organized under the laws of Illinois with its principal place of business in Illinois.  CNA is

27   licensed to conduct insurance business in California.

28

1        12. Cross Defendant Employers Insurance Company of Wausau is a corporation

2    organized under the laws of Wisconsin with its principal place of business in Wisconsin.

3    Employers Insurance Company of Wausau is licensed to conduct insurance business in

4    California.

5        13. Cross-Defendant Employers Reinsurance Corporation ("ERC") is a

6    corporation organized under the laws of Missouri with its principal place of business in Kansas.

7    Employers Reinsurance Corporation is licensed to conduct insurance business in California.

8        14. Upon information and belief, Cross-Defendant Executive Risk Indemnity

9    Inc., formerly known as American Excess Insurance Company, is a corporation organized under

10    the laws of Delaware with its principal place of business in New Jersey.  Executive Risk

11    Indemnity Inc. is licensed to conduct insurance business in California.

12        15. Cross-Defendant Federal Insurance Company ("Federal") is a corporation

13    organized under the laws of Indiana with its principal place of business in New Jersey.  Federal

14    is licensed to conduct insurance business in California.

15        16. Cross-Defendant Fireman's Fund Insurance Company ("Fireman's Fund") is

16    a corporation organized under the laws of and with its principal place of business in California.

17        17. Cross-Defendant First State Insurance Company ("First State") is a

18    corporation organized under the laws of Connecticut with its principal place of business in

19    Massachusetts.  First State is licensed to conduct insurance business in California.

20        18. Upon information and belief, Cross-Defendant HDI-Gerling Industrie

21    Versicherung AG, a corporation organized under the laws of Germany, is a successor in interest

22    to Cross-Defendant Gerling-Konzern General Insurance Company - U.K. Branch ("Gerling"),

23    and Gerling no longer has any corporate existence separate from HDI-Gerling Industrie

24    Versicherung AG.   Pursuant to a contract of insurance between Gerling and Vulcan, if Gerling

25    fails "to pay any amount claimed to be due" under the insurance contract, Gerling will submit to

26    the jurisdiction of a court of competent jurisdiction in the United States.  In addition, the

27    contract of insurance between Gerling and Vulcan designates the Commissioner of Insurance of

28

7

1   California as Gerling's attorney for service of process, pursuant to state statutes (including Cal.

2   Ins. Code § 12931) specified for that purpose.

3       19. Cross-Defendant Granite State Insurance Company ("Granite State") is a

4   corporation organized under the laws of Pennsylvania with its principal place of business in

5   New York.  Like Lexington, National Union, and American Home, Granite State is an AIG

6   company.  Granite State is licensed to conduct insurance business in California.

7       20. Upon information and belief, Cross-Defendant Harbor Insurance Company is

8   a corporation organized under the laws of Oklahoma with its principal place of business in

9   Oklahoma.   Harbor Insurance Company is licensed to conduct insurance business in California.

10      21. The cross-defendants identified herein as "Certain Underwriters at Lloyd's,

11  London" (hereinafter referred to as "Lloyd's Underwriters") are individuals, commonly referred

12  to as "Names," all or most of whom are residents and subjects of the United Kingdom of Great

13  Britain and Northern Ireland.  The identities of the individual Lloyd's Underwriters (or Names)

14  are unknown to Vulcan.  Vulcan, therefore, sues the Lloyd's Underwriters collectively as

15  "Certain Underwriters at Lloyd's, London" and individually as Does 1 through 5,000, inclusive.

16  Vulcan will amend this Cross-Complaint when it discovers the identities of the individual

17  Lloyd's Underwriters.

18      22. The Lloyd's Underwriters belong or belonged to Certain Underwriting

19  Syndicates at Lloyd's, London ("Lloyd's Syndicates").  The Lloyd's Syndicates were and are

20  joint ventures organized and existing in the United Kingdom of Great Britain and Northern

21  Ireland.  The identities of the individual Lloyd's Syndicates are unknown to Vulcan.  Vulcan,

22  therefore, sues the Lloyd's Syndicates collectively as "Certain Underwriting Syndicates at

23  Lloyd's, London" and individually as Roes 1 through 500, inclusive.  Vulcan will amend this

24  Cross-Complaint when it discovers the identities of the individual Lloyd's Syndicates.

25      23. Defendants ALBA General Insurance Company, Andrew Weir Insurance

26  Company Limited, Excess Insurance Company Limited, London & Overseas Insurance

27  Company Limited, Orion Insurance Company Limited, River Thames Insurance Company

28  Limited, and World Auxiliary Insurance Corporation Limited (hereinafter collectively referred

8

1    to as "London Market Insurers") are companies organized under the laws of the United

2    Kingdom of Great Britain and Northern Ireland.  Upon information and belief, at all times

3    relevant hereto, the Lloyd's Underwriters and London Market Insurers were authorized, through

4    their respective agents, to underwrite insurance policies covering risks in the State of California.

5          24. Cross-Defendant North Star Reinsurance Corporation is a corporation

6    organized under the laws of Delaware with its principal place of business in Connecticut.  North

7    Star Reinsurance Corporation is licensed to conduct insurance business in California.

8          25. Cross-Defendant Northwestern National Insurance Company (as successor to

9    Bellefonte Insurance Company) is a corporation organized under the laws of Wisconsin with its

10   principal place of business in Ohio.  Northwestern National Insurance Company is licensed to

11   conduct insurance business in California.

12         26. Cross-Defendant Nutmeg Insurance Company ("Nutmeg") is a corporation

13   organized under the laws of Connecticut with its principal place of business in Connecticut.

14   Nutmeg is authorized to issue insurance on a surplus lines basis in California.

15         27. Cross-Defendant Fairmont Specialty Insurance Company, formerly known as

16   Ranger Insurance Company ("Ranger") is a corporation organized under the laws of Delaware

17   with its principal place of business in Texas.  Ranger is licensed to conduct insurance business

18   in California.

19         28. Cross-Defendant R.R. Street & Company, Inc. ("Street") is a corporation

20   organized under the laws of Delaware with its principal place of business in Illinois.  Vulcan is

21   informed and believes, and on that basis alleges, that Street is authorized to do business and is

22   transacting business in the State of California.

23         29. Cross-Defendant Stonewall Insurance Company ("Stonewall") is a

24   corporation organized under the laws of Rhode Island with its principal place of business in

25   Massachusetts.  Stonewall Insurance Company is licensed to conduct insurance business in

26   California.

27         30. Upon information and belief, Cross-Defendant Travelers Casualty and Surety

28   Company ("Travelers") is the successor in interest to Aetna Casualty & Surety Company.

9

1  Travelers is a corporation organized under the laws of Connecticut with its principal place of

2  business in Connecticut, and is licensed to conduct insurance business in California.

3        31. Cross-Defendant Unigard Indemnity Company ("Unigard") is a corporation

4  organized under the laws of Washington with its principal place of business in Washington.

5  Unigard is licensed to conduct insurance business in California.

6        32. Cross-Defendant United National Insurance Company ("United") is a

7  corporation organized under the laws of Pennsylvania with its principal place of business in

8  Pennsylvania.  United is licensed to issue insurance on a surplus lines basis in California.

9        33. Cross-Defendant United States Fire Insurance Company ("U.S. Fire") is a

10  corporation organized under the laws of Delaware with its principal place of business in New

11  Jersey.  U.S. Fire is licensed to conduct insurance business in California.

12        34. Upon information and belief, Cross-Defendant Winterthur Swiss Insurance

13  Company ("Winterthur Swiss") is a company organized under the laws of Switzerland.

14  Pursuant to a contract of insurance between Winterthur Swiss and Vulcan, if Winterthur Swiss

15  fails "to pay any amount claimed to be due" under the insurance contract, Winterthur Swiss will

16  submit to the jurisdiction of a court of competent jurisdiction in the United States.  In addition,

17  the contract of insurance between Winterthur Swiss and Vulcan designates the Commissioner of

18  Insurance of California as Winterthur Swiss's attorney for service of process, pursuant to state

19  statutes (including Cal. Ins. Code § 12931) specified for that purpose.

20        35. Cross-Defendant XL Insurance America, Inc. ("XL"), formerly known as

21  Vanguard Insurance Company, is a corporation organized under the laws of Delaware with its

22  principal place of business in Connecticut.  Upon information and belief, XL is licensed to

23  conduct insurance business in California.

24        36. Cross-Defendant Zurich International (Bermuda) Ltd. ("Zurich") is a

25  corporation organized under the laws of Bermuda with its principal place of business in

26  Bermuda.  Upon information and belief, at all relevant times hereto, Zurich conducted insurance

27  business in California.

28

37. Upon information and belief, Cross-Defendant Zurich Reinsurance (London) Limited ("Zurich Re") is a company organized under the laws of the United Kingdom. Zurich Re is licensed to conduct insurance business in California and has designated the Commissioner of Insurance of California as its agent for service of process.

38. Vulcan is informed and believes, and on that basis alleges, that Cross-Defendants Does 5,001 through 8,000, inclusive, are insurers and underwriters other than those named above, which issued and/or subscribed to one or more policies of liability insurance covering Vulcan. The true names and capacities of Does 5,001 through 8,000, inclusive, are unknown to Vulcan, who therefore sues those Cross-Defendants by such fictitious names. Vulcan will amend this Cross-Complaint to show the true names and capacities of Does 5,001 through 8,000, inclusive, when the same have been ascertained.

39. Vulcan is informed and believes, and on that basis alleges, that Cross-Defendants Does 8,001 through 8,500, inclusive, are insurers and underwriters other than those named above, which issued and/or subscribed to one or more policies of liability insurance covering R.R. Street & Company, Inc. The true names and capacities of Does 8,001 through 8,500, inclusive, are unknown to Vulcan, who therefore sues those Cross-Defendants by such fictitious names. Vulcan will amend this Cross-Complaint to show the true names and capacities of Does 8,001 through 8,500, inclusive, when the same have been ascertained.

40. The true names and capacities, whether individual, corporate, associate or otherwise, of Cross-Defendants Does 8,501 through 9,000, inclusive, are unknown to Vulcan, who therefore sues those Cross-Defendants by such fictitious names. Vulcan will amend this Cross-Complaint to show the true names and capacities of Does 8,501 through 9,000, inclusive, when the same have been ascertained. Each such cross-defendant was the agent of one or more of the cross-defendants named herein, and the acts complained of herein were committed within the scope of such agency, and each such cross-defendant is jointly and severally responsible for the acts complained of herein.

