# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| R.R. STREET & CO. INC. and | § | |
| NATIONAL UNION FIRE INSURANCE | § | |
| COMPANY OF PITTSBURGH, PA, as | § | |
| subrogee of R.R. Street & Co. Inc. | § | |
|     Plaintiffs, | § | **Case No. 1:08-CV-01182** |
| | § | **Judge: Hon. Virginia M. Kendall** |
| v. | § | **(Jury Requested)** |
| | § | |
| VULCAN MATERIALS COMPANY, n/k/a | § | |
| LEGACY VULCAN CORP., | § | |
|     Defendant. | § | |

## APPENDIX OF EXHIBITS TO
## R.R. STREET & CO. INC.'S RESPONSE TO
## LEGACY VULCAN CORP.'S MOTION TO DISMISS OR, IN THE
## ALTERNATIVE, STAY PLAINTIFFS' AMENDED COMPLAINT

HICKS, THOMAS & LILIENSTERN, LLP

John B. Thomas
Texas State Bar No. 09585000
Federal Admission ID No. 10675
Stephen M. Loftin
Texas State Bar No. 12489510
Federal Admission ID No. 12676
700 Louisiana, Suite 2000
Houston, Texas  77002
Tel:  (713) 547-9100
Fax:  (713) 547-9150

**ATTORNEYS FOR PLAINTIFF,**
**R.R. STREET & CO. INC.**

Dated:      June 4, 2008.

<u>**INDEX OF EXHIBITS**</u>

| <u>**No.**</u> | <u>**Description**</u> |
|---|---|
| 1 | Minute Order dated May 28, 2008 |
| 2 | Minute Order dated April 21, 2008 |
| 3 | 1992 Agency Agreement |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon all parties, by and through their counsel of record, electronically via the Court's ECF system on this the **4th** day of **June**, **2008**.

**/s/ John B. Thomas**
_____

John B. Thomas

# EXHIBIT 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 05/28/08 | | | | DEPT. 31 | 20015523 |
|---|---|---|---|---|---|
| HONORABLE Carl J. West | JUDGE | R. Rully | | DEPUTY CLERK | |
| HONORABLE | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR | May 28 2008 |
| S. Zuckerman, C.A. | Deputy Sheriff | NONE | | Reporter | |

| BC328022 | | | Plaintiff Counsel | **NO APPEARANCES** |
|---|---|---|---|---|
| TRANSPORT INS. V. VS VULCAN MATERIALS | | | Defendant Counsel | |
| COMPLEX 1-24-07 See X-Ref BC328022 (Lead) | | | | |

**NATURE OF PROCEEDINGS:**

CORRECTION, BY ADDITION, NUNC PRO TUNC, TO THE COURT'S MINUTE ORDER OF 4/21/08:

It appearing to the Court that, through inadvertence and clerical error, the Court's April 21, 2008, Minute Order does not completely reflect the Court's Orders of that date, said Minute Order is accordingly ordered corrected, nunc pro tunc, as of April 21, 2008, as follows:

By adding:

With respect to Cross-Complaint filed by Vulcan on April 11, 2008, all Cross-Defendants that have not appeared in the related cases shall be served by May 12, 2008. All Cross-Defendants that have appeared in these proceedings shall be deemed to have been served with the Cross-Complaint on April 11, 2008. Repsonsive pleadings shall be stayed pending further Order of the Court.

Pursuant to the Court's Order Authorizing Electronic Service, a true and correct copy of this Minute Order is served upon the parties to the above-entitled case this date by posting a copy of the Minute Order on the Lexis/Nexis File & Serve website.

Page    1 of 1      DEPT. 311

| MINUTES ENTERED 05/28/08 COUNTY CLERK |
|---|

# EXHIBIT 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 04/21/08 | | | | DEPT. 31 | 19504164 |
|---|---|---|---|---|---|
| HONORABLE Carl J. West | JUDGE | R. Rully | | DEPUTY CLERK | |
| HONORABLE | JUDGE PRO TEM | | | Apr 21 2008 ELECTRONIC RECORDING MONITOR | |
| S. Zuckerman, C.A. | Deputy Sheriff | W. Oillataguerre, C.S.R. | | Reporter | |

| 1:30 pm BC328022 | Plaintiff | Michael W. Ellison (x) |
|---|---|---|
| | Counsel | Jane Karren Baker (x) |
| TRANSPORT INS. V. | | |
| VS | Defendant | Wendy L. Feng (x) |
| VULCAN MATERIALS | Counsel | Donald W. Brown (x) |
| | | Cyndie Chang (x) |
| COMPLEX 1-24-07 | | Ray L. Wong (x) |
| See X-Ref BC328022 (Lead) | | |

**NATURE OF PROCEEDINGS:**

FURTHER STATUS CONFERENCE:

The Court holds a Further Status Conference
this date in open court and on the record with counsel
appearing as indicated.

