# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **R.R. STREET & CO. INC. and** | § | |
| **NATIONAL UNION FIRE INSURANCE** | § | |
| **COMPANY OF PITTSBURGH, PA, as** | § | |
| **subrogee of R.R. Street & Co. Inc.** | § | |
| **Plaintiffs,** | § | **Case No. 1:08-CV-01182** |
| | § | **Judge: Hon. Virginia M. Kendall** |
| **v.** | § | **(Jury Requested)** |
| | § | |
| **VULCAN MATERIALS COMPANY, n/k/a** | § | |
| **LEGACY VULCAN CORP.,** | § | |
| **Defendant.** | § | |

### R.R. STREET & CO. INC.'S SURREPLY IN RESPONSE TO
### LEGACY VULCAN CORP.'S MOTION TO DISMISS OR, IN THE
### ALTERNATIVE, STAY PLAINTIFFS' AMENDED COMPLAINT

Plaintiff, R.R. Street & Co. Inc. ("Street") files this its Surreply in response to Legacy Vulcan Corp.'s ("Vulcan") Reply in Support of Its Motion to Dismiss, or, In the Alternative, Stay Plaintiffs' May 2, 2008 Amended Complaint ("Reply")(Docket No. 32):

### INTRODUCTION

This Surreply is filed to address arguments raised in Vulcan's Reply that were not raised in Vulcan's Motion to Dismiss. For the reasons set forth below as well as the reasons set forth in Street's Response (Docket No. 29), Vulcan's motion is not well founded and should be denied.

### ARGUMENT

As reflected in Vulcan's Reply, two events occurred after Street filed its Response. The California state court in Los Angeles, California, in which the Vulcan Insurance Litigation is pending, ordered Street and National Union (among other parties) to file answers to Vulcan's third-party claims against them. In addition, the federal district court in Fresno, California, in

which the *Lyon* case is pending, dismissed Street's cross claims against Vulcan. Vulcan makes much of these events and asserts that they provide additional support for Vulcan's Motion. However, neither of these events should change this court's analysis of Vulcan's Motion. Vulcan's Motion is still not supported by the law and should be denied.

A.   **The *Lyon* Case**

In the *Lyon* case, the court dismissed Street's cross claims against Vulcan for two reasons: (1) because the claims were encompassed by a prior filed federal action (this case) and (2) because the court believed (erroneously as explained below) that it had discretion to do so under *Wilton/Brillhart*. While Street has no qualms with the dismissal based on the existence of the instant action, the *Lyon* court's dismissal under *Wilton/Brillhart* was predicated on a misunderstanding of the facts and is directly contrary to governing law.

Under *United National Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir. 2001), "the proper analysis, then, must be whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory judgment claim had been filed." There is no dispute that Street's claims for monetary relief (i.e. its breach of contract claim) could be litigated absent the declaratory judgment claim. Thus the *Lyon* court's ruling is inexplicable.

It appears that the *Lyon* court assumed that Street's claims for breach of contract involved insurance coverage issues ("the *Wilton/Brillhart* doctrine applies, in particular, to insurance cases;" "federal courts 'should decline to assert jurisdiction in insurance coverage cases'"(citation omitted); "comity concerns are 'particularly weighty in insurance cases'" (citation omitted)). *See Lyon* opinion, Exhibit 3 to Vulcan's Reply, at pp. 7-8. The conclusion that Street's claims involved insurance coverage issues is incorrect. Street's claims involve

solely breach of contract claims under Street's agency agreement with Vulcan which arose over the course of forty plus years. Street is not and has never been an insurer and National Union was not a party to the *Lyon* case. Because there were no insurance claims raised by Street, to the extent that the *Lyon* court's decision was based on this false assumption, the decision was made in error.

In addition, it appears that the *Lyon* court concluded that Street's claims were "in essence" claims for declaratory relief because Street would not be able to recover costs of litigation or attorneys' fees without the court's declaration that Vulcan is obligated to indemnify Street. *See Lyon* opinion at pp. 8-9. This is simply not true. Street may be entitled to recover damages, costs of litigation, and attorneys' fees if it is successful on its breach of contract claim separate and apart from any declaratory relief. That the court might have to interpret a contract to award damages for breach of the contract does not turn a breach of contract claim into a claim for declaratory relief. Indeed, all contract claims require a court to interpret the contract at issue. To conclude, as the *Lyon* court apparently did, that a breach of contract claim requires a court to declare the parties rights, and thus a breach of contract claim is "at its essence" a claim for declaratory relief, is illogical and would allow the exception to swallow the rule under *Wilton/Brillhart*. Obviously, this cannot be the law, and the *Lyon* court's ruling was erroneous.

While there are questions as to the correctness of the *Lyon* court's ruling, the net effect, if any, of the ruling is negligible. As a result of the dismissal of Street's cross-claims in *Lyon*, Street's breach of contract and declaratory judgment claims against Vulcan are now pending only in this action, which should make this court's analysis more straight-forward. The issue now is simply whether this Court should retain jurisdiction over Street's claims or should dismiss in favor of a later filed action in California that was initiated by Vulcan solely in an effort to

3

manipulate jurisdiction over claims that Vulcan contractually agreed should be governed by Illinois law. Street's claims are more properly resolved in this Court than in Vulcan's California insurance coverage morass.

Under a proper application of *Wilton/Brillhart*, the central question is whether Street's breach of contract claim could have been brought independently from its declaratory judgment claims. Because the only rational answer to that inquiry is yes, dismissal under *Wilton/Brillhart* is not appropriate.[1]

### B.    Vulcan's Insurance Litigation

Vulcan also makes much of the fact that the Los Angeles court ordered Street to file an answer to Vulcan's subsequently filed third-party action against Street. However, that order is of no moment *vis-a-vis* this Court's analysis of Vulcan's Motion.

It is important to note that the Los Angeles court held a hearing where it discussed this matter. Although this hearing was transcribed, Vulcan declined to provide the Court with a copy of the transcript (a copy of the transcript is attached hereto as Exhibit 1.) A review of the transcript provides a better perspective on what transpired and the current "state of play" in the Vulcan Insurance Litigation.

As the transcript indicates, the Los Angeles state court ordered answers in part because it did not want "to unreasonably delay anybody's opportunity to make jurisdictional challenges or any other substantive or procedural challenges they might wish to make." (*See* Exhibit 1, page 2). This action cannot fairly be read to be a decision by the Los Angeles court on the merits of Vulcan's assertion that Los Angeles is the proper venue for the resolution of Street's indemnity claims. In fact, the court made clear that it has yet to make any such determination.

---

[1] Street will not reiterate its discussion of the *Colorado River* analysis other than to refer the Court to Street's Response. All of the *Colorado River* factors either are neutral or weigh against abstention.

Specifically, the court indicated that by ordering the parties to file answers it wanted to get all procedural and jurisdictional issues pled as soon as possible, but that it was "not going to jump in and do anything before Judge Kendall rules on [Street's and National Union's] motion on July 31st," recognizing that "if the Illinois action's going to be proceeding it may be a viable defense [to proceeding in Los Angeles], [or] it may not be." *Id.* at p. 5. Stated another way later in the hearing, "if there are aspects of the claims asserted in [Vulcan's] cross-complaint against R.R. Street and National Union that should not move forward in this court. [sic] I have to make that determination. But I'm not passing on it now. I'm just trying to get all the players at the table." *Id.* at p. 11.

The court also noted "there are issues and aspects to [Street's] indemnity claims that I have no doubt are different than the contribution claims or other claims that we may have among various insurers." *Id.* at p. 7. In short, the Los Angeles court held that "it's a good idea for people to file their answers and find out what the claims and defenses are. But beyond that, I'm not pushing to do anything. And if it winds up in Illinois it does not bother me either." *Id.* at p. 8.

That the Los Angeles court ordered the filing of answers to Vulcan's third-party action simply has no effect on the matter before this Court.

Also, it is important to appreciate that Vulcan's Reply seeks to obfuscate the real focus of this Court's analysis by comparing the allegations in Vulcan's cross-complaint in the Vulcan Insurance Litigation with Street's allegations in its complaint in this action, arguing that the similarities of the two actions justifies this court's abstention. However that the two pleading contain similar allegations is not surprising when it is understood Vulcan deliberately wrote its cross-complaint to mimic Street's complaint. Comparing these two pleadings proves little other

than Vulcan's gamesmanship. The proper comparison should be between Street's allegations and the allegations asserted by the insurance carriers in the coverage litigation, the claims that initiated the Insurance Litigation years ago. Because the Vulcan Insurance Litigation allegations have no similarities with Street's breach of contract claims against Vulcan, abstention is not proper.

**C.**    ***Zivits v. Greenberg***

Vulcan also makes much of the fact that Street did not discuss the unpublished opinion in *Zivitz v. Greenberg*, 1999 WL 262123 (N.D.Ill.) asserting that *Zivitz* somehow supports Vulcan's Motion. Vulcan is simply wrong.

In *Zivitz*, the Illinois district court cited with approval the holding in *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163 (9th Cir. 1998). In particular, the *Zivitz* court recognized, and applied, the rule articulated in *Snodgrass* that the "appropriate inquiry 'is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case'" (*citing Snodgrass*). This is the same analysis that Street asserted in its Response is the proper analysis for this Court.

Under the *Snodgrass* holding, as cited in *Zivitz* (and in Street's Response), the proper analysis is whether Street's breach of contract claim could exist in the absence of its declaratory judgment claim. Clearly it could. This ends the analysis. Accordingly, Vulcan's motion is not well-founded and should be denied.

**D.**    ***Newell Operating Co. v. UAW***

The Seventh Circuit's opinion last week in *Newell Operating Co. v. UAW*, No. 07-1931, 2008 WL 2600795 (7th Cir. July 2, 2008) (a copy of the case is attached as Exhibit 2), confirms

6

that this Court should exercise whatever discretion it has under *Wilton/Brillhart* to adjudicate the Street-Vulcan dispute in <u>this</u> forum. Although that opinion affirmed a district court's decision to decline to exercise its jurisdiction under the Declaratory Judgment Act, the court of appeals' reasoning strongly supports the exercise of such jurisdiction here.

First, *Newell* affirmed that federal district courts should be "wary of a declaratory-judgment action that is 'aimed solely at wresting the choice of forum from the natural plaintiff.' " *Id.* at *7 (quoting *Hyatt International Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002)). Here, the "natural plaintiff" is Street, who is alleging a breach of contract by Vulcan and seeking damages for that breach. Thus, the Court should be "wary" of Vulcan's later-filed declaratory judgment action in Los Angeles, which is aimed solely at wresting away Street's choice of forum.

Second, *Newell* emphasized the importance of "pragmatic and realistic concerns," particularly including the true locus of the dispute. *Id.* In *Newell*, that locus was Michigan. In the present case, given that Vulcan voluntarily entered into a contract with an Illinois resident company and agreed in a provision of that contract entitled "Jurisdiction and Governing Law" that any disputes arising under the contract would be governed by Illinois law, the true locus of the dispute is Illinois. By contrast, the Street-Vulcan dispute has no connection with Los Angeles, where neither party resides and where the contract at issue was not negotiated, executed, or performed.