**JURISDICTION AND VENUE**

41. The Court has jurisdiction over the claims asserted in this Cross-Complaint pursuant to the California Constitution, Article VI, § 10 and California Civil Procedure Code § 428.10.  The claims asserted in this Cross-Complaint arise out of the same transactions and occurrences as the claims brought against Vulcan by Transport, First State, and Nutmeg in the consolidated actions.

**VULCAN'S INSURANCE POLICIES**

42. The Cross-Defendant insurers named above (*i.e.*, all named Cross-Defendants other than Street) (the Cross-Defendant insurers named above hereinafter sometimes are collectively referred to as "Insurers") sold and issued to Vulcan comprehensive general liability ("CGL") insurance policies in effect at various times over the period September 1, 1958, to January 1, 1986, and during the period June 30, 1997, to June 30, 1999 ("Policies").  The Policies provide liability insurance coverage in layers of primary and excess or umbrella policies with combined limits of as much as $75 million at any one time.  Vulcan paid millions of dollars in premiums for the insurance coverage protection afforded by the Policies.

43. Vulcan currently has or can identify most, but not all, of the Policies.  The policy numbers and policy periods of the Policies currently known to Vulcan are set forth in Exhibit A hereto, which Vulcan hereby incorporates herein by reference as though fully set forth at this place.  Because Vulcan has not yet identified all the liability insurance policies that cover the liabilities described below, Vulcan reserves its right to amend and will amend this Cross-Complaint when it is able to identify such Policies.

44. Defendants Does 5,001 through 8,000, inclusive, may have issued one or more Policies, in addition to those Policies listed on Exhibit A, that include Vulcan as an insured, but Vulcan has not, as yet, established the identity of such Policies or insurers.  Vulcan reserves its right to amend and will amend this Cross-Complaint when it discovers the identity of such Policies and/or insurers.

45. Each of the Policies includes Vulcan as the insured. The Policies in effect during the period January 1, 1976, through December 1, 1985, also include Cross-Defendant R.R. Street & Company, Inc., as an additional insured.

46. The Policies obligate each of the Insurers to pay on behalf of each insured party all sums the insured becomes legally obligated to pay to third parties because of property damage or bodily injury. The Policies all include coverage for products liability. The Policies also obligate each of the Insurers to cover attorney fees and other costs incurred to defend against claims alleging such legal liabilities.

47. The Policies also obligate each of the Insurers to cover sums Vulcan may be required to pay due to liabilities imposed on others, including Cross-Defendant R.R. Street & Company, Inc., to the extent Vulcan has contractually assumed responsibility for such liabilities. The Policies also obligate each of the Insurers to cover attorney fees and other costs incurred to defend against claims alleging such legal liabilities.

48. The Policies in effect through December 31, 1985, are so-called "occurrence" policies, each of which is "triggered" and obligates the issuing Insurer to provide coverage if the occurrence leading to liability resulted in damage or injury during the time the policy was in effect. In a case involving continuing or repeated damage or injury occurring over a period of time, each Policy in effect during that period is "triggered" and separately requires each issuing Insurer to pay the entire amount the insured becomes legally obligated to pay because of the occurrence, subject to any monetary limit set by the Policy. If more than one Policy is "triggered," Vulcan may select any one of the "triggered" Policies and call on the issuing Insurer to pay the entire amount of Vulcan's legal liability.

49. The Policies issued for the period June 30, 1997, to June 30, 1999, are so-called "claims-made" policies, which are "triggered" by and provide coverage for third-party liability claims first made during the policy period. The claims-made Policies obligate the issuing Insurers to pay the entire amount the insured becomes legally obligated to pay because of any claim first made during the policy period, subject to any monetary limit set by the Policies.

13

50. Policy No. XGL 731-81-1, which was issued for the period January 1, 1981, to January 1, 1982, further obligates Transport "to defend any suit against [Vulcan] seeking damages on account of [bodily injury or] property damage … even if any of the allegations of the suit are groundless, false or fraudulent." Transport's duty to defend is not subject to any monetary limit, and the sums Transport must pay to defend Vulcan against suits do not count against or reduce the $10 million of coverage available under that Policy for settlements of and judgments in such suits.

51. Policy No. U-4114-70, which was issued for the period January 1, 1969, to January 1, 1970, and Policy No. U-4114-73, issued for the period January 1, 1970, to January 1, 1973, further obligates Employers Reinsurance Corporation "to defend any suit against [Vulcan] seeking damages on account of [bodily injury or] property damage even if any of the allegations of the suit are groundless, false or fraudulent," "[i]f no other insurer has the right or duty to do so." Vulcan is informed and believes, and on that basis alleges, that no Policies issued by other insurers for the period January 1, 1969, to January 1, 1973, give any of those insurers a duty or right to defend. Employers Reinsurance Corporation's duty to defend is not subject to any monetary limit, and the sums ERC must pay to defend Vulcan against suits do not count against or reduce the $10 million per occurrence or $10 million per annual policy period limits of coverage available under its Policies for settlements of and judgments in such suits.

## THE MODESTO PERC LITIGATION

52. Vulcan at one time manufactured perchloroethylene ("perc"), a chemical product used by dry cleaners. Vulcan's product was known as "PerSec."

53. Effective February 1, 1961, pursuant to a contract dated January 18, 1961, Cross-Defendant R.R. Street & Co., Inc. ("Street") contracted to purchase PerSec from Vulcan. The February 1, 1961, contract did not provide for any indemnification right or obligation. The contract expressly provided that it "constitutes the entire agreement between the parties hereto, there being no understandings, representations, warranties, or stipulations of any kind expressed or implied, not set forth herein."

54. On or about May 1, 1992, Vulcan and Street entered into a Perchloroethylene Agency Agreement ("Agency Agreement").  The Agency Agreement defined Street's role as that of an agent to "solicit and take orders for sales of PerSec to distributors in and for the drycleaning industry in the continental United States" and "[p]repare and transmit invoices for sales of PerSec, collect payments, and remit appropriate amounts, less commissions, to Vulcan." The Agency Agreement explicitly provided that "in no event shall Street be deemed to be or act as agent for Vulcan or PerSec in connection with any business or dealings directly with drycleaners."

55. The Agency Agreement required Street to purchase and keep in force during the term of the Agreement commercially available comprehensive general liability insurance with respect to coverage for PerSec, with primary coverage for each year in the aggregate of not less than $2 million.

56. The Agency Agreement further obligated Street to "indemnify and hold Vulcan harmless (including Vulcan's reasonable defense costs and attorney's fees) against, from and with respect to all claims by and liabilities to third parties arising out of (i) Street's act (other than an omission or failure to act) that is beyond or outside its authority as Vulcan's agent for PerSec that causes Vulcan to incur liability or (ii) a warranty or representation with respect to Vulcan or PerSec made by Street, its employees or agents not specifically authorized by Vulcan."

57. The Agency Agreement also obligated Vulcan to "defend, indemnify and hold Street harmless (including Street's reasonable defense costs and attorney's fees) against, from and with respect to all claims by or liabilities to third parties arising out of any acts, omissions or transactions related to the handling, use or disposal of perchloroethylene or PerSec . . . ."

58. The Agency Agreement's indemnity provisions are limited to "claims or liabilities resulting from acts, omissions or transactions occurring after" May 1, 1992.

59. The Agency Agreement provides that Vulcan's obligation "to defend, indemnify and hold Street harmless shall terminate upon the occurrence of any one of the

15

1  following events: . . . 5.2.2  The execution of a written agreement by Street and Vulcan

2  modifying their respective obligations with respect to a claim for which indemnification is

3  sought."

4          60. The Agency Agreement also provides (at section 5.2.3) that Vulcan's

5  indemnification obligation shall terminate upon the "entry by a court of competent jurisdiction

6  of a final adjudication which is no longer appealable finding that the claim or liability with

7  respect to which indemnification is sought resulted from:

8          "(i)  Street's act (other than an omission or failure to act) that is beyond or

9          outside its authority as Vulcan's agent for PerSec;

10          "(ii)  a warranty or representation with respect to Vulcan or PerSec made

11          by Street, its employees or its agents not specifically authorized by Vulcan;

12          "(iii)  Street's omission or failure to act (other than an omission or failure

13          to act authorized and directed under this Agreement) that results in an award of punitive

14          or exemplary damages by a court of competent jurisdiction, with all appeal rights having

15          expired; . . . ; or

16          "(iv)  Street's failure to furnish evidence in its possession or to provide

17          other reasonable cooperation to Vulcan in the defense of the claim or liability which

18          materially impaired Vulcan's defense."

19          61. Section 5.2.3 of the Agency Agreement also provides: "With regard to any

20  such adjudication listed in this Section 5.2.3, termination of indemnification shall be deemed to

21  have been effective at the moment indemnification was first sought and Street shall reimburse

22  Vulcan its fair share of costs and damages expended by Vulcan in Street's behalf."

23          62. In November 1998, the City of Modesto Redevelopment Agency sued Vulcan

24  and Street, along with other perc manufacturers, distributors, individual dry cleaners, and dry-

25  cleaning equipment manufacturers, in *City of Modesto Redevelopment Agency  v. Dow

26  Chemical Company et al.,* Case No. 999345.  The complaint, filed in San Francisco Superior

27  Court, sought to hold the defendants legally liable for damage to soil and groundwater allegedly

28

1  caused by perc and other chlorinated solvents in and around the Modesto Redevelopment

2  Project Area, in Modesto, California.

3             63. In December 1998, the City of Modesto and the City of Modesto Sewer

4  District No 1 sued Vulcan and Street, along with other perc manufacturers, distributors,

5  individual dry cleaners, and dry-cleaning equipment manufacturers, in *City of Modesto, et al. v.*

6  *Dow Chemical Company, et al.,* Case No. 999643.  The complaint, filed in San Francisco

7  Superior Court, sought to hold the defendants legally liable for soil and groundwater

8  contamination allegedly caused by perc and other chlorinated solvents allegedly released into

9  the City of Modesto's sewer and water system.  The trial court consolidated the two San

10 Francisco lawsuits (collectively, "the City of Modesto litigation" or "City of Modesto").

11            64. Vulcan timely notified the Insurers of the City of Modesto litigation and

12 tendered the suits to them for coverage under the Policies.

13            65. Transport and Employers Reinsurance Corporation each failed and refused to

14 defend Vulcan against the City of Modesto litigation.  Transport, instead, denied coverage and,

15 in January 2005, filed a declaratory relief action against Vulcan in this Court, *Transport*

16 *Insurance Company v. Vulcan Materials Company*, No. BC 328022, seeking a declaration that it

17 has no obligation to defend or indemnify Vulcan in the City of Modesto litigation.