The Court confers with counsel, as fully
reflected in the notes of the official Court Reporter,
and makes Orders as follows:

1. Protective Order:

The parties shall submit to the court a revised
stipulation to entry of a protective order, on or
before May 2, 2008.

2. Threshold Issue Determination:

a. The parties shall prepare and submit a
stipulation, on or before May 2, 2008, tendering the
issue of the effect of the Good Faith Order in the
Modesto litigation on undisputed facts and
acknowledging that the issue may be determined as a
matter of law.

b. The Court sets the following briefing and
hearing schedule on the issue, subject to the filing
of the requested stipulation:

| MINUTES ENTERED |
|---|
| 04/21/08 |
| COUNTY CLERK |

| DATE: 04/21/08 | | | | **DEPT.** 311 |
|---|---|---|---|---|
| HONORABLE Carl J. West | | JUDGE | R. Rully | DEPUTY CLERK |
| HONORABLE | | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| S. Zuckerman, C.A. | | Deputy Sheriff | W. Oillataguerre, C.S.R. | Reporter |

| 1:30 pm | BC328022 | | Plaintiff | Michael W. Ellison (x) |
|---|---|---|---|---|
| | | | Counsel | Jane Karren Baker (x) |
| | TRANSPORT INS. V. | | | |
| | VS | | Defendant | Wendy L. Feng (x) |
| | VULCAN MATERIALS | | Counsel | Donald W. Brown (x) |
| | | | | Cyndie Chang (x) |
| | COMPLEX 1-24-07 | | | Ray L. Wong (x) |
| | See X-Ref BC328022 (Lead) | | | |

**NATURE OF PROCEEDINGS:**

    i. Vulcan shall serve and file its Opening Brief on or before May 16, 2008.

    ii. Insurers' Opposition Briefs shall be served and filed on or before June 27, 2008.

    iii. Vulcan's Reply Brief shall be served and filed on or before July 18, 2008.

    iv. Hearing Re: Determination of Threshold Issues is set for July 29, 2008, at 1:30 P.M., in Department CCW-311.

3. Discussions of Counsel Pursuant to the Court's Meet and Confer Requirements:

    Counsel complying with the Court's meet and confer requirements shall not be deemed to have waived any attorney-client privilege and counsels' discussions shall be deemed subject to the litigation privilege. This Order is entered to facilitate counsel's efforts to provide stipulations and agreements requested by the Court to assist the Court in the management of this litigation.

4. Further Status Conference and Joint Statement:

    a. The Court sets a Further Status Conference for July 29, 2008, at 1:30 P.M., in Department CCW-311,

Page  2 of 4    DEPT. 311

MINUTES ENTERED
04/21/08
COUNTY CLERK

| DATE: 04/21/08 | | | | DEPT. 311 |
|---|---|---|---|---|
| HONORABLE Carl J. West | | JUDGE | R. Rully | DEPUTY CLERK |
| HONORABLE | | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| | S. Zuckerman, C.A. | Deputy Sheriff | W. Oillataguerre, C.S.R. | Reporter |

| | | | |
|---|---|---|---|
| 1:30 pm BC328022 | | Plaintiff | Michael W. Ellison (x) |
| | | Counsel | Jane Karren Baker (x) |
| TRANSPORT INS. V. | | | |
| VS | | Defendant | Wendy L. Feng (x) |
| VULCAN MATERIALS | | Counsel | Donald W. Brown (x) |
| | | | Cyndie Chang (x) |
| COMPLEX 1-24-07 | | | Ray L. Wong (x) |
| See X-Ref BC328022 (Lead) | | | |

**NATURE OF PROCEEDINGS:**

to be held concurrently with the Hearing Re:
Determination of Threshold Issues.

b. In anticipation of the July 29, 2008 Further
Status Conference the parties shall serve and file a
Joint Statement on or before July 23, 2008.

The Court requests that the parties file an
original and one "courtesy" copy of all Joint
Statements/Status Reports ordered by the Court and
an original and two "courtesy" copies of all motions
and briefing pertaining to motions, directly in
department CCW-311..