### E.    <u>Conclusion</u>

This Court is certainly mindful of the admonition that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Conservation District v. U.S.*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976).

Here, Vulcan voluntarily entered into a contract with an Illinois resident company and agreed in a provision entitled "Jurisdiction and Governing Law," that any disputes arising under the contract would be governed by Illinois law.  When a dispute under the contract arose, Street filed suit in Illinois.  Only after Street filed its claim did Vulcan run off to California to assert similar claims.  To allow Vulcan to manipulate the courts in hopes of injecting a simple breach of contract claim into the midst of a complicated insurance coverage morass that may not be resolved for years to come smacks of gamesmanship and should not be sanctioned by this court. Vulcan's Motion should be denied.

Dated:        July 7, 2008.                    Respectfully submitted,

                                               HICKS, THOMAS & LILIENSTERN, LLP

                                               _____/s/ John B. Thomas_____
                                               John B. Thomas
                                               Texas State Bar No. 09585000
                                               Federal Admission ID No. 10675
                                               Stephen M. Loftin
                                               Texas State Bar No. 12489510
                                               Federal Admission ID No. 12676
                                               700 Louisiana, Suite 2000
                                               Houston, Texas  77002
                                               Tel:  (713) 547-9100
                                               Fax:  (713) 547-9150

                                               **ATTORNEYS FOR PLAINTIFF,
                                               R.R. STREET & CO. INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon all parties, by and through their counsel of record, electronically via the Court's ECF system on this the **7th** day of **July, 2008**.


        **/s/ John B. Thomas**
John B. Thomas

# EXHIBIT 1

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   FOR THE COUNTY OF LOS ANGELES

 3     DEPARTMENT 311              HON. CARL J. WEST, JUDGE

 4

 5     FIRST STATE INSURANCE COMPANY        )
                                            )
 6                          PLAINTIFFS,)
                                            )
 7                  VS.               )NO. BC 354664
                                            )   BC 328022
 8     VULCAN MATERIALS COMPANY ET AL,      )
                                            )
 9                          DEFENDANTS.)
                                            )
10     ─────────────────────────────────────

11           REPORTER'S TRANSCRIPT OF PROCEEDINGS
                          JUNE 25, 2008
12

13     APPEARANCES:

14     FOR PLAINTIFF:        SMITH  ELLISON
                             BY:  MICHAEL W. ELLISON, ESQ.
15                           19800 MACARTHUR BLVD.  STE. 1475
                             IRVINE, CA  92612
16                           949.442.1500
                             MELLISON@SEHLAW.COM
17

18
       SAFETY NAT.           ABBEY, WEITZENBERG, WARREN & EMERY
19     CASUALTY CORP         BY: KYLE W. WHITMAN, ESQ.
                                  MITCHELL B. GREENBERG, ESQ.
20                           707.542.5050

21

22     ACE, CIC, INA, PEIC   BERMAN & AIWASIAN
       US FIRE,              BY:  JOHN C. CONWAY, ESQ
23     WESTCHESTER INS.      725 SO. FIGUEROA STR, STE. 1050
                             LOS ANGELES, CA  90071
24                           213.833.3212
                             JOHN.CONWAY@MCLOLAW.COM
25

26
       NATIONAL UNION:       BOLLINGER, RUBERRY, ET AL
27                           BY: BRYAN G. SCHUMANN, ESQ.
                             312.466.7227
28
```

```
1   FIREMAN'S FUND         CARSON, CONSTANTS & WILSON
                           BY:  JOETTE M. GONZALEZ, ESQ.
2                          500 NO. BRAND BLVD., STE 900
                           GLENDALE, CA  91203
3                          818.547.6560
                           JGONZALEZ@FFIC.COM
4

5
    FEDERAL INS:           CHAMBERLIN KEASTER & BROCKMAN LLP
6                          BY:  NICHOLAS R. ANDREA, ESQ.
                           15821 VENTURA BLVD. STE 445
7                          ENCINO, CA  91436
                           818.385.1256
8                          NANDREA@CKBLLP.COM

9

10  PACIFIC INDEMNITY      CHARLSTON, REVICH & CHAMBERLIN LLP
                           BY:  LAN P. VU, ESQ.
11                              PENELOPE S. PARK, ESQ.
                           1925 CENTURY PARK EAST, STE 1250
12                         LOS ANGELES, CA  90067
                           310.551.7000
13                         LVU@CRCLLP.COM

14

15  CONTINENTAL INS.       COLLIAU ELENIUS MURPHY CARLUCCIO
                           KEENER & MORROW
16                         BY:  MARK F. GAMBOA, ESQ.
                                BRIAN W. WALSH, ESQ.
17                         800 WILSHIRE BLVD., STE 1400
                           LOS ANGELES, CA  90017
18                         213.996.5100
                           MARK.GAMBOA@CNA.COM
19

20
    VULCAN MATERIALS       COVINGTON & BURLING  LLP
21                         BY:  DONALD W. BROWN, ESQ.
                                WENDY L. FENG,
22                         ONE FRONT STREET
                           SAN FRANCISCO, CA  94111
23                         415.591.7063
                           DWBRWON@COV.COM
24                         WFENG@COV.COM

25

26

27

28
```

```
 1   TRANSPORT INS.        DUANE MORRIS
     FAIRMONT              BY:  YVETTE D. ROLAND, ESQ.
 2                              RAY L. WONG, ESQ.
                                CYNDIE M. CHANG, ESQ.
 3                              BETH A. KAHN, ESQ.
                         633 W. 5TH STR, STE 4600
 4                       LOS ANGELES, CA  90071
                         213.689.7416
 5                       YDROLAND@DUANEMORRIS.COM

 6
     STONEWALL INS.        FAINSBERT MASE & SNYDER, LLP
 7                         BY:  MICHAEL H. WEISS, ESQ.
                                RICHARD E. WIRICK, ESQ.
 8                       11835 W. OLYMPIC BLVD. STE 1100
                         LOS ANGELES, CA  90064
 9                       310.473.6400
                         MWEISS@FMS-LAW.COM
10

11   XL INSURANCE CO.      FORAN GLENNON, PALANDECH & PONZI
                           BY:  KEVIN J. PRICE, ESQ.
12                       2424 S.E. BRISTOL STR. STE 300
                         NEWPORT BEACH, CA 92660
13                       949.955.1150
                         KPRIC@FGPP.COM
14

15   ATLANTA INT'L INS.    GILBERT, KELLY, CROWLEY & JENNETT
                           BY:  JEFFREY C. BURT, ESQ.
16                       1055 W. SEVENTH STR, STE 2000
                         LOS ANGELES, CA  90017
17                       213.615.7061
                         JBURT@GILBERTKELLY.COM
18

19   FOR R.R. STREET       ERIC GRANT, ATTORNEY AT LAW
                           BY:  ERIC GRANT, ESQ.
20                       8001 FOLSOM BLVD.  STE 100
                         SACRAMENTO, CA  95826
21                       916.388.0833
                         GRANT@ERIC.COM
22

23   NORTHSTAR REINS       HAIGHT BROWN & BONESTEEL  LLP
                           BY:  MICHAEL J. LEAHY, ESQ.
24                       6080 CENTER DR., STE 800
                         LOS ANGELES, CA  90045
25                       310.215.7100
                         MLEAHY@HBBLAW.COM
26

27

28
```

```
 1   FOR NATIONAL UNION:  MC CURDY & FULLER LLP
     STREET POLICIES ONLY   BY:  VANCI Y. FULLER, ESQ.
 2                          800 SO. BARRANCA AVE, STE 220
                            COVINA, CA  91723
 3                          626.858.8320
                            VANCI.FULLER@MCCURDYLAWYERS.COM
 4

 5   FAIRMONT INS(RANGER)  MORRIS POLICH & PURDY  LLP
                           BY;  BETH A. KAHN, ESQ.
 6                              WALTER J. LIPSMAN, ESQ.
                           1055 W. SEVENTH STR
 7                         TWENTY-FOURTH FLR
                           LOS ANGELES, CA  90017
 8                         213.891.9100
                           BKAHN@MPPLAW.COM
 9

10   ALLIANZ               MURTAUGH MEYER NELSON & TREGLIA
                           BY:  CHARLES R. DIAZ, ESQ.
11                         444 S. FLOWER STR, STE 500
                           LOS ANGELES, CA  90071
12                         213.622.2101
                           CDIAZ@MMNT.COM
13

14   AM RE INSURANCE       MUSICK, PEELER & GARRETT LLP
                           BY:  LAWRENCE A TABB, ESQ.
15                         ONE WILSHIRE BLVD.
                           LOS ANGELES, CA  90017-3321
16                         213.629.7797
                           L.TABB@MPGLAW.COM
17

18   UNITED NATL. INS.     NIELSEN, HALEY & ABBOTT  LLP
                           BY;  AUGUST L. LOHUARU, ESQ.
19                         523 W. SIXTH STR,  STE 635
                           LOS ANGELES, CA  90017
20                         213.239.9009
                           ALOHUARU@NIELSENHALEY.COM
21

22
     WESTPORT/ERC          RIEDL, MC CLOSKEY & WARING  LLP
23                         BY;  JEFFREY N. LABOVITGCH, ESQ.
                                NANCY L. BEATTIE, ESQ.
24                              ANDREW MC CLOSKEY, ESQ.
                           550 W. "C" STR,  STE 500
25                         SAN DIEGO, CA  92101
                           619.237.3095
26                         JLABOVITCH@RMWLLP.COM

27

28
```

```
1   AFILIATED INS.          SEDGWICK, DETERT, MORAN & ARNOLD
                            BY:  KATHERINE E. MAST, ESQ.
2                           810 S. FIGUEROA STR,  19TH FLR
                            LOS ANGELES, CA  90017
3                           213.426.6900
                            KATHERINE.MAST@SDMA.COM
4

5                           SELMAN & BREITMAN  LLP
                            BY:  MICHAEL S. LITTLE, ESQ.
6                           11766 WILSHIRE BLVD. SIXTH FLR.
                            LOS ANGELES, CA  90025
7                           310.445.0800
                            MLITTLE@SELMANBREITMAN.COM
8

9
    AMERICAN HOME,          SINNOTT, DITO, MOURA & PUEBLA
10  NAT. UNION,             BY:  JANE KARREN BAKER, ESQ.
    GRANIE STATE INS.            KARREN BAKER, ESQ.
11                          415.352.6200

12
    NORTHWESTERN NATL.      TRAUB, EGLIN, BIEBERMAN, STRAUS
13                          BY:  MARK FROEHLICH, ESQ.
                            914.347.2600
14

15  FIREMAN'S FUND INS.     WILSON & RYAN
                            BY:  SHERRY L. PANTAGES, ESQ.
16                          818.547.6501