18            66. Neither Transport nor ERC nor any of the other Insurers has indemnified

19 Vulcan for any of the attorney fees and other costs Vulcan has been forced to incur to defend

20 itself in City of Modesto.

21            67. In early 1999, Street wrote to Vulcan, contending that some of the allegations

22 in City of Modesto would be subject to Vulcan's indemnity obligation in the Agency

23 Agreement.  Vulcan believed that the Agency Agreement's indemnification provision was not

24 implicated by City of Modesto because the acts, omissions and transactions involved in that

25 litigation occurred before May 1, 1992, and/or because the allegations against Street involved

26 conduct beyond or outside its authority as Vulcan's agent for PerSec.

27            68. Nonetheless, on or about January 25, 2000, Vulcan and Street executed a

28 written agreement addressing their respective obligations with respect to the City of Modesto

1    litigation.  That agreement provides, *inter alia*, that (i) Vulcan would pay 50% of the attorneys'

2    fees, costs and other expenses Street had incurred in defending the City of Modesto litigation,

3    and would pay 50% of reasonable fees, costs and expenses going forward; (ii) Street would

4    "vigorously pursue all potential insurance recoveries available to it from its own policies of

5    insurance"; and (iii) any payment by Vulcan to Street would be excess over any insurance

6    recovery Street makes from its own liability insurance.  Street further agreed that it would

7    reimburse Vulcan for amounts Vulcan paid to indemnify Street, to the extent Street recovered

8    such amounts from its insurers.

9           69. In accordance with the January 25, 2000, agreement, Vulcan advanced

10   approximately $1,805,740 toward Street's defense costs incurred in the City of Modesto

11   litigation.

12          70. By July 2003, it had become apparent that the City of Modesto plaintiffs

13   were alleging conduct by Street that was outside the scope of its agency for Vulcan.  On or

14   about July 14, 2003, Vulcan notified Street that given certain testimony and evidence adduced

15   from Street, "Vulcan may be entitled to indemnity from Street under the terms of the [Agency]

16   Agreement."

17          71. Vulcan at that time also was informed and believed that Street's own insurer

18   or insurers had made payments toward Street's City of Modesto defense costs in sufficient

19   amounts such that, with Vulcan's payments toward the same defense costs, Street had been

20   over-reimbursed and was actually realizing a windfall profit.  In July 2003, Vulcan stopped

21   advancing 50% of Street's defense costs, and requested that Street provide Vulcan with (i) an

22   accounting of the amounts it had received from Vulcan and any insurers for defense costs that

23   had been submitted to and paid by Vulcan, and (ii) reimbursement of any amounts Street had

24   recovered in excess of the actual expenses incurred.

25          72. Street never responded to Vulcan's requests for an accounting or to Vulcan's

26   request for reimbursement.

27          73. In the summer of 2004, Street suggested to Vulcan that Vulcan might resume

28   paying some portion of Street's defense costs in City of Modesto.  Vulcan responded on August

5, 2004, repeating its requests for an accounting and for reimbursement, and asking that Street provide Vulcan with documentation in relation to Street's defense costs and Street's dealings with its own insurers regarding <u>City of Modesto</u> defense costs.

74. Street never responded to Vulcan's renewed requests for an accounting or to Vulcan's request for reimbursement, and never provided any of the documentation or other information requested by Vulcan on August 5, 2004.

75. In October 2005, Vulcan received a letter dated October 13, 2005, from Bryan G. Schumann, a lawyer with Bollinger, Ruberry & Garvey in Chicago, representing National Union. Defendant and Cross-Defendant National Union, along with the other AIG member companies who are parties to this action (Lexington, American Home and Granite State), issued policies to Vulcan and insure Vulcan with respect to the <u>City of Modesto</u> litigation. Mr. Schumann, however, sent his October 13, 2005, letter on behalf of National Union in its capacity as *Street's* insurer. This letter was the first communication Vulcan had from any of Street's insurers.

76. National Union's October 13, 2005, letter stated that "Street is an insured under various policies of insurance issued by National Union." The letter stated that "Street and Vulcan previously entered into a Distribution Agreement which contains certain indemnity provisions obligating Vulcan to defend, indemnify and hold Street harmless . . . ." The letter stated that "National Union has provided Street with a defense [to the <u>City of Modesto</u> litigation] (and continues to do so) because Vulcan failed (and continues to fail) to honor its indemnity obligations to Street pursuant to the indemnity provisions of the Distribution Agreement." The letter further stated (emphasis added), "The purpose of this letter is to reiterate, *on behalf of Street*, Street's continuing demand that Vulcan honor its indemnity obligations to Street." National Union offered to provide Vulcan with copies of "defense counsel's past invoices, paid by National Union."

77. On October 21, 2005, counsel for Vulcan responded to Mr. Schumann's October 13 letter, stating, *inter alia*, that for more than two years Street had not responded to Vulcan's repeated requests for an accounting, for documentation, and for reimbursement, and

1   renewed those requests on behalf of Vulcan.  Vulcan's counsel also accepted National Union's

2   offer to provide copies of Street's defense counsel's past invoices previously paid by National

3   Union, and asked Mr. Schumann to provide them.  Vulcan's counsel also advised Mr.

4   Schumann that "Street [had] agreed that any payment by Vulcan would be excess over any

5   insurance recovery received by Street and that [Street] would reimburse Vulcan an amount

6   equal to any excess recovery by Street."

7          78. Vulcan subsequently learned from Street that National Union was *not*

8   authorized to make any demand on Street's behalf, directly contrary to Mr. Schumann's

9   representation otherwise in his October 13, 2005, letter.  Counsel for Vulcan wrote to Mr.

10  Schumann on November 2, 2005, asking for an explanation as to why he had represented to

11  Vulcan that he was acting "on behalf of Street" when such was not the case.

12         79. Neither Mr. Schumann nor anyone else representing National Union has

13  made any response either to Vulcan's counsel's letter dated October 21, 2005, or to Vulcan's

14  counsel's letter dated November 2, 2005.

15         80. Neither National Union nor Street has ever made a response to Vulcan's

16  repeated requests for documentation, an accounting, and reimbursement of Street's City of

17  Modesto defense costs.

18         81. In December 2005, the City of Modesto filed a third complaint against

19  Vulcan, Street and others in *City of Modesto, et al. v. Dow Chemical Co., et al.*, Case No.

20  MSC06-01019 ("the McHenry litigation" or "McHenry").  The McHenry litigation was filed in

21  San Francisco Superior Court, but eventually was transferred to Contra Costa County.  In

22  McHenry, the City of Modesto sought to hold the defendants legally liable for damage to soil

23  and groundwater contamination allegedly caused by perc and other chlorinated solvents in and

24  around 1700 McHenry Avenue in Modesto, California.  1700 McHenry was the location of one

25  of the dry cleaners at issue in the City of Modesto litigation.

26         82. Vulcan timely notified the Insurers of the McHenry litigation and tendered

27  the suit to them for coverage under the Policies.

28

1    83. Transport and Employers Reinsurance Corporation each failed and refused to

2    defend Vulcan against the McHenry litigation.

3    84. Neither Transport nor ERC nor any of the other Insurers has indemnified

4    Vulcan for any of the attorney fees and other costs Vulcan has been forced to incur to defend

5    itself in McHenry.

6    85. In mid-2007, Vulcan agreed to settle the McHenry litigation for $395,000.

7    Vulcan requested that its Insurers cover the settlement amount and pay the $395,000 obligation

8    on Vulcan's behalf.  The Insurers denied coverage for the settlement amount, and refused and

9    failed to pay the $395,000 on Vulcan's behalf.  Vulcan therefore was required to pay the

10    settlement amount itself, from its own funds, which it did on or about July 5, 2007.

11    86. Vulcan filed a motion with the Court presiding over the McHenry litigation,

12    seeking an order pursuant to Cal. Code Civ. Proc. § 877 that Vulcan's $395,000 settlement was

13    made in good faith.  The Court granted Vulcan's motion.  A copy of the Court's Order Granting

14    Vulcan Materials Company's Motion for Determination of Good Faith Settlement, filed July 19,

15    2007, is attached hereto as Exhibit B, which Vulcan hereby incorporates herein by reference as

16    though fully set forth at this place.

17    87. In the fall of 2007, after nearly nine years of litigation, Vulcan agreed to

18    settle the City of Modesto litigation for $20 million.  Vulcan requested that its Insurers cover the

19    settlement amount and pay the $20 million obligation on Vulcan's behalf.  The Insurers denied

20    coverage for the settlement amount, and refused and failed to pay the $20 million on Vulcan's

21    behalf.  Vulcan therefore was required to pay the settlement amount itself, from its own funds,

22    which it did on or about November 15, 2007.

23    88. Vulcan filed a motion with the Court presiding over the City of Modesto

24    litigation, seeking an order pursuant to Cal. Code Civ. Proc. § 877 that Vulcan's $20 million

25    settlement was made in good faith.  The Court granted Vulcan's motion.  A copy of the Court's

26    Order Granting Vulcan Materials Company's Motion for Determination of Good Faith

27    Settlement, filed November 8, 2007, is attached hereto as Exhibit C, which Vulcan hereby

28    incorporates herein by reference as though fully set forth at this place.

21

1    89. In March 2007, the United States sued five individuals (Stephen Lyon,

2    Suzanne Lyon, Russell Tonda, Diane Tonda, and Rajendra Jamnadas), alleging they are

3    responsible under the Comprehensive Environmental Response, Compensation, and Liability

4    Act, 42 U.S.C. § 9601 et seq. ("CERCLA") for remediation of groundwater contamination at the

5    former Halford's dry cleaners site in Modesto. *United States of America v. Lyon, et al.*, No.

6    1:07-cv-00491-LJO-GSA (E.D. Cal.).  Halford's is one of the dry cleaner locations that was at

7    issue in City of Modesto.  In September 2007, Vulcan received notice that Stephen Lyon,

8    Suzanne Lyon, Russell Tonda, Diane Tonda and Rajendra Jamnadas had filed third-party

9    complaints alleging that Vulcan, Street, and others are liable to them for contribution and

10    equitable indemnification pursuant to CERCLA ("the Lyon litigation" or "Lyon").

11    90. In October 2007, Vulcan was served with a complaint in *Estate of Christina*

12    *Garcia, et al. v. Dow Chemical Company, et al.*, Case No. 611655, filed in Stanislaus County

13    Superior Court ("the Garcia litigation" or "Garcia").  In Garcia, the Estate of Christina Garcia

14    seeks to hold Vulcan, Street, and numerous other defendants legally liable for the illness and

15    death of Ms. Garcia, allegedly caused by her exposure to chlorinated solvents in the Modesto

16    sewer system, soil, groundwater, and public drinking water supplies.