ADDITIONAL PERSONAL APPEARANCES BY COUNSEL:

Nicholas R. Andrea (x)    Andrew R. McCloskey (x)
Charles H. Diaz (x)       Lawrence A. Tabb (x)
Michael J. Leahy (x)      Richard E. Wirick (x)
Donald L. Mabry (x)

TELEPHONIC APPEARANCES BY COUNSEL:

Jeffrey C. Burt (x)       Sherry Pantages (x)
John C. Conway (x)        Yvette Roland (x)
Mark Froelich (x)         Brian W. Walker (x)
Beth Kahn (x)             Stephanie Walker (x)

Page  3 of  4    DEPT. 311

MINUTES ENTERED
04/21/08
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 04/21/08 | | | | **DEPT.** 311 |
|---|---|---|---|---|
| HONORABLE Carl J. West | JUDGE | R. Rully | | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| S. Zuckerman, C.A. | Deputy Sheriff | W. Oillataguerre, C.S.R. | | Reporter |

| 1:30 pm | BC328022 | Plaintiff | Michael W. Ellison (x) |
|---|---|---|---|
| | | Counsel | Jane Karren Baker (x) |
| | TRANSPORT INS. V. | | |
| | VS | Defendant | Wendy L. Feng (x) |
| | VULCAN MATERIALS | Counsel | Donald W. Brown (x) |
| | | | Cyndie Chang (x) |
| | COMPLEX 1-24-07 | | Ray L. Wong (x) |
| | See X-Ref BC328022 (Lead) | | |

**NATURE OF PROCEEDINGS:**


Pursuant to the Court's Order Authorizing
Electronic Service, a true and correct copy of this
Minute Order is served upon the parties to the above-
entitled case this date by posting a copy of the
Minute Order on the Lexis/Nexis File & Serve website.

Page    4 of  4    DEPT. 311

MINUTES ENTERED
04/21/08
COUNTY CLERK

# EXHIBIT 3

## PERCHLOROETHYLENE AGENCY AGREEMENT
## BETWEEN VULCAN CHEMICALS
## AND R. R. STREET & CO., INC.

This Agreement is made and entered into as of this 1st day of May, 1992, between VULCAN MATERIALS COMPANY (Chemicals Division), a New Jersey corporation ("Vulcan"), and R. R. STREET & CO., INC., a Delaware corporation ("Street"),

## WITNESSETH:

WHEREAS, Vulcan is engaged in the manufacture and sale of perchloroethylene which is sold to the drycleaning industry under the trade name PerSec, and Street is engaged in the business of marketing a wide range of products to the drycleaning industry; and

WHEREAS, for a number of years Street and Vulcan have had a contractual arrangement for marketing PerSec; and

WHEREAS, both parties agree it is desirable to redefine their contractual arrangement for marketing PerSec;

NOW, THEREFORE, in consideration of the premises and the mutual covenants of the parties as hereinafter set forth, the parties hereto hereby agree as follows:

## I.    APPOINTMENT

1.1    **Appointment.** Subject to the terms and conditions set forth below, and without defining or characterizing the parties' prior relationship (the "Prior Agreement"), Vulcan appoints Street as its exclusive agent to solicit and take orders for

EXHIBIT _8_

FOR I.D. 5-13-02

STR 031934

sales of PerSec to distributors in and for the drycleaning industry in the continental United States (hereinafter referred to as the "Market"), and Street hereby accepts said appointment. In consideration of this appointment, Street shall use its best efforts during the term of this Agreement to promote sales of PerSec to distributors in the Market, provided that Vulcan is able to supply the requirements of such distributors.

1.2    **Exclusivity.** The appointment under this Agreement is exclusive as to PerSec, and Vulcan may appoint such other agents as it might desire at any time and may also make such other sales of perchloroethylene, direct and indirect, as it might desire as long as such perchloroethylene is not intended for use in and by the Market. Such other sales of perchloroethylene may include, but not be limited to, the following uses and sales:

1.2.1    Use as a degreasing solvent or other solvent uses;

1.2.2    Use as a chemical intermediate in the manufacture of other chemical compounds;

1.2.3    Sales to other perchloroethylene manufacturers for resale or consumption;

1.2.4    New uses for perchloroethylene which from time to time may be developed for other than laundry and drycleaning applications;

1.2.5    Drycleaning uses outside the Market, except in those instances where the parties have agreed separately that Street shall participate in such sales; or

1.2.6    Drycleaning uses by industries other than conventional drycleaning service suppliers such as textile manufacturing.

2

## 2.   PRODUCT

PerSec specifications may be modified or sales discontinued by Vulcan for any reason Vulcan determines to be appropriate.   Vulcan shall notify Street of any such changes as soon as reasonably practicable.   Notification by Vulcan of changes in PerSec specifications, to the extent PerSec would be rendered unusable in the Market, will constitute notice of termination under the provisions of Section 7.2.3 below as of the date any such change in specifications becomes effective.

## 3.   QUANTITIES

3.1   Street's Sales.   Street shall use its best efforts to sell for Vulcan minimum quantities of PerSec which the parties shall annually negotiate in good faith and agree to in writing.

3.2   Vulcan's Supply.   Vulcan shall endeavor to supply all PerSec needed to fill orders obtained by Street in the amounts, on the delivery dates, and at the shipping points as requested in such orders.   If for any reason Vulcan determines that it is unable to fill all orders for PerSec, Vulcan shall make a reasonable effort to allocate and distribute products equitably among its various customers and itself according to a plan that Vulcan believes will reasonably and fairly accomplish such purpose.