17
    UNIGUARD INDEMNITY      DENNIS ZARAGOZA, ESQ.
18                          560 PINE STR. (94108)
                            POST OFFICE BOX 2190
19                          SAN FRANCISCO, CA  94126
                            415.217.4557
20                          LAWZAR@AOL.COM

21

22
                            RAQUEL A. RODRIGUEZ, CSR NO. 9485
23                          OFFICIAL COURT REPORTER
                            600 SOUTH COMMONWEALTH AVENUE
24                          DEPARTMENT 311 - 14TH FLOOR
                            LOS ANGELES, CALIFORNIA  90005
25                          213.351.8610

26

27

28
```

```
1    CASE NUMBER:              BC 354664
2    CASE NAME:                FIRST STATE INS. VS. VULCAN
3    LOS ANGELES, CALIFORNIA   JUNE 25, 2008
4    DEPARTMENT 311            HON. CARL J. WEST, JUDGE
5    APPEARANCES:              (AS NOTED ON TITLE PAGE.)
6    REPORTER:                 RAQUEL A. RODRIGUEZ, CSR
7    TIME:                     P.M. SESSION
8
9                       -- 0 --
10
11           THE COURT:  GOOD AFTERNOON, LADIES AND
12    GENTLEMEN.  IN THE VULCAN MATERIALS CONSOLIDATED
13    COVERAGE LITIGATION, WE'RE SET TODAY FOR A STATUS
14    CONFERENCE.  THIS WAS SET ON A RATHER SHORT NOTICE.
15    AND I FELT IT WAS NECESSARY TO I GUESS CLARIFY THE
16    STATUS OF WHAT WE'RE DOING HERE.  AND PERHAPS ENLIGHTEN
17    COUNSEL WHO ARE NOT WITH US, WHO MAY BE JOINING US.
18           BUT I WAS SOMEWHAT FRUSTRATED WHEN I
19    STARTED READING THESE PAPERS AND REALIZED R.R. STREET
20    AND NATIONAL UNION HAVE BEEN IN THIS PROCEEDING.  AND
21    HAVE COUNSEL IN THIS PROCEEDING WHO, I BELIEVE, HAVE
22    BEEN PARTICIPATING AND ARE AWARE OF WHAT WAS GOING ON
23    IN THE CASE.
24           THE SENSE THAT THIS CASE IS BEING STAYED
25    INDEFINITELY OR THAT NOTHING'S GOING ON IN THIS CASE
26    KIND OF HIT A NERVE WITH ME.  AND TO THE EXTENT THAT
27    NATIONAL COUNSEL OR COUNSEL INVOLVED IN THE DISTRICT
28    COURT CASES ON BEHALF OF R.R. STREET AND NATIONAL
```

1  UNION, GAINED THAT IMPRESSION FROM LOOKING AT THE

2  ORDERS IN THIS CASE AND APPARENTLY NOT TALKING WITH

3  THEIR CO-COUNSEL IN THIS PROCEEDING, I THOUGHT IT WAS

4  IMPERATIVE WE CLARIFY THAT.

5            AND THAT WE DISABUSE ANYBODY OF ANY

6  SENSE THAT THIS CASE IS JUST GOING TO SIT HERE FOR A

7  WHILE.  I SPOKE WITH JUDGE KENDALL YESTERDAY.  AND I

8  THINK THAT I'VE CLARIFIED ANY MISUNDERSTANDING THAT

9  MIGHT HAVE BEEN, SOMEONE MIGHT HAVE GOT FROM READING

10 THE PAPERS THAT WERE PROVIDED TO ME.

11           AND I THINK EVERYBODY'S ON THE SAME PAGE

12 IN THAT REGARD.  I KNOW HER HEARING IS SET FOR THE END

13 OF JULY.  AND SHE HADN'T REALLY GONE THROUGH ALL THE

14 BRIEFINGS AND WE DIDN'T TALK PARTICULARLY ABOUT THE

15 SUBSTANTIVE NATURE OF IT.

16           I JUST WANTED HER TO KNOW WE HAD THIS

17 CONSOLIDATED COVERAGE LITIGATION PENDING.  AND WE ARE

18 MOVING FORWARD IN SOME RESPECT.  WITH THAT SAID, I'M

19 PREPARED TO ENTER THESE ORDERS.  I'M NOT GOING TO

20 UNREASONABLY DELAY ANYBODY'S OPPORTUNITY TO MAKE

21 JURISDICTIONAL CHALLENGES OR ANY OTHER SUBSTANTIVE OR

22 PROCEDURAL CHALLENGES THEY MIGHT WISH TO MAKE.

23           THE PROCESS IN THIS COURT IS TO TRY TO

24 HAVE FAIRLY FOCUSED BRIEFING ON SIGNIFICANT ISSUES SO

25 THAT IF SOMEBODY DOESN'T LIKE MY RULING YOU HAVE A

26 BETTER CHANCE OF GETTING IT REVIEWED.  I'M NOT FOND OR

27 INCLINED TO PERMIT OMNIBUS OR DEMURRERS OR MOTIONS TO

28 STRIKE THAT THROW IN THE KITCHEN SINK AND PUT US IN SIX

1    MONTH BRIEFING CYCLES WHERE I HAVE TO GRANT LEAVE TO

2    AMEND.

3                IF THERE'S ANY OBJECTION TO THE ORDER I

4    PROPOSE WITH RESPONSIVE PLEADINGS, I'M HAPPY TO TALK

5    ABOUT IT, ENTERTAIN IT.  I DON'T HAVE A CLOSED MIND BUT

6    I HAVE SOME IDEAS OF WHAT I WANT TO DO.

7                ANYBODY WISH TO BE HEARD?

8            MR. GRANT:  ERIC GRANT FOR CROSS DEFENDANT

9    R.R. STREET.  IT'S MY UNDERSTANDING STREET HAS NOT BEEN

10   IN THIS LITIGATION.  CERTAINLY, I REPRESENTED STREET

11   FOR 4 YEARS.  AND LITERALLY HAD NO IDEA OF THE

12   EXISTENCE OF THIS CASE UNTIL JUST A COUPLE MONTHS AGO.

13               SO, I DIDN'T WANT TO CORRECT WHAT I

14   THINK WAS A MISIMPRESSION THAT STREET HAD BEEN

15   PARTICIPATING.  THIS IS CERTAINLY MY PARTICIPATION IN

16   THIS CASE ON BEHALF OF MY CLIENT.

17           THE COURT:  NATIONAL UNION HAS BEEN IN THE

18   CASE.

19           MS. BAKER:  KAREN BAKER.  I REPRESENT NATIONAL

20   UNION AS THE INSURER OF VULCAN.  VULCAN HAS BROUGHT IN

21   NATIONAL AS THE INSURER OF R.R. STREET UNDER DIFFERENT

22   POLICIES.  AND THEY'LL HAVE SEPARATE COUNSEL ALSO ON

23   THE PHONE, BUT NOT YET APPEARED ON THE CASE, THIS CASE.

24           THE COURT:  MR. GRANT, YOU'RE REPRESENTING

25   STREET HERE AS A MATTER OF INTEREST?  STREET HAS NOT

26   BEEN A PARTY TO THIS UNTIL THEY WERE NAMED IN THE THIRD

27   AMENDED COMPLAINT IN VULCAN?

28           MR. GRANT:  THAT'S CORRECT.  NOT UNTIL THEY

1   WERE NAMED.  I DID FILE A STATUS CONFERENCE STATEMENT

2   ON THURSDAY IN COMPLIANCE WITH YOUR HONOR'S ORDER.

3         THE COURT:  I READ THAT.  I APPRECIATE THAT.

4   TO THE EXTENT I MISSPOKE MY SENSE WAS MOST OF THIS

5   LITIGATION DOESN'T GO ON UNDERGROUND.  AND WE'VE HAD

6   LITIGATION IN ALABAMA.  AND NOW LITIGATION IN ILLINOIS.

7   AND NOW WE'VE GOT LITIGATION IN THE EASTERN DISTRICT OF

8   CALIFORNIA.  AND NATIONAL UNION'S BEEN INVOLVED AS AN

9   INSURER FOR VULCAN.  AND STREET WAS INVOLVED IN THE

10  MODESTO LITIGATION.