17    91. Vulcan timely notified the Insurers of the Lyon and Garcia litigation, and

18    tendered the suits to them for coverage under the Policies.

19    92. Transport and Employers Reinsurance Corporation each failed and refused to

20    defend Vulcan against the Lyon and Garcia litigation.

21    93. Neither Transport nor ERC nor any of the other Insurers has indemnified

22    Vulcan for any of the attorney fees and other costs Vulcan has been forced to incur to defend

23    itself in Lyon and Garcia.

24    94. Vulcan has incurred approximately $15.3 million in attorneys fees and other

25    costs to defend itself in the Modesto perc litigation, *i.e.*, in City of Modesto, McHenry, Lyon

26    and Garcia, and the Insurers have failed and refused to pay any of those fees and costs.

27    95. On or about October 17, 2007, Street sent a letter to Vulcan tendering Lyon

28    and Garcia to Vulcan Materials Company "as a claim for which Street is indemnified under" the

"'Perchloroethylene Agency Agreement Between Vulcan Chemicals and R. R. Street & Co., Inc.,' dated May 1, 1992."

96. Vulcan responded in writing on October 30, 2007, advising Street that the insurance company or companies that issued policies providing liability insurance coverage to Street – including, but not limited to, policies obtained by Street as required by the Agency Agreement – have the primary obligation and duty to provide Street with a defense to <u>Lyon</u> and <u>Garcia</u>. Vulcan advised that Street should promptly tender the defense of <u>Lyon</u> and <u>Garcia</u> to each insurer that provided Street with insurance that covers or potentially covers the liabilities complainants seek to impose on Street in those lawsuits. Vulcan further advised Street (emphasis added):

"If Street's insurers refuse to accept Street's tender of the defense of the above-described lawsuits, notify us immediately and, in such case, *Vulcan will provide Street with a defense to said lawsuits.* If one (or more) of Street's insurers accepts Street's tender of the defense of the above-described lawsuits, but reserves or purports to reserve rights to recover all or some of the amounts it expends on Street's defense from Street and/or from Vulcan, Vulcan asks that Street notify Vulcan of that circumstance immediately. In such event, Vulcan must immediately meet with any such insurer to discuss the insurer's claim that it has such a right as against Vulcan, and to discuss the selection and retention of counsel to defend Street and the control and management of the defense of Street going forward. Such insurer – that is, an insurer that agrees to provide a defense to Street, but purports to reserve a right to claim that Vulcan owed Street a defense and, therefore, that Vulcan must reimburse amounts that insurer expends to defend Street – may not unilaterally proceed with the defense of Street without consulting with Vulcan on such matters."

97. Despite subsequent, repeated requests by Vulcan, Street failed to advise Vulcan of Street's insurers' response to Street's tender of the defense of <u>Lyon</u> and <u>Garcia</u>.

98. On or about February 11, 2008, Vulcan notified Street that it would defend Street against the claims in the <u>Lyon</u> and <u>Garcia</u> litigation. Vulcan retained separate and

1   independent attorneys to represent Street – Cox, Castle & Nicholson LLP, in San Francisco –

2   and notified Street that, subject to reservations of rights set forth in Vulcan's October 30, 2007,

3   letter, Vulcan would pay all the defense costs incurred and attorney fees charged by Cox, Castle

4   & Nicholson LLP.

5          99. On February 26, 2008, Street refused the defense to <u>Lyon</u> and <u>Garcia</u>

6   provided by Vulcan.  On or about the same day, Street and National Union together filed a

7   complaint against Vulcan in the United States District Court for the Northern District of Illinois,

8   signed by National Union's lawyer, Mr. Schumann, pursuant to Rule 11 of the Federal Rules of

9   Civil Procedure, alleging, *inter alia*, that Vulcan had failed and refused to defend Street in the

10  <u>Lyon</u> and <u>Garcia</u> actions, in breach of the Agency Agreement.

11  ## FIRST CAUSE OF ACTION

12  **(Breach Of Contract, against Transport Insurance Company)**

13         100.   Vulcan realleges and incorporates by reference each of the allegations

14  made herein at Paragraphs 1 through 52, inclusive, 62 through 66, inclusive, and 81 through 94,

15  inclusive, as though fully set forth at this place.

16         101.   Transport, in failing and refusing to defend Vulcan against the <u>City of</u>

17  <u>Modesto</u> litigation, breached its contractual duty to defend Vulcan in the <u>City of Modesto</u>

18  litigation.

19         102.   Transport, in failing and refusing to defend Vulcan against the <u>McHenry</u>

20  litigation, breached its contractual duty to defend Vulcan in the <u>McHenry</u> litigation.

21         103.   Transport, in failing and refusing to defend Vulcan against the <u>Lyon</u>

22  litigation, breached and continues to breach its contractual duty to defend Vulcan in the <u>Lyon</u>

23  litigation.

24         104.   Transport, in failing and refusing to defend Vulcan against the <u>Garcia</u>

25  litigation, breached and continues to breach its contractual duty to defend in the <u>Garcia</u>

26  litigation.

27         105.   As a direct and proximate result of Transport's breaches of its contractual

28  obligation to defend Vulcan in the <u>City of Modesto</u> litigation, in the <u>McHenry</u> litigation, in the

1  Lyon litigation, and in the Garcia litigation, as alleged herein, Vulcan has suffered damages and

2  is entitled to recover an amount in excess of $15.3 million, plus interest.

3  ### SECOND CAUSE OF ACTION

4  **(Breach Of Contract, against Employers Reinsurance Corporation)**

5      106.    Vulcan realleges and incorporates by reference each of the allegations

6  made herein at Paragraphs 1 through 52, inclusive, 62 through 66, inclusive, and 81 through 94,

7  inclusive, as though fully set forth at this place.

8      107.    Employers Reinsurance Corporation ("ERC"), in failing and refusing to

9  defend Vulcan against the City of Modesto litigation, breached its contractual duty to defend

10  Vulcan in the City of Modesto litigation.

11      108.    ERC, in failing and refusing to defend Vulcan against the McHenry

12  litigation, breached its contractual duty to defend Vulcan in the McHenry litigation.

13      109.    ERC, in failing and refusing to defend Vulcan against the Lyon litigation,

14  breached and continues to breach its contractual duty to defend Vulcan in the Lyon litigation.

15      110.    ERC, in failing and refusing to defend Vulcan against the Garcia

16  litigation, breached and continues to breach its contractual duty to defend in the Garcia

17  litigation.

18      111.    As a direct and proximate result of ERC's breaches of its contractual

19  obligation to defend Vulcan in the City of Modesto litigation, in the McHenry litigation, in the

20  Lyon litigation, and in the Garcia litigation, as alleged herein, Vulcan has suffered damages and

21  is entitled to recover an amount in excess of $15.3 million, plus interest.

22  ### THIRD CAUSE OF ACTION

23  **(Breach Of Contract, against all Insurers other than**
**Allianz, Nutmeg, Travelers, United and XL)**

24

25      112.    Vulcan realleges and incorporates by reference each of the allegations

26  made herein at Paragraphs 1 through 52, inclusive, 62 through 66, inclusive, and 81 through 94,

inclusive, as though fully set forth at this place.

27

28

113.    Vulcan has been forced to incur and pay approximately $15.3 million to defend itself in the <u>City of Modesto</u> litigation, the <u>McHenry</u> litigation, the <u>Lyon</u> litigation and the <u>Garcia</u> litigation.

114.    Vulcan also has been forced to pay $20,395,000 in settlement of the <u>City of Modesto</u> litigation and the <u>McHenry</u> litigation.

115.    Each Policy providing insurance coverage in any year during which the Policies were in effect, up to and including any Policy providing coverage in excess of $35 million of limits provided by other Policies issued by solvent insurers able to pay claims, was and is obligated to cover and indemnify Vulcan for the more than $35 million Vulcan has had to pay for the defense and settlement of the Modesto litigation.

116.    In denying coverage for, and failing and refusing to pay the approximately $35.7 million Vulcan has paid in settlement, attorneys fees and other costs, the Insurers (other than Allianz, Nutmeg, Travelers, United and XL) have breached their contractual obligations to cover and indemnify Vulcan for attorney fees and other costs incurred to defend against claims asserted in <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>, and for sums Vulcan has become legally obligated to pay to settle <u>City of Modesto</u> and <u>McHenry</u>.

117.    As a direct and proximate result of said Insurers' breaches of their contractual obligation to cover and indemnify Vulcan, Vulcan has suffered damages and is entitled to recover an amount in excess of $35.7 million, plus interest.

## FOURTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing, against Transport)**

118.    Vulcan realleges and incorporates by reference each of the allegations made herein at Paragraphs 1 through 52, inclusive, 62 through 66, inclusive, 81 through 94, inclusive, 101 through 105, inclusive, and 113 through 117, inclusive, as though fully set forth at this place.

119.    Implied in each of the Policies issued by Transport is a covenant that it will act in good faith and deal fairly with Vulcan; that it will do nothing to interfere with Vulcan's right to receive the benefits of the Policy; that it will place Vulcan's interests before its

own interests; that it will exercise diligence, good faith and fidelity in safeguarding Vulcan's interests; and that it will deal ethically with Vulcan and will fairly and adequately inform Vulcan with respect to the nature and scope of its insurance coverage (hereinafter referred to as "the covenant of good faith and fair dealing").

120.    Transport is an inactive insurance company in run-off.  Transport does not and will not market or underwrite any new insurance business.  Transport has no premium income.  Transport's only "business" is resolving claims against so-called "legacy" policies, without the benefit of premium income, relying solely on investment income, reserves, and reinsurance as sources of payment.

121.    Transport is not in the business of attracting new customers or retaining old customers for its insurance products, because it no longer offers any insurance products. Transport therefore lacks incentive to conduct its insurance claim-handling in a fair manner that encourages legacy policy holders and others to continue buying or begin buying insurance from Transport.  Transport's only continuing interest in its dealings with its legacy policy holders is its interest in resolving those policy holders' claims for as little money as possible.

122.    Randall & Quilter Investment Holdings plc bought Transport in late 2004. Randall & Quilter owns and operates Transport through its U.S. subsidiary, Cavell America, Inc.  Randall & Quilter operates a profitable business by which it "manages, acquires and realises the surplus assets of solvent non-life insurance companies in run-off."  Randall & Quilter's Insurance Company Division acquires solvent insurance companies in run-off, and "seeks to realise surplus assets within such companies once their liabilities have been reduced and regulatory approval to release surpluses has been obtained and achieves complete exits through schemes of arrangements, transfer or sale."