## 4.   STREET'S AUTHORITY, PROMISES, AND DUTIES

4.1   Authority.   Street's appointment as an agent of Vulcan shall be only for the purposes set forth in this Agreement and for no other purposes.   No other relationship is intended to be created, and neither Street nor Vulcan shall make representations to third parties that Street's authority is other than that set forth herein.

3

STR 031936

Although Vulcan acknowledges that Street does business with drycleaners in the sale of Street's own products and in the performance of service for drycleaners, in no event shall Street be deemed to be or act as agent for Vulcan or PerSec in connection with any business or dealings directly with drycleaners. Nothing in this Agreement shall be construed to authorize or enable Street to control the conduct of Vulcan's business in any manner. Street is authorized as Vulcan's agent to:

      4.1.1    Solicit and take orders for PerSec from distributors as provided in this Agreement; provided, however, that Street shall not be deemed to be a purchaser of PerSec from Vulcan hereunder, shall not be responsible for handling and transportation of PerSec hereunder and shall not take title to PerSec ordered for delivery to PerSec distributors hereunder;

      4.1.2    Prepare and transmit invoices for sales of PerSec, collect payments, and remit appropriate amounts, less commissions, to Vulcan as provided in this Agreement; and

      4.1.3    Diligently perform such other duties as Street and Vulcan mutually agree in writing.

4.2    **Best Efforts.**  Street's best efforts to promote the sale of PerSec shall include, but not be limited to, the following duties:

      4.2.1    Establish and maintain at Street's expense such qualified personnel and systems as Street determines are required to perform effectively its obligations under this Agreement;

4

STR 031937

4.2.2    Pay such expenses and disbursements as Street incurs in performing under this Agreement, except for those expenses that the parties agree from time to time are to be paid by Vulcan; and

4.2.3    Supply volume forecasts as may be reasonably requested by Vulcan in order to assist Vulcan in its production planning.

4.3    **Commissions.**  Street shall be entitled to a commission equal to 9.75% of the net sales revenues for sales of PerSec in and to the Market. Street shall receive this commission as set forth in Exhibit 4.4 to this Agreement. For purposes of this Agreement, the term "net sales revenues" shall mean the total revenues received by Street as Vulcan's sales agent for PerSec which are attributable to such sales, less taxes, discounts, returns and refunds which are directly attributable to such sales. In the event Vulcan refunds to a customer any payment received by it with respect to such sales, Street shall refund to Vulcan any commission it had received with respect to such sales.

4.4    **Invoices, Collection, Accounting.**  Street and Vulcan shall mutually agree upon a system by which: (i) PerSec sales shall be invoiced, (ii) invoice payments shall be collected, (iii) Street's commissions shall be paid, (iv) sales revenues shall be remitted to Vulcan and (v) all other related matters shall be handled. Such system shall include appropriate methods of accounting for all of such transactions and shall be as more specifically set forth in Exhibit 4.4, attached hereto. Inasmuch as such system might be revised from time to time, the most recent version of any written description of such system shall be considered to be a revision to Exhibit 4.4, provided such description is identified as such and is executed by authorized representatives of Street and Vulcan.

5

STR 031938

**4.5    Trademarks.** Street shall not use any trademark or trade name owned by Vulcan, either alone or with any other word(s), mark(s) or symbol(s), without Vulcan's consent. Vulcan hereby consents to the use of the name "PerSec" in fulfillment of the terms of this Agreement and the use of the name "Vulcan" in describing the manufacture of PerSec.

**4.6    Insurance.** Street shall keep in force during the term of this Agreement normal, commercially available comprehensive general liability insurance with respect to coverage for PerSec issued by a carrier selected by Street that is reasonably satisfactory to Vulcan with primary coverage for each year in the aggregate of not less than $2,000,000. Such policy shall provide for thirty (30) days' prior written notice to Vulcan by the insurance carrier of any cancellation, material change or nonrenewal of the policy. In the event such insurance coverage demonstrably becomes unavailable or prohibitively expensive (that is, specifically with respect to coverage for PerSec, costing in excess of $250,000 per year to maintain in real terms (which means that such amount shall be adjusted for inflation based on changes in the Gross Domestic Product Implicit Price Deflator) as of the date of this Agreement), Street shall notify Vulcan, and Vulcan shall use its best efforts to assist Street in obtaining such insurance coverage. If, notwithstanding such efforts, such insurance coverage remains unavailable or continues to be prohibitively expensive, the parties shall attempt in good faith to negotiate mutually satisfactory alternative arrangements. If the parties are unsuccessful in agreeing to such alternative arrangements Street may, at its option, elect to self-insure the risks to be covered by such insurance so long as such insurance continues to be unavailable or prohibitively expensive. In addition, Street shall

6

maintain other insurance coverages as may be required by law in the places where Street conducts business, including statutory workman's compensation. In addition, Street shall carry motor vehicle liability with coverage up to $500,000 per occurrence, and employer's liability with coverage up to $200,000. Street shall furnish Vulcan evidence reasonably satisfactory to Vulcan that all of the foregoing insurance is in effect.