11        MR. GRANT:  YES, YOUR HONOR.

12        THE COURT:  I HAD A SENSE THAT PEOPLE KNEW

13  WHAT WAS GOING ON AND WOULD BE TALKING TO ONE ANOTHER.

14              IF I'M MISTAKEN THAT'S OKAY, TOO.  I'M

15  NOT HERE TO BE CRITICAL OF ANYBODY.  BUT I'M HERE TO

16  KEEP THINGS MOVING AND DISABUSE ANYBODY OF THE NOTION

17  THAT WE'LL HAVE GRASS GROWING UNDER OUR FEET.

18        MR. GRANT:  WE'RE PREPARED TO RESPOND AS YOU

19  ORDER.  I WOULD SUGGEST, RESPECTFULLY, SINCE YOUR MIND

20  IS NOT CLOSED THAT YOUR HONOR ALLOW THE COURTS IN

21  FRESNO AND ILLINOIS TO CONSIDER AND RESOLVE THEIR

22  PENDING MOTIONS.  I THINK THE LATTER DATE YOU

23  MENTIONED -- JUDGE KENDALL, I THINK SHE'S INDICATED AN

24  INTENT TO RULE ON JULY 31ST.

25        THE COURT:  RIGHT.

26        MR. GRANT:  I THOUGHT IT MADE SENSE THAT, I

27  BELIEVE, THERE'S A PREVIOUSLY SCHEDULED STATUS

28  CONFERENCE FOR JUST A WEEK AFTER THAT ON AUGUST 7TH

1   THAT WE COULD WAIT UNTIL JUDGE KENDALL MADE HER RULING.

2          THE COURT:  I'M NOT GOING TO DO ANYTHING.  I

3   THINK GOING AHEAD AND RAISING.  JUST ON THE CHANCE THE

4   CASE -- YOU WIND UP HERE, FILE YOUR ANSWER, RAISE ALL

5   THE AFFIRMATIVE DEFENSES, A PLEA AND ABATEMENT THERE'S

6   THAT.  THERE'S OTHER ACTION PENDING, WHATEVER YOU WANT.

7          MY PROCESS IS TO TAKE THE AFFIRMATIVE

8   DEFENSES.  AND THE ONES THAT SHOULD BE PUT ON THE TABLE

9   EARLY GET PUT ON THE TABLE EARLY.  IF YOU HAVE A

10  JURISDICTIONAL CHALLENGE SUCH AS PLEA AND ABATEMENT, WE

11  CAN HAVE A STATUS CONFERENCE IN EARLY AUGUST I'LL SET

12  THE BRIEFING SCHEDULE, AND YOU'LL BE ON YOUR WAY.

13          AT LEAST YOU'LL HAVE IT IN THE COURT

14  FILE.  IF THE ILLINOIS ACTION'S GOING TO BE PROCEEDING

15  IT MAY BE A VIABLE DEFENSE, IT MAY NOT BE.  I DON'T

16  KNOW?  I'M NOT PASSING ON THAT.  I WANT EVERYBODY IN

17  AND I DON'T WANT ANYBODY COMPLAINING ABOUT NOT HAVING

18  THE PLEADINGS SETTLED HERE AND ANSWERS ON FILE.  YOU

19  GOT TO BE CAREFUL WHAT YOU WISH FOR IN THIS WORLD

20  SOMETIMES YOU GET IT PRETTY FAST.

21          MR. GRANT:  RIGHT.

22          THE COURT:  ANYTHING ELSE?  ANYBODY ELSE

23  HAVE -- COUNSEL FOR STREET OR NATIONAL UNION ON THE

24  PHONE, DO YOU HAVE ANY COMMENTS ON THAT.

25          MR. SCHUMANN:  BRYAN SCHUMANN FOR NATIONAL

26  UNION, FOR NATIONAL UNION POLICIES ISSUED TO STREET.

27  YOU HEARD IN MS. BAKER WHO REPRESENTS NATIONAL WITH

28  RESPECT TO VULCAN.  WE DIDN'T FILE A STATEMENT BECAUSE

1    WE WERE NOT OF RECORD.  I DON'T WANT TO GIVE THE COURT

2    THE IMPRESSION NOT FILING SOMETHING IT'S BECAUSE WE

3    LACKED INTEREST IN THIS QUESTION; WHETHER STREET'S

4    INDEMNITY CLAIM SHOULD BE LITIGATED IN CALIFORNIA OR

5    ILLINOIS.  I GUESS THE POINT I'D LIKE TO PRESS UPON

6    THE COURT, I APPRECIATE WHAT THE COURT IS SAYING.

7             BUT UP UNTIL NOW I FEEL AS IF YOU'VE

8    BEEN SEEING VULCAN'S CHARACTERIZATION.  THIS IS NOT AN

9    INSURANCE MATTER.  THE STREET INDEMNITY CLAIM WITH

10   NATIONAL UNION WAS ONLY INVOLVED ON A SUBROGATION BASIS

11   STANDING IN STREET'S SHOES IT'S A COMMON-LAW INDEMNITY

12   CLAIM.  AND HAS NOTHING TO DO WITH THE INSURANCE

13   RELATED QUESTIONS PENDING BEFORE THIS COURT.

14            IT'S MUCH BROADER THAN JUST THE MODESTO.

15   IT'S WITH RESPECT TO VULCAN'S FAILURE TO INDEMNIFY

16   STREET IN CONNECTION WITH MULTIPLE ACTIONS.  THERE'S NO

17   NEED FOR THIS COURT, IT SEEMS TO ME, TO TAKE ON THE

18   BURDEN OF HEARING THAT.  I BELIEVE, FRANKLY, IT'S

19   IMPROPER FORUM ON VULCAN'S PART BECAUSE THE ACTION WAS

20   FIRST FILED IN ILLINOIS.

21            YES, IT'S TRUE THERE'S A SIMULTANEOUS

22   INDEMNITY CLAIM IN THE FRESNO FEDERAL COURT.  BUT THAT

23   WAS ONLY TO PRESERVE THE DEFENSE AND NOT WAIVE THE

24   DEFENSE OF STREET'S RIGHT TO INDEMNIFICATION TO VULCAN.

25   IT'S LIMITED TO THE INDEMNIFICATION CLAIMS IN THE

26   FRESNO ACTION.

27            THE BROADER CLAIM IS IN ILLINOIS.  I

28   THINK IT'S IMPORTANT FOR THE COURT TO UNDERSTAND THE

1    PARTIES, VULCAN AND STREET, EXPRESSLY AGREED IN A

2    WRITTEN AGREEMENT PARTICULARLY PROVISION ENTITLED

3    JURISDICTION GOVERNING LAW THAT ILLINOIS LAW WOULD

4    GOVERN.  THEY AGREED TO LITIGATE THOSE CLAIMS IN

5    ILLINOIS.  AND NOW ONLY AFTER VULCAN IS ATTEMPTING TO

6    INTERJECT IN THE CALIFORNIA INSURANCE COVERAGE ACTION

7    CLAIMS THAT I THINK ARE COMPLETELY UNRELATED.

8                I WOULD SUGGEST THAT THE COURT

9    RESPECTFULLY, IF THERE'S GOING TO BE A CONSIDERATION OF

10   LIFTING THE STAY I WOULD LIKE TO SEE VULCAN FILE A

11   MOTION FORMALLY ASKING FOR THAT SO THAT STREET AND

12   NATIONAL UNION ON THE STREET SIDE COULD FILE A

13   RESPONSE.  AND IN THE ALTERNATIVE AT LEAST WAIT UNTIL

14   THE OTHER COURT RULES ON JULY 31ST.          .

15                BECAUSE THIS ACTION IN MY HUMBLE OPINION

16   WILL BE LITIGATEED IN ILLINOIS.  AND IT SHOULD BE.  AND

17   THERE'S NO REASON FOR CALIFORNIA COURT TO TAKE THAT

18   UNRELATED BURDEN.

19                THE COURT:  I'VE TAKEN ON BURDENS EVERY DAY

20   AND THAT DOESN'T BOTHER ME.  YOUR POINT'S WELL-TAKEN.

21   AND THERE ARE ISSUES AND ASPECTS TO YOUR INDEMNITY

22   CLAIM THAT I HAVE NO DOUBT ARE DIFFERENT THAN THE

23   CONTRIBUTION CLAIMS OR OTHER CLAIMS THAT WE MAY HAVE

24   AMONG VARIOUS INSURERS.

25                THE FACT THAT YOUR CLAIM GOES BEYOND THE

26   MODESTO LITIGATION DOESN'T MAKE MUCH DIFFERENCE BECAUSE

27   THE COVERAGE ISSUES WE HAVE HERE GO FAR BEYOND THE

28   MODESTO LITIGATION.

8