123.    Vulcan is informed and believes, and on that basis alleges, that one strategy used by Randall & Quilter, Cavell America and Transport in their effort to "realise surplus assets" by "reducing liabilities" – to "exit" the business with a substantial "released surplus" – is to obtain from as many legacy policy holders as possible their agreement to

1    "commute" or cancel their Transport policies, thus making those policies unavailable to pay and

2    not financially accountable for future claims.

3         124.    Vulcan is informed and believes, and on that basis alleges, that Transport

4    engages in a pattern and regular business practice of delaying, resisting, failing and refusing to

5    make payment on valid insurance claims, both as a way to reduce liabilities and generate a

6    surplus – not for the benefit of a pool of current and future policy holders, but for the benefit

7    and bottom line profit of Randall & Quilter – and as a tactic to drive down the value of legacy

8    policies, discourage legacy policy holders from continuing to rely on their Transport policies as

9    risk management assets, and pressure legacy policy holders to commute their Transport policies

10   for inadequate consideration.

11        125.    Transport has for more than nine years during which the Modesto perc

12   litigation has been ongoing, refused and failed to defend Vulcan or pay even one dollar toward

13   the cost of Vulcan's defense.  Over those nine years, Transport was regularly kept apprised of

14   the progress of the <u>City of Modesto</u> litigation, and was fully aware (and insistent) that Vulcan

15   was vigorously defending itself in that litigation and, so, was incurring substantial attorneys fees

16   and other defense costs.  Astoundingly, in recent weeks, Transport has announced for the first

17   time – after nine years – that Transport now takes the position that Vulcan "voluntarily"

18   incurred defense costs in <u>City of Modesto</u> without Transport's consent and, therefore, Transport

19   has no enforceable obligation to indemnify such costs.

20        126.    Vulcan is informed and believes, and on that basis alleges, that

21   Transport's denial of coverage for and refusal to pay Vulcan's defense costs and settlement

22   liabilities in the <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u> lawsuits is grounded not on a

23   good faith belief that Transport's Policies do not cover such costs and liabilities; that Transport

24   has denied, delayed, failed and refused to provide coverage for Vulcan's losses solely out of

25   concern for its own financial well-being, including the financial well-being of its ultimate

26   owner, Randall & Quilter Investment Holdings plc, and in complete and conscious disregard of

27   Vulcan's financial well-being and Vulcan's rights under the Policies; that Transport has done so

28   for the purpose of consciously depriving Vulcan of the rights and benefits to which Vulcan is

1    entitled under the Policies; and that in so doing, Transport has placed its own interests above

2    those of Vulcan for the purpose of retaining and utilizing money which should have been paid

3    on behalf of or to defend and indemnify Vulcan.

4             127.    By reason of such wrongful conduct, Vulcan has sustained substantial

5    damages, together with disbursements relating to insurance coverage litigation and attorneys

6    fees and costs.  These sums are expected to increase by the time of trial.  Vulcan reserves its

7    right to amend and will amend its Cross-Complaint to set forth with precision the amount of its

8    total damages when ascertained.

9             128.    Vulcan is informed and believes, and on that basis alleges, that in taking

10   such actions, Transport's conduct has been and is despicable in that Transport has acted

11   willfully with malice, fraud, and/or oppression, as defined in Civil Code Section 3294, so as to

12   deprive Vulcan of its rights and benefits under the Transport Policies, with conscious disregard

13   of the consequences of these acts on Vulcan, and with the deliberate intent to vex, injure and

14   annoy Vulcan and advance Transport and its owners' own pecuniary interests.

15            129.    As a result of Transport's wrongful conduct, as alleged herein, Vulcan is

16   entitled to recover its damages, including attorneys fees and expenses, and to claim and recover

17   punitive damages from Transport, in an amount sufficient to punish and make an example of

18   Transport in order to deter such conduct in the future.

19                              **FIFTH CAUSE OF ACTION**

20                      **(Declaratory Relief, against all Insurers)**

21            130.    Vulcan realleges and incorporates by reference each of the allegations

22   made herein at Paragraphs 1 through 52, inclusive, 62 through 66, inclusive, 81 through 94,

23   inclusive, 101 through 105, inclusive, 107 through 111, inclusive, and 113 through 117,

24   inclusive, as though fully set forth at this place.

25            131.    Vulcan seeks a declaration of its rights and duties under the Policies with

26   respect to the cross-defendant Insurers, in accordance with §§ 1060 and 379 of the California

27   Code of Civil Procedure.

28

132.    The Policies contractually obligate each of the Insurers to investigate, to defend Vulcan, and/or to pay Vulcan's defense costs in connection with any potential legal obligation to pay sums as damages because of the property damage and personal injury alleged in <u>Lyon</u> and <u>Garcia</u>, even if the claim that Vulcan has such legal obligation is groundless, false, or fraudulent.

133.    Each Insurer has failed to acknowledge and otherwise has expressly repudiated its obligation to investigate fully, to defend Vulcan fully, and/or to pay in full Vulcan's costs of defense in connection with the actual and potential legal obligation to pay sums as damages because of the property damage and personal injury alleged in <u>Lyon</u> and <u>Garcia.</u>

134.    An actual and justiciable controversy exists between and among Vulcan and the Insurers concerning their contractual obligations to investigate fully, to defend Vulcan fully, and to pay in full Vulcan's costs of defense in connection with the actual and potential legal obligation to pay sums as damages because of the property damage and personal injury alleged in <u>Lyon</u> and <u>Garcia</u>.

135.    Vulcan contends and desires a judicial determination and declaration that one or more of the Policies obligate the issuing Insurer(s) to investigate fully, to defend Vulcan fully, and/or to pay in full Vulcan's costs of defense in connection with the actual and potential legal obligation to pay sums as damages because of the property damage and personal injury alleged in <u>Lyon</u> and <u>Garcia</u>.

136.    Vulcan is informed and believes, and on that basis alleges, that the contentions of one or more of the Insurers concerning the parties' respective rights and duties with respect to the Insurers' obligation to investigate fully, to defend Vulcan fully, and/or to pay in full Vulcan's costs of defense in connection with the actual and potential legal obligation to pay sums as damages alleged in <u>Lyon</u> and <u>Garcia</u> are in conflict with the contentions of Vulcan.

137.    Vulcan desires a judicial determination of the respective rights and duties of the parties and a declaration that its contention, as set forth above, is correct. Such a declaration is necessary and proper at this time in order that all the parties will be bound by the

30

1    same interpretation of the Policies and may determine their rights and obligations among

2    themselves, and so as to avoid the multiplicity of legal actions that would otherwise be

3    necessary.

4                              **SIXTH CAUSE OF ACTION**

5                  **(Declaratory Relief, against National Union and Street)**

6            138.    Vulcan realleges and incorporates by reference each of the allegations

7    made herein at Paragraphs 1 through 63, inclusive, 67 through 81, inclusive, 85 through 90,

8    inclusive, and 95 through 99, inclusive, as though fully set forth at this place.

9            139.    Vulcan is informed and believes, and on that basis alleges, that National

10   Union – which issued several CGL liability insurance policies to Vulcan and already is a

11   Defendant in this coverage litigation – also issued one or more general liability insurance

12   policies directly to Street.

13           140.    Street recently raised a contention that Vulcan, by way of an implied

14   indemnity and/or promissory estoppel, is obligated to indemnify Street against amounts it may

15   become obligated to pay in settlement of or in satisfaction of a judgment in the City of Modesto

16   and McHenry cases.

17           141.    National Union recently raised a contention that National Union, as

18   Street's subrogee, may assert Street's claim that Vulcan, by way of an implied indemnity and/or

19   promissory estoppel, is obligated to indemnify Street against amounts it may become obligated

20   to pay in settlement of or in satisfaction of a judgment in the City of Modesto and McHenry

21   cases.

22           142.    The Courts presiding over the City of Modesto and McHenry litigation,

23   after hearing, determined pursuant to Cal. Code Civ. Proc. § 877 that Vulcan's $395,000

24   settlement (McHenry) and its $20 million settlement (City of Modesto) were made in good faith

25   (Exhibits B and C hereto).  The Court's determinations that the settlements were made in good

26   faith absolve Vulcan of any further liability for any equitable indemnity or contribution claims,

27   and bars any other joint tortfeasor or co-obligor, including Street, from any further claims

28

                                          31

1 against Vulcan for equitable indemnity or contribution, including claims based on a theory of
2 implied contractual indemnity.

3          143.    The McHenry and City of Modesto Courts' determinations that Vulcan's
4 settlements were made in good faith absolve Vulcan of any further liability to Street by way of
5 an implied indemnity and/or promissory estoppel, and bar Street's claims that Vulcan is
6 obligated to indemnify Street pursuant to an alleged implied indemnity and/or promissory
7 estoppel.

8          144.    To the extent National Union is or becomes subrogated to Street's alleged
9 right to claim that Vulcan, by way of an implied indemnity and/or promissory estoppel, is
10 obligated to indemnify Street for amounts paid in settlement of or in satisfaction of a judgment
11 in McHenry and the City of Modesto cases, National Union has or will have no greater right
12 than Street and is or will be subject to all defenses assertable against Street.

13          145.    The McHenry and City of Modesto Courts' determinations that Vulcan's
14 settlements were made in good faith therefore also bar any claim by National Union that Vulcan
15 is obligated to indemnify Street pursuant to an alleged implied indemnity and/or promissory
16 estoppel.

17          146.    Vulcan contends and desires a judicial determination and declaration that
18 the McHenry and City of Modesto Courts' determinations that Vulcan's settlements were made
19 in good faith absolve Vulcan of any further liability for any equitable indemnity or contribution
20 claims, including but not limited to the implied indemnity and promissory estoppel claims
21 recently raised by National Union and Street, and bars National Union and Street from any
22 claims that Vulcan, by way of an implied indemnity, promissory estoppel, or otherwise, is
23 obligated to indemnify Street for amounts paid in settlement of or in satisfaction of a judgment
24 in the McHenry and City of Modesto litigation.

25                              **SEVENTH CAUSE OF ACTION**

26                    **(Declaratory Relief, against National Union)**

27          147.    Vulcan realleges and incorporates by reference each of the allegations
28 made herein at Paragraphs 1 through 63, inclusive, 67 through 81, inclusive, 85 through 90,

1   inclusive, 95 through 99, inclusive, and 139 through 146, inclusive, as though fully set forth at

2   this place.