      4.7    **Product Information.** Street may represent to PerSec distributors that PerSec is warranted by Vulcan to conform to current applicable specifications as set forth in information published by Vulcan from time to time, but Street is specifically not authorized or empowered to alter, amend, expand or interpret such warranty unless such action is approved by Vulcan in writing. Vulcan intends to enter into Product Distribution and Sales Agreements with PerSec distributors and will rely on such distributors to disseminate product literature and information to their customers, and, therefore, Street specifically shall not be obligated hereunder to disseminate such literature and information to anyone.

      4.8    **Street's Indemnification of Vulcan.** Notwithstanding the provisions of Section 5.1 below and Vulcan's duty to defend, indemnify and hold Street harmless as expressed thereunder, Street shall indemnify and hold Vulcan harmless (including Vulcan's reasonable defense costs and attorney's fees) against, from and with respect to all claims by and liabilities to third parties arising out of (i) Street's act (other than an omission or failure to act) that is beyond or outside its authority as Vulcan's agent for PerSec that causes Vulcan to incur liability or (ii) a warranty or representation with respect to Vulcan or PerSec made by Street, its employees or agents not specifically

7

authorized by Vulcan. The claims and liabilities to third parties for which Street is agreeing in this Section 4.8 to indemnify and hold Vulcan harmless shall include, but not be limited to, liability for injury, sickness, death and property damage and shall include all liability for environmental or pollution-related damage or injury, sickness or death, whether or not such liability is a result of civil, criminal or government action; provided, however, that if Vulcan in such instance contributed to such claims or liabilities, Street's indemnity to Vulcan shall be reduced in proportion to Vulcan's contribution. The term "Street's act" as used in clause (i) of the first sentence of this Section 4.8 and clause (i) of Section 5.2.3 shall mean an oral statement or representation or affirmative physical conduct engaged in by an employee of Street. The term "Street's act" as used in clause (i) of the first sentence of this Section 4.8 and clause (i) of Section 5.2.3 shall not include, and the term "omission or failure to act" as used in clause (i) of the first sentence of this Section 4.8 and in clauses (i) and (iii) of Section 5.2.3 shall include, any silence, any omission to speak or act, any refusal to advise or assist in response to some request for advice or assistance or any inaction in response to any inquiry or other stimulus.

Street shall not be required to provide a defense to Vulcan with respect to indemnified claims, but, upon an adjudication by a court of competent jurisdiction, with all appeal rights having expired, determining that Vulcan is entitled to indemnity hereunder, Street shall thereupon make such payments as would be required to hold Vulcan harmless, including, without limit, Vulcan's reasonable defense costs and attorney's fees. If Street elects not to provide a defense to Vulcan, Vulcan shall be entitled to defend itself using attorneys of Vulcan's selection. If Street elects to provide

8

a defense to Vulcan, Street shall retain attorneys of Street's selection reasonably satisfactory to Vulcan to represent Vulcan, and Street shall pay all defense costs and attorney's fees arising therefrom. In the event Street retains attorneys to represent Vulcan pursuant to this Section 4.8, Vulcan shall have the right, but not the duty, to defend or assist in the defense of such proceeding with attorneys of Vulcan's selection consulting with attorneys of Street's selection and without relieving Street of any obligation under this Agreement.

4.9    Nothing in this Agreement shall be deemed to limit Street's right or authority to market, sell, distribute, install, lease or otherwise engage in business related to products that use or handle perchloroethylene or that contain perchloroethylene as a raw material.

## 5.    VULCAN'S PROMISES AND DUTIES

5.1    **Vulcan's Indemnification of Street.**  Subject to the provisions of Sections 5.2 and 5.3 below and in addition to any other remedies available to Street with respect to claims by third parties, Vulcan shall defend, indemnify and hold Street harmless (including Street's reasonable defense costs and attorney's fees) against, from and with respect to all claims by or liabilities to third parties arising out of any acts, omissions or transactions related to the handling, use or disposal of perchloroethylene or PerSec, including, but not limited to, liability for injury, sickness, death and property damage, and including all liability for environmental or pollution-related damage or injury, sickness or death, whether or not any such liability is a result of civil, criminal or government action. With respect to indemnified claims against both Street and Vulcan as codefendants, if Vulcan determines there is or might be a conflict

9

of interest between Street and Vulcan, then Vulcan shall retain separate and independent attorneys of Vulcan's selection reasonably satisfactory to Street to represent Street, and Vulcan shall pay all defense costs and attorney's fees arising therefrom. With respect to indemnified claims asserted against Street but not Vulcan, Vulcan shall retain attorneys of Vulcan's selection reasonably satisfactory to Street to represent Street, and Vulcan shall pay all defense costs and attorney's fees arising therefrom. In the event Vulcan retains attorneys to represent Street pursuant to this Section 5.1, Street shall have the right, but not the duty, to assist in the defense of such proceeding with attorneys of Street's selection consulting with attorneys of Vulcan's selection and without relieving Vulcan of any obligation under this Agreement.