```
 1              WE ALSO HAD A BROAD COVERAGE -- BROAD
 2   COVERAGE LITIGATION COVERAGE GOING ON IN I THINK IT WAS
 3   ALABAMA OR SOMEWHERE IN THE SOUTH.  THAT'S NOW BEEN
 4   DISMISSED OR BEEN DEFERRED TO WHAT WE'RE DOING HERE.
 5              THE IRONY THAT I SEE, IN SOME RESPECT
 6   HERE, WHILE YOU SAY IT'S NOT AN INSURANCE MATTER AND
 7   IT'S A MATTER OF CONTRACTUAL INDEMNITY CLAIM, THE
 8   PRESENCE OF NATIONAL UNION ON BOTH SIDES OF THAT
 9   INDEMNITY CLAIM SAYS TO ME THAT THERE ARE SOME
10   INSURANCE ISSUES HERE.
11              AND SO, AT ANY RATE.  I'M NOT GOING TO
12   JUMP IN AND DO ANYTHING BEFORE JUDGE KENDALL RULES ON
13   YOUR MOTION ON JULY 31ST.
14              AND I AM GOING TO LIFT THE STAY.  I
15   THINK IT'S A GOOD IDEA FOR PEOPLE TO FILE THEIR ANSWERS
16   AND FIND OUT WHAT THE CLAIMS AND DEFENSES ARE.  BUT
17   BEYOND THAT, I'M NOT PUSHING TO DO ANYTHING.  AND IF IT
18   WINDS UP IN ILLINOIS IT DOESN'T BOTHER ME EITHER.
19              YES, SIR.
20         MR. BROWN:  DON BROWN FOR LEGACY VULCAN
21   CORPORATION.  WE JUST HAD A PRE-ARGUMENT ON A 409
22   CONVENIENCE MOTION FOR A LAWYER NOT YET ADMITTED IN
23   CALIFORNIA.  I'LL NOT RESPOND TO IT, I THINK, OTHER
24   THAN TO SAY EVEN IF THE CASE GOES FORWARD IN CHICAGO IT
25   WOULD BE ARGUED THIS CASE HERE, AND IF ONE ONE READS
26   OUR COMPLAINT THEY WILL SEE IT IS VERY MUCH ABOUT
27   INSURANCE REGARDING STREET.
28              IF THERE IS INDEMNITY OBLIGATION ON
```

1   WILKIN'S PART IT'S THE RESPONSIBILITY OF VULCAN'S

2   INSURERS, SOME OF WHOM HAVE STREET ON THEIR POLICIES AS

3   ADDITIONAL INSURED.  SO INSURERS ARE NECESSARY PARTIES

4   TO THE INDEMNITY DISPUTE AS WELL.  BUT I DON'T KNOW --

5            THE COURT:  IT'S HARD FOR ME TO PASS ON THAT

6   TODAY.

7            MR. BROWN:  RIGHT.  RIGHT.

8            THE COURT:  NOTHING'S EVER SIMPLE IN THESE

9   CASES.  IT'S A BIG PUZZLE.  EVERYBODY ONLY GIVES ME A

10  PIECE AT A TIME.  AND I'M SUPPOSE TO LOOK AT IT AND

11  UNDERSTAND EVERYTHING.

12           MR. BROWN:  NO --

13           THE COURT:  I KNOW I DON'T.  I'LL LET YOU AND

14  MR. SCHUMANN TALK AMONGST YOURSELVES.  AND YOU'LL HAVE

15  A MONTH OR SO BEFORE YOU COME BACK TO ME.  I DO WANT

16  THE ANSWERS FILED.  I WANT THE ANSWERS FILED.  I'LL

17  ENTER THAT ORDER.  ALL PARTIES SERVED WE'LL GO FROM

18  THERE.

19           MR. BROWN:  WHEN SHOULD THE ANSWERS BE FILED?

20           THE COURT:  WHAT'S A REASONABLE TIME?

21           MR. BROWN:  I HAVE TO FILE ONE, TOO.

22           THE COURT:  I'M TALKING ABOUT ANSWERS TO THE

23  CROSS COMPLAINTS, INSURERS COMPLAINTS, YOUR THIRD

24  AMENDED COMPLAINT.  AND LET EVERYBODY FILE AN ANSWER SO

25  NOBODY WILL THINK WE'RE NOT STAYING THINGS AND NOT

26  DOING ANYTHING.

27           MR. BROWN:  TEN DAYS.  STREET SAID THEY WOULD

28  WANT AT LEAST TEN DAYS.

1      THE COURT:  TEN SEEMS LIKE A MONUMENTAL TASK
2  FOR ME.  I'M MUCH MORE GENEROUS THAN THAT.
3      MR. BROWN:  GOOD.
4      THE COURT:  MR. WONG, YOU DON'T LIKE THE TEN
5  DAYS?
6      MR. WONG:  GOOD AFTERNOON, RAY WONG FOR
7  TRANSPORT.  EXACTLY RIGHT, YOUR HONOR.  WE'RE IN THE
8  MIDST RIGHT NOW OF PREPARING THE OPPOSITION TO THE
9  THRESHOLD ISSUE MOTION.  THAT OPPOSITION IS DUE ON
10  JULY 9.  IF WE COULD HAVE LIKE A WEEK AFTER THAT
11  DEADLINE, THAT WOULD BE HELPFUL TO US.  SO WE DON'T
12  HAVE THE EXTRA BURDEN WITH THAT IN ADDITION TO THE
13  OPPOSITION.
14      THE COURT:  TODAY'S THE 25TH.
15        MR. ELLISON?
16      MR. ELLISON:  I WAS GOING TO SUGGEST, I DIDN'T
17  REALLY SEE A REASON TO SHORTEN IT FROM 30 DAYS UNDER
18  THE STATUE.  GIVEN VACATION SCHEDULES, I'M GONE THE
19  NEXT THREE WEEKS.
20      THE COURT:  DO IT BEFORE YOU GO.  WHAT'S THE
21  MATTER WITH THAT.  YOU'RE HERE TODAY.
22      MR. ELLISON:  I AM HERE TODAY.  I'LL BE
23  WORKING LATE TONIGHT.  THERE COULD BE DIFFERENT
24  DEADLINES FOR DIFFERENT PARTIES.  SOME OF US IT'S NOT A
25  PRESSING ISSUE.  AND OTHERS JUMPED IN AND SAID THIS
26  COURT IS OR ISN'T DOING CERTAIN THINGS.  THERE'S NO
27  REASON YOU COULDN'T IMPOSE DIFFERENT DEADLINES.
28      THE COURT:  30 DAYS JULY 25TH.

1     MR. BROWN:  I THINK SOME FOLKS HERE AND ON THE
2   PHONE ARE ASKING YOU TO HOLD BACK UNTIL JUDGE KENDALL
3   RULES IN ORDER TO MAKE SOME IMPLICATION OR SUGGESTION
4   THAT YOU THINK IF THAT CASE GOES FORWARD WITH STREET
5   AND NATIONAL UNION THIS ONE WON'T.
6     I SAID A MOMENT AGO MY POSITION IS IF
7   THAT CASE GOES FORWARD THAT HAS NO EFFECT ON WHETHER
8   THIS CASE GOES FORWARD OR NOT.  AND I JUST WANT TO ASK
9   YOUR HONOR IF YOU AGREE WITH ME THAT THAT'S SOMETHING
10  TO BE DECIDED ON A FORMAL MOTION RATHER THAN YOU'RE
11  SUGGESTING BY WAITING AT ALL THAT IT'S GOING TO BE ONE
12  OR THE OTHER.
13    THE COURT:  NO, I'M NOT SUGGESTING THAT.  WE
14  HAVEN'T FULLY PUT OUR ARMS AROUND WHAT WE HAD HERE.
15    MR. BROWN:  CORRECT.
16    THE COURT:  I TRIED TO GET A CONSOLIDATED
17  INSURANCE COMPLAINT; THAT DIDN'T WORK VERY WELL.  YOU
18  TRIED TO GET -- MY GOAL IS TO GET THE PLEADINGS SETTLED
19  SO WE KNOW WHAT THE CLAIMS ARE.  AND WE WILL MOVE
20  FORWARD ON WHATEVER WE HAVE.  WHATEVER WE SHOULD
21  APPROPRIATELY MOVE FORWARD ON.
22    IF THERE ARE ASPECTS OF THE CLAIMS
23  ASSERTED IN YOUR CROSS-COMPLAINT AGAINST R.R. STREET
24  AND NATIONAL UNION THAT SHOULD NOT MOVE FORWARD IN THIS
25  COURT.  I HAVE TO MAKE THAT DETERMINATION.
26    BUT I'M NOT PASSING ON IT NOW.  I'M JUST
27  TRYING TO GET ALL THE PLAYERS AT THE TABLE.  GET THEIR
28  INFORMATIONS IN WRITING SO THAT IT ISN'T A MOVING

1    TARGET AND WE'LL PICK OUT THE ISSUES WE HAVE TO TAKE

2    UP.  WITH MR. SCHUMANN OR MR. GRANT IF THEY WANT TO

3    FILE A MOTION IN THIS CASE BASED ON OR IF YOU WANT TO

4    BRIEF AN AFFIRMATIVE DEFENSE FOR ABATEMENT OR FOR A

5    STAY OR FOR ANYTHING ELSE, THEY'LL GET THE OPPORTUNITY

6    TO DO IT.  YOU'LL GET YOUR OPPORTUNITY TO RESPOND TO

7    IT.

8              MR. BROWN:  THANK YOU VERY MUCH, YOUR HONOR.

9              MR. GRANT:  A PROCEDURAL POINT ABOUT THAT

10   MOTION.  THE STATUTE HAS A QUIRKY REQUIREMENT THAT THE

11   HEARING BE SET FOR A DATE NOT MORE THAN 30 DAYS AFTER

12   FILING A NOTICE.

13             THE COURT:  WHAT STATUTE AND WHAT MOTION?  I'M

14   NOT HAVING YOU FILE ANY MOTIONS.  I'M HAVING YOU FILE

15   AN ANSWER.  AND YOU RAISE AS AFFIRMATIVE DEFENSES ALL

16   MATTERS THAT COULD OTHERWISE BE RAISED BY MOTION TO

17   STRIKE, DEMURRER, PLEA AND ABATEMENT.  WHAT MOTION ARE

18   YOU TALKING ABOUT?

19             MR. GRANT:  THIS IS TO STAY OR DISMISS ON THE

20   GROUND OF INCONVENIENT FORUM.  C.C.P. ^ 418.10.  THE

21   PARTICULAR SUBDIVISION IS SUBDIVISION B TO WHICH I'M

22   REFERRING.

23             MY POINT WAS, YOUR HONOR, THE COURT OF

24   APPEAL HAS SAID THAT REQUIREMENT OF THE HEARING DATE IS

25   WAIVABLE.  I WOULD CERTAINLY WAIVE IT.  I WOULD HOPE

26   THAT --

27             THE COURT:  I'LL PUT IN THE ORDER.  IN

28   ADDITION TO AFFIRMATIVE DEFENSES THAT COULD BE RAISED

1   BY DEMURRER OR MOTION TO STRIKE OR BY A MOTION TO STAY

2   OR DISMISS UNDER ^ 481.10. I'LL COVER YOU. AND WE'LL

3   PRESERVE YOUR RIGHTS. THERE'S NO INTENTION HERE IN ANY

4   WAY TO JEOPARDIZE OR PREVENT ANYBODY FROM ASSERTING THE

5   RIGHT. IT'S TRYING TO GET IT DONE IN AN ORDERLY

6   FASHION.

7           MR. GRANT: THANK YOU, YOUR HONOR.

8           THE COURT: I'LL ADD THAT TO MY ORDER.

9   ANYTHING ELSE?

10          MR. WONG: YOUR HONOR, IF I MAY?

11              AMONG THE COMPLAINTS AND CROSS

12  COMPLAINTS THAT HAVE BEEN FILED IS FIRST STATE

13  INTER-INSURANCE COMPLAINT. AND THE COURT JUST SET

14  REALLY BY AGREEMENT WITH THE PARTIES A DEADLINE DATE TO

15  FILE ANSWERS WITH AFFIRMATIVE DEFENSES BY JULY 25TH.

16  I'M LOOKING AT THE COURT'S AGENDA WITH REGARD TO

17  INSURER CONTRIBUTION COMPLAINTS OR CROSS COMPLAINTS IN

18  THAT THEY WILL BE STAYED.

19              I JUST PAST A NOTE TO MR. ELLISON AS TO

20  WHETHER OR NOT HARTFORD -- EXCUSE ME WHETHER

21  FIRST STATE REALLY WANTS AN ANSWER TO THE

22  INTER-INSURANCE COMPLAINT. AND I DON'T SPEAK CERTAINLY

23  FOR MR. ELLISON, BUT MY UNDERSTANDING THAT'S NOT

24  NECESSARY AT THIS POINT.

25              I'M WONDERING IF WE MIGHT BE ABLE TO

26  INCLUDE DEFERRING ANY CROSS COMPLAINTS FOR CONTRIBUTION

27  AS WELL AS AN ANSWER TO FIRST STATES INTER-INSURANCE

28  COMPLAINT FOR THE TIME BEING?

1       THE COURT:  MR. ELLISON.

2       MR. ELLISON:  YES, WE HAVE NO OBJECTION TO

3 THAT AT ALL, YOUR HONOR.  AGAIN, IF WE'LL STAY ALL

4 THOSE COMPLAINTS THERE'S NO PROBLEM DEFERRING THE

5 ANSWERS WITH RESPECT TO THAT POINT.

6       THE COURT:  THAT WAS A FIRST STATE -- THERE

7 WAS --

8       MR. ELLISON:  NUTMEG.

9       THE COURT:  YES, NUTMEG.  THANK YOU.

10        THAT IS A CROSS-COMPLAINT, RIGHT.

11       MR. ELLISON:  IT'S ACTUALLY A COMPLAINT, YOUR

12 HONOR.  AGAIN, WE WERE THE ORIGINAL PLAINTIFF AND THE

13 WAY THOSE DIFFERENT PLEADINGS WORKED OUT OUR COMPLAINTS

14 BEEN SPLIT INTO MULTIPLE PIECES.  AND NOW ONE PIECE IS

15 CALLED THE INTER-INSURANCE COMPLAINT.

16       THE COURT:  YOU INSISTED YOU COULDN'T PUT IT

17 ALL IN ONE CONSOLIDATED COMPLAINT.  AND I SAID, FINE,

18 WHATEVER YOU NEED.  THAT WAS AN EXCEPTION TO THE

19 INTER-INSURANCE CLAIM.  I DON'T WANT ALL THESE CLAIMS

20 GOING NOW.  THERE MAY COME A TIME WE SHOULD BE DOING

21 THAT, BUT THERE'S A LOT OF WORK THAT NEEDS TO BE DONE

22 BEFORE THAT PROBLEM.

23       MR. ELLISON:  IN HOPES IF OTHERS WANTED TO

24 ASSERT CLAIMS IT WOULD PROVIDE A EASY MECHANISM TO DO

25 IT.  AND THEN DEFERRING CAME UP.  OURS WERE FILED WITH

26 THE ORIGINAL COMPLAINT.  WE DIDN'T WANT TO WAIVE.

27       THE COURT:  THERE'S A "ME TOO" MENTALITY.

28 SOMEBODY WANTS TO DO IT IF EVERYBODY ELSE GETS TO DO

1   IT.

2                I'LL GET AN ORDER OUT THAT WILL CLARIFY

3   IT.  WE'LL HAVE ANSWERS TO THE TRAVELER'S AMENDED

4   COMPLAINT -- TO THE VULCAN THIRD AMENDED

5   CROSS-COMPLAINT.

6           MR. BROWN:  IT'S ACTUALLY ORIGINAL

7   CROSS-COMPLAINT.

8           THE COURT:  ORIGINAL CROSS-COMPLAINT AND WE'LL

9   DEFER THE ANSWER TO THE FIRST STATE SLASH NUTMEG

10  COMPLAINT.

11          MR. WONG:  AND, YOUR HONOR, I THINK THE COURT

12  MAYBE JUST MISSPOKE AND SAID TRAVELERS, IT'S TRANSPORT.

13          THE COURT:  TRANSPORT.  IT STARTS WITH T.  BE

14  THANKFUL I'M PAYING ATTENTION TO SOMETHING.

15          MR. ELLISON:  THERE'S THREE PLEADINGS

16  RESPONSES AND ONE STAYED.  IT'S THE VULCAN

17  CROSS-COMPLAINT.  IT'S THE TRANSPORT COMPLAINT.  AND

18  THEN THE CERTAIN INSURERS COMPLAINT AGAINST VULCAN.

19  COMPLAINT SLASH CROSS-COMPLAINT AMENDED, I THINK IT'S

20  CALLED.  AND THEN THE DEFERRED RESPONSES WOULD BE ON

21  THE FIRST STATE NUTMEG INTER-INSURER.  AND ONE --