3          148.   Defendant and Cross-Defendant National Union is a subsidiary of

4   American International Group, Inc., a holding company engaged in the business of insurance

5   through a number of subsidiary or "member" companies.  Three other Defendants and Cross-

6   Defendants also are part of the American International Group (or "AIG") of insurers: American

7   Home Assurance Company, Granite State Insurance Company, and Lexington Insurance

8   Company ("Lexington").

9          149.   National Union issued a primary level Policy to Vulcan for the period

10  January 1, 1985, to January 1, 1986.  Lexington issued a primary level Policy to Vulcan for the

11  period June 30, 1997, to June 30, 1999.  All four AIG Insurers issued several excess level

12  Policies, as well.

13         150.   All the Policies issued by the four AIG Insurers cover sums Vulcan and

14  other insureds become legally obligated to pay because of property damage or bodily injury, and

15  so cover the liabilities alleged in City of Modesto, McHenry, Lyon and Garcia.  The four AIG

16  Insurers, including National Union, accepted the transfer of risk of such liabilities from Vulcan

17  to the AIG Insurers, in exchange for Vulcan's payment of substantial premium.

18         151.   All or most of the Policies issued by the four AIG Insurers, including the

19  Lexington and National Union primary Policies and all the National Union Policies, cover

20  Vulcan for sums Vulcan is obligated to pay by reason of a liability of a third party assumed by

21  Vulcan under contract.

22         152.   Most of the Policies issued by the four AIG Insurers, including all the

23  National Union Policies, include R.R. Street & Company, Inc. ("Street") as an additional

24  insured.

25         153.   Vulcan is informed and believes, and on that basis alleges, that National

26  Union contends that it issued several general liability insurance policies directly to Street; that

27  Street tendered its defense in the City of Modesto, McHenry, Lyon and Garcia lawsuits to

28  National Union pursuant to those insurance policies; that National Union accepted Street's

CROSS-COMPLAINT OF LEGACY VULCAN CORPORATION, Case Nos. BC328022 & BC 354664

tender of the defense of those three lawsuits and has provided and continues to provide Street with a defense against the claims raised in City of Modesto, McHenry, Lyon and Garcia; and that National Union has paid substantial sums of money to defend Street in those cases.

154.     Vulcan is informed and believes, and on that basis alleges, that National Union contends Vulcan is obligated to defend Street in City of Modesto, McHenry, Lyon and Garcia based on either an implied indemnity or promissory estoppel obligating Vulcan to provide a defense, or on the indemnification provision in the Agency Agreement.

155.     Vulcan is informed and believes, and on that basis alleges, that National Union contends Vulcan breached the alleged agreement to defend Street in City of Modesto, McHenry, Lyon and Garcia, and that by virtue of Vulcan's supposed breach of contract, National Union is equitably subrogated to Street's claim against Vulcan for damages resulting from Vulcan's breach.

156.     National Union was neither a party to nor a third-party beneficiary of the alleged implied and express agreements by Vulcan to defend Street and, therefore, National Union may assert Street's rights to a defense pursuant to the alleged agreements, if at all, only by equitable subrogation.

157.     There was and is no implied indemnity or enforceable promise to indemnify Street with respect to the City of Modesto, McHenry, Lyon and/or Garcia cases, apart from Vulcan's agreement in 1976 to add Street as an insured under Vulcan's liability insurance policies, which Vulcan did.

158.     The only possible basis for a claim by Street that Vulcan is obligated to defend Street in the City of Modesto, McHenry, Lyon and/or Garcia cases is the May 1, 1992, Perchloroethylene Agency Agreement.

159.     Justice does not require and equity will not allow liability for Street's defense of the City of Modesto, McHenry, Lyon and/or Garcia cases to be shifted from National Union to Vulcan; National Union as subrogee cannot enforce Street's contract right to a defense pursuant to the Agency Agreement.

1    160.    In issuing policies of insurance directly to Street, National Union

2    calculated and accepted premiums with knowledge that it could and would be called upon to

3    defend Street in full and to satisfy a full settlement or judgment.  National Union did not know

4    that there was or would be an indemnity from Vulcan when it issued its policies to Street.

5    Indeed, Vulcan is informed and believes, and on that basis alleges, that the insurance policies

6    National Union sold to Street all were issued before May 1, 1992, and, therefore, National

7    Union's contractual duty to defend was agreed and in existence before the Agency Agreement

8    was put in place.  That the Agency Agreement includes an indemnity obligation running from

9    Vulcan to Street is, from National Union's perspective, a mere fortuitous circumstance.

10    161.    In entering into the Agency Agreement, Vulcan and Street intended to

11    make and did make Street's own insurance primary to Vulcan's indemnity obligation.  This

12    intention is reflected in the Agency Agreement's requirement that Street purchase and keep in

13    force during the term of the Agreement commercially available comprehensive general liability

14    insurance with respect to coverage for PerSec.

15    162.    Vulcan and Street's intention to make Street's own insurance primary to

16    Vulcan's indemnity obligation under the Agency Agreement was both confirmed and mutually

17    agreed in the January 25, 2000, agreement executed by Vulcan and Street in relation to the City

18    of Modesto litigation, which agreement provided that "Any payment by Vulcan to Street shall

19    be excess over any insurance recovery Street makes from liability insurance it purchased."

20    163.    The January 25, 2000, agreement further confirmed and established the

21    parties' intention to make Street's own insurance primary to Vulcan's indemnity obligation in

22    its requirement that Street "vigorously pursue all potential insurance recoveries available to it

23    from its own policies of insurance" and, "[i]f Street recovers more from its insurance carriers

24    and Vulcan than Street had expended in [the City of Modesto litigation], Street will reimburse

25    Vulcan an amount equal to the excess recovery."

26    164.    Vulcan, in fact, fully and adequately performed its obligations under the

27    Agency Agreement and the January 25, 2000, agreement with Street, with respect to the City of

28    Modesto litigation, with respect to the McHenry litigation, with respect to the Lyon litigation,

1  and with respect to the <u>Garcia</u> litigation.  There was no breach of Vulcan's contractual

2  obligations on which National Union can rely in support of equitable subrogation to any claim

3  by Street against Vulcan arising out of breach of those agreements.

4          165.    Rather, Street breached its duties and obligations to Vulcan under said

5  agreements by, *inter alia*, failing to obtain and keep in force during the term of the Agency

6  Agreement commercially available comprehensive general liability insurance with respect to

7  coverage for PerSec; failing to vigorously pursue all potential insurance recoveries available to

8  Street from its own policies of insurance; soliciting and accepting from Vulcan payments of

9  defense costs incurred in <u>City of Modesto</u> that had already been reimbursed or Street knew or

10 expected would be reimbursed by National Union; failing to remit to Vulcan sums paid to Street

11 that were due and owing to Vulcan pursuant to Street's agreement that Vulcan's obligation is

12 excess over any insurance recovery Street made from liability insurance it purchased; failing to

13 provide an accounting; and unreasonably refusing the defense Vulcan provided to Street in <u>Lyon</u>

14 and <u>Garcia</u>, excusing Vulcan from its obligations under those agreements.

15         166.    National Union is an insurance company in the business of and has

16 substantial experience and expertise in evaluating, accepting and spreading risk of loss, and

17 received substantial premiums in exchange for its agreement to bear the risk of Street's liability

18 and obligation to defend Street against liability claims, while Vulcan is not in the insurance

19 business and received no compensation or independent consideration for its assumption of risk

20 *via* the Agency Agreement.

21         167.    If subrogation were permitted, the insurer who accepted premiums to

22 cover the risk that Street would need to be defended and indemnified in cases such as <u>City of

23 Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>, National Union, would receive a windfall.

24         168.    It would not be equitable for an insurer to recover on, and an insurer

25 cannot bring, an equitable subrogation claim against its own insured.  AIG, including National

26 Union, insured Vulcan against the risk that it would be alleged to be and possibly be held legally

27 liable to pay sums because of property damage or bodily injury in cases such as and including

28 <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>, and against the risk that a third party whose

1    liability has been contractually assumed by Vulcan would be alleged to be and possibly be held

2    legally liable to pay sums because of property damage or bodily injury in cases such as and

3    including City of Modesto, McHenry, Lyon and Garcia.  Equity, public policy, and the implied

4    covenant of good faith and fair dealing inherent in AIG's Policies prohibit AIG from passing

5    that risk back to Vulcan by equitable subrogation or otherwise.  National Union's subrogation

6    claim is barred by the antisubrogation rule.

7            169.    National Union comes to this Court with unclean hands, having engaged

8    in unconscionable conduct that prejudicially affected Vulcan's rights in the matter, such that it

9    would be unjust to provide National Union the special remedy of equitable subrogation.  Vulcan

10   is informed and believes and, on that basis alleges, that such conduct includes, but is not limited

11   to, the following:  National Union has failed to manage and control the defense of Street in City

12   of Modesto, allowing Street and/or defense counsel to incur unreasonable and unwarranted fees

13   and expenses; National Union failed to engage or make any contact with Vulcan with respect to

14   the defense of Street in City of Modesto at all during the first *seven years* of that litigation, and

15   then contacted Vulcan only by way of a terse lawyer's letter in the nature of a demand, only to

16   go silent again for nearly two more years; National Union unreasonably delayed in raising its

17   supposed equitable subrogation claim based on the Agency Agreement, effectively acquiescing

18   and accepting full responsibility for Street's defense in City of Modesto; National Union, by Mr.

19   Schumann's October 13, 2005, letter, falsely purported to make a demand "on behalf of Street"

20   that Vulcan honor its indemnity obligations to Street when, in fact, National Union had no

21   authority to make such a demand or otherwise speak on Street's behalf; National Union failed

22   and refused to provide Vulcan with any of Street's defense counsel's invoices, despite Vulcan's

23   specific request that National Union provide such invoices; National Union failed and refused to

24   provide Vulcan with requested documentation and information about defense costs incurred on

25   behalf of Street; National Union unreasonably delayed in raising its supposed equitable

26   subrogation claim based on an alleged implied indemnity and promissory estoppel, effectively

27   acquiescing and accepting full responsibility for Street's defense in City of Modesto until

28   February 2008, *more than nine years* into the litigation; National Union has refused to meet or

1   speak with Vulcan representatives despite numerous, repeated requests by Vulcan for a meeting

2   to discuss the arrangements for Street's defense in City of Modesto, McHenry, Lyon and

3   Garcia; and National Union, knowingly and maliciously, has falsely accused Vulcan of failing

4   and refusing to fulfill its obligations to Street with respect to the defense of the City of Modesto,

5   McHenry, Lyon and Garcia lawsuits.

6       170.    If National Union has a subrogation interest in Vulcan's supposed

7   breaches of an agreement to defend and/or indemnify Street in City of Modesto, McHenry,

8   Lyon and Garcia, it cannot enforce its subrogation rights inasmuch as, under the circumstances,

9   Vulcan is in an equitable position equal to or superior to that of National Union.

10      171.    Vulcan contends and desires a judicial determination and declaration that

11  National Union has no and/or may not bring any equitable subrogation claim shifting the

12  responsibility to defend and indemnify Street from National Union to Vulcan.