     5.2    **Termination of Indemnification.** Vulcan's duty under Section 5.1 above to defend, indemnify and hold Street harmless shall terminate upon the occurrence of any one of the following events:

     5.2.1    The dismissal of the claim for which indemnification is sought pursuant to settlement or final adjudication, after the expiration of all appeal rights, following payment by Vulcan of any judgment against Street or any settlement obligation of Street and payment by Vulcan of all of Street's reasonable defense costs and attorney's fees previously incurred;

     5.2.2    The execution of a written agreement by Street and Vulcan modifying their respective obligations with respect to a claim for which indemnification is sought; or

10

5.2.3    The entry by a court of competent jurisdiction of a final adjudication which is no longer appealable finding that the claim or liability with respect to which indemnification is sought resulted from:

(i)    Street's act (other than an omission or failure to act) that is beyond or outside its authority as Vulcan's agent for PerSec;

(ii)    a warranty or representation with respect to Vulcan or PerSec made by Street, its employees or its agents not specifically authorized by Vulcan;

(iii)    Street's omission or failure to act (other than an omission or failure to act authorized and directed under this Agreement) that results in an award of punitive or exemplary damages by a court of competent jurisdiction, with all appeal rights having expired; provided, however, that if the reason for such omission or failure to act was to preserve the life or to prevent serious injury to an employee of Street, it shall not be considered an omission or failure to act for purposes of this clause (iii) of this subsection 5.2.3 of this Agreement; or

(iv)    Street's failure to furnish evidence in its possession or to provide other reasonable cooperation to Vulcan in the defense of the claim or liability which materially impaired Vulcan's defense.

11

STR 031944

With regard to any such adjudication listed in this Section 5.2.3, termination of indemnification shall be deemed to have been effective at the moment indemnification was first sought and Street shall reimburse Vulcan its fair share of costs and damages expended by Vulcan in Street's behalf.

     **5.3**    **Exceptions to Indemnification.**  Vulcan shall have no duty to defend, indemnify or hold Street harmless under Section 5.1 above with respect to a claim for which indemnification is sought unless Street notifies Vulcan of such claim within sixty (60) days after Street's senior management first receives notice of the claim and unless Street provides Vulcan with the option to defend such claim at Vulcan's expense and with counsel and experts of Vulcan's selection, subject to Street's reasonable satisfaction.

**6.**    **ORDERS, PRICES, AND TERMS OF SALE**

     **6.1**    **Orders.**  Sales of PerSec shall be made only pursuant to the terms of sale set forth in a document which Vulcan and Street have approved in writing. All orders for PerSec shall, unless otherwise agreed by Vulcan, indicate the quantity of PerSec desired, the desired delivery date, the price of PerSec, and all other relevant information reasonably needed by Vulcan for shipment of PerSec.

     **6.2**    **Acceptance or Confirmation of Orders.**  All orders for PerSec shall be subject to acceptance or confirmation by Vulcan. After shipment of PerSec, no order may be cancelled without Vulcan's written consent. Vulcan's acceptance or confirmation of any order shall be evidenced only by Vulcan's shipment of PerSec or

12

by some writing of such purport issued by Vulcan, whichever occurs first. When a shipment of PerSec precedes the issuance of an invoice, then such shipment shall be deemed to be subject to the mutually agreed upon invoice form which is in general usage at the time of shipment. Vulcan reserves the right to refuse to accept orders for PerSec from distributors who are not in compliance with federal, state or local standards relating to the storage, handling, use, sale, distribution and disposal of perchloroethylene or who are not, in the exercise of Vulcan's sole and commercially reasonable discretion, adequately creditworthy.

6.3    Prices. The prices and terms at which Vulcan shall sell PerSec shall be based on the price list as published by Vulcan from time to time and as communicated in writing by Vulcan to Street or such prices and terms approved in writing or orally by Vulcan in advance.

7.    TERM, RENEWAL AND TERMINATION

7.1    Term and Renewal. This Agreement shall take effect on the date set forth on the first page and shall continue in full force for sixty (60) months or unless sooner terminated as provided in this Agreement. Annually, on each anniversary, this Agreement shall be renewed automatically on a rolling basis for new periods of sixty (60) months unless either party gives the other party notice of its intention not to renew prior to the anniversary date, in which case this Agreement shall terminate on the fifth anniversary of said notice unless sooner terminated as provided in Section 7.2 below.