22          THE COURT:  ALL RIGHT.  TRANSPORTS AMENDED

23  COMPLAINT.

24                VULCAN'S THIRD AMENDED CROSS-COMPLAINT,

25  I CALLED THAT.  IT'S NOT A CROSS-COMPLAINT?

26          MR. BROWN:  IT IS.  BUT IT'S THE ORIGINAL

27  CROSS-COMPLAINT.  WE HAD NOT FILED ANY PLEADING BEFORE

28  THAT APRIL.

1      THE COURT:  CERTAIN INSURERS CONSOLIDATED
2  CROSS-COMPLAINT.
3      MR. ELLISON:  YES, SIR.
4      THE COURT:  THESE WE'RE GETTING ANSWERS TO.
5          AND THE FIRST STATE INSURANCE NUTMEG
6  COMPANY WE'LL DEFER.
7      MR. ELLISON:  YES.
8      THE COURT:  ALL RIGHT.
9          ON SERVICE ISSUES WHEN I POSTED THIS
10  LATEST MINUTE ORDER AND THE MESSAGE BOARD POSTING, I
11  CHECKED AND I NOTICED SOME PEOPLE, IT DIDN'T LOOK LIKE
12  I HAD EVERYBODY THAT HAD FILED STATEMENTS.  AND I'M
13  PROBABLY LOOKING AT R.R. STREET AND NATIONAL UNION'S
14  OUTSIDE COUNSEL IN THE UNRELATED PROCEEDINGS.
15          AT THE VERY LEAST YOU SHOULD REGISTER
16  FOR SERVICE IN THIS CASE.  SO ALL SERVICES ELECTRICALLY
17  THROUGH LEXIS NEXIS.  THERE IS OFTEN A LOT OF ACTION
18  THAT GOES ON ON THE MESSAGE BOARD THAT LATER TURNS INTO
19  A MINUTE ORDER.  BUT IF YOU WAIT FOR THE MINUTE ORDER
20  YOU'RE TWO OR THREE DAYS LATE.
21      MR. GRANT:  I HAVE REGISTERED, YOUR HONOR.
22      THE COURT:  OKAY.
23      MR. SCHUMANN:  BRYAN SCHUMANN ON THAT POINT.
24  WOULD IT BE POSSIBLE TO ADDRESS APPEARANCE AND PRO HOC
25  APPEARANCES TODAY?
26      THE COURT:  YOU HAVE TO FILE AN APPLICATION
27  HERE, A $50 CHECK AND A VOUCHER SAYING SOMEBODY AROUND
28  TOWN SAYING THEY'LL VOUCH FOR YOU.  I HANDLE ALL THAT

1   THROUGH AN EX PARTE.  YOU SUBMIT YOUR APPLICATIONS AND

2   IF IT HAS ALL THE T'S CROSSED AND I'S DOTTED, I'LL

3   ISSUE THE PRO HOC VICE ORDER WITHOUT A LOT OF HEARING

4   AND FANFARE.  GET IT IN.

5           MR. SCHUMANN:  THANK YOU.

6           THE COURT:  THE ORDERS, YOU SHOULD SERVE IT ON

7   LEXIS NEXIS SO EVERYBODY GETS IT.  IF SOMEBODY WANTS TO

8   OBJECT TO IT THEY CAN.  AND THEN I'LL SERVE THE ORDER

9   ON LEXIS NEXIS AS SOON AS IT'S ORDERED.

10          MR. BROWN:  HIS LOCAL COUNSEL WILL TELL HIM HE

11  NEEDS TO SERVE THE STATE BAR AS WELL.

12          THE COURT:  THERE ARE RULES THAT GO ALONG WITH

13  IT.  I'M NOT TOTALLY FAMILIAR WITH IT.

14          MR. SCHUMANN:  THANK YOU, WE'LL FIGURE IT OUT.

15          THE COURT:  A CHECK AND A DECLARATION.  AND IF

16  IT'S ALL IN ORDER, AND YOU HAVEN'T BEEN ADMITTED TOO

17  MANY TIMES YOU CAN SAY YOU'RE NOT IN TROUBLE.  THEN

18  IT'S OKAY.

19              ON THE FURTHER PROCEEDINGS WE'LL GO

20  FORWARD ON AUGUST 7TH.  WE'LL HAVE A STATUS CONFERENCE

21  ON THAT DATE.  I DID SET A STATUS CONFERENCE AS WELL AS

22  HEARING FOR THRESHOLD ISSUE FOR AUGUST 7TH, IS THAT

23  RIGHT?

24          MR. BROWN:  YOU HADN'T ACTUALLY.  IT WAS STILL

25  SET FOR THE 25TH OF JULY.  WE TAKE YOUR AGENDA TO BE

26  SUGGESTING YOU'LL BE MOVING IT.  MAYBE I MISSED

27  SOMETHING.

28          THE COURT:  I THOUGHT IT GOT MOVED TO

1    AUGUST 7TH AT SOMEBODY'S REQUEST?

2          MR. BROWN:  OKAY.  THAT WAS PROBABLY ON THE

3    MESSAGE BOARD.

4          MR. WONG:  IN CONNECTION WITH TRANSPORTS

5    STATEMENT THAT WE FILED WE HAD MADE THAT REQUEST.  SO

6    PERHAPS THE COURT WAS REACTING TO THAT.

7          THE COURT:  OKAY.  THE STATEMENT YOU JUST

8    RECENTLY FILED?

9          MR. WONG:  YES, YOUR HONOR.

10         THE COURT:  WE NEED TO CLEAN THAT UP THEN.

11            MR. BROWN, YOU THOUGHT IT WAS ORIGINALLY

12   SET ON WHAT DATE?

13         MR. BROWN:  JULY 25.  I THINK WHATEVER THE

14   ORIGINAL DATE WAS FOR THE HEARING ON THE THRESHOLD

15   ISSUE.

16         MR. ELLISON:  JULY 29.  I THINK THAT'S IT.

17         THE COURT:  IT MAKES SENSE TO CHANGE THAT DATE

18   ANYWAY BECAUSE WE'D RATHER HAVE EVERYBODY COME IN AFTER

19   JUDGE KENDALL'S MADE A DETERMINATION.  WE'LL CONTINUE

20   THE JULY 29TH DATE TO -- JULY 29TH DATE TO AUGUST 7TH

21   AT 1:30.  ANYBODY HAVE AN ISSUE WITH THAT?  DOES THAT

22   CAUSE A PROBLEM FOR ANYBODY?

23         MR. BROWN:  NO.  I THINK THE AUGUST 7TH

24   HEARING WE HAD WAS SCHEDULED IN THE MORNING.  BUT I MAY

25   BE WRONG FOR A THIRD TIME.

26         THE CLERK:  1:30.  WE DID THAT BY MEANS OF

27   A 5-2 MINUTE ORDER, SIR.

28         THE COURT:  WE HAD ALREADY -- WE ISSUED A

1    MINUTE ORDER CHANGING THE 29TH DATE TO THE 7TH.

2           THE CLERK:  AT 1:30.  THAT'S A 5-2 MINUTE

3    ORDER.

4           THE COURT:  SO SOMEBODY REQUESTED THAT.

5           MR. ELLISON:  THAT WAS THE HEARING ON THE

6    THRESHOLD HEARING MOTIONS WAS CHANGED.  THERE WAS A

7    TECHNICALITY.  THERE WAS A REQUEST TO CHANGE THE MOTION

8    HEARING.

9           THE COURT:  THE STATUS CONFERENCE.

10          MR. ELLISON:  NO, NOT THE STATUS CONFERENCE.

11          THE COURT:  YOU DON'T NEED TO COME TWICE.

12   WE'LL DO EVERYTHING ON AUGUST 7TH.  TO THE EXTENT IT'S

13   CONFUSING IN OUR ORDERS, WE'LL TRY TO CLARIFY IT AT

14   THIS TIME.

15          THE COURT:  ANYTHING ELSE?

16          MR. WONG:  IN LIGHT OF THE RECENT DISCUSSION,

17   I GOT LOST IN TERMS OF THE TIME NOW OF THE HEARING ON

18   AUGUST 7TH?

19          THE COURT:  1:30.  THAT'S RIGHT?

20          THE CLERK:  YES, YOUR HONOR.

21          THE COURT:  1:30.  AUGUST 7TH.  IT'S A

22   THURSDAY.  PLANES ARE WORKING YOU CAN FLY DOWN IN THE

23   MORNING.  THANK YOU ALL FOR COMING IN ON SHORT NOTICE.

24   I HOPE IT HELPED CLARIFY SOME OF THE ISSUES.

25          THANK YOU.

26

27          (PROCEEDINGS CONCLUDED.)

28

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT 311          HON. CARL J. WEST, JUDGE

4

5    FIRST STATE INSURANCE COMPANY    )
                                      )
6                        PLAINTIFFS, )
                                      )
7              VS.                     )NO. BC 354664
                                      )
8    VULCAN MATERIALS COMPANY ET AL,  )
                                      )
9                        DEFENDANTS. )
     _____)

10

11

12

13          I, RAQUEL A. RODRIGUEZ, OFFICIAL COURT

14   REPORTER OF THE SUPERIOR COURT OF THE STATE OF

15   CALIFORNIA, COUNTY OF LOS ANGELES, DO HEREBY CERTIFY

16   THAT THE FOREGOING PAGES, 1 THROUGH 19, COMPRISE A TRUE

17   AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD ON

18   JUNE 25, 2008 IN THE ABOVE-ENTITLED MATTER.

19

20          DATED THIS _____ DAY OF _____,_____.

21

22

23

24   _____, CSR NO. 9485
                                 OFFICIAL COURT REPORTER

25

26

27

28

# EXHIBIT 2

## Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.)))**

Page 1

Newell Operating Co. v. International Union of United Auto., Aerospace, and Agr. Implement Workers of America
C.A.7 (Ill.),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Seventh Circuit.
NEWELL OPERATING CO., et al., Plaintiffs-Appellants,
v.
INTERNATIONAL UNION OF UNITED AUTO-MOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, U.A.W., and Marcella Cogswell, et al., Defendants-Appellees.
**No. 07-1931.**

Argued Feb. 11, 2008.
Decided July 2, 2008.

Appeal from the United States District Court for the Northern District of Illinois, Western Division. No. 06 C 50010-Philip G. Reinhard, Judge.

Gregory R. James, Jr., Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Chicago, IL, Jack F. Fuchs, Thompson Hine, Cincinnati, OH, Plaintiffs-Appellants.
Stanley Eisenstein, Katz, Friedman, Eagle, Eisenstein & Johnson, Chicago, IL, Michael L. Fayette, Pinsky, Smith, Fayette & Kennedy, Grand Rapids, MI, for Defendants-Appellees.

Before BAUER, KANNE, and WILLIAMS, Circuit Judges.

KANNE, Circuit Judge.
*1 Newell Operating Co. ("Newell") amended its employee welfare benefits plan to allow administrators to charge retirees uniform monthly premiums. This simple corporate action produced complex litigation when two federal lawsuits over the validity of Newell's amendments were filed in quick succession. First, Newell, its subsidiary, Newell Window Furnishings Company, Kirsch Di-

vision ("Newell Window"), and the Newell Rubbermaid Health and Welfare Program 506 ("the Plan") filed this suit in the Northern District of Illinois, seeking declaratory relief against over 500 retirees of a Michigan manufacturing plant, as well as their labor union, the International Union of United Automobile, Aerospace, and Agricultural Implement Workers of America, U.A.W., AFL-CIO, and its local chapter, the U.A.W. Local 797 (collectively, "UAW"). The complaint requested a judgment declaring that the amendments to the Plan did not violate the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* or the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq. See*28 U.S.C. § 2201. Second, while the declaratory-judgment suit was pending in Illinois, the UAW and retirees brought their own lawsuit in the Western District of Michigan, challenging the new premiums under ERISA and the LMRA. The Northern District of Illinois yielded to the action filed in the Western District of Michigan by declining to exercise its jurisdiction and dismissing the declaratory-judgment suit. We believe that the decision to dismiss the case was sound, and we affirm.

### I. HISTORY

Newell Window's corporate predecessor, the Kirsch Company ("Kirsch"), manufactured drapery hardware and custom window coverings at several plants in Sturgis, Michigan. The UAW-which represented all production, tool-room, and maintenance employees who performed work at these plants-entered into collective-bargaining agreements with Kirsch that obligated Kirsch to provide certain health benefits for life to its employees and their families. In 1997, Newell Window acquired Kirsch, and, pursuant to the sale, the employees of Kirsch became employees of Newell Window and members of the Plan, an employee welfare benefits plan sponsored by Newell and governed by ERISA. *See*29 U.S.C. § 1002(1). In October 2000, Newell

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.)))**

Page 2

decided to close the Sturgis plants and entered into a shut-down agreement with the UAW, which agreed to waive all claims it had, or would ever have, against Newell.

In November 2005, Newell sent a letter to the retirees of Kirsch and Newell Window, notifying them that the Newell Rubbermaid Inc. Benefit Plans Administrative Committee ("the Committee") had decided to consolidate all of Newell's retiree health programs, including the Plan. The consolidation would allow a new insurance carrier, CIGNA Healthcare, to assume the daily administration of all of Newell's programs beginning on January 1, 2006. Around the time Newell mailed the notice to retirees, Newell also amended the Plan to allow the Committee to charge a uniform monthly premium once CIGNA took over. The Committee set the premium at $40 per month. Prior to 2006, some retirees had never been charged a monthly premium, and many of the retirees that had paid a premium paid less than $40 per month.