13                      **EIGHTH CAUSE OF ACTION**

14              **(Declaratory Relief, against National Union)**

15      172.    Vulcan realleges and incorporates by reference each of the allegations

16  made herein at Paragraphs 1 through 63, inclusive, 67 through 81, inclusive, 85 through 90,

17  inclusive, 95 through 99, inclusive, 139 through 146, inclusive, and 148 through 171, inclusive,

18  as though fully set forth at this place.

19      173.    Vulcan is informed and believes, and on that basis alleges, that National

20  Union contends Vulcan had and has a "concurrent" obligation to defend Street in City of

21  Modesto, McHenry, Lyon and Garcia, and a "concurrent" obligation to indemnify Street against

22  any legal liability to pay damages that might be imposed on Street in those actions; and that

23  National Union therefore contends it has a right to equitable contribution, entitling National

24  Union to recover from Vulcan amounts paid by National Union to defend and indemnify Street

25  in those cases to the extent those amounts "exceed National Union's share."

26      174.    There was and is no implied indemnity or enforceable promise to

27  indemnify Street with respect to the City of Modesto, McHenry, Lyon and/or Garcia cases, apart

28

38

from Vulcan's agreement in 1976 to add Street as an insured under Vulcan's liability insurance policies, which Vulcan did.

175.    The only possible basis for a claim by National Union that Vulcan has a "concurrent" obligation to defend and indemnify Street in City of Modesto, McHenry, Lyon and Garcia, such that National Union has a right to equitable contribution by Vulcan, is the May 1, 1992, Perchloroethylene Agency Agreement.

176.    The indemnification obligations in the Agency Agreement, and the January 25, 2000, agreement, were assumed by Vulcan in its role as a manufacturer of a product, and were in the nature of a promise to hold a sales agent harmless against claims that the product was defective. The indemnification agreement did not amount to an insurance contract – i.e., an agreement to accept the transfer of a defined set of risks in exchange for a premium – and Vulcan neither is nor did it act as an insurer in entering into the Agency Agreement and/or the January 25, 2000, agreement.

177.    In the insurance context, the right to equitable contribution arises when multiple insurers are obligated to cover the same loss or claim, and one insurer has paid more than its equitable share of the loss or defended the common insured without any participation by the other insurers. Vulcan is not an insurer, and Street is not Vulcan's insured. Vulcan therefore is not subject to an equitable contribution action by Street's insurers, including National Union.

178.    Even if Vulcan were an insurer, Vulcan's obligation to Street was and is intended to be and is secondary to National Union's primary obligation to Street. There is no right to equitable contribution between a primary insurer, such as National Union, and an insurer whose obligation is secondary or as an excess insurer.

179.    Vulcan is informed and believes, and on that basis alleges, that Street targeted its tender of the defense of City of Modesto, McHenry, Lyon and Garcia solely to National Union and, therefore, even if Vulcan were an insurer, National Union is foreclosed from seeking equitable contribution from Vulcan.

180.    Vulcan contends and desires a judicial determination and declaration that National Union has no and/or may not bring any equitable contribution claim shifting any portion of the responsibility to defend or indemnify Street from National Union to Vulcan.

## NINTH CAUSE OF ACTION

### (Declaratory Relief, against Street)

181.    Vulcan realleges and incorporates by reference each of the allegations made herein at Paragraphs 1 through 63, inclusive, 67 through 81, inclusive, 85 through 90, inclusive, 95 through 99, inclusive, 148 through 171, inclusive, and 173 through 180, inclusive, as though fully set forth at this place.

182.    Vulcan is informed and believes, and on that basis alleges, that Street contends Vulcan is obligated to defend Street in the City of Modesto litigation, the McHenry litigation, the Lyon litigation, and the Garcia litigation, by virtue of an implied indemnity and promissory estoppel, and pursuant to the indemnification provisions of the Agency Agreement.

183.    Vulcan is informed and believes, and on that basis alleges, that Street contends Vulcan has refused and failed to defend Street in those cases, in breach of the alleged implied indemnity, promissory estoppel, and the Agency Agreement.

184.    Vulcan is informed and believes, and on that basis alleges, that Street contends Vulcan is obligated to indemnify Street against sums it may become legally obligated to pay in settlement or by judgment in the City of Modesto litigation, the McHenry litigation, the Lyon litigation, and the Garcia litigation, by virtue of an implied indemnity and promissory estoppel, and pursuant to the indemnification provisions of the Agency Agreement.

185.    An actual and justiciable controversy exists between Vulcan and Street concerning their rights and obligations under the Agency Agreement and otherwise with respect to Street's claim that Vulcan is obligated to defend and indemnify Street against liability in City of Modesto, McHenry, Lyon and Garcia.

186.    Vulcan contends and alleges that it is not obligated to defend Street in the City of Modesto, McHenry, Lyon and Garcia cases; that it has not breached any obligation to defend Street in the City of Modesto, McHenry, Lyon and Garcia cases; and that it is not

1    obligated to indemnify Street against sums it may become legally obligated to pay in settlement

2    or by judgment in the City of Modesto, McHenry, Lyon and Garcia cases.

3           187.    Prior to the May 1, 1992, Agency Agreement, there was no agreement,

4    express or implied, that Vulcan would defend and indemnify Street against all claims that Street

5    was liable for damages allegedly caused by PerSec, such that Vulcan would be obligated to

6    defend and indemnify Street against the claims asserted in City of Modesto, McHenry, Lyon

7    and Garcia.

8           188.    Prior to the May 1, 1992, Agency Agreement, Vulcan did not represent to

9    Street that Vulcan would defend and indemnify Street against all claims that Street was liable

10   for damages allegedly caused by PerSec, such that Vulcan would be obligated to defend and

11   indemnify Street against the claims asserted in City of Modesto, McHenry, Lyon and Garcia.

12          189.    In September 1976, Vulcan and Street did agree that Vulcan would

13   provide protection to Street against potential lawsuits and liability arising out of its resale of

14   PerSec that it purchased from Vulcan, by including Street as an additional insured on Vulcan's

15   liability insurance policies, and Vulcan did include Street as an additional insured on its Policies

16   beginning in September 1976, and continuing until 1992.

17          190.    Street agreed, intended and accepted that, in making Street an additional

18   insured on its insurance policies, Vulcan fully complied with any and all express or implied

19   agreements by Vulcan to indemnify Street with respect to potential lawsuits and liability arising

20   out of its involvement with PerSec.

21          191.    The May 1, 1992, Agency Agreement does not obligate Vulcan to defend

22   or indemnify Street with respect to the City of Modesto and McHenry litigation, in that:

23          (a)  Street was obligated to purchase and maintain, and did purchase and

24         maintain, comprehensive general liability insurance with respect to coverage for PerSec;

25         Street's insurance is primary to any Vulcan indemnity obligation in the Agency

26         Agreement; and Street may not enforce the Vulcan indemnity unless and until Street

27         takes all necessary and prudent steps to secure its own insurance coverage and, in fact,

28         recovers in full against its own insurance policies.

1    (b)  To the extent Street did not purchase and maintain comprehensive general

2    liability insurance with respect to coverage for PerSec as required by the Agency

3    Agreement, Street breached its obligations under the Agency Agreement, and Vulcan is

4    excused from its indemnity obligations, if any.

5    (c)  Street breached its duties and obligations to Vulcan under the Agency

6    Agreement and the January 25, 2000, letter agreement by, *inter alia*, failing to

7    vigorously pursue all potential insurance recoveries available to Street from its own

8    policies of insurance; soliciting and accepting from Vulcan payments of defense costs

9    incurred in City of Modesto that had already been reimbursed or Street knew or expected

10    would be reimbursed by National Union; failing to remit to Vulcan sums paid to Street

11    that were due and owing to Vulcan pursuant to Street's agreement that Vulcan's

12    obligation is excess over any insurance recovery Street made from liability insurance it

13    purchased; and failing to provide an accounting, excusing Vulcan from its obligations

14    under those agreements.

15    192.   The May 1, 1992, Agency Agreement does not obligate Vulcan to defend

16    or indemnify Street with respect to the Lyon and Garcia litigation, in that:

17    (a)  Street was obligated to purchase and maintain, and did purchase and

18    maintain, comprehensive general liability insurance with respect to coverage for PerSec;

19    Street's insurance is primary to any Vulcan indemnity obligation in the Agency

20    Agreement; and Street may not enforce the Vulcan indemnity unless and until Street

21    takes all necessary and prudent steps to secure its own insurance coverage and, in fact,

22    recovers in full against its own insurance policies.

23    (b)  To the extent Street did not purchase and maintain comprehensive general

24    liability insurance with respect to coverage for PerSec as required by the Agency

25    Agreement, Street breached its obligations under the Agency Agreement, and Vulcan is

26    excused from its indemnity obligations, if any.

27    (c)  Subject to reserved rights, Vulcan accepted Street's tender of Street's defense

28    in Lyon and Garcia, and retained separate and independent counsel (Cox, Castle &

42

1    Nicholson) to represent Street in those cases.  Street unilaterally rejected performance by

2    Vulcan, refusing the defense, thereby breaching sections 5.1 and 5.2.3(iv) of the Agency

3    Agreement, thereby knowingly and intentionally relinquishing its right to a defense from

4    Vulcan and waiving any right to performance by Vulcan, and thereby repudiating

5    Vulcan's obligation to provide a defense or indemnify Street in the <u>Lyon</u> and <u>Garcia</u>

6    cases.

7          (d)  Street failed to provide reasonable cooperation to Vulcan in the defense of

8    <u>Lyon</u> and <u>Garcia</u> which materially impaired Vulcan's defense.

9          193.     Vulcan contends and desires a judicial determination and declaration that

10   it is not obligated to defend Street in the <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u> cases;

11   that it has not breached any obligation to defend Street in the <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u>

12   and <u>Garcia</u> cases; and that it is not obligated to indemnify Street against sums it may become

13   legally obligated to pay in settlement or by judgment in the <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u>

14   and <u>Garcia</u> cases.