7.2    Termination. This Agreement may be terminated as follows:

7.2.1    By either party, immediately upon giving written notice, if:

13

STR 031946

(i)  proceedings by or against the other party are instituted and proceed in bankruptcy or under insolvency laws;

(ii)  the other party makes an assignment of all or part of its assets for the benefit of creditors;

(iii)  the other party ceases to exist; or

(iv)  the other party fails to inform the terminating party in writing promptly of any event specified in this Section 7.2.1.

7.2.2  By either party at any time by thirty (30) days' prior notice delivered to the other party if such other party is in material breach of this Agreement and said breach is not cured within a reasonable time; or

7.2.3  Subject to satisfying the requirements for annual payments as set forth in Section 7.3 below and by delivering written notice to Street, consistent with the provisions of Section 7.3 below, setting forth the effective date of the termination, by Vulcan (i) in the event it ceases the sale of PerSec for any reason as stipulated in Section 2 above (but not including an event of Force Majeure which is subject to Section 7.2.4 below) or (ii) if Vulcan decides in its sole discretion to terminate this Agreement; or

7.2.4  By either party if an event of Force Majeure excuses performance hereunder for a period of twelve (12) consecutive months or more, and no reasonable likelihood appears that such event of Force

14

Majeure shall be removed within the next period of twelve (12) consecutive months.

7.3    In the event that this Agreement is terminated by Vulcan (i) only pursuant to Section 7.2.3 above, and for no other reason, and (ii) with no advance notice of such termination or with less than sixty (60) months' notice, Vulcan shall pay Street five (5) consecutive annual payments, each equal in amount to the percentage shown below of the average annual commissions received by Street in the immediately preceding ten (10) years (such average annual commissions being referred to herein as the "Commission").

| | | |
|---|---|---|
| Year 1 | - | 85% of the Commission |
| Year 2 | - | 75% of the Commission |
| Year 3 | - | 65% of the Commission |
| Year 4 | - | 55% of the Commission |
| Year 5 | - | 45% of the Commission |

For every complete twelve- (12-) month period of advance notice of termination given by Vulcan, the number of annual payments shall be reduced by the number of such complete twelve- (12-) month period, the reduction being first applied to the payment due in the latest year first. The first such annual payment shall be due one hundred eighty (180) days after the date on which notice of termination is given, and the remaining payments shall be made on the anniversaries of the first payment date. Vulcan's obligation to make payments pursuant to this Section 7.3 shall terminate immediately if Street markets perchloroethylene in competition with Vulcan.

8.    GENERAL PROVISIONS

8.1    Assignment.  This Agreement may not be assigned by either party to any other party without the prior written consent of the nonassigning party. Neither

15

STR 031948

party may withhold consent unless its interests are imperilled. If a party fails to give or withhold consent within fifteen (15) business days after notice requesting consent, such consent shall be deemed to have been given automatically.

8.2    Notice. All notices permitted or required under this Agreement shall be in writing, and shall, in the case of Vulcan, be executed by an officer of Vulcan or of Vulcan's Chemicals Division, or, in the case of Street, by an officer of Street. Notices shall be considered to have been given on the date received or on the indicated date of receipt, if mailed by certified or registered mail, proper postage prepaid, or sent by courier, addressed to the other party at the address set forth below, or to such other address as either party may designate to the other by prior written notice.

> If to Vulcan:    Vulcan Materials Company
> Chemicals Division
> 1 Metroplex Drive
> Birmingham, AL  35209
> Attention:    President, Chemicals Division
>
> If to Street:    R. R. Street & Co., Inc.
> 625 Enterprise Drive
> Oak Brook, IL  60521
> Attention:    President

8.3    Entire Agreement. This Agreement and any exhibits or amendments hereto constitute the entire agreement between the parties and supersede all previous agreements with respect to claims or liabilities resulting from acts, omissions or transactions occurring after the date hereof. With respect to claims or liabilities arising wholly or in part from acts, omissions or transactions occurring on or prior to the date hereof, each party expressly preserves and retains all rights, privileges, causes of action or theories of law, if any, under the Prior Agreement (referred to in Section 1.1 and in the second recital above) and applicable legal principles and authorities. This

16

Agreement may be amended only by a written document executed on behalf of each party by a duly appointed representative.

8.4    **Separability of Provisions.** A court decision that any one or more of the provisions of this Agreement is invalid shall not invalidate the remaining provisions, nor shall such decision have any effect on the validity or interpretation of this Agreement outside the jurisdiction of the court which renders such decision.