*2 Anticipating backlash for the new charges, Newell, the Plan, and Newell Window filed this action against the UAW and the retirees in the Northern District of Illinois on January 12, 2006, requesting a declaratory judgment "that the transfer of the administration of the Plan" and "the corresponding changes in the terms and conditions of the benefits provided under the Plan" did not violate either ERISA or the LMRA. Of the 474 retirees named in the original complaint as individual defendants, only one resided in Illinois-in Charleston, which is situated in the Central District of Illinois. On February 15, 2006, the UAW and four retirees filed their own lawsuit in the Western District of Michigan, claiming that Newell, Newell Window, and the Plan had breached the collective-bargaining agreements and violated ERISA and the LMRA by charging the new $40 premium. The retirees filed their complaint both individually and as purported representatives of a class. A few weeks after filing the complaint in Michigan, the UAW filed a motion to dismiss the Illinois case for lack of subject-mat-

ter jurisdiction, *see*Fed.R.Civ.P. 12(b)(1), or in the alternative, to transfer venue to the Western District of Michigan, *see*28 U.S.C. § 1404(a).

In response to the UAW's motion, Newell, Newell Window, and the Plan amended their complaint in March 2006 to add the Committee as a plaintiff. In addition to pleading the same allegations as the initial complaint, the amended complaint added a new count on behalf of the Committee, which sought a declaration that it did not violate its fiduciary duties under ERISA § 502(a)(3) by charging the premiums. *See*29 U.S.C. § 1132(a)(3)(B)(ii). The amended complaint also requested an injunction that would allow the Committee to condition the retirees' participation in the Plan on their payment of the premiums and would preclude any retiree who fails to pay from participating in the Plan.

After the appellants amended their complaint in the Northern District of Illinois, the UAW and individual retirees filed new motions to either dismiss the case, or transfer it to the Western District of Michigan. Newell, Newell Window, the Plan, and the Committee then moved for partial summary judgment against the UAW, and for summary judgment against the individual defendants. The district court for the Northern District of Illinois took all of the motions under advisement and allowed the parties to conduct discovery.

In March 2007, the district court for the Northern District of Illinois granted the motions by the UAW and the individual defendants to dismiss the case for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The district court recognized that ERISA § 502(a)(3) provides exclusive jurisdiction over an action by a plan fiduciary "to obtain other appropriate equitable relief" in order to enforce the terms of ERISA or an ERISA plan. *See*29 U.S.C. § 1132(a)(3)(B)(ii). But the court reasoned that the Committee's fiduciary action did not provide a basis for subject-matter jurisdiction in this case because the suit was not one to enforce the terms of ERISA or the Plan: "Plaintiffs amended the plan to require premium payments by retirees.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs do not need any court action to enforce the provisions of the plan."The district court relegated its analysis of jurisdiction under LMRA § 301, 29 U.S.C. § 185, to a footnote that stated, "[t]he court notes that jurisdiction for a declaratory judgment action that plaintiffs' actions did not violate a collective bargaining agreement appears to be proper under Section 301 of the LMRA ... but the court need not reach this question either."

**\*3** The district court reasoned, "[i]f the plaintiffs are to have their case heard here, it must be under the Declaratory Judgment Act," and noted that "[e]ven where subject matter jurisdiction may be exercised over a declaratory judgment action, the court has discretion to decline to hear it."The district court exercised its discretion and declined to hear the case because, in its view, the retirees were the natural plaintiffs of the underlying ERISA and LMRA disputes and "the vast majority of the retirees, and the site of the CBAs negotiations [were] all Michigan."The court then denied the motions for transfer and for partial summary judgment as moot.

After this case was docketed for appeal, the district court for the Western District of Michigan ruled on a motion by Newell, Newell Window, and the Plan to dismiss the Michigan action or to transfer that case to the Northern District of Illinois. The Michigan court issued an opinion in July 2007, which denied the motion to transfer and the motion to dismiss with respect to the individual defendants. However, the Michigan court granted the motion to dismiss with respect to the UAW because the court believed that the UAW had waived its claims against Newell by acceding to the shut-down agreement in October 2000. After oral argument in this case, the individual retirees moved to certify their plaintiff class in the Western District of Michigan. Class certification in the Michigan case is still pending.

## II. ANALYSIS

Newell, Newell Window, the Plan, and the Com-

mittee claim that the district court for the Northern District of Illinois should not have exercised its discretion to decline jurisdiction under the Declaratory Judgment Act, *see*28 U.S.C. § 2201, because ERISA § 502(a)(3) provides subject-matter jurisdiction over their claims for declaratory and injunctive relief, *see*29 U.S.C. § 1132(a)(3). The appellants also contend that the LMRA provides subject-matter jurisdiction over their claims. *See*29 U.S.C. § 185. The appellants argue, in the alternative, that if jurisdiction was proper only under the Declaratory Judgment Act, the district court abused its discretion by dismissing the case.

We review *de novo* the district court's order dismissing the case for lack of subject-matter jurisdiction under Rule 12(b)(1).*Peters v. Vill. of Clifton*, 498 F.3d 727, 729-30 (7th Cir.2007). In engaging in our review, "[w]e must accept all facts stated in the complaint as true and must draw all reasonable inferences in the light most favorable to the plaintiff."*Id.* at 730."Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute."*Teamsters Nat. Auto. Transporters Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 327 (7th Cir.2003)."The Declaratory Judgment Act empowers federal courts to give declaratory judgments in 'a case of actual controversy within its jurisdiction,' but it is not an independent grant of jurisdiction, rather jurisdiction must be predicated on some other statute."*Rueth v. EPA*, 13 F.3d 227, 231 (7th Cir.1993) (quoting 28 U.S.C. § 2201(a)). We will therefore analyze whether the district court had jurisdiction under the predicate statutes cited in the complaint: ERISA and the LMRA.

### A. Jurisdiction under ERISA

**\*4** The appellants argue that the district court erred by stating that it could only have jurisdiction under the Declaratory Judgment Act because jurisdiction over the case also exists under ERISA. The appellants point to ERISA § 502(a)(3), which provides for jurisdiction over equitable claims by the fidu-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.)))**

Page 4

ciary of an ERISA plan for a declaration "to enforce any provisions of this subchapter or the terms of the plan."*See* 29 U.S.C. § 1132(a)(3)(B)(ii); *Spitz v. Tepfer,* 171 F.3d 443, 449-50 (7th Cir.1999); *Winstead v. J.C. Penney Co.,* 933 F.2d 576, 580 (7th Cir.1991). The appellants contend that the Committee is the fiduciary of the Plan, and as such, the court has jurisdiction over the Committee's suit for a declaration that its implementation of the Plan amendments to charge premiums to retirees does not violate its ERISA fiduciary duties.

The Committee is the named fiduciary of the Plan, and all of the parties apparently concede that the Committee is the only party to this suit that is a fiduciary of the Plan. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251 (1993) ("The statute provides that not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, is an ERISA 'fiduciary.' " (internal citations omitted)). The UAW and the retirees argue that because the Committee was not a party to this litigation until the filing of the amended complaint, none of the original plaintiffs in this case "were authorized to bring their purported ERISA action." As such, the UAW and retirees assert that the Michigan action was the first-filed suit with proper jurisdiction, and by advancing this argument, they insinuate that we need not reach the question of whether the district court had jurisdiction under ERISA § 502(a)(3) because this jurisdiction did not arise until after the UAW and retirees commenced the suit in Michigan.

This circuit has never strictly adhered to the "first-to-file" rule in deciding whether to retain jurisdiction or dismiss a declaratory-judgment action. *Trippe Mfg. Co. v. Am. Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir.1995); *Tempco Elec. Heater Corp. v. Omega Eng'g,* 819 F.2d 746, 750 (7th Cir.1987). Therefore, the late addition of the Committee as a plaintiff does not foreclose the possibility that the district court had fiduciary jurisdiction under ERISA. And, in any case, it is very

likely that the addition of the Committee as a plaintiff in the amended complaint "related back" to the time of the original complaint's filing, making the Illinois action first in time. *See* Fed.R.Civ.P. 15(c); *Plubell v. Merck & Co.,* 434 F.3d 1070, 1072 (8th Cir.2006) (" 'The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.' " (quoting Fed.R.Civ.P. 15(c)1966 advisory committee's note)); *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 164 n. 3 (2d Cir.2001); 6A Wright *et al., Federal Practice and Procedure* § 1501 (3d ed.1998).

*5 The appellants correctly note that the fiduciary of an ERISA plan may sue for declaratory judgments, injunctions, and restitution under ERISA § 502(a)(3)'s provision for "appropriate equitable relief." *See* 29 U.S.C. § 1132(a)(3)(B); *Spitz,* 171 F.3d at 449-50 (declarations); *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 615 (7th Cir.1995) (restitution and injunctions). But it is clear from the language of the statute that the federal courts do not have jurisdiction over every suit for equitable relief by an ERISA fiduciary. Section 502(a)(3) provides jurisdiction for fiduciary suits "to obtain other appropriate equitable relief ... to enforce any provisions of this subchapter or the terms of the plan."29 U.S.C. § 1132(a)(3)(B)(ii); *see also Mertens,* 508 U.S. at 253 ("[Section 502(a)(3) ] does not, after all, authorize 'appropriate equitable relief' *at large,* but only 'appropriate equitable relief' for the purpose of 'redressing any violations or ... enforcing any provisions' of ERISA or an ERISA plan."(emphasis in original)).