15                      **TENTH CAUSE OF ACTION**

16                      **(Accounting, against Street)**

17         194.     Vulcan realleges and incorporates by reference each of the allegations

18   made herein at Paragraphs 1 through 63, inclusive, 67 through 81, inclusive, 85 through 90,

19   inclusive, 95 through 99, inclusive, 148 through 171, inclusive, 173 through 180, inclusive, and

20   182 through 193, inclusive, as though fully set forth at this place.

21         195.     Vulcan is informed and believes, and on that basis alleges, that Street

22   accepted all or some portion of the more than $1.8 million Vulcan paid toward attorney fees and

23   other costs of defense Street claimed to have incurred in the <u>City of Modesto</u> litigation, even

24   though those fees and costs had been paid or would be and were paid by Street's insurer(s).

25         196.     Vulcan is informed and believes, and on that basis alleges, that Street

26   diverted all or some portion of the more than $1.8 million Vulcan paid toward attorney fees and

27   other costs of defense Street claimed to have incurred in the <u>City of Modesto</u> litigation, to its

28

1  own use for purposes other than the payment of the attorney fees and other costs of defense that

2  Vulcan's funds were intended to pay.

3         197.    Vulcan is informed and believes, and on that basis alleges, that Street

4  recovered from its insurer(s) amounts in payment of fees and costs also paid by Vulcan, and that

5  Street wrongfully failed to reimburse Vulcan for those amounts.

6         198.    In accepting, diverting and failing to reimburse all or some portion of the

7  more than $1.8 million Vulcan paid to Street for attorney fees and other defense costs Street

8  claimed to have incurred in the City of Modesto litigation, as alleged herein, Street has failed to

9  meet its obligations to pay over money received, in breach of the January 25, 2000, letter

10  agreement.

11         199.    The amount of money due from Street to Vulcan is unknown to Vulcan

12  and cannot be ascertained without an accounting for the $1,805,740 in payments made by

13  Vulcan toward Street's fees and costs.  Vulcan is informed and believes, and on that basis

14  alleges, that the amount owed, however, exceeds $1 million.

15         200.    Vulcan has demanded that Street account for the aforementioned

16  $1,805,740 and pay the amount due to Vulcan, but Street has failed and refused, and continues

17  to fail and refuse, to render the accounting and pay Vulcan.

18         201.    Vulcan seeks an accounting between Vulcan and Street, and payment

19  over to Vulcan of the amount due from Street as a result of payments by Street's insurers, plus

20  interest.

21                        **ELEVENTH CAUSE OF ACTION**

22                  **(Declaratory Relief, against all Insurers)**

23         202.    Vulcan realleges and incorporates by reference each of the allegations

24  made herein at Paragraphs 1 through 69, inclusive, 81 through 99, inclusive, 101 through 105,

25  inclusive, 107 through 111, inclusive, 113 through 117, inclusive, 119 through 129, inclusive,

26  131 through 137, inclusive, 140 through 141, inclusive, 153 through 155, inclusive, 173, 182

27  through 184, inclusive, and 189, as though fully set forth at this place.

28

CROSS-COMPLAINT OF LEGACY VULCAN CORPORATION, Case Nos. BC328022 & BC 354664

203.    Vulcan seeks a declaration of its rights and duties under the Policies with respect to the cross-defendant Insurers, in accordance with §§ 1060 and 379 of the California Code of Civil Procedure.

204.    Vulcan's Policies cover sums Vulcan and any "additional insureds" may become legally obligated to pay to third parties because of property damage or bodily injury allegedly caused by Vulcan's products.  Beginning in 1976, and continuing to at least January 1, 1992, Street was included as an "additional insured" covered by Vulcan's Policies.  Vulcan's Policies also cover sums Vulcan may be required to pay due to liabilities imposed on others, including liabilities imposed on Street, to the extent Vulcan has contractually assumed responsibility for such liabilities.  The Policies also obligate each of the Insurers to cover attorney fees and other costs Vulcan incurs to defend against claims alleging such legal liabilities.

205.    An actual and justiciable controversy exists between and among Vulcan and the Insurers concerning the Insurers' contractual obligations to pay sums Vulcan may be required to pay to defend Street or for the cost of defending Street in City of Modesto, McHenry, Lyon and Garcia; to pay sums Vulcan may be required to pay to on Street's behalf with respect to liabilities Street may incur in City of Modesto, McHenry, Lyon and Garcia; to defend Vulcan and/or pay the costs incurred to defend Vulcan against Street's claims that Vulcan is obligated to indemnify Street in relation to City of Modesto, McHenry, Lyon and Garcia; and to indemnify Vulcan for sums it may become legally obligated to pay in settlement of or due to judgments rendered in actions by Street against Vulcan seeking indemnification and/or damages with respect to City of Modesto, McHenry, Lyon and Garcia.

206.    Vulcan contends and desires a judicial determination and declaration that one or more of the Policies obligate the issuing Insurer(s) to pay sums Vulcan may be required to pay to defend Street or for the cost of defending Street in City of Modesto, McHenry, Lyon and Garcia; to pay sums Vulcan may be required to pay to on Street's behalf with respect to liabilities Street may incur in City of Modesto, McHenry, Lyon and Garcia; to defend Vulcan and/or pay the costs incurred to defend Vulcan against Street's claims that Vulcan is obligated

45

1   to indemnify Street in relation to <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>; and to

2   indemnify Vulcan for sums it may become legally obligated to pay in settlement of or due to

3   judgments rendered in actions by Street against Vulcan seeking indemnification and/or damages

4   with respect to <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>.

5                           **PRAYER FOR RELIEF**

6          WHEREFORE, Vulcan prays for judgment as follows:

7          A.  On its First Cause of Action, compensatory damages against Transport in the

8   amount of at least $15.3 million, according to proof at trial, and interest thereon.

9          B.  On its Second Cause of Action, compensatory damages against ERC in the

10  amount of at least $15.3 million, according to proof at trial, and interest thereon.

11         C.  On its Third Cause of Action, compensatory damages against each Insurer

12  other than Allianz, Nutmeg, Travelers, United and XL, in the amount of at least $35.7 million,

13  according to proof at trial, and interest thereon.

14         D.  On its Fourth Cause of Action:

15         (1)    Compensatory damages against Transport, according to proof at trial, in

16  an amount sufficient to compensate Vulcan for amounts it has been forced to incur as a

17  direct and proximate result of Transport's breach of the implied covenant of good faith

18  and fair dealing, including but not limited to Vulcan's attorney's fees and expenses, and

19  interest thereon; and

20         (2)    Exemplary and punitive damages against Transport in an amount

21  sufficient to punish and make an example of Transport for its conscious and malicious

22  disregard of Vulcan's legal rights and to deter similar tortious misconduct in the future;

23         E.  On its Fifth Cause of Action, a declaration that one or more of the Policies

24  obligate the issuing Insurer(s) to investigate fully, to defend Vulcan fully, and/or to pay in full

25  Vulcan's costs of defense in connection with the actual and potential legal obligation to pay

26  sums as damages because of the property damage and personal injury alleged in <u>Lyon</u> and

27  <u>Garcia</u>.

28

1    F.   On its Sixth Cause of Action, a declaration that the <u>McHenry</u> and <u>City of</u>

2  <u>Modesto</u> Courts' determinations that Vulcan's settlements were made in good faith absolve

3  Vulcan of any further liability for any equitable indemnity or contribution claims, including but

4  not limited to the implied indemnity and promissory estoppel claims recently raised by National

5  Union and Street, and bars National Union and Street from any claims that Vulcan, by way of an

6  implied indemnity, promissory estoppel, or otherwise, is obligated to indemnify Street for

7  amounts paid in settlement of or in satisfaction of a judgment in the <u>McHenry</u> and <u>City of</u>

8  <u>Modesto</u> litigation.

9    G.   On its Seventh Cause of Action, a declaration that National Union has no

10  and/or may not bring any equitable subrogation claim shifting the responsibility to defend and

11  indemnify Street from National Union to Vulcan.

12    H.   On its Eighth Cause of Action, a declaration that National Union has no

13  and/or may not bring any equitable contribution claim shifting any portion of the responsibility

14  to defend and indemnify Street from National Union to Vulcan.

15    I.   On its Ninth Cause of Action, a declaration that:

16        (1)   Vulcan is not obligated to defend Street in the <u>City of Modesto</u>,

17    <u>McHenry, Lyon</u> and <u>Garcia</u> cases;

18        (2)   Vulcan has not breached any obligation to defend Street in the <u>City of</u>

19    <u>Modesto, McHenry, Lyon</u> and <u>Garcia</u> cases; and

20        (3)   Vulcan is not obligated to indemnify Street against sums Street may be

21    legally obligated to pay in settlement or by judgment in the <u>City of Modesto, McHenry,</u>

22    <u>Lyon</u> and <u>Garcia</u> cases.

23    J.   On its Tenth Cause of Action, an accounting between Vulcan and Street,

24  payment over to Vulcan of the amount due from Street as a result of payments by Street's

25  insurers, and interest thereon.

26    K.   On its Eleventh Cause of Action, a declaration that one or more of the

27  Policies obligate the issuing Insurer:

28

47

1       (1)    To pay sums Vulcan may be required to pay to defend Street or for the

2    cost of defending Street in the <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u> cases,

3    including but not limited to the approximately $1.8 million Vulcan has advanced toward

4    Street's defense costs;

5       (2)    To pay sums Vulcan may be required to pay on Street's behalf with

6    respect to liabilities Street may incur in <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>;

7       (3)    To defend Vulcan and/or pay the costs incurred to defend Vulcan against

8    Street's claims that Vulcan is obligated to indemnify Street in relation to <u>City of</u>

9    <u>Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and <u>Garcia</u>; and

10       (4)    To indemnify Vulcan for sums it may become legally obligated to pay in

11    settlement of or due to judgments rendered in actions by Street against Vulcan seeking

12    indemnification and/or damages with respect to <u>City of Modesto</u>, <u>McHenry</u>, <u>Lyon</u> and

13    <u>Garcia</u>.

14       L. For costs of suit and attorneys fees, as allowed by law; and

15       M. For such other relief as the Court deems just and proper.

16

17

18    DATED:  April 11, 2008           COVINGTON & BURLING LLP

19

20                    By: _Donald W. Brown_____

21                      Donald W. Brown   (wF)

22                 Attorneys for Defendant and Cross-

23                 Complainant Legacy Vulcan Corp.

24

25

26

27

28