8.5    **Waiver of Compliance.** Any failure by either party to enforce any term or condition under this Agreement shall not be construed as a waiver of that party's right subsequently to enforce such term or condition.

8.6    **Force Majeure.** Except with respect to the payment of money owed hereunder, either party hereto shall be excused from nonperformance or delay caused by events of Force Majeure, which shall include, without limitation, labor disputes, wars, revolutions, civil strikes, riots, disturbances and acts of enemies, accidents, unavailability of raw materials, typhoons, hurricanes, floods, fires, earthquakes, diseases and other causes or acts of God, plant shutdowns necessitated by mechanical or fuel failure, governmental action or civil suit, or causes beyond the reasonable control of the nonperforming or delaying party. This Agreement shall not be construed to require a party to settle a labor dispute when it deems it inadvisable to do so. The party claiming Force Majeure shall notify the other party orally as soon as reasonably possible and in writing within ten (10) days of the occurrence of any such event. Either party shall take diligent action to cure any event of Force Majeure suffered by it to the extent it is reasonably possible to do so.

17

STR 031950

**8.7    Binding Upon Successors.** This Agreement shall be binding upon and inure to the benefit of the successors in interest of the parties hereto.

**8.8    Nondisclosure.** Street and Vulcan shall neither publicize nor disclose the terms of this Agreement or any renewal to any third party, except as required by law, without the prior written consent of the other; provided that such consent shall not be unreasonably withheld. Vulcan recognizes that the changes in Street's authority relating to the sale and promotion of PerSec may require explanation to third parties. Street and Vulcan shall agree separately in writing within thirty (30) days of this Agreement as to the content of any such communication. Neither party's personnel are authorized by this Agreement to disclose to any third party any information which either party considers to be confidential or proprietary. In the event that it becomes desirable or necessary to disclose any such information, the parties will negotiate a separate agreement to govern the terms of the exchange of such information.

**8.9    Jurisdiction and Governing Law.** Except to the extent this Agreement modifies the provisions of such laws, this Agreement shall be governed by the laws of Illinois.

**8.10    Headings.** The various section headings used in this Agreement are for convenience only and shall not be used in interpreting the text.

**8.11    Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute one and the same instrument. Each party shall receive a fully executed counterpart.

**8.12    Parties.** The use of the words "party" or "parties" herein throughout shall mean Street and Vulcan.

18

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in duplicate originals by their duly authorized representatives on the date set forth on the first page.

VULCAN MATERIALS COMPANY
CHEMICALS DIVISION

By _____

Title _____

R. R. STREET & CO., INC.

By _____

Title _____

19

STR 031952

PERCHLOROETHYLENE AGENCY AGREEMENT
BETWEEN VULCAN CHEMICALS
AND R. R. STREET & CO., INC.
DATED MAY 1, 1992

EXHIBIT 4.4
Invoice, Collection and Accounting Systems

(i)     Street's shall invoice PerSec distributors within two (2) business days of receiving confirmation from Vulcan of the quantity and price of PerSec delivered plus any additional charges/credits.

(ii)    Street's shall use its best efforts to collect payment from PerSec distributors according to credit terms agreed to by Vulcan in its sole and commercially reasonable discretion for each PerSec distributor, taking into account Street's credit relationship with such distributors. Street's best efforts to collect such payments shall include the reasonable use of whatever leverage Street's might have with respect to any such distributor whose account is past due.

(iii)   Street's shall remit payments collected from PerSec distributors, less Street's Commissions, on a weekly basis but no later than five (5) business days following Street's receipt of payment, together with a listing of PerSec payments received from distributors and PerSec invoices outstanding.

(iv)    If a PerSec distributor's check or bank draft is not honored, Street's shall restore the status of the invoices to which those dishonored payments relate to a current and outstanding status and shall deduct any payment made to Vulcan in respect of those invoices from the next remittance to Vulcan.

FOR ID. _____ EXHIBIT _____

STR 031932

(v)     Street's shall cooperate with Vulcan's credit department in the collection of delinquent PerSec accounts. In the event Vulcan determines that any PerSec invoice is uncollectible, Street's shall not be responsible for payment of the invoice to Vulcan, and Vulcan shall not be responsible for payment of any Commission to Street's with respect to that invoice. If a partial payment is collected and deemed by Vulcan to satisfy the indebtedness of the PerSec distributor, Street's shall receive its normal Commission percentage of the partial payment.

(vi)    Within thirty (30) days after the effective date of this Agreement, Street's shall provide Vulcan with a list of PerSec accounts showing terms for each PerSec distributor and a list of potential distributors identified by Street's together with Street's assessment of the desirability of extending credit to each distributor. Vulcan shall add any other potential accounts and then advise Street's in writing as to Vulcan's instructions on providing credit to each listed distributor. Both parties shall undertake to maintain the list on a current basis.

2

STR 031933