We agree with the district court that the Committee's declaratory-judgment action was not designed to enforce any provisions of the Plan or ERISA. The Committee's action cannot logically be con-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.)))**

strued as a suit to enforce the terms of the Plan because the Plan's sponsor, Newell, has already amended the Plan to allow the Committee to charge premiums to the retirees, and the Committee has acted in accordance with the Plan by charging the premiums. In fact, the Committee alleged in the complaint that by charging premiums as a condition for the retirees' participation in the Plan, "the Committee has adhered to the terms of the Plan as written and amended." The Committee does not need the retirees' consent to comply with the unambiguous terms of the Plan because it has an easy remedy-if the retirees refuse to pay the new premiums, the Committee can stop providing them benefits under the Plan. And we do not understand how the Committee will violate its fiduciary duties under ERISA by following the terms of the Plan when it has an obligation to do so under ERISA. *See* 29 U.S.C. § 1104(a)(1)(D).

A plaintiff cannot bring a claim within ERISA § 502(a)(3) by advantageous and creative pleading. *See Wal-Mart Stores, Inc. Assocs' Health & Welfare Plan v. Wells,* 213 F.3d 398, 401 (7th Cir .2000) ("[A] plaintiff cannot convert a claim of damages for breach of contract into an equitable claim by the facile trick of asking that the defendant be enjoined from refusing to honor its obligation to pay the plaintiff what the plaintiff is owed under the contract and appending to that request a request for payment of the amount owed."). It follows that a complaint cannot invoke ERISA § 502(a)(3) jurisdiction by the mere assertion, without more, that ERISA will be violated. If the Committee administers the Plan as written, it will enforce the terms of the Plan and vindicate its fiduciary duties under ERISA-the retirees' dissatisfaction notwithstanding. The appellants have attempted to usurp the jurisdictional choice of the UAW and retirees by filing an anticipatory suit for declaratory relief under ERISA § 502(a)(3) before they could be sued in Michigan; however, without a need to enforce the Plan or ERISA, appellants' effort is for naught. The appellants' suit for declaratory and injunctive relief under ERISA § 502(a)(3)

against the UAW and retirees was unnecessary, and the district court properly concluded that jurisdiction did not exist under the statute. We therefore affirm the district court's dismissal of the counts of appellants' complaint that advanced claims under ERISA for lack of subject-matter jurisdiction.

*B. Jurisdiction under the LMRA*

**\*6** The appellants' next argument is that the district court erred by dismissing the case because it had jurisdiction under LMRA § 301, which provides jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185. The appellants contend that jurisdiction existed for their suit requesting a declaration that the Plan amendments did not violate the collective-bargaining agreements between Kirsch and the UAW.

The appellants' argument for jurisdiction under the LMRA relies heavily on our decision in *J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers,* for the proposition that when an employer accused of violating the terms of a collective-bargaining agreement files suit for declaratory relief, that suit is an action "for violation of contracts within the meaning of § 301." 398 F.3d 967, 973 (7th Cir.2005) (internal quotation omitted). Jurisdiction under LMRA § 301 is "extremely limited" and encompasses only suits " 'filed because a contract has been violated' "-it does not extend to " 'suits that claim a contract is invalid.' " *Troha,* 328 F.3d at 329 (quoting *Textron Lycoming Reciprocating Engine Div. v. United Auto., Aerospace, Agric. Implement Workers of Am.,* 523 U.S. 653, 656-57 (1998)). But " 'a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.' " *Stevens Constr. Corp. v. Chi. Reg'l Council of Carpenters,* 464 F.3d 682, 685 (7th Cir.2006) (quoting *Textron,* 523 U.S. at 658).

Although § 301 provides only limited jurisdiction, we agree with the appellants (and the district court's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                  Page 6
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.)))**

footnote) that the appellants' LMRA § 301 claim falls within the statute's jurisdictional contours. Newell amended the Plan to charge premiums to retirees. Kirsch's collective-bargaining agreement with the UAW obligated Newell to provide certain welfare benefits for the lives of the retirees. Some retirees, and the UAW, claim that the amendments to the Plan violated the terms of the collective-bargaining agreements by ceasing to provide these benefits for life to retirees who do not pay premiums. This dispute is over whether Newell's conduct violated the collective-bargaining agreement, and Newell seeks a declaration that its amendments were appropriate. This suit involves the alleged violation of the collective-bargaining agreement, and therefore falls within the plain terms of LMRA § 301.

But that does not end the matter because the complaint advanced only claims for declaratory relief under the LMRA, and these claims are covered by the umbrella of the Declaratory Judgment Act. *See Haw. Stevedores, Inc. v. HT & T Co.,* 363 F.Supp.2d 1253, 1267 n. 16 (D.Haw.2005) ("That jurisdiction may be proper under the LMRA does not override the Court's discretion to decline [Declaratory Judgment Act] jurisdiction."(citing *Krey Packing Co. v. Hamilton,* 572 F.2d 1280, 1284 (8th Cir.1978))). A district court has "wide discretion" to decline to hear actions that pursue only declaratory relief.*North Shore Gas Co. v. Salomon Inc.,* 152 F.3d 642, 647 (7th Cir.1998); *In re VMS Secs. Litig.,* 103 F.3d 1317, 1327 (7th Cir.1996); *see also Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."); *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494 (1942). And the district

court evaluated the claims in the complaint under the Declaratory Judgment Act and exercised its "wide discretion" by declining jurisdiction.

*7 There is some debate over what standard of review should be used to evaluate a district court's decision to decline jurisdiction over a declaratory-judgment case. *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 n. 3 (7th Cir.1995) (noting a "simmering circuit split" on the issue). This circuit has opted for a *de novo* standard of review. *See VMS Secs. Litig.,* 103 F.3d at 1327;*see also Salomon Inc.,* 152 F.3d at 647 (reviewing decision retaining case *de novo* ).[FN1]

> FN1. The Supreme Court announced in *Wilton v. Seven Falls Co.,* that a district court's decision to stay a Declaratory Judgment. Act action in favor of a pending state-court action is reviewed for "abuse of discretion." 515 U.S. at 289-90;*see also Grinnell Mut. Reinsurance Co. v. Shierk,* 121 F.3d 1114, 1117 (7th Cir.1997). However, in several cases after *Wilton,* cour circuit has continued to review *de novo* a district court's decision to decline jurisdiction under the Declaratory Judgment Act. *See Salomon Inc.,* 152 F.3d at 647;*VMS Secs. Litig.,* 103 F.3d at 1327.

The district court noted that "the retirees and their union filed a class action suit approximately one month after this declaratory-judgment action was filed. The record reflects both sides expected the action by the 'natural plaintiffs.' " We are usually wary of a declaratory-judgment action that is " 'aimed solely at wresting the choice of forum from the natural plaintiff.' " *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 718 (7th Cir.2002) (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir.1993) (internal quotation marks omitted)).

And we agree with the district court that the "natural plaintiffs" are the UAW and the retirees. It seems far more sensible to us that the retirees adju-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.)))**

Page 7

dicate their claims in Michigan, where the plant was located, where the ERISA and LMRA claims may go forward in the same litigation, and where the retirees may avail themselves of the benefits of a class-action lawsuit-which will offer a much greater possibility of settlement than the current posture of this case with its hundreds of defendants. These pragmatic and realistic concerns counsel in favor of dismissal.

Moreover, it is completely understandable that the district court declined its jurisdiction under the Declaratory Judgment Act because this case raises serious questions about the wisdom of allowing litigation to go forward in the Northern District of Illinois. The UAW and the retirees raised the issue before the district court by filing the motion to transfer to the Western District of Michigan under 28 U.S.C. § 1404(a). The retirees reside in many states throughout the country; the majority live in Michigan. As the district court noted, the negotiations over the collective-bargaining agreement and the Sturgis plants were in Michigan. The Plan administration was only recently moved to Illinois, and only *one* retiree defendant resides in Illinois-in the Central District of Illinois, not in the Northern District where this case commenced. Thus, both convenience and the "interests of justice" practically dictate transfer to Michigan, where the mirror image of this suit has been filed. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). And if the district court would have granted a motion to transfer if it had retained the case (and it appears nearly certain that it would have), it seems more than sensible to us that the district court facilitated the process by exercising its "wide discretion" to decline jurisdiction. *See Salomon Inc.,* 152 F.3d at 647.

*8 Given the status of the pending suit in the Western District of Michigan and the other considerations we have articulated, we affirm the district

court's discretionary dismissal of the LMRA count.

### III. CONCLUSION

We AFFIRM the district court's dismissal of the complaint.

C.A.7 (Ill.),2008.
Newell Operating Co. v. International Union of United Auto., Aerospace, and Agr. Implement Workers of America
--- F.3d ----, 2008 WL 2600795 (C.A.7 (Ill.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.